FILED
TARRANT COUNTY
10/27/2025 1:29 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO.** 067-371499-25 _____

| | |
|---|---|
| BRANDON CANUP, | IN THE _____ |
| Plaintiff | DISTRICT COURT |
| v. | |
| BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC, | TARRANT COUNTY, TEXAS |
| Defendants | |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW Plaintiff, Brandon Canup, appearing pro se, and files this Original Petition against the Defendants named herein. Plaintiff makes this filing based on personal knowledge as to all matters concerning himself and upon information and belief as to all other matters. In support thereof, Plaintiff respectfully shows the Court as follows:

## I.

## DISCOVERY CONTROL PLAN

1.1    Plaintiff pleads that discovery should be conducted in accordance with discovery control plan, level 3, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

## II.

## PARTIES

### A.    Plaintiff

2.1    Brandon Canup ("Canup") is an individual residing in Tarrant County, Texas.

### B.    Defendants

2.2    Aylstock, Witkin, Kreis & Overholtz, P.L.C. ("AWKO") is a foreign professional limited liability company formed under the laws of Florida, doing business in Texas. Its principal office is located at 17 East Main Street, Suite 200, Pensacola, Florida 32502. AWKO may be served via its registered agent for service of process: Justin Witkin, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever it may be found. In the event AWKO does not maintain a registered agent or cannot otherwise be located with reasonable diligence, it may be served through the Texas Secretary of State as provided by *Tex. Bus. Orgs. Code § 5.251* and *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.045*.

2.3    Mostyn Law Firm, P.C. ("Mostyn") is a Texas professional corporation formed under the laws of Texas, with its principal office at 3810 W. Alabama Street,

Houston, Texas 77027-5204. Mostyn may be served via its registered agent for service of process: Andrew Browning, at the same address, or wherever it may be found.

2.4     Fleming, Nolen & Jez, L.L.P. ("FNJ") is a Texas limited liability partnership with its principal office located at 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128. FNJ may be served via a General Partner for service of process: George Fleming, at the same address, or wherever it may be found. Because FNJ does not have a registered agent listed on file with the Texas Comptroller as of the date of this filing, it may also be served with process through the Texas Secretary of State pursuant to *Tex. Bus. Orgs. Code § 5.251*, who shall forward process to FNJ's last known address on file.

2.5     Bryan Frederick Aylstock ("Aylstock") is an attorney licensed in the State of Florida (Florida Bar No. 78263), and a founding partner of AWKO. He may be served at his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.6     Bobby J. Bradford ("Bradford") is an attorney licensed in the State of Florida (Florida Bar No. 173223) and a partner at AWKO. He may be served at at

ORIGINAL PETITION                                                   **PAGE**          3

his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.7    Michael Andrew Burns ("Burns") is an attorney licensed in the State of Florida (Florida Bar No. 973130). At all times relevant to this case, he was affiliated with Mostyn Law Firm, a Texas-based law firm. He may be served at his Florida business address: Burns Law LLC, 362 Gulf Breeze Parkway, #294, Gulf Breeze, Florida 32561-4492, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.8    Gregory Donald Brown ("Brown") is an attorney licensed in the State of Texas (Texas Bar No. 24078266). At all times relevant to this case, he was affiliated with FNJ. Brown is listed as an attorney at FNJ on their website and as an attorney at Sorrels Law on his Texas State Bar profile. He may be served at his primary business address: Sorrels Law, 230 Westcott St., Ste. 100, Houston, Texas 77007, or at Fleming, Nolen & Jez, LLP, 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128, or wherever he may be found.

2.9     Cliff Lee Roberts ("Roberts") is an attorney licensed in the State of Texas (Texas Bar No. 17002900). He may be served at his business address: 8191 Southwest Freeway, Suite 116, Houston, Texas 77074-1700, or wherever he may be found.

2.10    For ease of reference, Defendants AWKO, Mostyn, Aylstock, Bradford, and Burns may collectively be referred to as the ("Florida Defendants"). Although Mostyn is a Texas law firm, it is included in this group because of its affiliation with Burns, a Florida-based attorney, and its role in the conduct giving rise to this case.

2.11    Defendants FNJ, Brown, and Roberts may collectively be referred to as the ("Texas Defendants").

2.12    All Defendants may collectively be referred to as the ("Defendants").

## III.

## JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this action pursuant to Section 24.007, et seq. of the Texas Government Code. The amount in controversy exceeds the Court's minimum jurisdictional requirements, exclusive of interest and costs, and the relief sought is within the jurisdictional limits of this Court.

3.2     This Court has personal jurisdiction over all named Defendants. One or more Defendants are residents of Texas, maintain their principal place of business

in Texas, and/or regularly conduct business in Texas. Additionally, pursuant to the Texas Long-Arm Statute, *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.069*, this Court may exercise jurisdiction over out-of-state Defendants who have purposefully directed activities toward Texas. Out-of-state Defendants purposefully directed activities toward Texas, including but not limited to: providing legal services to a Texas resident, accessing confidential records of a Texas resident, and appearing and purporting to act on behalf of a Texas resident in litigation proceedings connected to Texas, including matters designated for trial in the Northern District of Texas. Furthermore, all out-of-state Defendants performed common benefit work in the underlying litigation entitling them to collect fees from thousands of Texas Residents. Out-of-state Defendants have purposefully availed themselves of the privileges and benefits of conducting business in Texas and are subject to the jurisdiction of this Court. These actions demonstrate the Defendants' purposeful involvement in matters connected to Texas, making it both appropriate and consistent with due process for a Texas court to exercise jurisdiction over them.

3.3    Venue is proper in this Court pursuant to Section 15.001, *et seq.* of the Texas Civil Practice and Remedies Code.  All or a substantial part of the harm resulting from Defendants' conduct was suffered by Plaintiff in Tarrant County, Texas, where Plaintiff resides and relied upon Defendants' actions and representations. Additionally, this lawsuit concerns contracts and attorney-client

relationships that were to be performed, in whole or in part, in Tarrant County. Plaintiff's case was designated for trial in the United States District Court for the Northern District of Texas, and Tarrant County was the central location of Plaintiff's litigation preparation, reliance on Defendants, and resulting injury.

## IV.

## STATEMENT PURSUANT TO RULE 47

4.1    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that he seeks monetary relief of less than $250,000, including damages of any kind, penalties, costs, expenses, pre and post-judgment interest. Plaintiff further affirms that he seeks less than $75,000 in monetary damages, exclusive of interest and costs.

## V.

## BACKGROUND FACTS

5.1    On April 3, 2019, the United States Judicial Panel on Multidistrict Litigation transferred multiple actions to the Northern District of Florida for coordinated pretrial proceedings in *In re: 3M Combat Arms Earplug Products Liability Litigation*, Cause No. 3:19-md-02885 ("MDL").

5.2    On May 22, 2019, the MDL court issued Pretrial Order No. 7, appointing various plaintiffs' attorneys to leadership roles ("PSC") to conduct common benefit

work on behalf of all claimants in the MDL. These appointments were set to expire after one year unless renewed.

5.3    On June 21, 2019, Canup retained Texas Defendants Brown, FNJ, and Roberts, to investigate, develop, and litigate his claims in the MDL. Despite this agreement, Texas Defendants failed to meaningfully investigate Canup's injuries or develop his case during their years of representation.

5.4    On August 29, 2023, a global settlement agreement ("MSA") was announced between 3M and Plaintiffs' Leadership in the MDL. The agreement imposed obligations on plaintiffs' attorneys to recommend settlement to 100% of their clients, to withdraw from representation of any claimant who declined to participate and other terms that were hidden from Plaintiffs in the MDL in Exhibit 10 of the MSA. These provisions created undisclosed conflicts of interest between attorneys and their clients.

5.5    Canup received several letters and emails from Texas Defendants pressuring him to accept the settlement, warning that rejection would result in withdrawal of representation, delayed access to trial, and onerous litigation deadlines. However, Texas Defendants never disclosed the full terms of the settlement, including Exhibit 10, which contained material provisions.

5.6    Following multiple communications from Texas Defendants indicating their intent to withdraw if Canup declined to participate in the global settlement,

Canup retained attorney David Gamble ("Gamble") in January 2024. At the time, Texas Defendants were still counsel of record for Canup in the MDL but did not provide substantive legal support. Canup retained Gamble to preserve his ability to litigate, anticipating Texas Defendant's formal withdrawal and recognizing their abdication of duty.

5.7     On January 21, 2024, Canup officially opted out of the MSA triggering his production obligations under Case Management Order 57 ("CMO 57"). Canup and Gamble immediately began preparing for the CMO 57 production requirements which included gathering, organizing, and submitting over 25 GB of data within 30 days under threat of dismissal with prejudice. Despite knowing of these requirements for months, Texas Defendants did not assist in meeting these obligations. Brown filed a motion to withdraw as counsel of record for Canup in the MDL within a week of Canup's CMO 57 production deadline. His motion was granted one day before the CMO 57 deadline.

5.8     Canup requested his file from FNJ in January of 2024. Canup received a few documents but never his full file. FNJ sent Gamble Canup's file which only contained a single four-page pdf.

5.9     On February 5, 2024 Canup was ordered by the MDL Court to appear "in person, with counsel" at a status conference in Pensacola, Florida scheduled for March 13, 2024. In preparation for the March 13, 2024 status conference Bradford

contacted Gamble seeking privileged and confidential information about Canup and his case against 3M and to give advice about the settlement programs in the MSA. Gamble and Bradford spoke several times about Canup's case including but not limited to his medical claims and potential recovery. Bradford informed Gamble that Aylstock and Bradford would be present at the status conference but never informed Gamble of Florida Defendants' intent to make a formal appearance.

5.10    Unbeknownst to either Canup or Gamble, Florida Defendants made a formal appearance in the MDL Court on Canup's behalf at the March 13, 2024 status conference. The hearing transcript lists Aylstock and Bradford from AWKO and Burns from Mostyn as appearing "FOR THE PLAINTIFF." Aylstock participated in the hearing by addressing the MDL Court on the record speaking about the MSA in an attempt to convince Canup to accept the global settlement offer.

5.11    Following the first hearing, Canup and Gamble were led to a conference room where Magistrate Judge Hope Cannon conducted a closed-door settlement conference. This settlement conference was a second official proceeding on March 13, 2024. Judge Cannon brought in Aylstock, Bradford, and Burns, who then gave individual legal advice, reviewed Canup's medical records and discussed Canup's case directly with Canup. The medical documents that were already in Florida Defendants' possession when they entered the room included but were not limited to audiograms and post-deployment health assessments from Canup's time in the US

Army. These confidential and privileged documents were not provided to Florida Defendants by Canup or Gamble. Florida Defendants had gained access to these confidential and privileged documents from another source unknown to Canup or Gamble.

5.12    During that discussion, Aylstock, Bradford, and Burns attempted to pressure Canup to accept the MSA which Canup had already expressly rejected. Florida Defendants were formerly part of the PSC in the MDL and were bound by the terms of the MSA. Florida Defendants did not disclose that their continued compensation was contingent upon claimant participation levels in the MSA, they did not disclose the full terms of the MSA including Exhibit 10, nor did they inform Canup of the conflict created by the MSA's provisions requiring them to recommend settlement to 100% of claimants and to withdraw from clients who opted out. They also failed to disclose that they were making another formal appearance in this second proceeding in the MDL Court on Canup's behalf.

5.13    Florida Defendants' conduct and formal appearances as Canup's counsel created, at minimum, an implied attorney-client relationship, and arguably an express attorney-client relationship. Bradford reached out to Gamble to obtain confidential and privileged information and to discuss Canup's case strategy prior to the proceedings, conduct consistent with representation. At the hearing itself, Defendants Aylstock, Bradford, and Burns formally appeared "FOR THE

PLAINTIFF" on the record, communicated directly with Plaintiff, gave individualized legal advice, and attempted to pressure him into accepting the MSA. These actions, individually and collectively, establish an implied attorney-client relationship, because they would cause any reasonable client to believe Florida Defendants were acting as his attorneys. The formal appearance on the record not only arguably created an express attorney-client relationship but, at the very least, reinforced and confirmed the implied relationship already created by Florida Defendants' conduct. This imposed fiduciary duties including, but not limited to, the duties of loyalty, candor, honesty, disclosure, and conflict avoidance. Despite these obligations, Defendants failed to disclose their intent to appear, their actual formal appearance, their roles in the settlement conference, or their financial stake in maximizing claimant participation.

5.14    Had Canup known that Florida Defendants would appear on his behalf, he could have satisfied the MDL Court's order to appear "in person, with counsel" without transporting Gamble to Florida. Canup incurred substantial costs for Gamble's airfare, lodging, and time. These are expenses he would not have borne had Florida Defendants fulfilled their duty to disclose their participation.

5.15    After the March hearing, Aylstock, Bradford, and Burns took no further action on Canup's behalf, never filed a notice of withdrawal, and never

explained their involvement. Canup did not become aware of their official appearance until he obtained a transcript of the hearing in January 2025.

5.16    Meanwhile, Canup encountered roadblocks accessing the unredacted Master Long Form Complaint ("Master Complaint"). The master complaint was filed on behalf of all claimants and was referenced by all Short Form Complaints filed by the Plaintiffs in this MDL. When the motion to file this document under seal was filed in 2019 it stated that all counsel of record were sent an unredacted copy. Canup was denied access to this document by FNJ. FNJ later contacted Gamble and recommended that he reach out to the PSC to ask for permission to access the master complaint from PSC.

5.17    In April of 2024 Gamble contacted Bradford to get access to the master complaint. On April 24, 2024, Bradford informed Gamble that he would only release the unredacted complaint if Gamble signed a Common Benefit Work Participation Agreement assigning a 9% interest in any future recovery in Canup's case to the PSC. Canup consented to Gamble's signing the agreement to move forward with the litigation.

5.18    On May 1, 2024, Canup filed an amended complaint and Lexecon non-waiver statement as ordered by the MDL Court on April 17, 2024. The order requiring Canup to amend his pleadings stated that he could not add new allegations or causes of action. 3M moved to dismiss. On July 18, 2024, the MDL Court granted

the motion in part, dismissing Canup's hearing-loss-related claims as procedurally barred because they were new allegations and/or causes of action.

5.19    The MDL Court's order stated that Canup's former attorneys never attempted to amend his pleadings to include hearing loss claims, despite representing him for years. The MDL Court cited this as a reason that Canup should not be allowed to add new allegations or causes of action. Canup was harmed by being forced to retain expert witnesses whose work became worthless due to the dismissal of the hearing-loss-related claims, harm that would have been avoided had the Texas Defendants investigated and developed Canup's case as they were legally obligated to do.

5.20    On September 30, 2024, Canup entered into a direct settlement agreement with 3M. Canup's ability to reach this resolution was made possible only through his efforts and the efforts of independent counsel, despite the harm caused by the misconduct of the attorneys named herein.

## VI.

## CAUSES OF ACTION

<u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### A.    CLAIMS AGAINST TEXAS DEFENDANTS

**Claim 1:  Fraud and Failure to Disclose Facts (pled alternatively as Fraudulent Inducement)**

6.1     Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.2     **Material Misrepresentation:** Texas Defendants Brown, Roberts, and FNJ made material representations to Canup, including that they would actively pursue Canup's claims in the MDL and litigate the case on his behalf. These representations were expressly contained in the written contingency fee retainer agreement executed between Canup and Texas Defendants, which promised diligent investigation, development, and prosecution of Canup's claims. These representations were made to induce Canup to sign the agreement and place exclusive control of his case with Texas Defendants.

6.3     **Knowledge of Falsity:** At the time these representations were made, Texas Defendants knew they were false, or at minimum had no reasonable basis to believe them true. FNJ had prior MDL experience and knew that their business model involved securing clients for global settlements without undertaking individualized litigation. Their subsequent conduct, failing to advance Canup's claims for four years, not amending pleadings to preserve critical causes of action, and abandoning Plaintiff just one day before the CMO 57 production deadline, confirms they never intended to perform the promised litigation services.

6.4     **Intent to Induce Reliance:** Texas Defendants made these misrepresentations with the intent and purpose of inducing Canup to rely on them

and execute the contingency fee agreement, thereby binding Canup to pay them a percentage of any recovery while avoiding the cost and effort of actively litigating his claims.

6.5   **Justifiable Reliance:** Canup justifiably relied on these representations by signing the retainer agreement and allowing Texas Defendants to control and manage his claims in the MDL for approximately four years, without seeking alternative representation or taking independent action, in the belief that Texas Defendants were diligently working on his behalf.

6.6   **Injury Caused by Reliance**: As a direct and proximate result of Canup's reliance on Texas Defendants' misrepresentations, Canup suffered injury. The MDL court cited Texas Defendants' failure to amend pleadings and advance his case as a basis for dismissing Canup's hearing-loss claims, which diminished the value of expert reports prepared for the litigation. Texas Defendants' abandonment of Canup before the CMO 57 compliance deadline caused significant stress, confusion, inconvenience, and anxiety, disrupted Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.7   Texas Defendants' conduct also contradicts the terms of the written agreement, which stated that Canup retained ultimate authority over settlement decisions and that Texas Defendants would provide full legal support. Instead, Texas

Defendants used the contract to obtain control of Canup's claims, then abandoned those claims for financial reasons when he exercised his right to opt out of the settlement.

6.8    Texas Defendants violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Texas Defendants acted knowingly and intentionally. Such violations constitute fraud.

6.9    To the extent FNJ is not found directly liable for its own independent misconduct, FNJ is also vicariously liable for any wrongful acts or omissions committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.10    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.11    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 2:  Breach of Fiduciary Duty

6.12    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.13  **Existence of a Fiduciary Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup fiduciary duties of loyalty, candor, disclosure, and zealous representation among others. These duties included the obligation to place Plaintiff's interests above their own, to fully inform Plaintiff of all material facts affecting his case, and to diligently pursue his claims.

6.14  **Breach of the Duty:** Texas Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.15  **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.16  **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.17  To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.18  Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.19    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 3:  Negligence (pled in the alternative)

6.20    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.21    **Existence of a Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup a duty to exercise reasonable care, skill, and diligence commonly possessed and exercised by attorneys similarly situated in the State of Texas. This duty included, but was not limited to, properly investigating and preparing Canup's claims, maintaining adequate communication with the client, meeting applicable court deadlines, and taking reasonable steps to protect Plaintiff's interests before, during, and after withdrawal of representation.

6.22    **Breach of the Duty:** Texas Defendants breached their duty of care in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including

Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.23 **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.24 **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.25   To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.26   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

### B.    CLAIMS AGAINST FLORIDA DEFENDANTS

### Claim 1:  Fraud by Non-Disclosure

6.27   Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.28   **Failure to Disclose:** Florida Defendants deliberately failed to disclose material facts. Florida Defendants Aylstock, Bradford, and Burns, while acting on behalf of their respective firms AWKO and Mostyn, deliberately failed to disclose that they intended to formally appear as counsel for Canup at the March 13, 2024 status conference and that they intended to formally appear and participate in a closed-door settlement conference concerning Canup's case. By withholding these facts, Florida Defendants concealed their involvement in Canup's case. These omissions occurred despite their knowledge of a court order requiring Canup to appear "in person, with counsel" if represented.

6.29  **Duty to Disclose:** The Defendants had a duty to disclose such facts to Canup. The Florida Defendants' duty to disclose arose from multiple sources:

a)  By making a formal appearance on the record, Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup, triggering fiduciary duties of candor, loyalty, and disclosure. They had a duty to disclose their intent to make a formal appearance.

b)  By partially disclosing their intent to attend the March 13, 2024 status conference to Canup through Gamble while concealing their intent to formally appear, Florida Defendants created a duty to disclose the full scope of their role.

c)  By seeking privileged and confidential information about Canup and his case against 3M prior to the March 13, 2024 status conference and by obtaining and using Canup's confidential medical records, Defendants assumed fiduciary-like duties of confidentiality and fair dealing, requiring them to disclose their access and intent.

6.30  **Canup's Ignorance:** Canup was ignorant of the facts and did not have an equal opportunity to discover them. Canup had no knowledge that Florida Defendants intended to appear in court on his behalf, nor that they had accessed his private medical records from an undisclosed source. Because these actions were being concealed and misrepresented Canup had no equal opportunity to discover their conduct or protect his own interests before incurring unnecessary expenses and attending the conference under false pretenses.

6.31 **Intent to Induce:** Florida Defendants intended Canup to act or refrain from acting based on the nondisclosure. Florida Defendants knew that the MDL Court's order required Canup to appear "in person, with counsel." Their nondisclosure was calculated to induce Canup to continue treating Gamble as his sole counsel and to incur the costs of transporting and compensating him to attend the status conference in Florida. By concealing their intention to appear "FOR THE PLAINTIFF," Florida Defendants prevented Canup from making an informed choice such as declining to bring Gamble, objecting to their unauthorized involvement, or challenging their improper access to his records. Their concealment ensured that Canup remained unaware and passive while Florida Defendants acted in ways that advanced their own interests in the MDL.

6.32 **Reliance and Injury:** Canup relied on the Florida Defendants' nondisclosure, which directly resulted in injury. In reliance on their concealment, Canup unnecessarily paid for Gamble's travel, lodging, and appearance at the Florida status conference, expenses that would not have been incurred had he known Florida Defendants would appear as his counsel. Florida Defendants also accessed and used his confidential medical records without consent, depriving him of control over his case and the opportunity to make informed legal decisions with full knowledge of who was acting on his behalf. These harms, including financial costs and disruption of his autonomy, were the direct and foreseeable result of Florida

Defendants' deliberate concealment of material facts they had a duty to disclose.

6.33   Bryan Aylstock, as a founding partner of AWKO, had actual authority to bind the firm. AWKO and Mostyn Law benefitted directly from the concealment and actions of their employees and partners. As such, both firms are directly liable for the misconduct described herein.

6.34   Florida Defendants' omissions and concealments were intentional, material, and calculated to mislead Canup during a critical phase of litigation. This conduct constitutes actionable fraud by non-disclosure under Texas law.

6.35   To the extent AWKO and Mostyn Law are not found directly liable, they are vicariously liable for the acts and omissions of Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.36   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.37   Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

**Claim 2:  Breach of Fiduciary Duty**

6.38   Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.39   **Existence of Fiduciary Duty:** By formally appearing on the record as counsel "FOR THE PLAINTIFF" at the March 13, 2024 status conference, and by participating in a closed-door settlement discussion regarding Canup's case, the Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup. This appearance, coupled with their access to Canup's confidential medical records, imposed fiduciary duties of loyalty, candor, and full disclosure. Having assumed the role of Canup's representatives in court and in private negotiations, Florida Defendants were obligated to act in Canup's best interests, disclose material facts, and avoid self-dealing or deception.

6.40   **Breach of Duty:** Florida Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. Florida Defendants breached these fiduciary duties in multiple ways. They deliberately failed to inform Canup of their intent to appear as his counsel, concealed their formal appearance in settlement negotiations, and accessed Canup's confidential medical records without authorization. They further failed to disclose material conflicts of interest, including their obligations under the MSA to secure 100% plaintiff participation and the financial penalties they faced if Canup declined to settle. Florida Defendants also

failed to disclose Exhibit 10 to the MSA which contained material terms to the agreement. Instead of candor and loyalty, Florida Defendants acted in their own financial interests by pressuring Canup toward settlement while depriving him of the opportunity to make informed decisions about his representation and case strategy.

6.41   **Causation:** Florida Defendants' breaches directly caused Canup to act and incur expenses that he otherwise would not have. Because Florida Defendants concealed their intent to formally appear as counsel, Canup reasonably believed Gamble was his only representative and paid to transport and lodge Gamble in Florida for the status conference. Canup was further deprived of the ability to object to Florida Defendants' unauthorized access to his confidential medical records, or to challenge their improper participation in court and settlement proceedings. Their concealment and deception stripped Canup of control over his own case and forced him to rely on incomplete and misleading information.

6.42   **Damages:** As a direct and proximate result of Florida Defendants' misconduct, Canup suffered both financial and significant inconvenience damages. He incurred unnecessary out-of-pocket expenses for Gamble's travel and representation. Florida Defendants' concealment and breaches also forced Canup to spend substantial time, energy, and effort to learn about the role and duties of a lawyer, MDL procedures, settlement structures, and fiduciary obligations, simply to understand how his rights were being compromised. Instead of being able to trust

Defendants, Canup was required to divert time away from his personal and professional life to protect himself from those who owed him loyalty and candor. This disruption and burden are concrete injuries that flow directly from Florida Defendants' breaches of fiduciary duty.

6.43   To the extent AWKO and Mostyn Law are not found directly liable, they are also vicariously liable for the fiduciary breaches committed by Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.44   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate it for the harm sustained.

6.45   Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

### Claim 3:  Fraudulent Inducement

6.46   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.47   **Material Misrepresentation:** Defendants Bradford and AWKO represented to Canup, through Gamble, that if Gamble agreed to allocate a 9%

interest in Canup's recovery in the MDL to PSC, Canup and Gamble would receive full access to the MDL's common benefit work, including the master complaint and other litigation materials. This promise was material because access to the common benefit work was essential for evaluating Canup's claims, preparing pleadings, and ensuring that Canup's case was prosecuted on equal footing within the MDL.

6.48  **Knowledge of Falsity:** At the time Bradford made these representations, he and AWKO had no intention of providing the promised access beyond the master complaint. Bradford and AWKO also knew their representation was false because the master complaint had been filed on behalf of all Plaintiffs in the MDL, and the motion to file it under seal expressly stated that an unredacted copy had already been provided to all counsel of record, making all Plaintiffs in the MDL, including Canup, entitled to it without additional conditions. Bradford and AWKO's subsequent refusal to respond to Canup's request for the remaining common benefit materials demonstrates they knowingly misrepresented their willingness to perform and concealed their true intent.

6.49  **Intent to Induce Reliance:** Defendants Bradford and AWKO made these false promises for the purpose of inducing Canup and or Gamble as an agent of Canup to agree to the 9% common benefit interest. By doing so, Bradford and AWKO sought to secure both financial gain and strategic leverage within the MDL, binding Canup to terms that benefitted Bradford, AWKO and PSC as a whole while

depriving Canup of the resources promised.

6.50    **Reliance:** Canup, through Gamble, reasonably relied on Bradford and AWKO's misrepresentations by entering into the agreement and granting PSC a 9% interest in his recovery. Canup through Gamble did so in the belief that he would receive the full scope of common benefit materials, which were essential to advancing his claims in the MDL.

6.51    **Injury:** As a direct and proximate result of Bradford and AWKO's fraudulent inducement, Canup suffered injury. He incurred the financial burden of allocating 9% of his recovery to PSC while receiving only the master complaint, which he was entitled to without further conditions, and being deprived of the other promised materials. This left Canup disadvantaged in prosecuting his claims, forced him to expend additional time and effort to understand the underlying issues without the benefit of the promised work product, and unjustly enriched Bradford and AWKO at his expense.

6.52    Defendants Bradford and AWKO violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Defendants Bradford and AWKO committed this conduct knowingly and intentionally. Such violations constitute fraud.

6.53    To the extent AWKO is not found directly liable, it is also vicariously liable for the fraudulent inducement committed by Bradford within in the course and

scope of his employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.54    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.55    Because Bradford and AWKO's conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## C.    CLAIMS AGAINST ALL DEFENDANTS

### Claim 1:  Civil Conspiracy

6.56    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.57    **Combination of two or more persons:** Defendants FNJ, Brown, Roberts, Aylstock, Bradford, Burns, AWKO, and Mostyn Law combined and acted together in connection with the MDL. Their actions were coordinated, not isolated, and each Defendant assumed complementary roles under the framework of the MSA which tied their compensation to Plaintiff participation thresholds and withdrawal requirements. This combination reflects a deliberate, concerted effort to protect their financial interests at Canup's expense.

6.58   **Common object or course of action:** The common object of the conspiracy was to secure maximum Plaintiff participation in the MSA, protect Defendants' fees, and eliminate or marginalize clients unwilling to settle. To accomplish this, Defendants withheld material settlement terms, including Exhibit 10 of the MSA and provisions tying attorney compensation to client participation and mandatory withdrawals, while conditioning access to critical litigation documents on Canup's compliance. The Florida Defendants also concealed their formal appearance as Canup's counsel, depriving him of notice that they were representing him in court and settlement discussions. These coordinated acts were calculated to undermine Canup's autonomy, deprive him of full disclosure, and coerce his participation in the settlement program.

6.59   **Meeting of the minds:** Defendants reached a meeting of the minds through coordinated conduct. Texas defendants abandoned Canup for not agreeing to participate in the MSA. Florida Defendants then formally appeared "FOR THE PLAINTIFF" in court allowing them to pressure Canup, in person, to participate in the MSA. Florida Defendants did this without disclosing their intent to formally appear forcing Canup to take Gamble from Texas to Florida to comply with the MDL Court's order to appear "in person, with counsel" resulting in unnecessary economic pressure on Canup. Texas Defendants then withheld the master complaint, a document that was part of Canup's file, and directed Gamble to obtain it from the

PSC. Bradford and AWKO then conditioned its release on signing a fraudulent participation agreement giving PSC a 9% interest in any recovery in Canup's case. These coordinated acts evidence agreement, whether formal or informal, to act in unison toward their shared objective.

6.60    **Unlawful overt acts:** In furtherance of the conspiracy, Defendants engaged in multiple unlawful overt acts, including:

a) concealing material settlement terms from Canup;

b) concealing their intent to appear, and then appearing as Canup's counsel without authority or disclosure;

c) accessing and reviewing Canup's confidential medical records without authorization;

d) concealing their financial and ethical conflicts tied to the MSA; and

e) requiring Canup's counsel to sign a fraudulent 9% participation agreement as the condition for obtaining the master complaint.

Each of these acts breached duties of candor, loyalty, and disclosure owed to Canup, and unlawfully advanced Defendants' scheme to manipulate settlement participation.

6.61    **Damages:** As a direct and proximate result of this conspiracy, Canup suffered damages. He incurred unnecessary expenses transporting substitute counsel to Florida for a hearing where Florida Defendants secretly appeared on his behalf,

was deprived of access to promised common benefit work, and saw his recovery reduced by the 9% diversion of settlement funds. Canup also suffered significant inconvenience by being forced to investigate and learn about complex legal processes in order to uncover and counteract Defendants' scheme, burdens that arose solely because of Defendants' coordinated misconduct.

6.62    To the extent the law firms named herein are not found directly liable, they are also vicariously liable for the actions of their partners, associates, employees, or agents committed within the scope of employment and in furtherance of the conspiracy.

6.63    Additionally, because Canup's injuries were caused by the joint and concerted actions of multiple Defendants, including acts of fraud, breach of fiduciary duty, and conspiracy, all Defendants are jointly and severally liable under Texas law.

6.64    For the avoidance of doubt, Canup pleads that if any law firm named herein is not found directly liable, it is nonetheless vicariously liable under the doctrine of respondeat superior for the conduct of its partners, agents, or employees acting within the course and scope of their duties.

6.65    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.66    Because Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be

determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## VII.

## DAMAGES

7.1     For each of his claims, Canup demands recovery of all of the following categories of damages as a direct and proximate result of the Defendants' wrongful conduct, which include:

7.2     **Actual Damages**

Canup suffered actual damages totaling **$19,807.35 + common benefit fee set aside from settlement in underlying litigation (common benefit fee is less than $20,000)**, including:

(a) $6,520.00 for representation by David Gamble at the March 13, 2024 status conference in Pensacola, Florida;

(b) $884.59 in related travel and lodging expenses;

(c) $11,925.00 for expert reports and litigation preparation rendered futile by Defendants' misconduct; and

(d) $477.76 in miscellaneous litigation costs;

(e) amount set aside from settlement to cover common benefit fee

These damages are recoverable under all applicable causes of action, including fraud and breach of fiduciary duty.

### 7.3    Inconvenience Damages

Defendants' misconduct forced Canup to learn about and understand duties that competent counsel should have performed, including analyzing complex legal issues as well as studying fiduciary duties owed by attorneys, and uncovering fraud and concealment theories that revealed how his own counsel had deceived him. These burdens disrupted Canup's daily life, imposed unnecessary strain, and deprived him of reliable representation. Canup seeks damages for loss of time, disruption, and inconvenience. The amount is left to the discretion of the trier of fact.

### 7.4    Exemplary Damages

Defendants acted with fraud, malice, and conscious disregard of Canup's rights by:

(a) appearing as counsel without consent;

(b) accessing confidential medical records without authorization;

(c) concealing material terms and conflicts of interest;

(d) withdrawing or refusing to act during critical litigation phases; and

(e) pressuring Canup toward an unfair settlement.

Canup seeks exemplary damages under *Tex. Civ. Prac. & Rem. Code ch. 41.003*, in an amount sufficient to punish and deter.

### 7.5    Disgorgement

ORIGINAL PETITION                                                                   **PAGE**        36

Canup seeks disgorgement of any common benefit fees traceable to his settlement, Florida Defendants as former members of the PSC in the MDL obtained such benefits through fraud and in breach of duty.

### 7.6    Interest and Costs

Canup seeks pre- and post-judgment interest as authorized by law, together with all taxable court costs and litigation expenses.

## VIII.

## JURY DEMAND

8.1    Canup requests a jury trial on all claims and issues so triable.

## IX.

## CONDITIONS PRECEDENT

9.1    All conditions precedent have occurred and been satisfied.

## X.

## NOTICE PURSUANT TO T.R.C.P. 193.7

10.1    Canup provides notice to Defendants pursuant to Rule 193.7 of the Texas Rules of Civil Procedure that Canup may utilize as evidence during the trial of this lawsuit all documents exchanged by the parties in discovery in this case.

## XI.

## PRAYER

11.1    ACCORDINGLY, Canup respectfully requests that Defendants be cited to appear and answer, and that Canup be granted judgment against Defendants awarding Canup all damages he is entitled to, including all damages and other relief (at law or in equity) pled in the causes of action and other parts of this instrument above, actual damages and losses, economic damages, compensatory damages, exemplary damages, costs, pre- and post-judgment interest, disgorgement of any fees or benefits wrongfully obtained by Defendants, and all other damages Canup is entitled to in equity or by other applicable law.

11.2    Canup further requests such other and further relief, general or special, at law or in equity, to which Canup may show himself justly entitled.

Dated October 27, 2025

Respectfully submitted,

*/s/ Brandon Canup*
Brandon Canup

4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314

canup.brandon@gmail.com

pro se

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107325134
Filing Code Description: Petition
Filing Description: Original Petition
Status as of 10/27/2025 4:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brandon Canup | | canup.brandon@gmail.com | 10/27/2025 1:29:54 PM | NOT SENT |