**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| BRANDON CANUP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.**: 4:25-cv-01255 |
| | ) | |
| v. | ) | |
| | ) | |
| BRYAN F. AYLSTOCK, BOBBY | ) | |
| BRADFORD, MICHAEL BURNS, | ) | |
| CLIFF ROBERTS, GREGORY | ) | |
| BROWN, AYLSTOCK WITKIN KREIS | ) | |
| & OVERHOLTZ PLC, FLEMING | ) | |
| NOLEN & JEZ LLP and MOSTYN | ) | |
| LAW FIRM PC, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREISS &
OVERHOLTZ PLLC, AND BOBBY BRADFORD'S
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF
LAW**

---

**COMES NOW**, Defendants, **BRYAN F. AYLSTOCK, AYLSTOCK,
WITKIN, KREISS & OVERHOLTZ PLLC,** AND **BOBBY BRADFORD**
("Defendants"), **appearing specially** and file their *Motion to Dismiss* pursuant to
Fed. R. Civ. P. Rule 12(b)(2);(3);(6) and in support thereof, state the following:

**INTRODUCTION**

Despite being in its infancy, this purported legal malpractice matter already has an interesting history. First, the facts that give rise to this case stem from one of the largest mass torts cases ever handled by the Federal Court system – the 3M earplug litigation – with more than 350,000 individual claimants at its peak. Second, Bryan F. Aylstock, Bobby Bradford and the lawyers at Aylstock, Witkin, Kreis and Overholtz, PLLC, never represented Plaintiff, but rather were appointed as Lead Counsel for the MDL by United States District Judge M. Casey Rodgers on or about May 22, 2019.[1] There can be no dispute that Bryan F. Aylstock, Bobby Bradford and the lawyers at Aylstock, Witkin, Kreis and Overholtz, PLLC's only interactions with Plaintiff were on behalf of MDL Leadership at the request of the MDL Court. Finally, it is clear that Plaintiff's Complaint is really nothing more than a collateral attack on the 3M Combat Arms global settlement, the MDL Court's Orders, including Case Management Order No. 57 wherein Judge Rodgers created a specific framework for those litigants, like this Plaintiff, who opted not to participate in the Settlement Program as outlined in the Master Settlement Agreement, Common Benefit Order No. 3, Pretrial Order No. 9 Stipulated Order Governing Confidentiality and Privilege and the Orders granting withdrawal of Plaintiff's actual

---

[1] See Pretrial Order No. 7, Plaintiff Leadership Appointments, In Re: 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, May 22, 2019.

former counsel, Cliff Roberts, Gregory Brown and Fleming, Nolen & Jez.[2] This Court should dismiss the case in its entirety.

## MOTION TO DISMISS

1.      Aylstock, Witkin, Kreis & Overholtz, P.L.C. is a Florida professional limited liability company and is located in Pensacola, Florida. [DOCUMENT 1-1, § 2.2].

2.      Its "Principal Address" and "Mailing Address" are 17 East Main Street, Suite 200, Pensacola, FL 32502. [See Affidavit of Bryan Aylstock attached as Exhibit "A" to this Motion].

3.      Aylstock, Witkin, Kreis & Overholtz, PLLC does not have any law offices in Texas, nor do any of its lawyers have a Texas law license. [Id.]

4.      Bryan Frederick Aylstock is a licensed Florida lawyer and a Florida resident who may be served in Pensacola, Florida. [Id.; See also DOCUMENT 1-1, § 2.5].

5.      Bryan F. Aylstock is listed as a manager whose address is 17 East Main Street, Pensacola, FL 32502. [Id].

6.      Bobby J. Bradford is a licensed Florida lawyer and a Florida resident who may be served in Pensacola, Florida. [DOCUMENT 1-1, § 2.6].

---

[2] See Case Management Order No. 57, Case Management Order for Any Ongoing Litigation Against Defendants, In Re: 3M Combat Arms Product Liability Litigation, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, August 29, 2023.

3

7. Both Bryan F. Aylstock and Bobby Bradford are Florida residents and members of Aylstock, Witkin, Kreis and Overholtz, PLLC. [Id].

8. None of these Defendants have requested or solicited to legally represent the Plaintiff. [Id].

9. None of these Defendants have represented or made an appearance for the Plaintiff in any Texas court whether it be state or federal. [Id].

10. This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which shows Defendants were never counsel for Plaintiff. Plaintiff's counsel was the "Texas Defendants" from this lawsuit until their withdrawal was granted and then David Gamble.

11. This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which all pleadings filed on Plaintiff's behalf were filed by the "Texas Defendants" from this lawsuit until their withdrawal was granted and then by David Gamble. All pleadings filed by 3M in Plaintiff's case from the 3M MDL were served on the "Texas Defendants" from this lawsuit until their withdrawal was granted and then David Gamble. None were filed by on served upon Defendants.

12. Defendants never spoke to Plaintiff other than at the March 13, 2024 Status Conference and Settlement Conference.

13. This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which shows subsequent mediations, including the mediation

4

5232141_1

wherein Plaintiff voluntarily settled his case against 3M, were attended by Plaintiff's counsel, David Gamble, and not Defendants.

14. This Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL which shows the actual docket entries for the March 13, 2024 Status Conference and Settlement Conference list Defendants as appearing on behalf of 3M Plaintiff's Leadership and David Gamble appearing as Plaintiff's counsel.

15. This Court can take judicial notice of the transcript from the March 13, 2024 Status Conference wherein the MDL Court repeatedly stated Defendants were present on behalf of the 3M MDL Plaintiff's Leadership. The MDL Court requested Defendants' presence at the Status Conference.

16. This Court can take judicial notice of the transcript from the March 13, 2024 Status Conference wherein the MDL Court made it abundantly clear that whether Plaintiff and/or his counsel, David Gamble, chose to meet with Defendants was a voluntary decision.

17. The Plaintiff even categorizes the above entities and individuals as "Florida Defendants" as opposed to the "Texas Defendants." [DOCUMENT 1-1, § 2.10].

18. This Honorable Court can take judicial notice of the cities and counties within the jurisdiction of U.S. District Court for the Northern District of Florida, and Defendants request this Court to do so.

5232141_1

19.    The Plaintiff admits that the *In re: 3M Combat Arms Earplug Products Liability Litigation*, Cause No. 3:19-md-02885 ("MDL") was litigated in "Northern District of Florida for coordinated pretrial proceedings[.]" [DOCUMENT 1-1, § 5.1].

20.    On August 29, 2023, a global settlement agreement ("MSA") was reached "between 3M and Plaintiffs' Leadership in the MDL" in Florida. [DOCUMENT 1-1, § 5.4].

21.    Aylstock was appointed by the MDL Court to serve as "Lead Counsel" for the plaintiffs in the MDL, and the MDL Court set forth his duties (which included settlement discussion) in PTO No. 7 referenced above.

22.    The Plaintiff admits that he only retained "Texas Defendants Brown, FNJ, and Roberts" and David Gamble ("Mr. Gamble"). [DOCUMENT 1-1, § 5.6]; [DOCUMENT 1-1, § 5.6]. Further, the Plaintiff admits he never hired or retained the Defendants in this case.

23.    On January 21, 2024, Canup officially opted out of the MSA which was located in Florida. [DOCUMENT 1-1, § 5.7].

24.    "On February 5, 2024 Canup was ordered by the MDL Court to appear "in person, with counsel" at a status conference in Pensacola, Florida scheduled for March 13, 2024." [DOCUMENT 1-1, § 5.9].

25.    It is undisputed that the Plaintiff brought his counsel, Mr. Gamble to this MDL Court ordered hearing because he was his retained lawyer.

5232141_1

26.    The Plaintiff's case against the Defendants relates to the MDL Court ordered status conference and settlement conference that took place on March 13, 2024, in Pensacola, Florida, communications between Bradford and Plaintiff's lawyer, David Gamble at the MDL Court's request leading into the March 13, 2024 hearings and limited communications between Bradford and Plaintiff's lawyer, David Gamble, after the March 13, 2024 hearings.

27.    The entirety of Defendants involvement was at the request of the MDL Court on behalf of Plaintiffs' 3M Leadership.

28.    Plaintiff claims the Defendants "made a formal appearance in the MDL Court on Canup's behalf at the March 13, 2024, status conference." [DOCUMENT 1-1, § 5.10].

29.    The sole basis for this claim is a hearing transcript where the official court reporter for the Northern District of Florida in the caption of the transcript described defendants (as well as Gamble) as appearing for the "FOR THE PLAINTIFF." [DOCUMENT 1-1, § 5.10]. However, throughout the official court transcript of the proceeding itself, the MDL Court itself described defendants as appearing only on behalf of leadership, and were there at the request of the MDL Court to answer any questions about the global settlement of the claims within the MDL. [3]

---

[3] The March 13, 2024 Status Conference transcript is attached as Exhibit B.

30.    Plaintiff communicated exclusively through Mr. Gamble, his lawyer, during the court ordered hearing and communications with the Defendants. *See* [DOCUMENT 1-1, § 6.29(b)] ("through Gamble"); [DOCUMENT 1-1, § 6.47] (same); [DOCUMENT 1-1, § 6.50] (same).

31.    Plaintiff claims the Defendants gave him "individual legal advice" at a court ordered closed-door settlement conference (and in the presence of his lawyer Gamble) after the hearing on March 13, 2024. [DOCUMENT 1-1, § 5.11]. It goes without saying that this alleged act, **which did not happen**, occurred in Pensacola, Florida and not Texas.

32.    Because Mr. Gamble was his lawyer, Magistrate Judge Hope Cannon "led" the two to "a closed-door settlement conference." [DOCUMENT 1-1, § 5.11]. It is undisputed that Magistrate Judge Hope Cannon was the one who "conducted" this settlement conference, not the Defendants. [DOCUMENT 1-1, § 5.11].

33.    After the two were in the conference room in the United States District Court for the Northern District of Florida in Pensacola, Florida, "Judge Cannon brought in Aylstock, Bradford[.]" on behalf of Plaintiffs' MDL Leadership [DOCUMENT 1-1, § 5.11] and Exhibit B.

34.    The plain language of the Plaintiff's *Original Petition* proves that the events or omissions giving rise to the Plaintiff's alleged claims against these Defendants occurred in Florida.

8

## INCORPORATED MEMORANDUM OF LAW

**I.  THIS HONORABLE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS.**

The Federal Rules of Civil Procedure allow a defendant to assert a lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. Rule 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* However, this Honorable Court need not "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The U.S. Supreme Court has held that personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "Personal jurisdiction comes in two flavors: general and specific." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021).

**1.  THE PLAINTIFF HAS FAILED TO PROVE GENERAL PERSONAL JURISDICTION.**

"A state court may exercise general jurisdiction only when a defendant is "essentially at home" in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant." *Id.* "Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." *Id.* However, general personal jurisdiction is only permitted when "a defendant has 'continuous and systematic general business contacts' with the forum state" *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). These contacts must be "substantial." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). "A nonresident defendant's contacts must 'demonstrate a business presence in Texas,' and the Fifth Circuit has emphasized the distinction between 'doing business *with* Texas ... [and] doing business in Texas.' " *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 616 (N.D. Tex. 2014) (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)) (emphasis in the original)

In other words, "[a] corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business." *Harris v. Black Clawson Co.*, 961 F.2d 547, 549 (5th Cir. 1992). "This circuit applies the 'total activity' test

10

5232141_1

to determine a corporation's principal place of business for diversity purposes." *Id.* "This test includes both of the traditional tests for determining principal place of business: the 'nerve center' test and the 'place of activities' test." *Id.* Under the "total activity" test, the court considers

> the general rules of the two tests in light of the particular circumstances of a corporation's organization [and] balance[s] the facts [of the particular case before it] to determine ... the location of the corporation's principal place of business.

*Id.*

> [U]nder the "nerve center" test, the state in which the corporation has its nerve center, or "brain," is its principal place of business, and under the "place of activity" test, the state in which the corporation carries out its operations is its principal place of business.

*J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 404 (5th Cir. 1987).

This determination is important because "every corporation has one and only one principal place of business." J.*A. Olson Co.*, 818 F.2d at 406. It is undisputed that Aylstock, Witkin, Kreis & Overholtz, PLLC is registered with the Florida Division of Corporations. Its "Principal Address" and "Mailing Address" are 17 East Main Street, Suite 200, Pensacola, FL 32502. Aylstock, Witkin, Kreis & Overholtz, PLLC does not have any law offices in Texas, nor do any of its lawyers have a

11

licensed Texas attorney.[4] Further, Bryan F. Aylstock is listed as a manager whose address is 17 East Main Street, Pensacola, FL 32502. Both Bryan F. Aylstock and Bobby Bradford are Florida residents. Clearly, all Defendants are Florida residents or are at home in Florida; thus, dismissal is proper. The Plaintiff has failed to prove, let alone plead necessary facts to satisfy this "high bar." *Johnson*, 21 F.4th at 323.

### 2. THE PLAINTIFF HAS FAILED TO SATISFY SPECIFIC PERSONAL JURISDICTION.

"A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.' " *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101, 109 (5th Cir. 2018).

The Fifth Circuit has "consolidated the personal jurisdiction inquiry into a convenient three-step analysis: '(1) whether the defendant ... purposely directed its

---

[4] *See Anness v. Gen. Elec. Co.*, 2014 WL 12580494, at *3 n.2 (N.D. Tex. June 5, 2014) (quoting *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 617 (N.D. Tex. 2014)) (noting facts that typically support general jurisdiction include "maintaining offices or property in Texas, stationing employees in Texas, maintaining bank accounts in Texas, or paying Texas taxes.").

activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.' " *Luv N' care, Ltd.*, 438 F.3d at 469. In other words, "specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). This principle means "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). As a result, any acts or contacts allegedly committed by the Defendants not related to the Plaintiff's claims against the Defendants must be ignored.

### 3. Dismissal is Proper Because General and Specific Personal Jurisdiction is Lacking.

Equipped only with conclusory allegations, the Plaintiff makes the claim that Defendants somehow are subject to personal jurisdiction in Texas, yet his own *Original Petition* proves otherwise. In simple terms, the Plaintiff states personal jurisdiction exists because of the following reasons. **First**, Plaintiff states that the Defendants "have purposefully directed activities toward Texas" [DOCUMENT 1-1, § 3.2] but without any explanation as to what activities those were.  Without some

13

particular legal activity that Defendants allegedly performed in Texas, Plaintiff's claim that Defendants are subject to personal jurisdiction must fail.

**Second**, Plaintiff states that Defendants "provid[ed] legal services to a Texas resident" and "appear[ed] and purport[ed] to act on behalf of a Texas resident in litigation proceedings connected to Texas[.]"[DOCUMENT 1-1, § 3.2]. This statement directly conflicts with the Plaintiff's own *Original Petition*. Within his *Original Petition*, the Plaintiff alleges that the Defendants made an appearance in Pensacola, Florida on **March 13, 2024**, not in Texas [DOCUMENT 1-1, § 6.28]. Plaintiff's status as a Texas resident is not determinative of jurisdiction over these Defendants. See generally, *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

**Third**, Plaintiff states that Defendants "performed common benefit work in the underlying litigation entitling them to collect fees from thousands of Texas Residents[.]" [DOCUMENT 1-1, § 3.2].   At no point does Plaintiff allege that this common benefit work was performed in Texas, that he was charged for any common benefit work, nor that Defendants received any compensation as part of Plaintiff's case.  Nothing about performing this common benefit work could or should subject them to Texas jurisdiction as the Defendants were obligated to do so based upon their appointment as Lead Plaintiffs' Counsel in the 3M MDL.

**Fourth**, Plaintiff makes the blanket assertion that the Defendants "have purposefully availed themselves of the privileges and benefits of conducting

14

business in Texas[.]" [DOCUMENT 1-1, § 3.2]. However, Defendant does not have a single office in Texas, a single lawyer licensed in Texas, and did not litigate the MDL lawsuit in Texas, so Defendants have not received "the privileges and benefits of conducting business in Texas[.]" [DOCUMENT 1-1, § 3.2].

Notably, Fifth Circuit case law and precedent disagree with the Plaintiff's conclusory statement. The Plaintiff equates attempting to increase a class size for a lawsuit through national advertising with purposely availing itself to personal jurisdiction in each of the fifty states of the United States. "[A]dvertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction." *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987).

> Nor is Plaintiffs' allegation that Defendants Original and MTV broadcast or displayed Plaintiffs' designs sufficient to prove purposeful availment in Texas. In a similar case, the Fifth Circuit declined to exercise personal jurisdiction over a non-resident defendant on the basis of a nationwide television broadcast. The court reached its decision after concluding that even though the defendant had broadcast a television segment nationally, Texas had not been its "focal point."

*Miller v. Original Media Publ'g LLC*, 2013 WL 12109027, at *3 (W.D. Tex. Sept. 13, 2013) (citation omitted).

15

"Advertising and marketing through national media is insufficient, as are isolated visits to a forum." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).[5]

Plaintiff has not provided a scintilla of evidence that these Defendants are subject to the jurisdiction of the Texas courts.  The legal services provided by these Defendants were as Lead Plaintiffs' Counsel for the 3M MDL litigaiton, were provided by Florida lawyers and the only interaction that these Defendants ever had with Plaintiff were after the MDL Court asked Defendants to appear on behalf of Plaintiffs' Leadership at the March 13, 2024 conferences. As a result, dismissal is proper.

## II.    TEXAS IS THE IMPROPER VENUE FOR PLAINTIFF'S CLAIMS.

Under Rule 12(b)(3), a party may move to dismiss or transfer a claim for improper venue. Fed. R. Civ. P. Rule 12(b)(3). "If venue is improper, the Court has broad discretion to dismiss the case or, in the interest of justice, transfer the case to any district where venue is proper." *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 606 (N.D. Tex. 2017). "This Court, in particular, has consistently held that the plaintiff bears the burden of sustaining venue in the district in which the suit was brought." *Id.* "Moreover, under both Rule 12(b)(1) and Rule

---

[5] *See, e.g., Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345 (5th Cir. 2002) ("[A]dvertisements are insufficient to establish personal jurisdiction."); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ("An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law.").

16

12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). "[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). The Plaintiff has failed to meet this burden for the reasons stated in this motion and the case should be dismissed as to these Defendants.

## III.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Plaintiff has raised four claims against the Defendants which are (1) "Fraud by Non-Disclosure," (2) "Breach of Fiduciary Duty," (3) "Fraudulent Inducement," and (4) "Civil Conspiracy." [DOCUMENT 1-1, §§6.27-6.55; 6.56-6.66]. Notably, the Plaintiff's "Civil Conspiracy" is not a standalone tort; thus, it is dependent on the success of the other claims. "In Texas, 'civil conspiracy is a theory of vicarious liability and not an independent tort.'" *Curtis v. Cerner Corp.*, 621 B.R. 141, 181 (S.D. Tex. 2020) (quoting *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019)). As a result, we will address each claim with this information in mind.

17

### 1. THE PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR BREACH OF FIDUCIARY DUTY.

The Plaintiff states that this alleged breach was "fraudulent and/or malicious;" thus, the heightened pleading standard of Federal Rule of Civil Procedure Rule 9 applies. [DOCUMENT 1-1, § 6.45]. "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 215 (5th Cir. 2018). The Plaintiff cannot even prove the first element of this alleged claim. "A fiduciary relationship, of course, is a *sine qua non* of a breach of fiduciary duty claim." *Belliveau v. Barco, Inc.*, 987 F.3d 122, 132 (5th Cir. 2021). "Whether a fiduciary duty exists is a question of law." *Kiger v. Balestri*, 376 S.W.3d 287, 290 (Tex. App. 2012). "However, an attorney-client relationship must exist before a fiduciary duty arises." *Id.* "The existence of an attorney-client relationship is determined under state law." *Harrison v. United States*, 2019 WL 3719038, at *5 (N.D. Tex. June 28, 2019), *aff'd*, 2022 WL 873829 (5th Cir. Mar. 24, 2022) (quoting *Hopper v. Frank*, 16 F.3d 92, 95 (5th Cir. 1994)).

As outlined within, the Defendants were lead counsel for all Plaintiffs of the MDL, whereas Mr. Gamble represented the Plaintiff specifically. Despite admitting he withdrew from the [global settlement agreement ("MSA")] on **January 21, 2024,**

18

the Plaintiff claims the Defendants were his lawyer at the court ordered status conference on **March 13, 2024,** when he was told to bring the counsel of his choice. [DOCUMENT 1-1, § 5.7]. If he genuinely believed the Defendants to be his lawyers, the Plaintiff would not have communicated through Mr. Gamble, his lawyer. *See* [DOCUMENT 1-1, § 6.29(b)] ("through Gamble"); [DOCUMENT 1-1, § 6.47] (same); [DOCUMENT 1-1, § 6.50] (same). The objective facts prove that the Defendant did not have or breach a fiduciary duty to the Plaintiff.

The Fifth Circuit has held that a federal court must "examine the parties' statements and action under an objective standard rather than their subjective beliefs." *Harrison v. United States*, 2019 WL 3719038, at *6 (N.D. Tex. June 28, 2019), *aff'd*, 2022 WL 873829 (5th Cir. Mar. 24, 2022) (quoting *Tierra Tech de Mexico SA de CV v. Purvis Equip. Corp.*, 2016 WL 4062070, at *2 (N.D. Tex. July 29, 2016)). "Evidence that a client harbored a mistaken, subjective belief of a formed relationship is insufficient, standing alone, to establish that the attorney had a duty to represent the client: there 'must be some manifestation that both parties intended to create' the relationship." *King v. Lubbock ISD*, 2024 WL 3527965, at *7 (N.D. Tex. July 8, 2024) (quoting *Border Demolition & Env't, Inc. v. Pineda*, 535 S.W.3d 140, 152 (Tex. App. 2017). Viewing the facts objectively, it is clear that these Defendants were not Plaintiff's counsel and had no fiduciary relationship to Plaintiff. As a result, dismissal is proper.

19

### 2. THE PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR FRAUDULENT INDUCEMENT.

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997). The elements of fraudulent inducement are as follows:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) *the party acted in reliance on ... the representation*; and (6) the party suffered injury.

*Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 651 (5th Cir. 2018) (emphasis in the original).

The crux of the Plaintiff's argument is that he never received "full access to the MDL's common benefit work, including the master complaint and other litigation materials." [DOCUMENT 1-1, § 6.47]. Plaintiff merely pleads that the Defendants failed to provide this information and somehow that means the Defendants have committed a fraud. This proposition is not legally permissible. "Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Partners & Friends Holding Corp. v. Cottonwood Mins. L.L.C.*, 653 F. Supp. 3d 344, 350 (N.D. Tex. 2023), *aff'd*, 2023

20

5232141_1

WL 8649880 (5th Cir. Dec. 14, 2023) (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)). "Plaintiff's allegation that Defendant broke the alleged promise, alone, cannot support the inference that Defendant made the promise with no intent to keep it." *Balch v. JP Morgan Chase Bank, NA*, 2015 WL 1592386, at *4 (N.D. Tex. Apr. 8, 2015). This principle should be applied to a motion to dismiss. *See Wesdem, L.L.C. v. Illinois Tool Works, Inc.*, 70 F.4th 285 (5th Cir. 2023) (citing *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010)) (applying the guidance of *Spoljaric* at the 12(b)(6) stage). These Defendants were obligated under Court order to provide the common benefit information to those who either stayed in the settlement group or to counsel who appeared for those opting out of the settlement group after those lawyers consented to the Stipulated Order Governing Confidentiality and Privilege. [Pretrial Order No. 9 from the 3M MDL litigation, Doc. 442 in Case 3:19-md-2885]. Plaintiff's allegations are silent as to his effort or lack thereof to obtain the common benefit work.  Additionally, Plaintiff admittedly voluntarily settled his case with 3M eliminating any injury causation.  For the reasons above, dismissal is proper.

### 3.  THE PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR FRAUD BY NON-DISCLOSURE.

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

"[F]or there to be actionable nondisclosure fraud, there **must** be a duty to disclose," which arises "when there is a fiduciary relationship." *Belliveau v. Barco, Inc.*, 987 F.3d 122, 132 (5th Cir. 2021) (emphasis added). "Whether such a duty to disclose exists in this case is 'entirely a question of law.'" *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 481 (5th Cir. 2000). "In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019). "Texas law recognizes a duty to disclose only where a fiduciary or confidential relationship exists." *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997).

> A fiduciary duty arises "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships." A confidential relationship is one in which the "parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest."

*Id.* (citations omitted).

"Texas law does not recognize a fiduciary relationship lightly, especially in the commercial context." *Belliveau v. Barco, Inc.*, 987 F.3d 122, 133 (5th Cir. 2021) (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017)). "Due to its extraordinary nature, the law does not recognize a fiduciary relationship lightly." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. 2008). It is well settled that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959

22

S.W.2d 171, 176-77 (Tex. 1997). In this case, no relationship exists, let alone a fiduciary one.

To support his claim that the Defendants acted as his lawyer on **March 13, 2024**, the Plaintiff points to a hearing transcript that states the Defendants were "For the Plaintiff." [DOCUMENT 1-1, § 5.11]. The Plaintiff claims that this "created **at least** an implied and **arguably** an express attorney client relationship with Canup." [DOCUMENT 1-1, § 6.39]. Dismissal is proper on this Count.

Plaintiff admits he hired and brought Mr. Gamble to Pensacola, Florida, to represent him at the **March 13, 2024,** hearing. Plaintiff's argument is not only contradictory but also illogical. He states he "officially opted out of the [global settlement agreement ("MSA")]" on **January 21, 2024**. [DOCUMENT 1-1, § 5.7]. The Plaintiff admits he even hired Mr. Gamble, so he could litigate his claim outside of the MSA. [DOCUMENT 1-1, § 5.6]. To permit him to do so, the MDL Court ordered that he appear in person in Pensacola, Florida, "with counsel[.]" [DOCUMENT 1-1, § 5.9]. As Mr. Gamble is/was his lawyer, the Plaintiff brought Mr. Gamble, his retained lawyer.

Despite being fully aware of this legal representation by Mr. Gamble, the Plaintiff now claims the Defendants were his lawyers, even though Mr. Gamble was present during the hearing and settlement conference. Because Mr. Gamble was his lawyer, Magistrate Judge Hope Cannon "led" the two (Plaintiff and Gamble) to "a

23

5232141_1

closed-door settlement conference." [DOCUMENT 1-1, § 5.11]. It is undisputed that Magistrate Judge Hope Cannon was the one who "conducted" this settlement conference, not the Defendants. [DOCUMENT 1-1, § 5.11]. After the two were in the conference room in Pensacola, Florida, "Judge Cannon brought in Aylstock, Bradford[.]" [DOCUMENT 1-1, § 5.11].

Additionally, this Court can take judicial notice of the docket from Plaintiff's case in the 3M MDL and the transcript of the March 13, 2024 Status Conference in considering Defendants' Motion to Dismiss. The docket from Plaintiff's case and the transcript from the March 13, 2024 Status conference requires dismissal of this Count. The docket shows the following: 1) all pleadings filed on Plaintiff's behalf were filed by the "Texas Defendants" from this lawsuit until their withdrawal was granted and then by David Gamble. All pleadings filed by 3M in Plaintiff's case from the 3M MDL were served on the "Texas Defendants" from this lawsuit until their withdrawal was granted and then David Gamble. None were filed by on served upon Defendants; 2) Mediations after the March 13, 2024 settlement conference, including the mediation wherein Plaintiff voluntarily settled his case against 3M, were attended by Plaintiff's counsel, David Gamble, and not Defendants and 3) the actual docket entries for the March 13, 2024 Status Conference and Settlement Conference list Defendants as appearing on behalf of 3M Plaintiff's Leadership and David Gamble appearing as Plaintiff's counsel. The transcript of the March 13, 2024

5232141_1

Status Conference shows: 1) The MDL Court repeatedly stated Defendants were present on behalf of the 3M MDL Plaintiff's Leadership and that the MDL Court requested Defendants' presence at the Status Conference and 2) the MDL Court made it abundantly clear that whether Plaintiff and/or his counsel, David Gamble, chose to meet with Defendants was a voluntary decision.[6]

In addition to proving a duty to disclose, the Plaintiff must also prove the elements for this claim. To establish fraud by non-disclosure under Texas law, a plaintiff must prove:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury.

*CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 353 (5th Cir. 2021). Plaintiff has failed to establish each of the above elements; thus, dismissal is proper.

---

[6] The status conference began with the Court welcoming Mr. Canup and his attorney Mr. Gamble, introducing herself, and then telling Mr. Canup: "Also in the courtroom today from plaintiffs' leadership there's Mr. Bryan Aylstock, Mr. Brad Bradford and Mr. Mike Burns." Exhibit B, Status Conference Transcript at 3:8-9. The MDL Court continued by explaining why she thought it was important to meet with those plaintiffs litigating their cases (like Mr. Canup) so that she could give her perspective of the litigation having overseen it for 5 years, stating: "Also, as you can see, leadership counsel from the plaintiffs' side is here if you have questions of them." *Id.* at 4:23-25. The MDL Court continued by explaining why she thought it was important to meet with those plaintiffs litigating their cases (like Mr. Canup) so that she could give her perspective of the litigation having overseen it for 5 years, stating: "Also, as you can see, leadership counsel from the plaintiffs' side is here if you have questions of them." *Id.* at 28:25-29:1. The MDL Court further said: " … If you would like an opportunity, you or Mr. Gamble, to talk with leadership counsel about some of what I've said about the settlement program, some of the more nuanced aspects of the settlement program, that's going to be available to you as an opportunity, if you'd like …". *Id.* at 33:19-23.

Additionally, the Defendants cannot have breached any fiduciary duty or confidentiality by discussing the Plaintiff's medical records in a court-ordered settlement conference. [DOCUMENT 1-1, § 5.11]. As a result, the Plaintiff's *Original Petition* is devoid of any facts supporting his claim; thus, dismissal is proper.

### 4. CIVIL CONSPIRACY.

Defendants adopt the argument from the Texas Defendants' Motion to Dismiss. [See Doc. 10, Page 10, FNJ Defendants' Motion to Dismiss filed on December 1, 2025.]

## IV.  THE PLAINTIFF'S CLAIMS ARE BARRED BY THE ATTORNEY IMMUNITY DEFENSE.

"[A]ttorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.' " *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). "This principle is also described as the 'attorney immunity doctrine.'" *Jurek v. Kivell*, 2011 WL 1587375, at *4 n.3 (Tex. App. Apr. 21, 2011).  "[A]n attorney owes no professional duty to a third party or non-client." *Banc One Cap. Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). This principle is "staunchly" protected. *Rainey v. Manufacturers & Traders Tr. Co.*, 2024 WL 3378406, at *2 (S.D. Tex. July 10, 2024). "Therefore, an attorney is not ordinarily liable to a third party for damages resulting from performance of professional services." *F.D.I.C. v. Howse*, 802 F. Supp. 1554, 1564 (S.D. Tex. 1992). "This is true even under circumstances where the attorney renders an opinion to his

5232141_1

client on which he knows a third party will rely." *Marshall v. Quinn-L Equities, Inc.*,

704 F. Supp. 1384, 1395 (N.D. Tex. 1988).

> Attorney immunity applies to all "actions taken in connection with representing a client in litigation," even wrongful conduct that is "part of the discharge of the lawyer's duties in representing his or her client," as long as it is not "entirely foreign to the duties of an attorney." For this analysis, the Supreme Court of Texas has repeatedly instructed courts to simply look to the general kind of conduct at issue and whether attorneys engage in that kind of conduct when discharging duties to a client.

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 767 (5th Cir. 2019).[7]

"Incorrect, meritless, and even frivolous conduct is not actionable if it satisfies

this standard." *John Kleas Co. Inc. v. Prokop*, 2015 WL 1544797, at *6 (Tex. App.

Apr. 2, 2015).

> An attorney's duties that arise from the attorney-client relationship are owed only to the client, not to third persons, such as adverse parties. They have not retained the attorney and the attorney has not rendered them any services. No privity of contract exists between them and the attorney. They have no right of action against the attorney for any injuries they suffer because of the attorney's fault in performing duties owed only to the client.

*Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App. 1997).

---

[7] *See also Green v. JPMorgan Chase Bank, N.A.*, 2012 WL 12823700, at *9 (N.D. Tex. Aug. 30, 2012) ("This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit.").

The Plaintiff attempts to make this court ordered hearing and settlement the focus of his claim; yet, federal law does not agree with the Plaintiff. "Whether an attorney's conduct was in the scope of his representation of a client is a legal question." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 767 (5th Cir. 2019). "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Highland Cap. Mgmt., LP v. Looper Reed & McGraw, P.C.*, 2016 WL 164528, at *4 (Tex. App. Jan. 14, 2016). "In *Banc One*, we held as a matter of law that neither an expressed nor implied attorney-client relationship existed based on a single letter addressed to plaintiffs and purporting to give an opinion solely for their benefit." *First Nat. Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 807 (5th Cir. 1998) (citing *Kneipper*, 67 F.3d at 1198)). In other words, "[s]olicitation of information alone is not sufficient to establish an implied attorney-client relationship." *Swinford v. Coil Tubing Tech., Inc.*, 2022 WL 2327959, at *2 (S.D. Tex. June 16, 2022). "A contrary policy 'would dilute the vigor with which Texas attorneys represent their clients' and "would not be in the best interests of justice.'" *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App. 1997). The undisputed facts prove the Defendants were present at this court ordered hearing and settlement to represent the interest 3M Plaintiffs' Leadership. For the reason above, the Plaintiff

28

5232141_1

should not be permitted to recover "under any theory of recovery." *Reagan Nat. Advert. of Austin, Inc. v. Hazen*, 2008 WL 2938823, at *2 (Tex. App. July 29, 2008).

## V.    MANY OF THE PLAINTIFF'S CLAIMED DAMAGES ARE NOT RECOVERABLE AND SHOULD BE DISMISSED.

In Subsection VII and XI, entitled "Damages" and "Prayer" respectively, requests a hodge-podge of damages, many of which are not recoverable, are nonsensical, or are otherwise improperly pleaded. [DOCUMENT 1-1, § 7.1-7.6]; [DOCUMENT 1-1, § 11.1-11.2].

### 1.    "DAMAGES" AND "PRAYER" DAMAGES.

#### a.    "Damages"

##### i.    "Actual Damages"

"[C]ompensatory damages and actual damages mean the same thing." *F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012). Under the guise of labeling them as "Actual Damages," the Plaintiff seeks attorney fees and litigation costs as well as expenses which are not permitted. [DOCUMENT 1-1, § 7.2(a)-(d)]. "Under Texas law, [attorney's fees or other legal costs] are not damages." *Satterfield & Pontikes Constr., Inc. v. United States Fire Ins. Co.*, 898 F.3d 574, 576 n.2 (5th Cir. 2018). In other words, "attorney's fees and litigation expenses may not be recovered unless provided for by statute or by contract between the parties." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 807 (5th Cir. 2010). Because the Plaintiff fails to cite a contractual provision or statute awarding such damages, dismissal is proper.

29

### ii. "Inconvenience Damages"

While labeled "Inconvenience Damages," the Plaintiff is essentially seeking money to conduct legal research and prepare his legal arguments, which are not recoverable. [DOCUMENT 1-1, § 7.3]. "[A] pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Further, the Plaintiff's alleged "loss of time, disruption, and inconvenience" is not recoverable. "Under Texas law, fees and expenses incurred while prosecuting or defending a suit are not recoverable unless recovery is authorized by statute or contract." *Altholz v. Citimortgage, Inc.*, 2012 WL 12886979, at *11 (N.D. Tex. Dec. 13, 2012). "[I]t is settled that time lost is an expense of litigation for which recovery is not allowed." *Beasley v. Peters*, 870 S.W.2d 191, 196 (Tex. App. 1994). The Plaintiff has failed to cite to any contract, statute, or case law that he is entitled to this alleged damage; thus, dismissal is proper.

### iii. "Exemplary Damages"

Evidence justifying exemplary damages has not been proven or shown. [DOCUMENT 1-1, § 6.37]. "Texas law provides that an award for exemplary damages is justified only upon proving fraud, malice, or gross negligence by **clear and convincing evidence**." *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 683 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. West*, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) (citing Tex. Civ. Prac. & Rem. Code

Ann. § 41.003)) (emphasis added). The Plaintiff has not pleaded this standard; thus, dismissal is proper.

### iv. "Disgorgement"

The Plaintiff cannot have his cake and eat it too. He desires the documents discussed above and still wants the fees returned, while still stating fraud has occurred. This demand is not legally permitted; thus, dismissal is proper.

### v. "Interest and Costs"

As discussed above, the Plaintiff is not entitled to "litigation expenses;" thus, they should be dismissed.

### b. "Prayer"

### i. "Special" Damages.

The Plaintiff is seeking "special" damages; yet, fails to properly plead them. [DOCUMENT 1-1, § 11.2]. "If an item of special damage is claimed, it **must** be **specifically** stated." Fed. R. Civ. P. Rule 9(g) (emphasis added). As a result, dismissal is proper.

### REQUEST FOR RELIEF

For all the reasons above, dismissal of the Complaint is proper as the Plaintiff has failed to state a cause of action for which relief may be granted.

5232141_1

**Dated**:  January 12, 2026.

Respectfully Submitted,

*/s/ Gregory K. Rettig*
Gregory K. Rettig (172774)
Justin T. Keeton (1025509)
*Co-Counsel for Defendants Bryan F.*
*Aylstock, Bobby Bradford and Aylstock,*
*Witkin, Kreiss & Overholtz PLLC*


**FOR THE FIRM:**
**LLOYD, GRAY, WHITEHEAD & MONROE, P.C.**
125 W. Romana Street, Suite 330
Pensacola, Florida 32502
Telephone: (850) 777-3322
Facsimile: (850) 777-3290
Grettig@lgwmlaw.com
Jkeeton@lgwmlaw.com
Bgomez@lgwmlaw.com
Rsizemore@lgwmlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about January 12, 2026, a true and correct

copy of the foregoing was sent to counsel for all parties via email, US Mail and the

CM/ECF service.

Brandon Canup
4812 Hidden Oaks Ln
Arlington, TX 76017
*Pro Se Plaintiff*

*/s/ Gregory K. Rettig*
*Co-Counsel for Defendants Bryan F. Aylstock, and*
*Aylstock, Witkin, Kreiss & Overholtz PLLC*

32

5232141_1