UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDON CANUP,

      Plaintiff,

v.                                                    CASE NO. 3:26cv3359-MCR-ZCB

BRYAN F AYLSTOCK, et al.,

      Defendants.

_____/

## ORDER

Plaintiff Brandon Canup has filed a Motion for Recusal and Disqualification pursuant to 28 U.S.C. § 455(a), (b)(1), ECF No. 37, which Defendants oppose, ECF Nos. 51, 52. Having fully reviewed the arguments, I find no grounds to justify recusal.

By way of background, Canup filed a products liability action against the 3M Company that was part of a multidistrict litigation ("MDL") proceeding consolidated in this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to 28 U.S.C. § 1407. *See In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.). This was by far the largest MDL in the federal judiciary's history. Weighing in at 400,000 plaintiffs represented by some 500 different law firms, this behemoth comprised one-third of the judiciary's entire civil docket for more than two years.

At the outset of the litigation, I appointed leadership counsel for the universe of plaintiffs, to shepherd all cases through the coordinated MDL proceedings. Leadership counsel expended enormous resources and extraordinary efforts on behalf of all plaintiffs, including conducting extremely complex discovery involving not only the defendants but also the Department of Defense, the Department of Justice, and the Veterans Administration; retaining and deposing dozens of experts on topics ranging from the science of hearing and sound to the design and testing of hearing devices to military rules and regulations to military weaponry and ballistics, and beyond; engaging in complex motion practice; successfully fighting a bankruptcy along the way; and trying 16 bellwether cases in a period of 14 months. These efforts were conducted on behalf of all plaintiffs and all plaintiffs benefited when leadership successfully negotiated a $6 billion global settlement. Shortly after the settlement was reached, I held a hearing to outline the settlement terms and thank everyone involved for their outstanding service in the litigation—plaintiffs' leadership counsel, defense counsel, my staff, clerk's office staff, and others. *In re 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885-MCR-HTC, Master Docket, ECF No. 3862 (Transcript) (N.D. Fla. Sept. 8, 2023).

Defendant Gregory Brown of Fleming Nolen & Jez LLP ("FNJ") represented Canup in his member case until the global settlement was reached and Canup elected

CASE NO: 3:26cv3359-MCR-ZCB

not to participate in the settlement benefits program, at which time Brown withdrew. After opting out of the global settlement, Canup retained new counsel, David Gamble. I required every opt-out plaintiff to attend an in-person hearing before continuing to litigate their individual case, at which I discussed the settlement program and its benefits as well as the risks of going forward individually, provided a final opportunity for the plaintiff to participate in the settlement program, and verified that the plaintiff was fully informed before proceeding further. Canup was no exception. He and Gamble attended such a hearing on March 13, 2024. Also in attendance were counsel for 3M and three court-appointed MDL plaintiffs' leadership attorneys, namely Defendants Bryan Aylstock and Bobby Bradford of Aylstock Witkin Kreis & Overholtz PLLC (the "Aylstock Defendants") and Michael Burns of Mostyn Law.

At Canup's hearing, as was my practice, I discussed the settlement program, all the benefits that had been conferred on all plaintiffs by leadership, as well as the risks of litigating an individual claim on remand. Leadership counsel were present to offer details about the settlement program and answer questions. I made certain that Canup was fully informed, and I made clear that whether he chose to participate or opt out of the settlement was his decision. Canup was then given one final opportunity to participate in the global settlement, which he declined, as was his

CASE NO: 3:26cv3359-MCR-ZCB

right to do.  Still, with the assistance of his new attorney, Gamble, he then satisfied the MDL requirements to proceed with his individual opt-out case.  He later attended court-assisted mediation with his counsel, through which he negotiated his own settlement with 3M outside of the settlement program.

Canup then filed the instant *pro se* suit in Texas state court against his original MDL attorneys and the MDL leadership counsel who attended the March 13, 2024 hearing, alleging claims of professional negligence, fraud, breach of fiduciary duty, and civil conspiracy arising out of their conduct in the MDL.  Brown removed the case to federal court, and the Aylstock Defendants filed a motion with the JPML, requesting that the case be transferred to this Court as a tag-along case in the MDL.[1] After an opportunity for briefing, the JPML granted the request and transferred the case to this Court on April 2, 2026.  The JPML concluded that Canup's case involves common questions of fact with the MDL, that this Court (the transferee court) retained jurisdiction over miscellaneous issues necessary to complete the administration of the MDL cases, and that Canup's claims against his counsel arise

---

[1] After the global settlement was reached, the undersigned retained jurisdiction over the settlement administration, enforcement of orders, and all miscellaneous issues related to the MDL.  The JPML has since reopened the MDL on the transfer of additional actions.

CASE NO: 3:26cv3359-MCR-ZCB

out of the settlement program and related orders regarding case management, common benefit, and the appointment of leadership counsel in the MDL.

Canup seeks my disqualification under 28 U.S.C. § 455(a) and (b)(1). Under § 455(a), a judge must recuse herself from any proceeding in which her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Determining whether there is an appearance of impropriety involves consideration of "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotations omitted) (noting also that any doubts should be resolved in favor of recusal). Recusal is mandatory under subsection (b) if the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Canup argues that bias, an appearance of impropriety, and extra-judicial communications/knowledge require my disqualification. I disagree. He points first to the fact that leadership counsel were present at a hearing held on March 13, 2024, and suggests impropriety because the request for leadership to attend does not appear

CASE NO: 3:26cv3359-MCR-ZCB

on the public docket in advance of the hearing.[2]  Canup also suggests that the reason leadership was present and whether the undersigned requested their presence is a disputed fact in this litigation.  Neither assertion is correct.  The record clearly reflects that all 160 opt-out plaintiffs were required to attend a hearing, and that at each hearing held, I requested leadership counsel to be present, along with 3M's counsel, for the individual plaintiff's (in this case Canup's) benefit—so that the individual plaintiff could hear the pros and cons of settling or continuing to litigate and ask any questions before making a final decision on whether to participate in the settlement program.  This purpose was outlined in the order setting each hearing, including Canup's.[3]  And, as shown in the hearing transcript from Canup's March 13, 2024 hearing, I explained on the record that I felt it would be important to afford him one final opportunity to participate in the settlement, to ask me any questions, and also to have leadership counsel from both sides present to answer questions.

---

[2] Canup's argument is grounded in statements within the affidavit of Defendant Bryan Aylstock, submitted with a now-moot motion to dismiss, stating that Aylstock and Bradford attended a hearing on March 13, 2024, on behalf of leadership, as "requested by Judge Rodgers," and that Bradford communicated with Canup's counsel, Gamble, in advance of the hearing on behalf of leadership and "at the MDL Court's request."  ECF No. 27–1 (Aylstock Affidavit).

[3] While the order setting the March 13, 2024 hearing did not expressly state that leadership counsel must be present, it did require Canup and his attorney to appear and be prepared to discuss not only his continued obligations for litigating a claim but also the benefits of participating in the settlement program.  Member Case No. 8:20cv14021-MCR-HTC, ECF No. 6 (Order, Feb. 5, 2024).

CASE NO: 3:26-cv-3359-MCR-ZCB

Member Case No. 8:20cv14021-MCR-HTC, ECF No. 59 at 4.  At the hearing, plaintiffs' leadership counsel and 3M's counsel were invited to make remarks about the challenges of the MDL, the benefits of the settlement, and the litigation obligations and obstacles going forward.  Nothing about this is in dispute or suggests any personal bias, extra-judicial knowledge, or a basis on which a fully informed observer would question my impartiality in the instant case.  *See* 28 U.S.C. § 455(a), (b)(1).  While judges should err on the side of recusal if potential conflicts exist, recusal is not warranted for "imaginary reasons."  *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001).

Canup also argues that I made prior statements to all plaintiffs, including him, about the adequacy of representation provided by leadership counsel that a neutral observer would see as reflecting a prejudgment of issues in dispute in this case. Again, I disagree.  The record reflects that after the global settlement was reached, I made general comments on the record commending the professionalism and efforts of the MDL leadership on both sides and thanking them for their hard work that ultimately resolved the MDL in a global settlement.  I also assured all plaintiffs that they had been well represented by leadership counsel, who had vigorously pursued

CASE NO: 3:26cv3359-MCR-ZCB

a fair resolution for plaintiffs as a whole.[4]  Contrary to Canup's suggestion, these were general comments about how leadership on both sides of the aisle conducted the MDL and the settlement negotiations and could not be viewed as favoritism or as a comment on the performance of every retained attorney.

As the Supreme Court has stated, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (discussing § 455(a) and (b)(1)).  My prior comments do not display the type of deep-seated favoritism that "would make fair judgment impossible," *id*., or that could raise a "significant doubt" about my impartiality, *Patti*, 337 F.3d at 1321.  And I have no bias or personal knowledge of any disputed facts in this case—the only facts within my knowledge are those learned through the course of the MDL, which is not a basis for bias or recusal.

---

[4] I stated that "in my view, the leadership teams on both sides really do exemplify the very best of the legal profession" and that the 250,000 plaintiffs were "represented very well." *In re 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885-MCR-HTC, ECF No. 3862 at 13 (Hearing Tr. Sept. 8, 2023).  Over fifty attorneys participated in plaintiff leadership roles. Again, at its height, the MDL involved 500 law firms with over 400,000 plaintiffs.

Canup's final argument is that because I recused myself in another "materially similar" case, this bolsters his argument for recusal here. But the case Canup references, *Kelly v. Aylstock*, Case No. 3:25cv1947-TKW-ZCB (N.D. Fla.), is not "materially similar." Kelly's suit alleges professional negligence by Bryan Aylstock in his capacity as Kelly's retained attorney in the MDL. This is a material difference from the instant case. Not one of the leadership attorneys Canup sues in this suit was retained to represent him in the MDL. Moreover, in *Kelly*, when Aylstock (his retained attorney) moved to withdraw, Kelly objected, and I held an *ex parte* hearing. *See Kelly v. 3M,* Member Case No. 7:20-cv-36595-MCR-GRJ, ECF No. 15 (N.D. Fla. Mar. 13, 2024). In the subsequent order granting the motion to withdraw, which is filed under seal, I explained the basis for withdrawal (a fundamental disagreement with counsel) and made comments directly about Aylstock's handling of Kelly's case. Because my remarks commenting on the quality of representation by Kelly's retained counsel could have been viewed as prejudgment of an issue that would be presented in Kelly's professional negligence case, I recused. By contrast, my comments on the record commending the efforts and professionalism of leadership counsel as a whole during the MDL are entirely different and do not reflect any prejudgment on my part about leadership counsel's conduct toward any particular litigant who might have retained them. I recused myself in *Kelly* not out of any

CASE NO: 3:26cv3359-MCR-ZCB

personal bias or extra-judicial knowledge of facts but because leadership counsel served also as Kelly's retained counsel and, most importantly, I had commented directly on the quality of that representation.  That simply is not the case here.

Accordingly, Canup's Motion for Recusal and Disqualification, ECF No. 37, is **DENIED**.

**DONE AND ORDERED** this 17th day of May 2026.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO: 3:26cv3359-MCR-ZCB