**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION**

BRANDON CANUP          )
                       )
    Plaintiff,         )
                       )    Case No.: 3:26-cv-03359-MCR-ZCB
v.                     )
                       )
BRYAN F. AYLSTOCK, et al.,    )
                       )
    Defendants.        )

---

**DEFENDANTS BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC, AND BOBBY BRADFORD'S RESPONSE TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS**

---

Defendants, **BRYAN F. AYLSTOCK, AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC**, and **BOBBY BRADFORD** ("AWKO Defendants"), hereby file their *Response to Plaintiff's Motion to Stay Proceeding*. In support, the AWKO Defendants state the following:

**PRELIMINARY MATTER**

The Plaintiff sought a "limited stay of substantive proceedings" in this case due to the pendency of three motions: (1) Motion to Remand, (2) Motion for Recusal and Disqualification, and (3) Motion for Suggestion of Remand to the JPML. [Doc. 59]. Notably, the Court has already denied one of the three motions that he alleges necessitate the "limited stay". *See generally* [Doc. 61] (order denying Plaintiff's

1

*Motion for Recusal and Disqualification*). The Court should deny this motion as well.

## LEGAL BASIS FOR DENIAL OF PLAINTIFF'S MOTION TO STAY

### I.   THE PLAINTIFF HAS NOT MET HIS BURDEN TO SHOW A STAY IS PROPER.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Despite this discretion, "staying a matter is an **extraordinary measure** that should only be employed to further the ends of justice and the district court should resolve **any** doubts against issuing a stay." *Elkins v. AbbVie, Inc.*, No. 6:20-CV-1562-PGB-LRH, 2021 WL 9511264, at *1 (M.D. Fla. Aug. 25, 2021) (emphasis added). "The party seeking a stay has the **burden** to show good cause for and reasonableness of the requested stay." *Irving v. USAA Gen. Indem. Co.*, No. 6:20-CV-1889-PGB-EJK, 2021 WL 8776757, at *3 (M.D. Fla. Apr. 9, 2021) (emphasis added).

"In determining whether a stay is appropriate, courts examine the following four factors: (1) the likelihood of the moving party ultimately prevailing on the merits; (2) the extent the moving party would be irreparably harmed; (3) potential for harm to the opposing party if the stay is issued and (4) whether issuing a stay would be in the public interest." *In re Belo*, No. 3:19-CV-963-MCR-GRJ, 2021 WL 6882664, at *2 (N.D. Fla. Dec. 22, 2021). "In that regard, '[i]n deciding whether to

2

stay discovery pending resolution of a motion to dismiss ... the court must take a 'preliminary peek' at the merits of the dispositive motion to see if it 'appears to be clearly meritorious and truly case dispositive.' " *United States v. Physician Surgical Network, Inc.*, No. 6:20-CV-1582-WWB-EJK, 2022 WL 6163122, at *1 (M.D. Fla. Oct. 7, 2022) (quoting *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-cv-609-T-17EAJ, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009)) (emphasis in the original). Here, the Plaintiff has failed to present the necessary elements to support his demand for relief. Instead, the Plaintiff has merely repackaged the same arguments he made in prior motion practice – all of which have already been rejected by the JPML.

A.    **THE PLAINTIFF IS UNLIKELY TO PREVAIL ON THE MERITS OF HIS REMAINING MOTIONS**

The Plaintiff's Motion to Remand and Motion for Suggestion of Remand are both without merit and are not supported by federal law as outlined in AWKO Defendants' responses; thus, a stay should not be permitted.

Importantly, the Plaintiff's Motion to Remand was filed while this matter was pending in the United States District Court for the Northern District of Texas on November 21, 2025. The Texas defendants that initially removed this case filed their response to that Motion to Remand on December 12, 2025. A copy of that Response is attached hereto as Exhibit "A." Although the AWKO Defendants did not file a response to the Plaintiff's Motion to Remand since the AWKO Defendants had not

yet been served, they hereby reincorporate by reference the Texas defendants' arguments raised therein.

The Plaintiff's Motion for Suggestion of Remand has already been briefed as well. The Defendants hereby reincorporate all arguments raised in their responses to Plaintiff's motions is referenced as if stated fully herein. *See generally* [DOC. 49] (outlining their response and objection to the Plaintiff's *Motion for Suggestion of Remand*).

A review of the arguments against each of the motions filed by the Plaintiff leads to the inescapable conclusion that there is very little chance that he will prevail on the merits of either argument. Thus, Plaintiff's Motion to Stay should be denied.

## B. THE PLAINTIFF WILL NOT BE HARMED IF THE STAY IS DENIED.

The Plaintiff has not presented any new arguments much less an extraordinary argument to show that he will be prejudiced if the Court denies his motion. At its core, the Plaintiff simply argues that he might have to respond to multiple Motions to Dismiss as a *pro se* Plaintiff from multiple represented defendants. However, the Plaintiff also moved this Court for leave to file an Amended Complaint. Asking the Court to stay the case after moving the Court to amend his initial pleading is contrary to the idea that a stay is necessary. The Plaintiff simply cannot show any burden or harm other than the action he took might result in his need to respond to motions. With no evidence of a substantial harm, Plaintiff's Motion to Stay should be denied.

4

## C. THE AWKO DEFENDANTS WILL BE HARMED BY A STAY.

This case was lawfully removed from state court in Texas and then ultimately transferred to this Court by the JPML. After that transfer, the Plaintiff sought leave to file an Amended Complaint and was granted that leave by this Court. Despite demanding (1) discovery be conducted, (2) a jury trial occur, and (3) demanding judgment to be entered as to the Defendants, the Plaintiff now demands that this case be stayed and the Defendants be stopped from presenting their legal defenses. [Doc. 60, ¶ 1]; [Doc. 60, ¶ 218]; [Doc. 60, ¶ 221]. Moreover, as noted elsewhere, the Plaintiff continues to rehash the same arguments in an effort to not only avoid the order of the JPML transferring the case to this Court but also to attempt to collaterally attack the 3M MDL's Master Settlement Agreement.  The AWKO Defendants have already incurred substantial time and expense on the multiple preliminary matters argued by the Plaintiff and are ready to address the merits of the Plaintiff's claims as raised in the Amended Complaint. It is clear that the Defendants will be harmed if a stay is entered so Plaintiff's Motion to Stay should be denied.

## D. THE JPML HAS ALREADY DETERMINED THAT IT IS IN THE PUBLIC INTEREST TO HAVE THIS CASE IN THIS JURISDICTION.

This Court has already acknowledged that the "JPML concluded that Canup's case involves common questions of fact with the MDL" and this Court should "retain[] jurisdiction over miscellaneous issues necessary to complete the administration of the MDL cases[.]" [Doc. 61, Page 4]. As a result, it is clear that a

stay of this action to remand the case which the JPML has already said should continue in this Court, is improper. As a result, the Plaintiff's Motion to Stay should be denied.

## REQUESTED RELIEF

For the reasons above, the AWKO Defendants respectfully request that this Court enter an order denying the Plaintiff's request for a stay, as he has failed to present the necessary, objective evidence to warrant that result.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that this motion complies with the word limit of Local Rules 7.1(f) and contains 1,182 words, excluding the parts exempted by the rule.

**Dated**:  May 26, 2026

Respectfully Submitted,

/s/ Gregory K. Rettig
Gregory K. Rettig (172774)
Justin T. Keeton (1025509)
*Co-Counsel for Defendants Bryan F. Aylstock, and Aylstock, Witkin, Kreiss & Overholtz PLLC*

**FOR THE FIRM:**
**LLOYD, GRAY, WHITEHEAD & MONROE, P.C.**
125 W. Romana Street, Suite 330
Pensacola, Florida 32502
Telephone: (850) 777-3322
Facsimile: (850) 777-3290
Grettig@lgwmlaw.com

6

Jkeeton@lgwmlaw.com
Lglover@lgwmlaw.com
Egates@lgwmlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May 2026, a true and correct copy of the foregoing has been furnished by filing through CM/ECF or some other authorized manner for parties not authorized to receive electronically Notices of Electronic Filing:

Brandon Canup
4812 Hidden Oaks Ln
Arlington, TX 76017
canup.brandon@gmail.com
*Pro Se Plaintiff*

Benjamin James Stevenson
Steven Legal, PLLC
919 Panfiero Dr
Pensacola Beach, FL 32561
bjs@stevensonlegal.com
*Counsel for Defendant, Mostyn Law Firm*

Jonathan Vine
Cole, Scott & Kissane, PA
222 Lakeview Ave., Suit 500
West Palm Beach, FL 33401
Jonathan.vine@csklegal.com
*Counsel for Defendant, Defendants, Gregory Brown and Fleming Nolen & Jez LLP*

> /s/ Gregory K. Rettig
> *Co-Counsel for Defendants Bryan F. Aylstock, Bobby Bradford and Aylstock, Witkin, Kreiss & Overholtz PLLC*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| BRANDON CANUP, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| BRYAN F. AYLSTOCK, BOBBY BRAD- | § | CIVIL ACTION NO. 4:25-cv-01255-Y |
| FORD, MICHAEL BURNS, CLIFF ROB- | § | |
| ERTS, GREGORY BROWN, AYL- | § | |
| STOCK WITKIN KREIS & OVER- | § | |
| HOLTZ PLC, FLEMING NOLEN & JEZ | § | |
| LLP, and MOSTYN LAW FIRM PC, | § | |
| | § | |
| *Defendants*. | § | |

**FNJ DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

Defendants Gregory Brown and Fleming Nolen & Jez LLP (together, "FNJ Defendants")

file this Response to Plaintiff's Motion to Remand and, in support thereof, state as follows:

**I.   SUMMARY OF RESPONSE**

This purported legal malpractice lawsuit arises from the *In re: 3M Combat Arms Earplugs*

*Litigation*, a class action lawsuit brought against 3M Company ("3M") based upon allegations that

3M's Combat Arms Earplugs were defective (the "MDL"). Plaintiff Brandon Canup ("Canup")

was one of the class members in the MDL and was initially represented by FNJ Defendants therein.

Ultimately, 3M and the class representatives entered into a global settlement agreement

(the "GSA") to resolve the claims in the MDL, which involved the creation of a benefits program

out of which eligible claimants would be paid. The GSA, which was approved by Judge M. Casey

Rodgers, obligated every attorney representing an eligible claimant to recommend their clients

accept the terms of the GSA and register in the benefits program thereunder and withdraw from

representing claimants that opted out of the program. After Canup opted out of the GSA on January

---

1, 2024, FNJ Defendants withdrew as his counsel, as they were obligated to do. Canup later retained new counsel to pursue his claims against 3M. After his efforts to assert new hearing loss claims against 3M were rejected as untimely, Canup settled his claims with 3M.

On October 27, 2025, Plaintiff Brandon Canup ("Canup") filed a civil action in the 67th Judicial District of Tarrant County, Texas, styled *Canup v. Aylstock, et al.* and numbered Cause No. 067-371499-25 (the "State Action"), in which he asserts various claims against Texas-based FNJ Defendants, Mostyn Law Firm, P.C. ("Mostyn Law Firm"), and Cliff Roberts ("Roberts") (collectively, "Texas Defendants") and Florida-based Bryan F. Aylstock ("Aylstock"), Bobby Bradford ("Bradford"), Michael Burns ("Burns"), Aylstock Witkin Kreis & Overholtz PLC ("AWKO") (collectively, "Florida Defendants"). ***All*** of these claims arise out of Texas and Florida Defendants' conduct during the MDL.

On November 6, 2025, before any defendant was served, FNJ Defendants removed the State Action to this Court and filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) shortly thereafter. Dkt. #1; Dkt #10. Before FNJ Defendants filed their motion to dismiss, Canup file a Motion to Remand ("the Motion"), arguing, *inter alia*, that remand is required because Mostyn Law Firm was served before, and did not consent to, removal of the State Action and because neither diversity-of-citizenship nor federal question jurisdiction exists. He is wrong.

First, Mostyn Law Firm was ***not*** served before removal; rather, Canup served a copy of the State Action petition on Andrew Browning, a non-agent of Mostyn Law Firm who accepted service in his personal capacity only because he was falsely told he had been sued personally. *See* Ex. 1. Second, Canup fails to state any claim against Texas Defendants and has joined them as defendants solely to defeat diversity jurisdiction. After disregarding Texas Defendants' citizenship, diversity jurisdiction clearly exists, as Canup is completely diverse from Florida Defendants and seeks more

than \$75,000 in damages. Finally, while Canup has filed state-law claims, he is clearly attempting to circumvent federal jurisdiction, as his claims are essentially based upon conduct performed pursuant to orders entered by Judge Rodgers in the MDL. Indeed, before Canup filed the State Action, Judge Rodgers entered an order ***specifically retaining jurisdiction over any matters*** related to MDL, including the claims here. Accordingly, because it is clear that Canup is using this case as a trojan horse to collaterally attack the orders of Judge Rodgers, the Motion must be ***denied***.

## II.   ARGUMENT AND AUTHORITY

### A.   BECAUSE MOSTYN LAW FIRM WAS NOT SERVED BEFORE REMOVAL, ITS CONSENT WAS NOT REQUIRED; THEREFORE, REMOVAL IS PROCEDURALLY APPROPRIATE

Canup first contends that, because Mostyn Law Firm was served on November 4, 2025, its consent was required for removal. Because no such consent was obtained, remand back to the 67th Judicial District Court of Tarrant County, Texas is mandatory. Canup is wrong.

"A court does not need to remand a case for a defendant's failure to consent to the removal . . . if the non-consenting defendant was not properly served." *SkyGlass, Inc. v. PartnerShip, LLC*, 2019 WL 3819282, at \*2 (N.D. Tex. Aug. 14, 2019) (citing *Breitling v. LNV Corp.*, 86 F. Supp. 3d 564, 570 (N.D. Tex. 2015) *and* 28 U.S.C. § 1446(b)(2)(A) (requiring consent for "all joined and served")). "To warrant this exception to the unanimous consent requirement [for removal], the defendant must show that service was improper[.]" *Id.* (citation omitted). Service is improper when made upon an agent who is not authorized to accept service on behalf of the principal. *See Lisson v. ING GROEP N.V.*, 262 Fed. App'x 567, 569-70 (5th Cir. 2007) ("[D]elivery to a purported agent does not constitute service on the would-be principal, even if the agent represents [themselves] to be so authorized or accepts service.") (internal quotation marks and citation omitted).

Here, Canup does not contend he served Mostyn Law Firm before removal; rather, he contends he served its purported agent, Andrew Browning. Dkt. #8, p. 10. However, as the Unsworn

Declaration of Andrew Browning, attached hereto as Exhibit A, makes clear, Mr. Browning is ***not*** a registered agent for Mostyn Law Firm. Ex. 1, ¶ 2. Indeed, when the process server employed by Canup attempted to serve Mr. Browning with a copy of the pleadings in the State Action, he stated he was not a registered agent for Mostyn Law Firm and was not authorized to accept service on its behalf. *Id.* at ¶ 3. It was only after the process server falsely represented to Mr. Browning that he had been sued ***in his personal capacity*** that Mr. Browning accepted service of process. *Id.* Yet, in so doing, Mr. Browning informed the process server that he was accepting service ***on his behalf only*** and not on behalf of Mostyn Law Firm. *Id.* Accordingly, service of process on Mostyn Law Firm was not perfected before removal and therefore its consent to removal was not required.

## B.    DIVERSITY-OF-CITIZENSHIP JURISDICTION EXISTS

### 1.    Because Canup's joinder of Texas Defendants was done to defeat diversity-of-citizenship jurisdiction, Texas Defendants' citizenship should be disregarded

"A defendant is improperly joined if the moving party establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that [they] fraudulently allege[] is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that [they] properly allege[] is nondiverse." *Int'l Energy Ventures Mgmt., L.L.C. v. Un. Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citation omitted). When deciding whether a nondiverse defendant has been improperly joined, courts may conduct a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim upon which relief can be granted. *Id.* at 200 (citation omitted). If a court concludes a defendant has been improperly joined, it may disregard that defendant's citizenship for purposes of determining whether it has diversity jurisdiction. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 221 (5th Cir. 1995) (concluding that, where nondiverse defendant was improperly joined, district court had diversity jurisdiction to hear pending summary judgment motion).

Here, FNJ Defendants have filed a motion to dismiss Canup's claims against them pursuant to Rule 12(b)(6) and incorporate their arguments made in support of dismissal as if fully set forth herein. *See* Dkt. #10. Briefly, however, Canup fails to state a claim against FNJ Defendants for the following reasons. First, his fraud, fraudulent inducement, breach of fiduciary duty, and civil conspiracy claims are impermissibly fractured legal malpractice claims and are thus barred by the anti-fracturing rule, which prevents plaintiffs from fracturing negligence-based claims against an attorney into other claims. *See Won Pak v. Harris*, 313 S.W.3d 454, 457-58 (Tex. App.—Dallas 2010, pet. denied) (plaintiff's breach of fiduciary duty, fraud, and civil conspiracy claims were barred by anti-fracturing rule); *Pitts v. Rivas*, 709 S.W.3d 517, 527 (Tex. 2025) (plaintiff's fraud claim was barred by anti-fracturing rule). Because Canup's allegations demonstrate that his complaint against FNJ Defendants is about the quality of their legal representation, his fraud, fraudulent inducement, breach of fiduciary duty, and civil conspiracy claims fail as a matter of law.

Moreover, Canup fails to state a claim for fraud, fraudulent inducement, breach of fiduciary duty, or civil conspiracy because fails to allege with any degree of specificity that FNJ Defendants ever made any misrepresentations, breached any alleged fiduciary duties, or conspired with Florida Defendants; indeed, he does not allege FNJ Defendants *ever even interacted* with them. Without such allegations, his claims fail to meet Rule 9(b)'s heightened pleading standard. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

Finally, Canup fails to state a legal malpractice claim because he alleges no facts in support of his claim that FNJ Defendants failed to investigate or develop his case or that such failure caused his alleged damages and in fact concedes he was represented *by different attorneys* months before Judge Rodgers entered the April 17, 2024 order stating he could not amend his pleadings to include new allegations or causes of action. Dkt. #1, Ex. A, ¶ 5.18. Nor does he plausibly allege that FNJ

Defendants failed to give him his full client file, negligently abandoned him at a critical stage of litigation, or caused his damages through their purported concealment of the terms of the GSA or failure to provide him with his client file. Thus, Canup fails to state a claim against FNJ Defendants. For the same reasons, he fails to state a claim against Roberts, as his claims against Roberts are based upon the same allegations as his claims against FNJ Defendants.

Canup's allegations against Mostyn Law Firm—the only other nondiverse defendant—fare no better. Not only do his claims against Mostyn Law Firm fail for the same reason they fail against FNJ Defendants and Roberts, they fail because he alleges *no facts* to support *any claim* against Mostyn Law Firm. Indeed, his only allegation tying Mostyn Law Firm to his claims is that it was "affiliated" with Burns, a Florida-based attorney with his own law practice and with whom Canup curiously alleges he had an attorney-client relationship despite (1) only meeting with Burns on one occasion, at a status conference before Magistrate Judge Hope T. Cannon, and (2) being represented by *his own attorney* at that conference. *Id.* at ¶¶ 2.7, 5.10-5.12. These allegations are woefully deficient and fail to establish that he has any compensable claim against Mostyn Law Firm.

Accordingly, because Canup fails to state a claim against Texas Defendants, and thus there is no basis to believe he can recover from them in a Texas court, this Court should find that Texas Defendants were improperly joined in an attempt to defeat diversity-of-citizenship jurisdiction and disregard their citizenship. *Accord Burden*, 60 F.3d at 221.

> **2.    Diversity-of-citizenship jurisdiction exists because there is complete diversity between Canup and Florida Defendants and Canup's allegations demonstrate he clearly seeks to recover more than $75,000 in damages**

Disregarding Texas Defendants' citizenship, this Court clearly has diversity jurisdiction to hear to this case. First, complete diversity exists, as Canup is a citizen of the State of Texas, while Florida Defendants are all citizens of the State of Florida. *See* <u>Dkt. #1</u>, Ex. A, ¶¶ 2.1-2.12; 28

U.S.C. § 1332(a)(1) (requiring parties to be "citizens of different States"). Second, while Canup alleges he seeks "less than $75,000 in monetary damages, exclusive of interest and costs[,]" his pleadings bely this allegation. Dkt. #1, Ex. A, ¶ 4.1. Specifically, he alleges he seeks approximately $40,000 in actual damages, an unspecified amount of non-economic damages, exemplary damages under Texas Civil Practice and Remedies Code section 41.003, and "disgorgement of any common benefit fees traceable to his settlement[.]" *Id.* at ¶¶ 7.1-7.5; *see also Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698, 701 (S.D. Miss. 1988) ("Punitive damages can be included to reach the amount in controversy requirement if, under the governing law of the suit, they are recoverable.") (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238 (1943)). Accordingly, given all of the various types of damages Canup seeks, he cannot reasonably argue that he seeks less than $75,000. The jurisdictional limits of the Court have clearly been met.

**D.    FEDERAL QUESTION JURISDICTION EXISTS**

Canup also argues that this Court lacks federal question jurisdiction because he pleads only state-law claims. Dkt. #8, p. 13. While FNJ Defendants agree that he pleads only state-law claims, federal question jurisdiction nonetheless lies because Canup's claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). As the U.S. Supreme Court and Fifth Circuit have both held, federal question jurisdiction exists over a state-law claim if (1) resolving a federal issue is *necessary* to resolution of the state-law claim, (2) the federal issue is *actually disputed*, (3) the federal issue is *substantial*, and (4) federal jurisdiction *will not disturb* the balance of federal and state judicial responsibilities. *Id.*; *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Each of these factors is met here.

First, Canup's claims necessarily involve resolution of a federal issue. Resolution of a federal issue is considered necessary if "the vindication of a right under state law necessarily turn[s]

on some construction of federal law." *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.—East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 723 (5th Cir. 2017). Here, Canup alleges that certain actions taken by Texas and Florida Defendants during the MDL were unlawful, in that they constitute negligence, fraud, and/or breaches of fiduciary duty. Yet, because these actions were performed pursuant to various orders entered by Judge Rogers, it is impossible to determine whether they were proper without determining whether they were authorized by those orders. *See, e.g.*, *Hughes v. Chevron Phillips Chem. Co. LP*, 478 Fed. App'x 167, 170 (5th Cir. 2012) ("[I]t would be impossible to determine whether the Defendants-Appellees breached their fiduciary duty to [plaintiff] or interfered with his contract without deciding whether their actions were governed by a valid administrative levy issued by the IRS."). Moreover, Judge Rodgers has specifically retained jurisdiction to "enforce its Orders" and "handle *any* matters" related to the MDL, which no doubt encompasses Canup's collateral state-law attacks on those orders. Ex. 2 (emphasis added); *see also Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265, 276 (E.D. La. 2021) (holding that plaintiff's claims necessarily involved resolution of a federal issue in part because court retained jurisdiction to interpret and enforce federal consent decree at issue).

Second, Canup actually disputes whether FNJ Defendants' conduct—and indeed whether the conduct of *any* Defendant—constituted negligence, fraud, or breaches of fiduciary duty. Yet, Texas and Florida Defendants' conduct was done pursuant to orders entered by Judge Rodgers. In *Hughes v. Chevron Phillips Chem. Co. LP*, which involved the Internal Revenue Service's withholding of the plaintiff's unexempted wages, the Fifth Circuit held that the federal issue was actually disputed because the plaintiff "clearly dispute[d] the lawfulness of the Defendants-Appellees' withholding of his wages[,]" which was done "pursuant to an administrative levy." 478 Fed. App'x at 171. Likewise, in this case, Canup contends that Texas Defendants abandoned him at a critical

stage of litigation and "pressured" him to accept the terms of the GSA, but concedes they were required to do so under the GSA, which Judge Rodgers **approved**. Dkt. #1, Ex. A, ¶¶ 5.4-5.5. He also contends that the terms of the GSA created conflicts of interest between Texas Defendants and Canup, even though the GSA (1) was approved by Judge Rodgers and (2) was not drafted by Texas Defendants. *Id.* at ¶ 5.4. Finally, he contends that Florida Defendants breached certain ethical obligations by "pressuring" him to settle his individual claims against 3M, even though Florida Defendants' actions were made at a court-ordered status conference before Magistrate Judge Hope Cannon. *Id.* at ¶¶ 5.11-5.12. These allegations all demonstrate that Canup is contesting the lawfulness of conduct done pursuant to federal orders.

Third, the federal issue here is substantial. As the Fifth Circuit has noted, a federal issue is substantial if it is significant to the "federal system as a whole." *Lamar Co., L.L.C. v. Miss. Trans. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020). Clearly, the ability of a federal court to interpret and enforce its orders and hear claims related to matters over which it has specifically retained continuing jurisdiction has broad federal significance. Put differently, Judge Rodgers has expressly indicated that his court has an interest in resolving the claims asserted by Canup in this case. Ex. 2.

Finally, it clearly will not disturb the balance of federal and state judicial power for a federal court to decide questions regarding orders entered **by a federal court in a federal proceeding** and the propriety of defendants' actions done pursuant to those orders. To the contrary, allowing a state court to adjudicate these matters would undermine the MDL court's ability to oversee and enforce its orders, as the MDL court has expressly retained "continuing jurisdiction to enforce its Orders, handle **any matters** related to the settlement, or address any other miscellaneous issues necessary to complete administration of [the MDL]." *Id.* (emphasis added); *see also Police Ass'n of New Orleans*, 572 F. Supp. 3d at 278 (holding that, because court had jurisdiction to oversee

implementation of federal consent decree, exercise of federal jurisdiction did not disturb balance of federal and state judicial responsibilities).

Because Canup's claims implicate significant federal issues, it is clear he is attempting to circumvent federal jurisdiction by filing state-law challenges in state court. *See Hughes*, 478 Fed. App'x at 171 ("[A] plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.") (alterations in original) (citation omitted). Accordingly, federal question jurisdiction exists.

### E.    FNJ DEFENDANTS HAVE COMPLIED WITH THE REQUIREMENTS OF 28 U.S.C. § 1446

Finally, Canup waxes *ad nauseum* in his Motion about how FNJ Defendants failed to pay the filing fee and failed to "attach all state-court pleadings and process[,]" which he argues requires remand. Dkt #8, p. 4. Regarding the first issue, the fee has been paid. Regarding the second issue, Canup fails to explain which "state-court pleadings and process" have not been filed. Nonetheless, "[w]hen a defendant does not file a required document with its notice of removal, the appropriate remedy is to supplement the record with those missing documents." *Simpson v. Am. Int'l Indus.*, 2023 WL 2482134, at *3 (S.D. Miss. Mar. 13, 2023) (internal quotation marks and citation omitted); *see also Covington v. Indem. Ins. Co. of N. Am.*, 251 F.2d 930, 933 (5th Cir. 1958) (noting that if any state court documents "are lacking from the original removal record, they may be later supplied."). Accordingly, there is no basis for remanding this case for these reasons.

### III.  CONCLUSION

Accordingly, Defendants Gregory Brown and Fleming Nolen & Jez LLP respectfully request that the Court *deny* Plaintiff's Motion to Remand and grant them any and all other and further relief to which they may justly be entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By: */s/Michael S. Cedillo*
    Michael S. Cedillo
    State Bar No. 24072029
    mcedillo@thompsoncoe.com

Plaza of the Americas
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

**COUNSEL FOR DEFENDANTS GREGORY
BROWN AND FLEMING NOLEN & JES LLP**

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's ECF/CM filing system in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

*/s/ Michael S. Cedillo*
Michael S. Cedillo

EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| BRANDON CANUP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-01255-Y |
| | § | |
| BRYAN F. AYLSTOCK, BOBBY | § | |
| BRADFORD, MICHAEL BURNS, | § | |
| CLIFF ROBERTS, GREGORY | § | |
| BROWN, AYLSTOCK WITKIN KREIS | § | |
| & OVERHOLTZ PLC, FLEMING | § | |
| NOLEN & JEZ LLP, and MOSTYN | § | |
| LAW FIRM PC, | § | |
| | § | |
| *Defendants.* | § | |

### UNSWORN DECLARATION OF ANDREW BROWNING

1.      My name is Andrew Browning. I am over 18 years of age, of sound mind, and fully capable of making this Unsworn Declaration in accordance with 28 U.S.C. § 1746. I have personal knowledge of the facts stated herein, and they are all true and correct.

2.      I serve as Director of Finance and Compliance to a registered investment advisory firm based in Houston, Texas. Though I previously served as counsel to J. Steve Mostyn, I am not an agent, registered or otherwise, of Mostyn Law Firm, P.C. ("Mostyn Law Firm").

3.      On November 4, 2025, Christina Edwards, a process server, attempted to personally serve me with a copy of *Plaintiff's Original Petition* (the "Petition") in Cause No. 067-371499-25, *Canup v. Aylstock, et al.*, pending in the 67th Judicial District Court of Tarrant County, Texas, and informed me I was being served in my capacity as a registered agent for Mostyn Law Firm, to which I responded that I was not a registered agent for Mostyn Law Firm and therefore could not accept service on its behalf. Ms. Edwards acknowledged my response then further informed me that, in the very same Petition, I was being sued in my personal capacity. Upon hearing that, I expressed doubt as to the likelihood that I was being sued in my personal capacity, but she reaffirmed that I was. After reiterating to Ms. Edwards that I am not a registered agent for the Mostyn Law Firm and that I could not and would not accept service on behalf of the Mostyn Law Firm, I told her that, because I had been named as a defendant, I would accept service but only in my personal capacity. She indicated that she understood and handed me the Petition. Based upon Ms. Edwards's representations, I accepted service of the Petition.

Case 3:26-cv-03359-MCR-ZCB    Document 65    Filed 05/26/26    Page 20 of 24
Case 4:25-cv-01255-Y    Document 14-1    Filed 12/12/25    Page 2 of 2    PageID 248

EXHIBIT 1

4.     Promptly after receiving the Petition, I reviewed it in its entirety and discovered I had not been named as a defendant and therefore that Ms. Edwards's representation that I had been sued in my personal capacity was false.

5.     I did not accept service of the Petition on behalf of Mostyn Law Firm and did not intend to accept service on its behalf by accepting service of the Petition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Harris County, Texas on the __11th__ day of December, 2025.

Andrew Browning

Case 3:26-cv-03359-MCR-ZCB    Document 65    Filed 05/26/26    Page 21 of 24
Case 4:25-cv-01255-Y    Document 14-2    Filed 12/12/25    Page 1 of 4    PageID 249
Case 3:19-md-02885-MCR-HTC    Document 4171    Filed 09/19/25    Page 1 of 4

EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: All Cases | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

**ORDER**

On April 3, 2019, the Judicial Panel on Multidistrict Litigation assigned MDL 2885, *In re 3M Combat Arms Earplug Products Liability Litigation*, to this Court and the undersigned.  Over the next four years, more than 390,000 cases were direct-filed in or transferred to the MDL. A considerable number of cases involving 3M combat arms earplug claims proceeded on a parallel track in Minnesota state court.

An extraordinary amount of energy, time, and cost was expended by the Parties and the Court during the course of the litigation, including early and ongoing efforts to determine the litigation's scope through a census process, DD214 Form production requirements, and procedures for transitioning individual cases from the Administrative Docket to the Active Docket.  The Parties and the Court also collaboratively developed a robust framework for the effective and efficient management of the litigation, which involved two Science Days, vendor/technology

Case 3:26-cv-03359-MCR-ZCB    Document 65    Filed 05/26/26    Page 22 of 24
Case 4:25-cv-01255-Y    Document 14-2    Filed 12/12/25    Page 2 of 4    PageID 250
Case 3:19-md-02885-MCR-HTC    Document 4171    Filed 09/19/25    Page 2 of 4

EXHIBIT 2

Page 2 of 4

proceedings, a presentation on *Touhy*[1] regulations by the Department of Defense and United States Attorney's Office, meetings at the Pentagon and the Department of Justice with the Parties and federal officials in an effort to obtain Plaintiffs' audiograms and Department of Veterans Affairs records, and numerous case management conferences and conference calls with Plaintiffs' and Defendants' counsel.  Extensive corporate, military, and expert discovery was conducted, followed by omnibus briefing, oral argument, and rulings on significant substantive motions, including 341 motions to remand to Minnesota state court filed on behalf of more than 5,700 Plaintiffs, and cross-motions for summary judgment on the federal government contractor defense.  Case-specific discovery for 19 bellwether Plaintiffs followed, as well as discovery and dispositive motions practice for 374 Wave 1 cases, culminating in rulings on more than 260 motions *in limine*, 109 *Daubert*[2] challenges, 47 choice of law disputes, 42 case-specific summary judgment motions, and 21 post-trial motions, not to mention countless discovery, procedural, and/or logistical disputes.  Sixteen bellwether trials were conducted over 14 months, involving 19 Plaintiffs, resulting in 19 jury verdicts.  The undersigned conducted six bellwether trials (one of which consolidated three Plaintiffs and another consolidated two Plaintiffs), and guest district judges from around the Eleventh Circuit conducted

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Case No. 3:19md2885/MCR/HTC

Case 3:26-cv-03359-MCR-ZCB    Document 65    Filed 05/26/26    Page 23 of 24
Case 4:25-cv-01255-Y    Document 14-2    Filed 12/12/25    Page 3 of 4    PageID 251
Case 3:19-md-02885-MCR-HTC    Document 4171    Filed 09/19/25    Page 3 of 4

Page 3 of 4

10 others.    The undersigned also handled the pretrial and post-trial motions. Multiple now-dismissed appeals from the bellwether cases were filed in the Eleventh Circuit.    In July 2022, five of the six Defendants in the MDL filed petitions for Chapter 11 bankruptcy in the Southern District of Indiana, triggering an automatic stay of litigation against them.    The bankruptcy court declined to extend the stay to Defendant 3M Company, so the personal injury claims against 3M in the MDL continued unabated by the bankruptcy proceeding but obviously in a complicated fashion.

To date all cases have been resolved through motions practice or settlement. More specifically, the vast majority of claims were resolved through a global settlement reached in August 2023, and Plaintiffs who initially opted out of that process later settled or had their cases dismissed.    No 3M combat arms earplug cases remain in the MDL.    No case has been direct-filed or transferred to the MDL since March 2025.    As of last week, the MDL docket is clean.

Accordingly:

1.    The Court respectfully **RECOMMENDS** to the JPML that *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL 2885, be terminated, subject to this Court's continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration

Case No. 3:19md2885/MCR/HTC

Case 3:26-cv-03359-MCR-ZCB   Document 65   Filed 05/26/26   Page 24 of 24
Case 4:25-cv-01255-Y   Document 14-2   Filed 12/12/25   Page 4 of 4   PageID 252
Case 3:19-md-02885-MCR-HTC   Document 4171   Filed 09/19/25   Page 4 of 4

EXHIBIT 2

Page 4 of 4

of these cases.

2.      Should the MDL be terminated, and any party subsequently files in or removes to a United States District Court any new claims related to this proceeding, this Court would welcome the reopening of the MDL docket and transfer of any such action to this Court for further proceedings, given the Court's familiarity and experience with this litigation.

**SO ORDERED**, on this 19th day of September, 2025.

_M. Casey Rodgers_
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:19md2885/MCR/HTC