UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDON CANUP,

     **Plaintiff,**

v.                                      **CASE NO. 3:26cv3359-MCR-ZCB**

BRYAN F AYLSTOCK, et al.

     **Defendants.**

_____/

## ORDER

Plaintiff Brandon Canup, appearing *pro se,* filed this action in Texas state court, alleging claims including fraud and professional negligence against several attorneys and law firms involved in multidistrict litigation ("MDL") consolidated in this Court, *In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885, Case No. 3:19-md-2885-MCR-HTC (N.D. Fla.).  Defendant Gregory Brown removed the case to federal court in the Northern District of Texas, and subsequently, the Judicial Panel on Multidistrict Litigation ("JPML") transferred it to this Court as a tag-along action related to the 3M MDL.[1]  Before the transfer, Canup timely filed a Motion to Remand to state court, ECF No. 8, and after the

---

[1]  In August 2023, a global settlement of the claims against 3M was reached that included all cases in the MDL and Minnesota state court.  In connection with the settlement, the undersigned retained jurisdiction over the settlement, enforcement of all orders, and all related miscellaneous issues.  Also, before Canup's case was transferred, the JPML reopened the MDL for the transfer of additional actions.

transfer to this Court, he filed a Motion for Suggestion of Remand to the JPML, ECF No. 38.  Defendants have filed opposition briefs, and now, having fully considered the Parties' arguments and the law, the Court denies both motions.

## I.    Background

To adequately resolve the motions, a full recitation of the background facts is necessary.

### A. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885

On April 3, 2019, the JPML centralized the 3M MDL proceeding in this Court pursuant to 28 U.S.C. § 1407 and transferred eight cases, in which the plaintiffs claimed that 3M and related companies had defectively designed the 3M Combat Arms Earplug, causing the plaintiffs' hearing loss and/or tinnitus.  *See In re 3M Combat Arms Earplug Prods. Liab. Litig.,* MDL No. 2885.  At the time of centralization, the JPML had been notified of 635 related federal actions filed in 33 federal districts.  Case No. 3:19-md-2885-MCR-HTC, Master Docket, ECF No. 1 (JPML initial transfer order).  Over the next two years, the number of plaintiffs ballooned to 400,000, by far the largest MDL in the federal judiciary's history, requiring extensive judicial case management and court oversight of all aspects of the pretrial proceedings.  At the outset of the litigation, the Court appointed leadership counsel for the universe of plaintiffs, to shepherd all cases through the

coordinated MDL proceedings, and also entered a common benefit order setting out procedures, limitations, and guidelines for participating counsels' access to common benefit work product and sharing of common litigation costs.[2]   For two years, leadership counsel conducted extensive and complex fact and expert discovery related to military rules and regulations, the science of audiometry and sound, and the design and testing of hearing devices.  The discovery involved multiple meetings and exhaustive discussions with the Department of Defense, the Department of Veterans Affairs, and the Department of Justice over the course of three years. During this time, leadership counsel also engaged in vigorous motion practice in this Court and successfully challenged a bankruptcy proceeding in a separate court. After completion of the common discovery, 16 bellwether cases were selected for case specific workup and then tried by juries within a period of 14 months, pursuant to demanding scheduling orders.

After laying this groundwork, plaintiffs' leadership counsel successfully negotiated a $6 billion global settlement with 3M.  The Court appointed a settlement administrator and is currently overseeing the administration of that settlement, as well as resolving miscellaneous issues and processing tag-along cases.

---

[2] As amended, the common benefit order assessed a holdback of 9% from all claimants' gross recoveries.  Master Docket, ECF No. 3875.

CASE NO: 3:26cv3359-MCR-ZCB

In reaching a global settlement, all MDL attorneys agreed that by submitting a registration form, counsel had concluded that the settlement was in each client's best interests and had agreed to recommend participation to every eligible client. The settlement agreement provided that if a plaintiff disregarded his/her counsel's recommendation and opted not to participate in the settlement and to continue litigating, counsel would take steps to withdraw from representation, with Court approval.[3]

The Court established a schedule (CMO 57) to manage any case in which a plaintiff opted not to participate in the settlement program and instead to proceed with litigation. Case No. 3:19-md-2885, Master Docket, ECF No. 3811 (CMO 57). The Court required every opt-out plaintiff to attend an in-person hearing, at which the undersigned discussed the settlement program and its benefits as well as the risks of going forward in an individual case, provided a final opportunity for the plaintiff to participate in the settlement program, and verified that the plaintiff was fully informed before proceeding further. The Court invited leadership counsel and

---

[3] Also, as is common in global settlements of this nature, 3M retained a right to walk away from the settlement if, as of the final participation registration date, the participation level was less than 98%. *See* Combat Arms Master Settlement Agreement, Articles 5 and 7 (available on the Court's public website: https://www.flnd.uscourts.gov/3m-products-liability-litigation-mdl-no-2885).

CASE NO: 3:26cv3359-MCR-ZCB

defense counsel to be present at these hearings to explain the details of the settlement program and answer any questions from the plaintiff.

### B. Canup's Underlying 3M Member Suit

Canup asserts that he retained Texas attorneys Gregory Brown, Cliff Roberts, and the law firm of Fleming, Nolen & Jez, LLP ("FNJ") to investigate and develop his claim against 3M.  In June 2020, Canup filed a products liability complaint in the MDL, asserting that the Combat Arms Earplugs were defectively designed and that his use of the product caused him to suffer tinnitus.  *See Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC, ECF No. 1 (N.D. Fla. Jun. 3, 2020).  Brown appeared on Canup's behalf until the global settlement was reached and Canup elected not to participate in the settlement program, at which time Brown filed an unopposed motion to withdraw.  Canup then retained new counsel, David Gamble. Brown stated in his motion to withdraw that he had begun to transfer Canup's files to Gamble, so the Court allowed him to withdraw.  *See id.* ECF Nos. 9, 10, 12.

Canup and Gamble attended his hearing on March 13, 2024, at which, consistent with the procedure described above, the undersigned discussed the settlement program and its benefits as well as the risks of going forward individually, provided Canup another opportunity to participate in the settlement program, and verified that he was fully informed before proceeding further.  3M's counsel was

CASE NO: 3:26cv3359-MCR-ZCB

also present as were three court-appointed plaintiffs' leadership attorneys, namely, Bryan Aylstock, Bobby Bradford, and Michael Burns. These lawyers were present for the purpose of offering details about the settlement program and answering questions. Also, during a closed-door settlement conference that day with Magistrate Judge Cannon, and with leadership counsel and his own attorney, Gamble, present but not counsel for 3M, Canup was given one final opportunity to participate in the global settlement, which he declined, as was his right.

Aided by Gamble, Canup then successfully completed all requirements under CMO 57 to continue litigating his case against 3M. He later attended mediation with Gamble, as required by CMO 57, through which he negotiated his own settlement with 3M outside of the settlement program. *See id.* ECF Nos. 8 (Order Feb. 12, 2024); 53 (Report of Settlement Sept. 17, 2024).[4] Gamble filed a stipulated dismissal on behalf of Canup, signed also by 3M, on October 13, 2024.

## C. The Instant Litigation

On October 27, 2025, Canup filed the instant lawsuit in Texas state court against Brown, Roberts, and FNJ ("FNJ Defendants") and also leadership counsel Aylstock, Bradford, and the Aylstock firm ("Aylstock Defendants"), Burns, and the

---

[4] Leadership counsel were not present at this mediation.

Mostyn Law Firm.  As to his retained counsel (the FNJ Defendants), Canup asserted claims of fraud, breach of fiduciary duty, and professional negligence alleging they failed to disclose conflicts inherent in the MDL proceeding and abandoned his case at a critical point.  As to leadership counsel, Canup asserted claims of fraud and breach of fiduciary duty, alleging they failed to disclose that they intended to appear on March 13, 2024 or that they had obtained his confidential medical records.[5]  He also alleged that leadership failed to fully disclose conflicts and penalties they faced if they were unable to secure 100% participation in the global settlement (referencing Exhibit 10 to the settlement documents), and that Bradford induced him to accept a 9% fee (common benefit assessment) to be deducted from his MDL recovery.  In a civil conspiracy claim against all Defendants, Canup alleged the Defendants conspired to assume "complementary roles" under the global settlement that "tied their compensation to Plaintiff participation thresholds and withdrawal requirements" in an effort to protect their own financial interests at Canup's expense.  ECF No. 1–1.  He seeks actual damages in the amount of $19,807.35 (Gamble's fee and travel expenses for attending the March 13, 2024 hearing and costs of obtaining expert reports and other litigation preparation expenses) plus disgorgement of the

---

[5] Canup asserted that leadership counsel created an implied attorney-client relationship when they appeared at his March 13, 2024 hearing and in a closed-door settlement conference that day.

CASE NO: 3:26cv3359-MCR-ZCB

9% common benefit fee that he asserts was set aside from his settlement pursuant to the Court's order, and additional unspecified damages for inconvenience, exemplary damages, and interest and costs.

Brown immediately removed the lawsuit to federal court in the Northern District of Texas, *see* 28 U.S.C. § 1441(a), and Canup filed a timely motion to remand, contesting jurisdiction and asserting that several defects in the removal process require remand to state court.

Before any ruling was entered on that motion, Aylstock asked the JPML to transfer the case to this Court as a tag-along action in the 3M MDL.[6] Canup opposed transfer and had an opportunity to fully brief his objections. The JPML rejected Canup's arguments and issued a transfer order, concluding that the instant case involves common questions of fact with the MDL actions, implicates conduct by court-appointed leadership counsel in settlement matters arising from the MDL proceedings, and challenges MDL orders regarding case management, settlement, leadership appointment, and common benefit. Following the transfer to this Court, Canup moved for a suggestion of remand to the JPML.

---

[6] The Northern District of Texas case was stayed pending a transfer decision.

CASE NO: 3:26cv3359-MCR-ZCB

## II.    Discussion

### A. Motion to Remand to State Court

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a case from state court only if the federal court has original jurisdiction over the subject matter. *See* 28 U.S.C. § 1441(a). Original jurisdiction is established through a federal question or diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332. And the removing defendant bears the burden of demonstrating that federal jurisdiction exists. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

The Notice of Removal alleges diversity jurisdiction based on fraudulent and improper joinder[7] and federal question jurisdiction on grounds that the claims arise out of the MDL proceedings, which were consolidated through 28 U.S.C. § 1407, and involve a substantial federal issue, consistent with *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Because the Court agrees that federal question jurisdiction is met, as discussed below, diversity jurisdiction and the issues related to fraudulent joinder need not be addressed.[8]

---

[7] Complete diversity is not met. Canup is a Texas citizen. The FNJ Defendants and Mostyn Law Firm are also Texas citizens, and the Aylstock Defendants and Burns are Florida citizens.

[8] Canup argues also that the forum defendant rule precludes removal. Under that rule, an action "removable solely on the basis of the jurisdiction under § 1332(a) of this title may not be removed

The causes of action alleged in Canup's suit are all framed as state law claims. But in *Grable*, the Supreme Court adopted a rule recognizing that some state court causes of action support federal question jurisdiction if the claims necessarily "implicate significant federal issues." 545 U.S. at 312 (allowing removal of a quiet title action filed in state court after a tax sale, involving an issue of whether the IRS gave proper notice, as "arising under" federal law). The Court explained, however, that "even when the state action discloses a contested and substantial federal question," a federal forum is appropriate "only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313–14. Four factors guide the *Grable* analysis—the federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14). The doctrine applies in only a "special and small category of cases," in which all four requirements are met. *AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249,

---

if any of the parties in interest, joined and properly served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). By its terms, the forum defendant rule only applies to bar removal in a case that is removed "solely" on diversity grounds, *id.*, so it is inapplicable here where removal is also based on federal question jurisdiction.

CASE NO: 3:26cv3359-MCR-ZCB

1252–53 (11th Cir.) (quoting *Gunn*, 568 U.S. at 258), *cert. denied*, 146 S. Ct. 370 (2025).

This is one of those special cases. An MDL proceeding is unique. While § 1407 does not establish or create federal jurisdiction, the litigation that occurs under the MDL umbrella is carried out under federal court oversight, federal court scheduling orders, and federal court leadership appointment and common benefit orders. Here, Canup's allegations about the Defendants' breach of professional duties owed to him and allegations of fraud based on MDL leadership's conduct are inextricably intertwined with the Court's case management and settlement administration orders. Thus, the first *Grable* factor (whether a federal issue is necessarily raised) is met. It is disingenuous for Canup to argue otherwise. And there is no question that the issues—concerning whether the conduct alleged was taken pursuant to or governed by this Court's orders—are actually disputed, so the second *Grable* factor is also met.

Although the federal question presented here is unique, the Court concludes that the third factor (which requires a substantial federal issue) is also satisfied. The 3M MDL was created and transferred to the undersigned pursuant to 28 U.S.C. § 1407. All case management and settlement administration orders were entered under that statutory authorization. The crux of Canup's complaint concerns

CASE NO: 3:26cv3359-MCR-ZCB

Defendants' misconduct in connection with the 3M MDL settlement.  And notably the undersigned specifically retained jurisdiction to enforce all orders related to the settlement and to handle any matters related to it and/or any miscellaneous issues necessary to complete the administration of the cases.

As the undersigned has previously recognized, "[a]n MDL judge bears the 'enormous' task of 'moving thousands of cases toward resolution on the merits while at the same time respecting their individuality.'"  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2023 WL 9197648, at *1 (N.D. Fla. June 29, 2023) (quoting *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.,* 460 F.3d 1217, 1231 (9th Cir. 2006)).  Carrying out this task in an organized and efficient manner demands that the transferee judge define and strictly adhere to broadly applicable and even-handedly applied case management rules.  *See id.* (noting that firm MDL case management is required "if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial" (quoting *In re PPA,* 460 F.3d at 1232)).  In the 3M MDL, leadership counsel on both sides had a hand in collaborating with the Court to fashion workable case management and settlement procedures.  All counsel were required to comply.  *See id.* ("counsel must collaborate with the court")*; In re PPA,* 460 F.3d at 1231-32 ("For it all to work, multidistrict litigation assumes cooperation by counsel").  Those pretrial orders, and counsels'

and the parties' compliance with those orders, "are the engine that drives disposition on the merits," and the transferee judge's firm enforcement of them results "in better administration of the vehicle of multidistrict litigation." *In re 3M*, 2023 WL 9197648, at \*1 (quoting *In re Cook Medical, Inc. Pelvic Repair Sys. Prof. Liab. Litig.*, 2018 WL 4698953, at \*2 (S.D. W.Va. Sept. 28, 2018)). A post hoc, post-settlement collateral challenge to those orders by an individual litigant could disrupt the entire MDL 3M settlement structure involving over 250,000 plaintiffs, which in turn would have far reaching implications across the federal judiciary both in the 3M MDL and more broadly, given that similar MDL management structures are implemented routinely in MDLs across the federal system as a whole.[9] Thus, allowing an individual litigant to maintain this sort of challenge in a state court could have serious ramifications for the MDL system as whole. Consequently, Canup's claims present a substantial federal issue.

The final *Grable* factor is also met. While state courts ordinarily are vested with "a special responsibility for maintaining standards among members of the licensed professions," *Gunn*, 568 U.S. at 264, the federal-state balance is not disturbed here because the standards of conduct at issue and the allegations of fraud

---

[9] Notably, the 3M MDL settlement administration is on-going and will not be complete until 2029.

CASE NO: 3:26cv3359-MCR-ZCB

arise out of duties counsel performed under federal court orders in the MDL proceeding. The *Grable* doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312. Common sense dictates that this Court should be able to hear these state law claims because they turn on the interpretation and construction of federal court orders within the MDL, which this Court has retained jurisdiction to address. Allowing a state court to decide those issues would undermine this Court's responsibility to oversee the 3M MDL and enforce its orders and would threaten uniformity in their application, which is essential to the overall MDL process, as discussed above. Admittedly, the situation is out of the ordinary, but in the undersigned's assessment, applying arising-under jurisdiction in this narrow MDL-centered context will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. To the extent Canup's complaint raises any purely state law claims having no impact on the MDL process, those claims can be addressed under the Court's supplemental jurisdiction. 28 U.S.C. § 1367.

CASE NO: 3:26cv3359-MCR-ZCB

Finally, Canup argues that the rule of unanimity requires remand due to Brown's failure to obtain the consent of all properly joined and served defendants—namely, Mostyn Law Firm, which Canup argues was properly served two days before the Notice of Removal was filed.  The rule of unanimity applies "when a civil action is removed solely under section 1441(a)" and requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action."[10]   28 U.S.C. § 1446(b)(2)(A).  The rule must be strictly enforced but does not "establish a wooden rule;" a technical defect related to unanimity can be cured.  *Stone v. Bank of New York Mellon, N.A*., 609 F. App'x 979, 981 (11th Cir. 2015)[11] (quoting *Esposito v. Home Depot U.S.A., Inc*., 590 F.3d 72, 77 (1st Cir. 2009)); *see id.* ("A technical defect related to the unanimity requirement may be cured by opposing a motion to remand prior to the entry of summary judgment.").

While there are questions concerning whether Mostyn Law Firm was properly joined and served at the time of removal, the Court need not address the merits of these arguments because to the extent any defect in unanimity existed, it has been

---

[10] By its express terms, the unanimity rule applies to all actions removed based on original jurisdiction—§ 1441(a)—and thus, it applies regardless of whether removal is based on diversity or federal question jurisdiction.  *See Mulder v. Wilson*, 462 F. Supp. 2d 1214, 1215 (M.D. Ala. 2006).

[11] While *Stone* is unpublished, the undersigned finds it persuasive.

CASE NO: 3:26cv3359-MCR-ZCB

cured.  The record now reflects that all Defendants who have been served, including

Mostyn Law Firm, have appeared in this proceeding and that Mostyn Law Firm has

challenged the Amended Complaint on its merits.  Its consent to removal can be

implied by the filing of a motion to dismiss that does not challenge jurisdiction.  *See*

*Stone*, 609 F. App'x at 981; *see also Frink v. Cargill, Inc*., No. 1:22-cv-4330-VMC-

CCB, 2023 WL 11780360, at *3 & n.1 (N.D. Ga. June 22, 2023) (defendant indicates

its consent to the court's jurisdiction without procedural defect in removal by filing

an answer), *report and recommendation adopted*, No. 1:22-cv-04330-VMC, 2023

WL 11780359 (N.D. Ga. July 12, 2023); *Stephens v. GuideOne Mut. Ins. Co.,* No.

1:19-cv-05534-ELR, 2020 WL 13587976, at *1 n.1 (N.D. Ga. Apr. 21, 2020) (citing

*Stone* for the proposition that that courts also recognize "other forms of manifested

consent, such as filing a motion to dismiss after the removal of the case"); *Griffin v.*

*Jonesboro Nursing & Rehab. Ctr., LLC,* No. 1:19-cv-03096-ELR, 2019 WL

13212709, at *3 (N.D. Ga. Nov. 7, 2019) (citing *Stone* and concluding procedural

defect in the manner or timing of consent can be cured); *Frederick v. Lafont*, No.

3:16cv35-MCR/EMT, 2016 WL 11745551, at *1 (N.D. Fla. May 27, 2016) (citing

*Stone* and noting that the Eleventh Circuit has rejected "a formalistic application of

the unanimity rule"). Any technical lack of unanimity or issue as to the timing of the consent has been remedied and thus is not a basis for remand.[12]

### B. Motion for Suggestion of Remand to JPML

The transferee court may make a suggestion of remand to the JPML, pursuant to the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Rule 10.1(b). The rule does not enumerate under what grounds the suggestion may be made, and Canup does not cite to any case law authorizing the undersigned to suggest remand to the JPML in this circumstance. But typically, a suggestion for remand would occur when the "pretrial proceedings have run their course" in a particular case, even if the consolidated proceedings have not yet concluded. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, 2025 WL 4072664, at *2 (D.S.C. June 24, 2025) (internal quotations omitted), *reconsideration denied*, 2025 WL 4072671 (D.S.C. Oct. 14, 2025); *see also In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("A transferee judge's suggestion of remand to the Panel is an obvious indication that he has concluded that the game no longer is worth

---

[12] Canup also alleged procedural defects in removal due to Brown's failure to pay the filing fee with the Notice of Removal and include the state court record. These arguments do not justify remand and are thus rejected because the record reflects that the filing fee has been paid, and the Notice of Removal included the state court petition.

the candle (and, therefore, that he perceives his role under section 1407 to have ended)."). "Because the purpose of multidistrict litigation is for the convenience of the parties and witnesses and to promote the just and efficient conduct of the cases, the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary." *In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-CV-1898, 2024 WL 4711129, at *3 (S.D.N.Y. Nov. 7, 2024) (internal quotation marks omitted).

In its transfer order, the JPML acknowledged that this action was not typical but rejected Canup's arguments and concluded that the allegations of his complaint involve common questions of fact with the centralized MDL actions. The JPML noted that "there is no better court to determine whether defendants acted at the transferee court's direction than the transferee court itself." ECF No. 30 at 2 n.3. The JPML also concluded that Canup is challenging orders of the transferee court regarding case management, settlement, leadership appointment, and common benefit and expressly noted that the undersigned (transferee court) retained "continuing jurisdiction to enforce its orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the

administration of these cases." ECF No. 30 at 2 (JPML Transfer Order, quoting MDL 2885, ECF No. 4171 at 1 (N.D. Fla. Sept. 19, 2025)).

Canup's arguments have been fully addressed and rejected by the JPML. His request for a suggestion of remand, rehashing the same arguments he presented to the JPML and challenging the JPML's conclusion, is essentially asking the undersigned to reconsider the JPML's transfer decision. The undersigned declines to do so.

Accordingly:

1.  Canup's Motion for Remand, ECF No. 8, is **DENIED**.

2.  Canup's Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation, ECF No. 38, is **DENIED**.

3.  Canup's Motion to Stay Proceedings, ECF No. 59, is **DENIED as MOOT**.

**DONE AND ORDERED** this 29th day of May 2026.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO: 3:26cv3359-MCR-ZCB