# EXHIBIT 1

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 01, 2026

Brandon Canup
4812 HIDDEN OAKS LN
ARLINGTON, TX 76017

Appeal Number:  26-11887-C
Case Style:  In re: Brandon Canup
District Court Docket No:  3:26-cv-03359-MCR-ZCB

## PETITION FOR WRIT DOCKETING NOTICE

Your petition for a writ of mandamus, a writ of prohibition, or an extraordinary writ has been filed.
Please use the appeal number for all filings in this Court.

Web-Based CIP
Only parties represented by counsel must complete the web-based Certificate of Interested Persons and Corporate Disclosure Statement (CIP). Counsel must complete the web-based CIP, through the Web-Based CIP link on the Court's website, on the same day the CIP is first filed. See 11th Cir. R. 26.1-1(b).

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Obligation to Notify Court of Change of Addresses
Each pro se party and attorney has a continuing obligation to notify this Court of any changes to the party's or attorney's addresses during the pendency of the case. See 11th Cir. R. 25-7.

Clerk's Office Phone Numbers
| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

WRIT - Notice of Docketing_No Deficiency

No. _____

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

---

IN RE BRANDON CANUP,

*Petitioner*,

On Petition for Writ of Mandamus from the United States District Court for the Northern District of Florida

No. 3:26-cv-03359-MCR-ZCB

---

**PETITION FOR WRIT OF MANDAMUS**

---

Brandon Canup
4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314
canup.brandon@gmail.com

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Petitioner Brandon Canup certifies that, to the best of his knowledge, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this mandamus petition, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. Petitioner is unaware of any publicly traded corporation owning 10% or more of any corporate party.

1. Aylstock, Bryan F.

2. Aylstock, Witkin, Kreis & Overholtz, PLC

3. Bolitho, Hon. Zachary

4. Bradford, Bobby J.

5. Brown, Gregory

6. Burns, Michael A.

7. Canup, Brandon

8. Cole, Scott & Kissane, PA

9. Fleming, Nolen & Jez, LLP

C-1 of 2

10. Keeton, Justin

11. Lloyd, Gray, Whitehead & Monroe, PC

12. Mostyn Law Firm, PC

13. Rettig, Gregory

14. Roberts, Cliff

15. Rodgers, Hon. M. Casey

16. Stevenson, Benjamin James

17. Stevenson Legal, PLLC

18. Vine, Jonathan

*/s/ Brandon Canup*

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

**pro se**

C-2 of 2

## Statement Regarding Oral Argument

Petitioner Brandon Canup respectfully submits that the relevant facts and legal issues are adequately presented in the petition and supporting materials, and that the issues presented principally concern the application of established recusal standards under 28 U.S.C. § 455. Petitioner therefore believes the matter may be resolved on the written submissions. If the Court determines that oral argument would assist its consideration of the petition, however, Petitioner is prepared to appear and respond to any questions the Court may have regarding the factual record, procedural posture, or legal issues presented.

i

**Table Of Contents**

Page

Certificate of Interested Persons and Corporate Disclosure Statement..................C-1

Statement Regarding Oral Argument............................................................i

Table of Contents ................................................................... ii

Table of Citations ................................................................. iii

Jurisdictional Statement ..............................................................vi

Statement of the Case................................................................ vii

Relief Sought......................................................................1

Issues Presented ....................................................................1

Request for Judicial Notice ............................................................1

Facts Necessary to Understand the Issues Presented....................................3

Reasons Why the Writ Should Issue ....................................................7

   1.  Petitioner Has a Clear and Indisputable Right to Recusal Under 28 U.S.C.
      § 455 ........................................................................8

     a.  28 U.S.C. § 455(b)(1) Requires Mandatory Disqualification Where
        the Presiding Judge Possesses Personal Knowledge of Disputed
        Evidentiary Facts ..................................................8

     b.  Recusal is Required Under 28 U.S.C. § 455(a) Because an Objective
        Observer Could Reasonably Question Impartiality Under the
        Circumstances Presented Here ........................................15

   2.  Issuance of the Writ Is Appropriate Under the Circumstances to Preserve
      Public Confidence in the Integrity of the Proceedings...........................18

   3.  Petitioner Has No Other Means to Obtain the Requested Relief............21

Conclusion ................................................................................................23

Certificate of Compliance .......................................................................24

Certificate of Service ..............................................................................25

**Table of Citations**

**Cases**                                                                    **Page(s)**

*Alexander v. Primerica Holdings, Inc.*,
    10 F.3d 155 (3d Cir. 1993) .......................................................7, 22, 23

*Casey v. Denton*,
    No. 3:17-cv-00521 (S.D. Ill. Sept. 3, 2018).................................10–11

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*,
    542 U.S. 367 (2004) ...................................................................8

*Edgar v. K.L.*,
    93 F.3d 256 (7th Cir. 1996) .......................................................7, 13–14

*In re Corrugated Container Antitrust Litig.*,
    614 F.2d 958 (5th Cir. 1980) .....................................................7, 21

*In re Lopez-Lukis*,
    113 F.3d 1187 (11th Cir. 1997).................................................8

*In re Moody*,
    755 F.3d 891 (11th Cir. 2014) ...................................................8, 22, 23

*In re Murchison*,
    349 U.S. 133 (1955) ...................................................................21

*In re Sch. Asbestos Litig.*,
    977 F.2d 764 (3d Cir. 1992) .......................................................22

*In re WellCare Health Plans, Inc.*,
    754 F.3d 1234 (11th Cir. 2014) .................................................8

iii

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) .................................................................19, 23

*Liteky v. United States*,
    510 U.S. 540 (1994) .............................................................14–15, 17

*Murray v. Scott*,
    253 F.3d 1308 (11th Cir. 2001) ..............................................................8

*Paez v. Sec'y, Fla. Dep't of Corr.*,
    947 F.3d 649 (11th Cir. 2020) ..............................................................2

*Pub. Utils. Comm'n v. Pollak*,
    343 U.S. 451 (1952) .............................................................................19

*United States v. Kelly*,
    888 F.2d 732 (11th Cir. 1989) .........................................................8, 21

*United States v. Patti*,
    337 F.3d 1317 (11th Cir. 2003) ...........................................9, 15, 18, 22

*United States v. Torkington*,
    874 F.2d 1441 (11th Cir. 1989) .....................................................20–21

*United States v. White*,
    846 F.2d 678 (11th Cir. 1988) ......................................................20–21

*Wyatt ex rel. Rawlins v. Rogers*,
    92 F.3d 1074 (11th Cir. 1996) .........................................................7, 21

**Statutes**

28 U.S.C. § 1651(a) .................................................................................7
28 U.S.C. § 455(a) ................................................ 1, 5–9, 15, 17–18, 23
28 U.S.C. § 455(b)(1) .........................................................1, 5–9, 14–15, 23
28 U.S.C. § 1291................................................................................21

**Rules**

Federal Rule of Appellate Procedure 21........................................................7

iv

Federal Rule Evidence 201 ............................................................................1

Federal Rule Evidence 201(b)(2) ..................................................................2

**Other Authorities**

Manual for Complex Litigation § 10.222 (4th ed. 2004) ..........................9–10

v

## Jurisdictional Statement

This Court has jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21. Petitioner seeks review of the district court's May 17, 2026 order denying recusal and disqualification under 28 U.S.C. § 455(a) and § 455(b)(1). This petition arises from the denial of a motion seeking recusal and disqualification under 28 U.S.C. § 455(a) and § 455(b)(1) in litigation concerning attorney conduct connected to the *In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885.

## Statement of the Case

Prior to the conduct challenged in this litigation, the MDL Court formally terminated the plaintiffs' leadership structure and limited any remaining common-benefit authority to specifically authorized settlement-administration functions. Nonetheless, Defendants have repeatedly asserted as a substantive defense that their challenged conduct toward Petitioner occurred pursuant to an off-the-record request made by Judge M. Casey Rodgers and under Court-created authority allegedly arising from that request.

Petitioner disputes the existence, scope, and implications of any Court-created authority allegedly arising from the request and beyond that reflected in the publicly filed MDL orders. The petition therefore presents the narrow question whether recusal is required where disputed merits issues central to Defendants' asserted defenses depend upon an off-the-record Court request and authority allegedly arising from that request, thereby necessarily implicating the presiding judge's personal knowledge of disputed evidentiary facts under § 455(b)(1) while also creating an appearance of partiality under § 455(a).

**Relief Sought**

Petitioner respectfully requests that this Court issue a writ of mandamus directing the disqualification and recusal of United States District Judge M. Casey Rodgers from further participation in this proceeding pursuant to 28 U.S.C. § 455(a) and § 455(b)(1), vacate the order denying recusal entered on May 17, 2026, (App. Tab 61), and grant such further relief as this Court deems just and proper.

**The Issues Presented**

1.  Whether recusal and disqualification are required under 28 U.S.C. § 455(b)(1) where Defendants' asserted defenses depend upon an off-the-record request made by the presiding judge, and where the substance, scope, and implications of that request are themselves disputed merits issues central to the litigation.

2.  Whether, considering the extraordinary facts of this case and the totality of the circumstances, recusal and disqualification are required under 28 U.S.C. § 455(a) to avoid the appearance of partiality and preserve public confidence in the integrity and impartiality of the judiciary.

**Request For Judicial Notice**

Petitioner respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201, of publicly filed orders from *In re 3M Combat Arms Earplug Products Liability Litigation,* No. 3:19-md-2885 (N.D. Fla.) ("MDL"). These materials are matters of public record capable of accurate and ready

1

determination from sources whose accuracy cannot reasonably be questioned.[1] *See* Fed. R. Evid. 201(b)(2), (d); *Paez v. Sec'y, Fla. Dep't of Corr.,* 947 F.3d 649, 651–52 (11th Cir. 2020). Specifically, Petitioner requests judicial notice of:

(1) Case Management Order No. 66, ECF No. 3863, (Appendix to Petition for Writ of Mandamus ("App.") Tab B), terminating the MDL leadership structure; and

(2) Case Management Order No. 67, ECF No. 3864, (App. Tab C), limiting any remaining common-benefit authority to specifically authorized settlement-administration functions.

These materials are directly relevant because the district court relied upon the MDL record in denying recusal and stated that "the record clearly reflects" that leadership counsel were requested to participate in proceedings involving opt-out plaintiffs. (App. Tab 61 at 6–7).[2] Petitioner does not request judicial notice for the truth of disputed factual assertions, but rather to establish the existence and contents of the MDL orders defining the termination and limitation of Court-created leadership authority central to the issues presented in this petition.

---

[1] Petitioner's underlying action, *Canup v. Aylstock et al.*, is presently pending within the MDL. (App. Tab 30). This request is made solely out of an abundance of caution; the orders are part of the same MDL record referenced by the district court in denying recusal. (App. Tab 61).

[2] Appendix tab numbers correspond to the underlying district court docket numbers where applicable. Citations to specific pages refer to the page numbers of the cited document itself rather than the consecutive page numbers of the appendix as a whole.

**Facts Necessary to Understand the Issues Presented by the Petition**

This proceeding arises from *Canup v. Aylstock et al.,* No. 3:26-cv-03359-MCR-ZCB (N.D. Fla.), an action alleging fraud, breach of fiduciary duty, civil conspiracy, and related misconduct against attorneys connected to the MDL, and Petitioner's underlying member case, *Canup v. 3M Company et al.,* No. 8:20-cv-14021-MCR-HTC (N.D. Fla.), both before Judge M. Casey Rodgers.

On August 29, 2023, plaintiffs' leadership counsel and 3M executed a Master Settlement Agreement ("MSA"). (App. Tab 60 ¶ 38). Following the MSA, the MDL Court terminated the plaintiffs' leadership structure through CMOs 66 and 67.[3] (*Id.* ¶¶ 53–54). Canup opted out of the settlement program. (*Id.* ¶ 66).

The complaint alleges that, despite termination of the leadership structure, Defendants Bryan Aylstock, Bobby Bradford, and Michael Burns became directly involved in Canup's individual MDL proceedings and settlement-related matters. (*Id.* ¶¶ 79–92, 95). Beginning in February 2024, Bradford allegedly communicated with Canup's counsel regarding Canup's claims, medical records, damages, settlement eligibility, and related procedures. (*Id.* ¶¶ 79–80).

On March 13, 2024, Canup appeared at a court-ordered MDL status conference. The complaint alleges that Aylstock, Bradford, and Burns appeared

---

[3] (*See also* Tabs B, C).

3

"FOR THE PLAINTIFF,"[4] and also participated in a separate settlement conference, reviewed Canup's medical records, discussed his claims directly with him, and encouraged settlement participation. (*Id.* ¶¶ 81–91). Canup later resolved his claims independently of the MSA. (*Id.* ¶ 100).

On October 27, 2025, Canup filed this action in Texas state court[5] alleging, among other things, that AWKO Defendants'[6] conduct created fiduciary and disclosure duties and at minimum an implied attorney-client relationship. (App. Tab 60 ¶¶ 137, 153). Defendants removed the action on November 6, 2025, and Canup moved to remand on November 21, 2025, asserting lack of unanimous consent and challenging subject matter jurisdiction. (App. Tab A, Dkt. 1; *id.*, Dkt. 8).

Following removal, AWKO Defendants sought MDL transfer and repeatedly asserted that their conduct occurred solely "at the explicit request of the MDL Court" and within the scope of MDL leadership functions. (App. Tab 23 at 1–2, 4–5, 7–10). On January 12, 2026, AWKO Defendants moved to dismiss, arguing that their interactions with Canup occurred only "at the request of the MDL Court" and that no attorney-client or fiduciary duties arose because they acted solely pursuant to

---

[4] (App. Tab 56-1 at 1–2).

[5] (App. Tab 1-1 at 1).

[6] AWKO Defendants refers to Bryan Aylstock, Bobby Bradford and Aylstock, Witkin, Kreis & Overholtz, PLC.

Court-created MDL authority.[7] Aylstock further submitted an affidavit stating that he and Bradford were "requested by Judge Rodgers" to appear at the March 13 hearing and that Bradford communicated with Canup's counsel "at the MDL Court's request." (App. Tab 27-1 ¶¶ 11–12).

The JPML transferred the action to the Northern District of Florida on April 2, 2026. (App. Tab 30). After amendment of the pleadings rendered the original motion to dismiss moot, (App. Tab A, Dkt. 54; App. Tab 61 at 6 n.2), AWKO Defendants represented that they intended to reassert substantially the same arguments. (App. Tab 46 at 3).

On April 17, 2026, Petitioner moved for recusal under 28 U.S.C. § 455(a) and § 455(b)(1), arguing that Defendants had placed alleged off-the-record "request of the court" communications directly at issue by relying on Court-created authority allegedly arising from those communications as a defense. (App. Tab 37 at 1, 6–7). The motion also relied on prior public statements praising MDL leadership and discussing opt-out plaintiffs. (Id. at 2–3, 7–9). At a September 8, 2023 conference, Judge Rodgers stated that MDL leadership "exemplif[ied] the very best of the legal profession" and that the "250,000-plus plaintiffs" in the MDL "were represented very well." (App. 37-4 at 13:14–21). Judge Rodgers further stated: "Those who reject the settlement will learn hard lessons that Judge Miller and I already know,

---

[7] (App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33).

but that's for another day." (*Id.* at 8:10–12). The motion additionally identified prior recusals in materially similar attorney-misconduct actions arising from the MDL. [8]

On May 17, 2026, the district court denied recusal, concluding that the challenged conduct arose from judicial proceedings within the MDL and that recusal was unwarranted under either § 455(a) or § 455(b)(1). (App. Tab 61 at 5–10).

Following denial of the recusal motion, Defendants continued to rely upon the same asserted defense theory. On May 26, 2026, AWKO Defendants filed a renewed motion to dismiss again asserting that their "only interactions with Plaintiff were on behalf of Plaintiffs' MDL Leadership at the request of the MDL Court" and that Plaintiff's claims improperly challenge conduct undertaken pursuant to court-appointed MDL leadership functions. (App. Tab 66 at 2–3, 13–17).

On May 29, 2026, the district court denied Petitioner's motion to remand, concluding that federal question jurisdiction existed over his state law claims and permitting Defendant Mostyn Law Firm, PC to cure the lack of unanimous consent[9] through an out-of-time motion to dismiss. (App. Tab 70 at 15–17; App. Tab A, Dkt. 67). Mostyn first appeared in the action on May 26, 2026, more than six months after removal without ever opposing remand. (*Id.*; App. Tab 62).

---

[8] (App. Tab 37 at 2, 9–11; App. Tabs 37-5, 37-6, 37-8, 37-9).

[9] (App. Tabs 9-1, 9-3; *see also* Tab A, Dkt. 1).

Petitioner now seeks mandamus relief from the order denying recusal. (App. Tab 61).

**Reasons Why The Writ Should Issue**

This Court has authority to issue a writ of mandamus under 28 U.S.C. § 1651(a). *See also* Fed. R. App. P. 21. Mandamus is a recognized mechanism for reviewing orders denying recusal and disqualification. *See Wyatt ex rel. Rawlins v. Rogers,* 92 F.3d 1074, 1081 (11th Cir. 1996); *In re Corrugated Container Antitrust Litig.,* 614 F.2d 958, 961 n.4 (5th Cir. 1980) ("We do not deny our authority to review on mandamus the question of disqualification.").[10] Other circuits likewise recognize mandamus as the proper mechanism for review of recusal denials under 28 U.S.C. § 455. *See Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163 (3d Cir. 1993) ("Mandamus is a proper means for this court to review a district court judge's refusal to recuse from a case pursuant to 28 U.S.C. § 455(a)"); *Edgar v. K.L.,* 93 F.3d 256, 262 (7th Cir. 1996) (granting mandamus relief and directing reassignment where off-the-record communications implicated § 455(b)(1)).

Mandamus is an extraordinary remedy available only where: (1) the petitioner has no other adequate means to obtain relief; (2) the right to issuance of the writ is "clear and indisputable"; and (3) issuance of the writ is appropriate under the

---

[10] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

circumstances. *In re WellCare Health Plans, Inc.,* 754 F.3d 1234, 1238 (11th Cir. 2014) (citing *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia,* 542 U.S. 367, 380–81 (2004)).

Although recusal decisions are ordinarily reviewed for abuse of discretion, mandamus review imposes an even more demanding standard. *See In re Moody,* 755 F.3d 891, 898 (11th Cir. 2014); *Murray v. Scott,* 253 F.3d 1308, 1310 (11th Cir. 2001); *United States v. Kelly,* 888 F.2d 732, 745 (11th Cir. 1989). As *Moody* explains, where recusal is challenged through mandamus, review is "even more stringent," and mandamus remains available only to correct a "clear abuse of discretion or usurpation of judicial power." 755 F.3d at 898 (quoting *In re Lopez-Lukis,* 113 F.3d 1187, 1187–88 (11th Cir. 1997)).

Those standards are satisfied here. The district court's refusal to recuse constituted a clear abuse of discretion because Defendants' reliance on off-the-record Court requests and Court-created authority allegedly arising from that request directly implicates § 455(b)(1) and independently creates an appearance of partiality under § 455(a).

    **1.**    **Petitioner Has a Clear and Indisputable Right to Recusal Under 28 U.S.C. § 455**

        **a. 28 U.S.C. § 455(b)(1) Requires Mandatory Disqualification Where the Presiding Judge Possesses Personal Knowledge of Disputed Evidentiary Facts**

Petitioner has a clear and indisputable right to proceedings before a judge free from disqualifying personal knowledge of disputed evidentiary facts. See 28 U.S.C. § 455(b)(1). Unlike § 455(a), which addresses generalized appearance concerns, § 455(b)(1) mandates disqualification when one of its enumerated circumstances exists. As the Eleventh Circuit explained in *United States v. Patti,* subsection (b) "is stricter than subsection (a) because the need for a judge's recusal under subsection (b) is clear; once it has been established that one of the enumerated circumstances exists, there can be no dispute about the propriety of recusal." 337 F.3d 1317, 1321–22 (11th Cir. 2003).

Petitioner's recusal motion identified a sworn affidavit from Defendant Bryan Aylstock attributing the challenged conduct to an off-the-record request made by Judge Rodgers concerning Petitioner's individual MDL proceedings. (App. Tab 37 at 3). Aylstock specifically swore that he and Bradford were "requested by Judge Rodgers to appear on behalf of Plaintiffs' 3M MDL leadership" at Petitioner's March 13, 2024 hearing and that Bradford communicated with Petitioner's counsel "at the MDL Court's request in advance of the March 13, 2024 hearing." (App. Tab 27-1 ¶¶ 11–12). AWKO Defendants rely on those requests to argue they acted solely pursuant to Court-created MDL authority and therefore owed no attorney-client or fiduciary duties to Petitioner.[11]

---

[11] (App. Tab 23 at 1–2, 4–5, 7–10; App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33; App. Tab 27-1 ¶¶ 11–12).

Accordingly, the scope and implications of the requests necessarily implicate Judge Rodgers' personal knowledge concerning disputed evidentiary facts central to Defendants' asserted defenses. Defendants contend that no attorney-client relationship or corresponding fiduciary duties arose because they acted solely pursuant to Court-created MDL leadership authority and a Court request rather than as Canup's attorneys.

That defense theory necessarily depends upon the existence and scope of the alleged Court-created authority. [12] Although not binding authority, *Casey v. Denton* is instructive because it addressed the source and scope of MDL leadership authority.[13] Relying on principles reflected in the *Manual for Complex Litigation*, the court explained that "[a]ny relationship between plaintiffs and the Lead and Liaison Counsel Defendants is created by [the MDL appointment order] and is limited to that document." [14] The court further explained that "[a]ny proposed function or responsibility imposed upon leadership counsel may only emanate from the document giving rise to that group's duties."[15]

---

[12] (App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33; App. Tab 27-1 ¶¶ 11–12).

[13] No. 3:17-cv-00521, Memorandum and Order at 8, ECF No. 93 (S.D. Ill. Sept. 4, 2018).

[14] *Id.*

[15] *Id.* at 9.

Those observations are consistent with the *Manual for Complex Litigation*, which provides that "[t]he functions of lead, liaison, and trial counsel, and of each committee, should be stated in either a court order or a separate document drafted by counsel for judicial review and approval." *Manual for Complex Litigation* § 10.222 (4th ed. 2004). The Manual further explains that such a document "will inform other counsel and parties of the scope of designated counsel's authority and define responsibilities within the group." *Id.*

Petitioner disputes the scope and implications of this request and any authority purportedly arising from it. As set forth in the recusal motion, Petitioner identified no noticed hearing, written order, docket entry, or publicly reflected proceeding disclosing or defining any such additional authority beyond the publicly filed MDL orders governing leadership authority.[16] (App. Tab 37 at 3–4). Petitioner further stated that he "was not provided notice of any hearing, order, or proceeding in which such a request was discussed" and was "not aware of any docket entry reflecting such a request." (*Id.* at 3).

The district court acknowledged that the order requiring Canup's appearance "did not expressly state that leadership counsel must be present." (App. Tab 61 at 6 n.3). Nonetheless, the court concluded that "the record clearly reflects" that leadership counsel was requested to attend hearings involving opt-out plaintiffs and

---

[16] (*See also* Tabs B, C).

11

that "[n]othing about this is in dispute." (*Id.* at 6–7). But the public MDL record reflects only that leadership counsel participated in a handful of proceedings involving opt-out plaintiffs, not the existence or scope of any Court-created authority allegedly arising from any off-the-record requests or communications. The publicly filed MDL orders instead reflect that the leadership structure had already been terminated. (App. Tabs B, C).

Case Management Order No. 66 expressly provided that "the existing leadership structure is no longer necessary or appropriate going forward, and is therefore terminated," and further explained that "work on behalf of any who elect not to participate in the Settlement Program will be exclusively individualized." (App. Tab B at 1). The order additionally stated that "no further work performed or expenses incurred in connection with a leadership role will be considered for common benefit compensation, except to the extent expressly authorized by the Court." (*Id.* at 1–2). Although the order preserved a limited role for Bryan Aylstock "for purposes of discussing all aspects of the settlement with 3M, the Court, and any special master," it did not authorize individualized representation or direct involvement in opt-out plaintiffs' claims. (*Id.* at 2 n.1).

CMO 67 similarly limited any remaining common-benefit authority to work connected to "administration of the Settlement Program" and provided that "[n]o other firms or individual attorneys may perform work or incur expenses for common

12

benefit consideration after the date of this Order, unless expressly preauthorized by the Court." (App. Tab C at 2–3).

These orders are central because Defendants' asserted defenses depend upon the proposition that they were acting within Court-created leadership authority during their interactions with Canup as an opt-out plaintiff.[17] But the public MDL record reflects that the leadership structure had already been terminated, that any remaining common-benefit functions were narrowly limited to settlement administration, and that litigation involving opt-out plaintiffs would proceed on an "exclusively individualized" basis. (App. Tabs B at 1–2; C at 2–3).

Accordingly, the issue extends beyond the mere fact that leadership counsel attended hearings involving opt-out plaintiffs. The dispute instead concerns the existence, scope, and implications of any additional authority allegedly arising from off-the-record requests or communications by Judge Rodgers. Because Defendants' asserted defenses depend upon such alleged Court-created authority,[18] resolution of those defenses necessarily implicates Judge Rodgers' personal knowledge concerning disputed evidentiary facts central to the litigation.

These circumstances implicate the concerns addressed in *Edgar*. There, the district judge privately met with a court-appointed expert panel outside the presence

---

[17] (App. Tab 23 at 1–2, 4–5, 7–10; App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33).

[18] (App. Tab 23 at 1–2, 4–5, 7–10; App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33; App. Tabs B at 1–2; C at 2–3).

of the parties concerning factual and merits-related issues central to the litigation. 93 F.3d at 257–60. The Seventh Circuit explained that the communications involved substantive discussions concerning the panel's findings, methodology, and conclusions regarding disputed issues in the case. *Id.* Although the court recognized that § 455 is principally concerned with "extrajudicial" knowledge, it explained that the critical inquiry is whether the disputed information entered the record and remained capable of adversarial testing. *Id.* at 259. The court further explained that off-the-record communications "leave no trace in the record," rendering the nature and reliability of the information "unknowable," and concluded that "[m]andatory disqualification under § 455(b)(1) follows." *Id.*

In reaching that conclusion, the Seventh Circuit relied heavily upon *Liteky v. United States,* 510 U.S. 540 (1994), which rejected the proposition that only information acquired wholly outside judicial proceedings may constitute disqualifying personal knowledge under § 455(b)(1). *Edgar,* 93 F.3d at 259 (citing *Liteky,* 510 U.S. at 551–57). The Seventh Circuit ultimately granted mandamus relief and directed reassignment of the case. (*Id.* at 262).

Petitioner does not contend that recusal is required merely because Judge Rodgers presided over the MDL proceedings or possesses ordinary judicial familiarity with them. Rather, the issue concerns Defendants' reliance on a Court request that does not appear on the public record and authority allegedly arising from

14

that request as substantive defenses to the challenged conduct, where the existence, scope, and implications of that authority are themselves disputed merits issues central to the litigation.

Because Defendants contend that no attorney-client relationship or fiduciary duties arose due to authority allegedly conferred by an off-the-record Court request, the scope and implications of that request have become disputed issues central to the litigation. Under these circumstances, § 455(b)(1) is directly implicated because resolution of those issues is inextricably intertwined with Judge Rodgers' personal knowledge concerning the request and any authority purportedly arising from it.

### b. Recusal is Required Under 28 U.S.C. § 455(a) Because an Objective Observer Could Reasonably Question Impartiality Under the Circumstances Presented Here

The same circumstances that implicate § 455(b)(1) also independently require recusal under § 455(a), which mandates disqualification where "an objective, disinterested lay observer fully informed of the facts would entertain a significant doubt about the judge's impartiality." *Patti,* 337 F.3d at 1321. Unlike § 455(b)(1), which addresses specific circumstances requiring mandatory disqualification, § 455(a) safeguards public confidence in the judiciary whenever the appearance of impartiality is reasonably called into question. *Id.* at 1321–22.

The appearance concerns extend beyond the disputed off-the-record request itself. During proceedings in the underlying MDL, Judge Rodgers made public

15

statements commending MDL leadership counsel and the representation provided to MDL plaintiffs. At a September 8, 2023 case management conference, Judge Rodgers stated that "the leadership teams on both sides really do exemplify the very best of the legal profession" and that the "250,000-plus plaintiffs" in the MDL "were represented very well." [19] Judge Rodgers also stated: "Those who reject the settlement will learn hard lessons that Judge Miller and I already know, but that's for another day."[20]

The present litigation directly challenges the conduct of attorneys connected to that MDL leadership structure and specifically concerns settlement-related interactions with opt-out plaintiffs, including Canup, following execution of the MSA. Defendants themselves rely upon the MDL leadership structure, Court-created authority, and an off-the-record Court request as central components of their defenses. Under these circumstances, an objective observer could reasonably question impartiality where the litigation places at issue the conduct, authority, and responsibilities of attorneys whom the presiding judge previously publicly commended as exemplifying "the very best of the legal profession" and stated had represented MDL plaintiffs "very well."[21]

---

[19] (App. 37-4 at 13:14–21).

[20] (*Id.* at 8:10–12).

[21] (*Id.* at 13:14–21).

Although judicial remarks during proceedings ordinarily do not require recusal, the Supreme Court has recognized that such remarks may do so where they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky,* 510 U.S. at 555. Petitioner does not contend that the statements independently require recusal in isolation. Rather, under the unusual circumstances presented here, those statements further contribute to the appearance concerns created by AWKO Defendants' reliance upon alleged Court-created authority and disputed off-the-record requests as substantive defenses.

The appearance concerns are further reinforced by prior recusals in materially similar attorney-misconduct actions arising from the same MDL proceedings. In *Kelly v. Aylstock,* No. 3:25-cv-01649 (N.D. Fla.), and *Kelly v. Aylstock,* No. 3:25-cv-01947 (N.D. Fla.), Judge Rodgers recused from actions involving allegations of attorney misconduct connected to representation within the 3M MDL.[22] Although those recusals do not independently compel disqualification here, they remain relevant to the objective appearance analysis under § 455(a). A reasonable observer could question why allegations concerning attorney conduct, overlapping defendants and settlement-related activities connected to the same MDL proceedings warranted recusal in those actions but not here.

---

[22] (App. Tab 37 at 2, 9–11; App. Tabs 37-5, 37-6, 37-8, 37-9).

17

The issue is not whether Judge Rodgers harbors actual bias or prejudice against any party. Rather, the question is whether "an objective, disinterested lay observer fully informed of the facts" would reasonably question impartiality under the circumstances presented. *Patti,* 337 F.3d at 1321. Given Defendants' repeated reliance upon alleged Court-created authority and off-the-record Court requests as defenses to the challenged conduct,[23] combined with Judge Rodgers' prior public praise of MDL leadership[24] and prior recusals in materially similar litigation,[25] § 455(a) independently requires recusal to preserve public confidence in the impartial administration of justice.

### 2. Issuance of the Writ Is Appropriate Under the Circumstances to Preserve Public Confidence in the Integrity of the Proceedings

Issuance of the writ is appropriate because the issues presented implicate not only the fairness of these proceedings, but public confidence in the integrity and impartiality of the judicial process itself. Section 455(a) exists "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 865 (1988). As the Supreme Court explained, "[t]he guiding consideration is that the

---

[23] (App. Tab 23 at 1–2, 4–5, 7–10; App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33; App. Tab 27-1 ¶¶ 11–12).

[24] (App. Tab 37-4 at 13:14–21).

[25] (App. Tabs 37-7, 37-9).

administration of justice should reasonably appear to be disinterested as well as be so in fact." *Id.* at 869–70 (quoting *Pub. Utils. Comm'n v. Pollak,* 343 U.S. 451, 466–67 (1952) (Frankfurter, J., in chambers)). Thus, "if it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists." *Id.* at 859–61.

These concerns are especially acute here. This proceeding arises from allegations concerning attorney conduct connected to what Judge Rodgers herself described as "by far the largest MDL in the federal judiciary's history," involving approximately 400,000 plaintiffs represented by roughly 500 law firms and comprising "one-third of the judiciary's entire civil docket for more than two years." (App. Tab 61 at 1–2).

Defendants' asserted defenses depend upon an off-the-record request attributed to Judge Rodgers, the substance, scope, and implications of which are themselves disputed merits issues central to the litigation. The surrounding circumstances include prior public statements commending MDL leadership counsel as "the very best of the legal profession" and stating that MDL plaintiffs were represented "very well,"[26] prior recusals in materially similar attorney-misconduct

---

[26] *(App. Tab 37-4 at 13:14–21).*

19

litigation arising from the same MDL,[27] and disputed issues concerning alleged Court-authorized leadership authority following termination of the MDL leadership structure.[28] Considering the totality of the circumstances, continued proceedings before Judge Rodgers risk undermining public confidence in the neutrality and impartiality of the adjudicative process.

The Eleventh Circuit has repeatedly recognized that preserving public confidence in the judiciary is itself a compelling institutional interest warranting reassignment where impartiality may reasonably be questioned. In *United States v. Torkington,* the Court explained that "the judicial system has the obligation of preserving public confidence in the impartial and fair administration of justice" and that where continued participation "presents a significant risk of undermining this public confidence, this Court has the authority and the duty to order the case reassigned to a different district judge." 874 F.2d 1441, 1446 (11th Cir. 1989). The Court further emphasized that "[w]e must preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice." *Id.* at 1447. Likewise, in *United States v. White,* the Eleventh Circuit explained that reassignment may be necessary because "justice

---

[27] (App. Tabs 37-7, 37-9).

[28] (App. Tab 23 at 1–2, 4–5, 7–10; App. Tab 27 at 2, 18–25; id. ¶¶ 15, 21, 26–33; App. Tab 27-1 ¶¶ 11–12; App. Tabs B, C).

should not only be done, but should manifestly and undoubtedly be seen to be done."

846 F.2d 678, 695 (11th Cir. 1988).

Petitioner does not contend that actual bias or bad faith is required. As the Eleventh Circuit explained in *Kelly,* "[w]e need not speculate on whether the judge in this case felt actual ill-will or prejudice," because "[i]t is enough that the average layperson would have doubts about any judge's impartiality under these circumstances." 888 F.2d at 745. The Supreme Court likewise has recognized that "justice must satisfy the appearance of justice." *In re Murchison,* 349 U.S. 133, 136 (1955). Under these circumstances, mandamus relief is appropriate to preserve the appearance and integrity of impartial adjudication before further substantive proceedings occur.

### 3. Petitioner Has No Other Means to Obtain the Requested Relief

Petitioner has no other adequate means to obtain the requested relief because orders denying recusal are generally not immediately appealable under 28 U.S.C. § 1291. The Eleventh Circuit has expressly recognized that review of disqualification rulings ordinarily proceeds through mandamus. *See Wyatt,* 92 F.3d at 1081 ("The court's order would be reviewable on a petition for a writ of mandamus."); *Corrugated Container,* 614 F.2d at 961 n.4. ("We do not deny our authority to review on mandamus the question of disqualification.").

21

Absent mandamus relief, Petitioner would be required to continue litigating before a judge whose impartiality he contends may reasonably be questioned and whose personal knowledge is directly implicated by disputed evidentiary issues central to Defendants' asserted defenses. Although post-judgment review may ultimately permit appellate correction of an erroneous refusal to recuse, it cannot adequately remedy the institutional harms addressed by § 455. As the Third Circuit explained, although "review after final judgment can (at a cost) cure the harm to a litigant," it "cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent." *Alexander,* 10 F.3d at 163 (quoting *In re Sch. Asbestos Litig.,* 977 F.2d 764, 776 (3d Cir. 1992)).

Petitioner possesses no alternative procedural mechanism capable of providing meaningful immediate review. Petitioner already sought recusal in the district court, and reconsideration would necessarily be directed to the same judge whose recusal is sought. Ordinary appeal remains unavailable absent final judgment or an otherwise appealable interlocutory order. The Eleventh Circuit has likewise recognized mandamus as the proper mechanism for immediate review of recusal denials. *See Moody,* 755 F.3d at 898–99; *Patti,* 337 F.3d at 1322–23 (recognizing that a litigant "immediately could have petitioned this Court for a writ of mandamus upon the denial of his motion" to recuse).

22

The harms addressed by § 455 are immediate and institutional. As the Eleventh Circuit has stated, "We recognize the systemic and case-specific importance of recusal in our judicial system and the grave consequences that may result from an erroneous failure to recuse." *See Moody*, 755 F.3d at 899. Once proceedings continue before a judge whose impartiality may reasonably be questioned, the resulting harm to public confidence in the integrity and impartiality of the judicial process cannot be fully remedied after final judgment. *See Liljeberg,* 486 U.S. at 864–65; *Alexander,* 10 F.3d at 167. Mandamus therefore provides the only adequate mechanism through which Petitioner may obtain meaningful review before further substantive proceedings occur.

### Conclusion

For the foregoing reasons, Petitioner respectfully requests that this Court issue a writ of mandamus directing recusal and disqualification of United States District Judge M. Casey Rodgers from further participation in this proceeding pursuant to 28 U.S.C. § 455(a) and § 455(b)(1), and directing reassignment of this action to a different district judge for all further proceedings.

Signed this 30th day of May, 2026.                    Respectfully submitted,

                                                      */s/ Brandon Canup*

                                                      Brandon Canup, Petitioner
                                                      4812 Hidden Oaks Ln

Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

***pro se***

## Certificate Of Compliance

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 5,188 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

*/s/ Brandon Canup*

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

***pro se***

24

## Certificate Of Service

I HEREBY CERTIFY that I filed this Petition for Writ of Mandamus using the court's electronic-filing system and that a copy of the Petition was furnished pursuant to Federal Rules of Appellate Procedure 21 and 25(d) via email on this 30th day of May 2026 to the following:

Hon. M. Casey Rodgers
District Judge of the United States District Court,
Northern District of Florida
flnd_rodgers@flnd.uscourts.gov

Gregory K. Rettig
Counsel for Defendants Bryan Aylstock,
Bobby Bradford and Aylstock, Witkin, Kreis &
Overholtz, PLC
grettig@lgwmlaw.com

Jonathan Vine
Counsel for Defendants Gregory Brown and
Fleming, Nolen & Jez, LLP
jonathan.vine@csklegal.com

Benjamin Stevenson
Counsel for Defendant
Mostyn Law Firm, PC
bjs@stevenson-legal.com

/s/ Brandon Canup

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

25