UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO.: 3:26-cv-3359-MCR-HTC

BRANDON CANUP,

    *Plaintiff*,

v.

BRYAN F. AYLSTOCK, BOBBY
BRADFORD, MICHAEL BURNS, CLIFF
ROBERTS, GREGORY
BROWN, AYLSTOCK WITKIN KREIS &
OVERHOLTZ PLC, FLEMING
NOLEN & JEZ LLP, and MOSTYN LAW
FIRM PC,

    *Defendants*.

_____/

## **TEXAS DEFENDANTS' MOTION TO DISMISS CANUP'S FIRST AMENDED PETITION**

Defendants, GREGORY BROWN (hereinafter "Brown"), CLIFF LEE ROBERTS (hereinafter "Roberts"), and FLEMING NOLEN & JEZ LLP (hereinafter "Fleming") (collectively "Texas Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Motion to Dismiss Plaintiff's, BRANDON CANUP (hereinafter "Canup"), First Amended Petition [DE 60] (the "Complaint"), attached hereto as **Exhibit** "**1**", filed on May 12, 2026, with supporting Memorandum of Law and grounds therefore state as follows:

CASE NO.: 3:26-cv-3359-MCR-HTC

## INTRODUCTION AND SUMMARY OF ARGUMENT

As this Court is well aware, this Court previously presided over a products liability, multidistrict  litigation ("MDL"), consolidated in this Court, entitled *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.) (the "3M Litigation"), in which Canup participated as a plaintiff.  The 3M Litigation was the largest MDL in the federal judiciary's history, with approximately 400,000 plaintiffs represented by 500 different law firms. Leadership counsel, appointed by the Court to conduct common benefit work on behalf of all claimants in the 3M Litigation, ultimately negotiated a $6 billion global settlement, which Canup opted out of.  After opting out, Canup continued to litigate his case until he negotiated his own settlement through separate counsel, who is not a party to this case.  Canup now files the instant *pro se* lawsuit against his original MDL attorneys and MDL leadership counsel.

The crux of Canup's claims is that his individual case was not appropriately pursued by Texas Defendants and that he was ultimately barred from asserting hearing loss claims.  *See generally,* Compl.[1]  Canup's lengthy pleading has been crafted in a calculated manner to give the appearance that the global settlement, as a

---

[1] While Mostyn Law Firm is also a Texas law firm, for purposes of this Motion, "Texas Defendants" refers only to Gregory Brown, Cliff Lee Roberts, and Fleming Nolen & Jez, L.L.P., as grouped by Plaintiff in the operative Complaint.

whole, was improperly settled. *Id.* Canup's Complaint accuses all defendant attorneys, *as well as this Honorable Court,* of establishing a global settlement that created conflicts of interest and improper monetary incentives for the attorneys. For example, Canup asserts:

> 42. The [global settlement agreement] required participating counsel to recommend the settlement to all eligible clients and prohibited them from continuing to represent any client who chose not to participate in. The [global settlement agreement] states that the amount to be paid under the settlement depended on the level of claimant participation and tie attorney compensation to participation levels.
>
> 43. The [global settlement agreement] required participating counsel to withdraw from representing any client who chose not to participate and give up any interest in that client's claim, including ensuring that any other counsel did the same.
>
> 44. The terms of the [global settlement agreement] created conflicts of interest between claimants who chose to participate in the settlement and Canup, who chose to continue litigating. Defendants represented other clients who chose to participate in the settlement, and those terms therefore created conflicts of interest between Defendants, as participating counsel under the [global settlement agreement], and Canup.

Am. Compl. ¶¶ 42-44. [2]  In sum, Canup takes issue with the global settlement agreement and the Court directives that followed.

---

[2] It bears noting that, "[p]articularly in complex litigation, courts have broad managerial power that includes significant discretion in awarding fees…The panel in *Florida Everglades* explained the "much larger interests" that arise in MDL cases—not only the sheer number of plaintiffs and claims involved but also the importance of effectively and efficiently managing the crushing caseloads of federal

3

CASE NO.: 3:26-cv-3359-MCR-HTC

This suit –containing only conclusory allegations– is truly *another* attempt by Canup to seek reconsideration of the MDL's Orders, this time, under the guise of a malpractice action.  When ruling on this Motion and evaluating Canup's claims, this Honorable Court may cast aside conclusory allegations, which serve no purpose, and focus on the <u>actual factual allegations</u> supporting Canup's causes of action.  Upon putting aside Canup's (literal) conspiracy theories and focusing on Canup's purported factual allegations, Canup fails to state viable causes of action against the Texas Defendants. As such, dismissal of the entirety of Canup's Complaint as against Texas Defendants is warranted for the following reasons:

1. Despite submitting a 40-page pleading, Canup fails to state sufficient facts to support a viable malpractice claim.  Canup omits key facts from the underlying MDL proceeding (which this Court can take judicial notice of); includes contradictory allegations which ultimately carry no weight; and has not established causation or damages related to any of the conduct of the Texas Defendants.

2. Canup claims for fraudulent inducement, breach of fiduciary duty, and civil conspiracy are impermissibly fractured legal malpractice claims, barred by the anti-fracturing doctrine. *See Won Pak v. Harris*, 313 S.W.3d 454, 457-58 (Tex. App.—Dallas 2010, pet. denied) (plaintiff's breach of fiduciary duty, fraud, and civil

---

courts. *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972, etc., v. Eastern Air Lines, Inc. et al.*, 549 F.2d 1006 (5th Cir. 1977). Thus, the "broad grant of authority" awarded to trial courts when consolidating cases includes the ability to compensate appointed counsel that carry "significant duties and responsibilities." *Id.* at 1013–14, 1016.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

conspiracy claims were impermissibly fractured legal malpractice claims); *see also Pitts v. Rivas*, 709 S.W.3d 517, 524-25 (Tex. 2025).

3. Canup's claims for fraudulent inducement and breach of fiduciary duty are likewise barred due to the explicit agreement of the parties, i.e., the language of the parties' retainer agreement. *See* Retainer Agreement, attached as **Exhibit "2."** Canup also fails to plead fraud with requisite particularity required under Rule 9.

4. Canup's civil conspiracy claim also fails because it is not supported by a viable underlying tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

Accordingly, for the reasons explained in detail herein, Canup's claims against Texas Defendants should be dismissed, with prejudice.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   The 3M Litigation.

1.   On April 3, 2019, the United States Judicial Panel on Multidistrict Litigation ("MDL") transferred multiple actions to the Northern District of Florida for coordinated pretrial proceedings entitled *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.).   Am. Compl. ¶ 25.

2.   On May 22, 2019, the MDL court appointed certain attorneys (Aylstock of AWKO and Burns of Mostyn Law firm) to leadership roles, referred to as "PSC"

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

for "Plaintiff's Steering Committee" to conduct common benefit work on behalf of *all* claimants. *Id.* ¶ 26.

3.      That Order, which this Court may take judicial notice of, and which has been incorporated into the pleadings, specifically stated:

> "The Court intends for this three-member group – one lead counsel supported by two co-lead counsels – to collaboratively lead and coordinate the activities of all plaintiffs' attorneys in this litigation and, in consultation with the Executive Committee, make all decisions – strategic, procedural, and/or substantive – on behalf of all plaintiffs.  In the event of a disagreement, the decision of Lead Counsel will control."

*See id.*

4.      On or about June 21, 2019, after the case was consolidated and leadership counsel was appointed, Canup retained the Texas Defendants.

5.      Canup executed a retainer agreement (the "Retainer Agreement") provided to him by Defendant Cliff Roberts on or about June 21, 2019, which Canup quotes and references throughout his Petition.  Am. Compl. ¶ 28.  A copy has been attached as **Exhibit "2."**  This Court may consider same. [3]

---

[3]  As explained herein, this Honorable Court may consider the Retainer Agreement when ruling on the instant Motion, because it has been incorporated by reference in the Complaint and the Retainer Agreement is central to Canup's claim. *See e.g., Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

6.      On June 3, 2020, Canup filed a Master Short Form Complaint ("SFC") in the MDL, which he refiled in May 2022.  *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC ("*Canup*"), Short-Form Complaint [DE 1]; MDL [DE 763].

7.      Notably, neither of Canup's SFCs checked the box for "hearing loss" or "sequalae to hearing loss."  *Id.*

8.      Ultimately, 3M and the class representatives entered into a global settlement agreement ("GSA"), which resolved the MDL claims and established a benefits program to compensate eligible claimants.

9.      The Court later approved the GSA, which required each attorney representing an eligible claimant to: (1) recommend that their clients accept the GSA terms and register in the benefits program; and (2) withdraw from representation of any claimant who opted out of the program. *See generally,* Compl.    Note, the Retainer Agreement also authorized Texas Defendants to withdraw for any reason.

10.     On January 1, 2024, Canup opted out of the GSA, requiring Texas Defendants to file a motion to withdraw.

11.     On February 13, 2024, Canup retained new counsel, David Gamble, to represent him individually against 3M.  *Canup*, Notice of Appearance [DE 9].

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

12. On February 15, 2024, Defendant Brown filed a Motion to Withdraw, which was granted on February 20, 2024. *See* Motion [DE 10]; Order [DE 12]. Thus, Canup was never without counsel.

13. On April 17, 2024, following Canup's opt-out, the Court ordered Canup to file a case-specific long-form complaint ("LFC"). That Order specifically stated that Canup could not "use this opportunity to add new allegations or causes of action" to his Complaint. *Canup,* Order [DE 15].

14. Plaintiff filed his LFC on May 1, 2024. *Canup,* LFC [DE 17]. The LFC alleged that Plaintiff "has suffered hearing loss, tinnitus, and/or additional hearing-related injuries." *Id*. ¶ 11.

15. On May 15, 2024, the 3M defendant in the MDL filed a motion to dismiss Canup's LFC, arguing the hearing loss claims should be dismissed with prejudice because their inclusion violated the Court's April 17, 2024, Order and Rule 15. *Canup,* Motion to Dismiss [DE 24].

16. Plaintiff, through new counsel, filed a response in opposition to that Motion to Dismiss, in which he argued these claims were permissible. *Canup,* Response [DE 26].

17. This Court granted the motion to dismiss, dismissing the hearing loss claims. *Canup, Order* at [DE 31].

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

18.     Canup filed a motion for reconsideration of that denial on August 15, 2024, raising numerous arguments, including mistake and inadvertence by the Texas Defendants in omitting his hearing loss claims. *Canup,* Motion [DE 36].

19.     This Court denied Canup's Motion for Reconsideration, but noted as follows:

> The Court declines to construe this request as an independent motion for leave to amend under any applicable rule. The Court finds that Canup's request is not specific enough to address without separate briefing and, as the Local Rules of this Court require, a copy of the proposed Complaint that includes the desired amendments. **Notably, it is unclear to the Court if Canup seeks to amend his Complaint to add more than hearing loss-related allegations or claims based on the request as brought in the current Motion.**

Order at [DE 52]. (emphasis added).

20.     Significantly, Plaintiff never moved for leave to amend his complaint under Rule 15 before or after filing his long-form complaint.

21.     Canup reached a settlement of his MDL action in September of 2024 with his new attorney.

**B.     The Malpractice Litigation**

22.     On October 27, 2025, Canup filed initiated instant lawsuit.[4]

---

[4] Canup filed a Motion for Leave to File a First Amended Complaint, attaching a proposed amended complaint [DE 34], which this Court granted on May 6, 2026, denying pending Motions to Dismiss as moot. *See* Order [DE 54].

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

23.     On May 12, 2026, Canup filed the now-operative Complaint, i.e., the First Amended Petition [DE 60], asserting the following causes of action against the Texas Defendants: (1) Fraudulent Inducement ("Claim (A)(1)");  (2) Breach of Fiduciary Duty (Claim (A)(2); (3) Legal Malpractice *in the Alternative* (Claim (A)(3).

24.     Separately, Canup also asserts a claim for Civil Conspiracy, labeled as Claim (C)(3), against all of the Defendants in this action.

## MEMORANDUM OF LAW

### I.     APPLICABLE LEGAL STANDARDS

#### A. Standards Governing Motions to Dismiss

Pursuant to Rule 8(a) of Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that, if accepted as true, states a claim for relief that is plausible on its face. *Id.* at 570.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

In ruling on a motion to dismiss, a court must first **separate** the complaint's legal conclusions—which are disregarded—from its factual allegations, and which are therefore not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-680 (2009). The remaining factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.  If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft* , 556 U.S. at 678 (quoting *Bell Atl. Corp.,* 550 U.S. at 557). In other words, where the well-pleaded facts do not permit the court to infer **more** than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.*; Fed. Rule Civ. Proc. 8(a)(2).  A plaintiff must be able to "nudge [his] claims"… "across the line from conceivable to plausible."  *Ashcroft,* 556 U.S. at 678–79.  Rule 8 will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.*

## B. <u>Consideration of Additional Sources.</u>

Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it. *Grossman v. NationsBank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss, generally,

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

must be converted into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).  However, there are <u>two exceptions</u> to this conversion rule: (1) the incorporation-by-reference doctrine; and (2) judicial notice.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007).

A document attached to a motion to dismiss may be considered by the court *without* converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999).  Accordingly, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

Importantly, "the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation omitted); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (defining public record for purposes of motion to dismiss to include case dispositions); *see also* Fed. R. Evid. 201(b) (Courts may take judicial notice of a fact that is not subject to reasonable dispute in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

readily determined from sources whose accuracy cannot reasonably be questioned."). Accordingly, this Court may consider all Orders issued by this Court in the underlying 3M Litigation, which are not subject to reasonable dispute; especially those which have been directly referenced by Canup and are central to Canup's claim. Additionally, this Court may also consider motions, responses, and other documents in the Court record in the underlying 3M Litigation. Lastly, this Court may also consider the Retainer Agreement.

## **ARGUMENT**

### I.  **CANUP FAILS TO STATE A VIABLE CAUSE OF ACTION FOR LEGAL MALPRACTICE AGAINST TEXAS DEFENDANTS.**

This Court may separate Canup's conclusory allegations from his factual assertions; only Canup's <u>factual assertions</u> should be afforded the assumption of truth. Upon dissecting Canup's allegations – one by one – it becomes clear that they are all either conclusory, vague, or simply incorrect. As such, applying the rules of construction established in *Ashcroft/ Bell Atl. Corp.* to the instant case, Canup has not "nudged [his] claim" of malpractice "across the line from conceivable to plausible," and his legal malpractice should be dismissed with prejudice. *Ashcroft,* 556 U.S. at. 678–79.

In Texas, a legal malpractice claim sounds in tort and is evaluated based on negligence principles. *See Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989).

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

A plaintiff must prove four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff injury; and (4) damages occurred. *See SMWNPF Holdings v. Devore,* 165 F.3d 360, 364 (5th Cir.1999) (citing *Cosgrove* 774 S.W.2d at 662, 664–65; *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995).

"As in other negligence cases, a legal-malpractice plaintiff must prove that [its] lawyer's negligence was the proximate cause of cognizable damage." *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017). "A lawyer can be negligent and yet cause no harm." *Id.* at 400; *see, e.g.*, *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) ("[E]ven when negligence is admitted, causation is not presumed."). The determination of proximate cause is usually a question of fact. However, the Texas Supreme Court has held that in cases of appellate legal malpractice, the determination of causation is a <u>question of law</u>. *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 628 (Tex. 1989) (collecting cases). In reaching this conclusion, the Texas Supreme Court explained:

> The question of whether an appeal would have been successful depends on an analysis of the law and the procedural rules. [Plaintiff's] position that the jury should make this determination as a question of fact would require the jury to sit as appellate judges, review the trial record and briefs, and decide whether the trial court committed reversible error. A judge is clearly in a better position to make this determination. Resolving legal issues on appeal is an area

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

> exclusively within the province of judges; a court is qualified in a way a jury is not to determine the merits and probable outcome of an appeal. Thus, in cases of appellate legal malpractice, where the issue of causation hinges on the possible outcome of an appeal, the issue is to be resolved by the court as a question of law.

*Id.*

As to damages, when a legal-malpractice case arises from prior litigation, the plaintiff must prove he would have obtained a "more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Id.* at 401 (citing *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013)). This is commonly referred to as proving a "case-within-a-case." *See id*. The general measure of damages in a legal-malpractice case is the difference between the amount the plaintiff probably would have recovered in the absence of malpractice, and the amount recovered." *Elizondo*, 415 S.W.3d at 270. When the alleged malpractice is in the context of a settlement, evidence of settlements made under comparable circumstances may take the place of the "case-within-a-case" doctrine. *Id.*

The instant case presents an incredibly unique situation for this Court. Similar to an appellate legal malpractice claim, the crux of Canup's case involves <u>questions of law</u>; specifically, regarding this Court's Orders in the largest MDL in federal court history. Canup asserts that the Texas Defendants breached their duty of care to Canup by "failing to investigate and develop Canup's case over a four-year period, including failing to amend pleadings to include hearing-loss claims, which

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

contributed to the MDL Court's dismissal of this claims." Am. Compl. ¶ 131. Canup asserts that the MDL Court "cited the absence of prior amendment and development of hearing-loss claims as a reason for barring and dismissing those claims." *Id.* ¶ 132. Canup also asserts that the Texas Defendants engaged in "disloyal conduct" by acting in furtherance of the GSA, by maintaining conflicted representations, by making "misleading statements" about MSA/GSA participation, in order to encourage participation. *See generally,* Compl. Canup also implies that the Texas Defendants did not maintain adequate communication with him, did not meet applicable Court deadlines, and did not take reasonable steps to protect his interests. *Id.* ¶ 130. Despite its length, Canup's Complaint is pled in conclusory fashion and the few facts he includes are contradicted by the 3M Litigation.

First, Canup conveniently omits from his pleading that discovery of his case was essentially stayed via Case Management Order No. 1. *See Canup,* [DE 86]. As this Court is aware, the discovery was conducted in stages. Canup's case was simply not selected for discovery. Thus, Canup's gripes are with a <u>Court Order</u>. Canup does not identify any missed deadlines and instead just recites formulaic elements of malpractice. For example, Canup complains over the following:

> "Canup was required, with newly retained counsel, to gather, organize, and produce extensive documentation over a compressed timeframe, tasks that would ordinarily have been performed by prior counsel had they chosen to actively litigate Canup's claims."

Compl. ¶ 70.  The "compressed time frame" arose *after* Canup's opt-out.  Canup's obligations to produce the "extensive documentation" over a "compressed time frame" was **not** due to the actions or inactions of Texas Defendants, but due to a Court Order, entered in the discretion of this Court, to streamline this enormous MDL.[5]  *See* [DE] 3811. Texas Defendants could not have acted sooner, and Canup's obligation to act did not arise until *after* his opt-out—all of these actions were in alignment with this Court's Orders.

Thus, Canup has not, and cannot, provide a causal link between any act or omission by Texas Defendants and any actual damage.  Canup was merely required to act "in a compressed timeline" by the Court, ***like all other plaintiffs who elected to opt-out***.  Canup is, once again, quarreling with this Court's Orders.

## A. <u>Hearing Loss Claims</u>

Turning to Canup's hearing loss allegation, Canup fails to establish causation for this claim as well.  Canup does not plead facts showing a plausible causal connection between the Texas Defendants' actions and the Court's ultimate decision

---

[5] [M]ultidistrict litigation 'presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation.' This wide latitude applies, in particular, to issuing discovery orders, and to dismissing actions for non-compliance with such orders." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017) (internal citation omitted).

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

CASE NO.: 3:26-cv-3359-MCR-HTC

to dismiss his hearing loss claims—which notably, is different from a denial of a motion for leave to amend to assert hearing loss claims. Canup does not include factual allegations as to how the Texas Defendants fell below the standards of care of a reasonable attorney.  For example, Canup does not allege that he informed counsel of his hearing loss claims; that they failed to amend despite opportunities or requests; or why they should have known to include these claims.  In fact, Canup's short-form-complaint demonstrates that Canup **did not** include hearing loss claims, twice; he did not check the box for hearing loss claims.  After this Court dismissed Canup's hearing loss claims (granting a motion to dismiss in the underlying MDL), Canup filed a motion for reconsideration, arguing that Canup should be permitted to include those claims because they were "new evidence."

Notably, Canup indicates in his motion for reconsideration that he learned of his hearing loss claims *later in the case,* making it impossible for Texas Defendants to have known about his hearing loss claims. Thus, Canup appears to be claiming that the Texas Defendants should have asserted injuries that he himself represented were discovered through newly obtained evidence.

Interestingly, Canup later contradicts himself, indicating that he had suffered hearing loss for 9 years.[6]  Regardless, Canup clearly had an opportunity to attempt

---

[6]   On February 18, 2024, under penalty of perjury, Canup executed a Plaintiff Fact Sheet. Decl. of C. Beall Ex. A ("PFS") at 32. The PFS alleged that Canup first noticed

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

to amend his hearing loss claims *after* Texas Defendants withdrew. Canup briefed this issue at length with new counsel when Canup opposed a motion to dismiss in the underlying case, and further, when he filed a motion for reconsideration of the dismissal of his hearing loss claims.

Notably, this Court entered an Order stating that the Court did not consider Canup's reconsideration motion as a motion for leave to amend.  Canup, however, never filed a motion for leave to amend seeking to assert hearing loss claims. Canup could have attempted to amend his claims after Texas Defendants withdrew, but he did not do so.  Therefore, Texas Defendants were not the proximate cause of Canup's alleged inability to assert a hearing loss claim.

Comparing Canup's conclusory allegations in the instant action with his own prior motions in the 3M Litigation (which the Court may consider), Canup has not alleged sufficient facts which could support that the Texas Defendants should have included these claims, or that Canup was permanently precluded from asserting this claim through the fault of the Texas Defendants. Canup's position, to date, has been contradictory, and considering his omissions in the instant pleading, his conclusory

difficulty with his hearing in 2011. *Id*. at 25–27. Thus, in his PFS, Canup claimed he experienced hearing loss nearly *nine years* before he filed his first SFC that failed to identify any hearing loss injuries.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

allegations should certainly not be entitled to an assumption of truth.  Simply put, the Complaint does not actually plead a non-conclusory causal connection.

## B. Canup's Lack of Damages

Canup alleges he suffered economic damages in the form of wasted expert fees. These fees cannot serve as a basis for damages.  The general measure of damages in a legal-malpractice case is the difference between the amount the plaintiff probably would have recovered in the absence of malpractice, and the amount recovered." *Elizondo*, 415 S.W.3d at 270.  Here, Canup voluntarily opted out of a global settlement and chose to settle his case with new counsel.  Canup has not alleged that he received less than he should have. In other words, Canup does not allege that he was eligible for a greater recovery than that already received under the settlement agreement. *Cf Duerr v. Brown*, 262 S.W.3d 63, 74 (Tex. App. 2008). While Canup may consider his expert fees to have been wasteful, this is another contradiction by Canup. Canup claims on the one hand that he had viable hearing loss claim, but then claims the costs spent on an expert to prove those claims was unnecessary. These expert costs would have been spent regardless. Most importantly, Canup does not allege that Texas Defendants forced him to hire the expert in question.  On the contrary, Texas Defendants recommended settlement. Canup and his new counsel elected to hire an expert.  There can be no proximate

cause between Texas Defendants' conduct and Canup's hiring of the expert, because it was not their recommendation to do so, and these costs do not constitute damages in the context of legal malpractice.

### C. The Global Settlement Agreement

Canup also asserts that the Texas Defendants breached their duties to him "by entering into and participating in the [GSA] ON August 29, 2023." Am. Compl. ¶ 118. While not directly asserted in connection with his malpractice action, for clarity of record, Texas Defendants assert that the GSA certainly cannot be the basis for a malpractice action, or a breach of fiduciary duty action for that matter. The GSA was approved and overseen by the Court. It was also not entered into by the Texas Defendants, *nor* was it entered into by Canup. Canup has mischaracterized the terms of the GSA, which is available to the Court for review, arguing it created a conflict of interest. This was, again, approved by and enforced by the Court, which cannot be the basis for a malpractice claim.

In sum, Canup has not asserted a viable cause of action for malpractice, as he has failed to provide sufficient factual support for his claim. Canup's allegations contradict key Court records, and even taking as true, do not establish any actions that breached a duty owed or caused damages. His malpractice claim should be dismissed with prejudice.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

**II.    CANUP ALSO FAILS TO STATE VIABLE CAUSES OF ACTION FOR FRAUDULENT INDUCEMENT, BREACH OF FIDUCIARY DUTY, OR CONSPIRACY.**

**A. Canup's Claims for Fraudulent Inducement, Breach of Fiduciary Duty and Civil Conspiracy Are Barred by the Anti-Fracturing Rule.**

In Texas, courts have consistently rejected efforts by plaintiffs to convert, or "fracture," negligence-based claims against an attorney into other claims. *See Won Pak v. Harris*, 313 S.W.3d 454, 457-58 (Tex. App.—Dallas 2010, pet. denied) (plaintiff's breach of fiduciary duty, fraud, and civil conspiracy claims were impermissibly fractured legal malpractice claims); *see also Pitts,* 709 S.W.3d at 524-27 (holding that a fraud claim predicated on alleged misrepresentations of competency and concealment of mistakes constituted a fractured malpractice claim). The anti-fracturing rule "serves to prevent legal malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claim to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages." *Pitts*, 709 S.W.3d at 524-25 (quotation marks and citation omitted). The rule bars claims for fraud and breach of fiduciary duty where the gravamen of the complaint "focuses on the quality or adequacy of the attorney's representation." *Won Pak*, 313 S.W.3d at 457.

Under Texas law, "[w]hether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for

professional negligence or something else is a **question of law** to be determined by the court." *Murphy v. Gruber,* 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied) (emphasis added); *Huerta v. Shein*, 498 Fed. App'x 422, *427 (5th Cir. 2012) A plaintiff cannot reassert the same claim for legal malpractice under an alternative label. *See Kimleco Petroleum, Inc. v. Morrison & Shelton,* 91 S.W.3d 921, 924 (Tex.App.–Fort Worth 2002, pet. denied) ("Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice").

Importantly, characterizing conduct as a conflict of interest or a misrepresentation does not alone transform what is really a professional malpractice claim into a fraud or breach of fiduciary duty claim. *Murphy*, 241 S.W.3d at 699. If the essence of the plaintiff's allegations is that an attorney's representation falls below the standard of professional care, their claims are treated as legal malpractice claims, and any non-negligence claims are barred. *Pitts*, 709 S.W.3d at 524. *See also, Greathouse,* 982 S.W.2d at 172 (when the crux of complaint is failure to provide adequate legal representation, the claim asserts legal malpractice); *Forshee v. Moulton*, 694 S.W.3d 803, 811 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (holding that a breach of fiduciary duty claim based on alleged concealment of a conflict of interest constituted a fractured malpractice claim); *Vara v. Williams*, 2013

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

WL 1315035, at *4 (Tex. App.—Austin Mar. 28, 2013, pet. denied) (mem. op.) (holding that fraud and fiduciary duty claims based on allegations of inducement, misrepresentation, and concealment in connection with legal services were fractured malpractice claims); *Murphy*, 241 S.W.3d at 698–99 (holding that claims alleging lack of loyalty, failure to advise, and nondisclosure of conflicts sound in malpractice and cannot be recast as separate torts).

Canup asserts claims for fraud and breach of fiduciary duty against the Texas Defendants based upon conduct that is clearly indistinguishable from his legal malpractice claim.   In support of his fraud claim, Canup alleges that the Texas Defendants fraudulently induced him into entering a fee agreement by representing that they would "investigate, develop, and pursue [Canup's] claims through individualized litigation." Am. Compl. ¶ 102. Canup asserts these representations were false or misleading at the time they were made because the Texas Defendants allegedly "did not have the present intent to individually develop or litigate [Canup's] claims." Am. Compl. ¶ 103. Canup's breach of fiduciary duty claim is premised on the same underlying conduct. Canup alleges that the Texas Defendants owed him fiduciary duties, including duties of loyalty, candor, full disclosure, and the obligation to exercise independent professional judgment. Am. Compl. ¶ 117. Canup further asserts that the Texas Defendants breached these duties by "making

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

misleading statements and omissions regarding withdrawal, the viability of litigation, and their role under the MSA." *Id*. ¶ 120.  Canup also claims that the Texas Defendants breached their duties to him by entering into the MSA without disclosure of informed consent.   Canup cannot state a separate breach of fiduciary duty or fraud claim based on a "conflict of interest" arising from the settlement of multiple claims because Canup contends his interests were somehow compromised due to his lawyers' inattention to his specific case. These are undoubtedly  malpractice claims as a matter of law. *Brown*, 262 S.W.3d at 74 (citing *Deutsch,* 97 S.W.3d at 188–90).

In other words, Canup's allegations are that the Texas Defendants "did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess." *Deutsch,* 97 S.W.3d at 189; *see also Murphy,* 241 S.W.3d at 692–93 (giving erroneous legal opinion or advice, delaying or failing to handle a matter, or not using ordinary care in preparing, managing, and prosecuting a case constitutes legal malpractice); *Goffney,* 56 S.W.3d at 193 (allegations attorney abandoned client at trial, did not properly prepare lawsuit for trial, and misled client into believing attorney was prepared for trial were claims for legal malpractice). Because Canup's cases focuses on the <u>quality of representation</u> provided, it alleges legal malpractice and nothing more.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Moreover, Canup likewise attempts to assert a claim of conspiracy on the premise that the Texas Defendant's conspired with others:

> [A]ll Defendants committed over acts, including concealing material conflicts of interest, and failing to disclose obligations under the MSA, and making false or misleading statement regarding the status of Canup's claims, the viability of continued litigation, and the consequences of settlement, for the purpose of inducing Canup to act in a manner consistent with all Defendants' financial interests.

Compl. ¶ 188.   This claim is based on the same operative facts and alleged misconduct as his fraud and fiduciary duty claims. Compl. ¶ 129.   Specifically, Canup alleges that the Texas Defendants failed to properly investigate, develop, and pursue his claims. Compl. ¶ 130. All of Canup's tort claims against the Texas Defendants arise from a single, unified grievance: Canup's dissatisfaction with the legal services rendered by the Texas Defendants. *See generally id*.   Accordingly, while labeled differently, Canup's claims for breach of fiduciary duty, fraud, and conspiracy describe claims of legal malpractice and should be barred.

## B. **Canup's Fraudulent Inducement Claim is Directly Contradicted by the Parties' Operative Retainer Agreement.**

Texas law imposes a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Fraudulent inducement requires the following basic

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury. *See Zorrilla*, 469 S.W.3d at 153; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent **not** to perform. *Formosa Plastics*, 960 S.W.2d at 48. Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof. *See Haase*, 62 S.W.3d at 798.

A key element that must be established in a fraudulent inducement claim is that the plaintiff was justified in relying on the alleged statements at issue. Generally, justifiable reliance usually presents a question of fact. *See Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 584 (Tex. App.—San Antonio 2011, pet. denied). That said, this element can still be negated, as a matter of law, when objective circumstances exist under which reliance cannot be justified. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (per curiam) ("We hold that, as a matter of law, th[e] reliance was not justifiable."). Thus, there is an objective component to a fraudulent inducement claim. Indeed, a party to an arms-length transaction must exercise ordinary care and reasonable diligence

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

for the protection of its own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,* 112 S.W.3d 854, 858 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (en banc) (op. on reh'g).

Where a contract between two parties directly contradicts the alleged misrepresentations, there can be no justifiable reliance. *See Simpson v. Woodbridge Props., L.L.C.,* 153 S.W.3d 682, 684 (Tex.App.-Dallas 2005, no pet.)(emphasis added). A party that enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement. *See DRC,* 112 S.W.3d at 859. Accordingly, to vitiate a contract, the alleged fraud must be something more than oral representations that merely conflict with the terms of the written contract. *See Athey,* 314 S.W.3d at 165.

In the instant case, Canup must establish that the Texas Defendants made a material misrepresentation, which they had no intent to perform upon, in order to induce him to enter into a contract for legal representation. *See Haase*, 62 S.W.3d at 798. Canup asserts that the Texas Defendants satisfied this element by making "false or misleading" statements regarding their intent to individually develop and litigate his claims. Compl. ¶ 103. Specifically, Canup alleges that Texas Defendants had no present intention of pursuing individualized litigation on his behalf and did not

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

inform him of same. *Id.* Instead, according to Canup, the Texas Defendants operated under a model focused on securing aggregate settlements. *Id.* Notably, Canup alleges that the Texas Defendants failed to disclose this. *Id.*

The Court may consider the operative agreement, i.e., the Retainer Agreement executed by Canup, which Canup has put squarely at issue and has incorporated by reference throughout his pleading. Compl. ¶ 102. ("On June 21, 2029, Texas Defendants entered into a contingency fee agreement with Canup…"). Moreover, the terms of this Retainer Agreement are central to the action, as they define both the scope of representation and the disclosures made at the time of retention. *Id.* To that end, the Retainer Agreement directly addresses the very issue that Canup now characterizes as an undisclosed material fact. Indeed, the Retainer Agreement expressly states that a group or aggregate settlement may occur, as outlined below:

> 6.     Waiver:  The Firms may undertake representation of additional clients who have also sustained damages as a result of the conduct of the same defendant(s).  Client is hereby advised of, and acknowledges, this potential conflict and the positive and negative aspects of multiple and collective representations.  One aspect of representing multiple clients is the potential for an aggregate or group settlement.  In the event there is an aggregate settlement, client agrees that the Firms, at their sole discretion, may apportion the proceeds and expenses among all clients.

*See id.* at 2, ¶ 6.

Thus, the Retainer Agreement expressly contemplates the possibility of a collective resolution and directly contradicts Canup's assertion that the Texas Defendants "concealed" their settlement approach or otherwise misled Canup.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Rather, the plain language of the agreement demonstrates that the potential for a group settlement was disclosed at the outset, thereby undermining any claim of omission or misrepresentation. *See id.* The Retainer Agreement also provides that the firm makes no representations regarding the outcome of Canup's claims:

> 8.    Binding Agreement: This Agreement takes the place of any prior agreement. Any change to this Agreement must be in writing and signed by both Client and the Firms. By signing below, Client acknowledges the contents of this Agreement have been carefully reviewed and agrees to be bound by its terms and conditions. Client acknowledges that the Firms have made no representations to Client regarding the outcome of Client's potential claim and considers the Agreement to be fair and reasonable. Client acknowledges that he/she has not signed an attorney-client agreement with any other law firms and that this is the only agreement applicable.

*See id*. at 3, ¶ 8.

Thus, certain aspects of Canup's fraudulent inducement claims are in direct contradiction with the Retainer Agreement. Canup could not have reasonably and/or justifiably relied on any representation contradicting this agreement, and his allegations should not be afforded the benefit of being held as "true." Rather, these claims fail as a matter of law and should be dismissed with prejudice.

Separately, Canup also fails to allege ***what*** specific statements were made to him that were fraudulent, how they were fraudulent, or by who and when. Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring the plaintiff to "state *with particularity* the circumstances constituting fraud[.]" (emphasis added). At a minimum, Rule 9(b) requires the pleader to allege "the particulars of time, place,

and contents of the false representations, as well as the identity of the person making the misrepresentation and what [they] obtained thereby." *Turner v. AmericanHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). "Put simply, Rule 9(b) requires who, what, when, where, and how to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).Canup has failed to plead his fraud claims with the requisite particularity required under Rule 9, and said claim should be dismissed for that additional reason.  Moreover, in that same vein, it also bears noting that  multiple counts in Canup's Complaint are commingled against multiple defendants.  As such, these counts are improperly pled on that basis as well. Indeed, a complaint that does not "separate[e] into a different count each cause of action or claim for relief" or that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" is improperly commingled and subject to dismissal. *See Weiland*, 792 F.3d 1321-22 (internal footnotes with citations omitted); *see also,* Fed. R. Civ. P. 10(b).  It is well established that conspiracy claims may commingled, but Canup's remaining claims cannot. Accordingly, while Texas

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

Defendants assert this Court should also take this into account when ruling on the instant Motion.

**C. Canup's Breach of Fiduciary Duty Claim is Also Directly Contradicted by the Retainer Agreement.**

Simply, and generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *See, e.g.*, *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010); *see also Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).

Canup alleges that the parties entered into a Retainer Agreement on June 21, 2019. Canup further alleges that the Texas Defendants "breached those duties by entering into and participating in the MSA on August 29, 2023, at least tacitly and in fact, while still representing Canup, and without disclosure or informed consent." Compl. ¶ 118 at 24.  Specifically, Canup takes issue with the MSA that was entered by leadership counsel.  The Retainer Agreement expressly contemplates the precise circumstances about which Canup now complains. Specifically, the Retainer Agreement acknowledges that the representation may involve multiple plaintiffs and explicitly addresses the potential for conflicts of interest that could arise in such a context, stating as follows:

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

> 6.    **Waiver**: The Firms may undertake representation of additional clients who have also sustained damages as a result of the conduct of the same defendant(s).  Client is hereby advised of, and acknowledges, this potential conflict and the positive and negative aspects of multiple and collective representations.  One aspect of representing multiple clients is the potential for an aggregate or group settlement.  In the event there is an aggregate settlement, client agrees that the Firms, at their sole discretion, may apportion the proceeds and expenses among all clients.

*Id.* ¶ 6 at 2.

The Retainer Agreement expressly provides not only that there exists a potential for additional clients who may have suffered similar damages caused by the same defendants, but also that the "[c]lient is hereby ***advised of, and acknowledges***, this potential conflict and the positive and negative aspects of multiple and collective representations." *Id.* This language unequivocally demonstrates that the possibility of a conflict of interest, arising from the representation of multiple similarly situated clients, was fully disclosed to, and expressly acknowledged by Canup.

Accordingly, this provision directly contradicts Canup's assertion that the Texas Defendants failed to disclose any potential conflict of interest. To the contrary, the Retainer Agreement reflects informed consent. In light of this explicit disclosure and acknowledgment, Canup cannot plausibly establish a breach of fiduciary duty premised on an alleged failure to disclose conflicts. Therefore, because the governing agreement expressly negates the basis for Canup's claim, the allegation of breach of fiduciary duty should be dismissed with prejudice.

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

CASE NO.: 3:26-cv-3359-MCR-HTC

### D. CANUP FAILS TO STATE A CLAIM OF CIVIL CONSPIRACY BECAUSE THERE IS NO VIABLE UNDERLYING TORT.

Civil conspiracy is not an independent tort but rather a theory of vicarious liability based upon the commission of an underlying tortious act. *Agar Corp., Inc.*, 580 S.W.3d at 142. Where the underlying tort fails, or where only a negligence-based claim remains, the conspiracy claim necessarily fails as well. See *Allstate Ins. Co. v. Receivable Fin., Inc.*, 501 F.3d 398, 414 (5th Cir. 2007) (holding that where plaintiffs fail to state a viable underlying tort, such as fraud, their civil conspiracy claim must also be dismissed). Here, the only torts supporting Canup's civil conspiracy claims are fraud and breach of fiduciary duty, as a civil conspiracy claim cannot be based upon negligence i.e., legal malpractice. *See Firestone Steel Prods. Co.,* 927 S.W.3d at 617. *See also, Cosgrove*, 774 S.W.2d at 664 ("[a]n attorney malpractice action in Texas is based on negligence."). As discussed herein, Canup fails to state viable claims for fraud and breach of fiduciary duty against the Texas Defendants, and his malpractice claim cannot serve as a basis for civil conspiracy. Accordingly, Canup's civil conspiracy claim must be dismissed with prejudice.

Separately, even if the other underlying claims did not fail, Canup still fails to assert a viable cause of action for civil conspiracy. The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5)

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

damages as the proximate result." *Agar Corp., Inc.*, 580 S.W.3d at 141 (Tex. 2019). Canup has not established the elements of a conspiracy claims, especially when considering the context of the 3M settlement.  First and foremost, Canup has not established the existence of an "unlawful, overt act." *Id.*  Specifically, Canup claims the defendant attorneys conspired to enter into the GSA; notably, an agreement that was approved by this Court.  A court-approved settlement cannot plausibly serve as the basis for an unlawful act in a conspiracy claim.  Additionally, Canup has not established how he was damaged, because he did not ultimately execute this settlement agreement. In sum, Canup fails to establish a viable cause of action for civil conspiracy.

### E. __CONCLUSION__

WHEREFORE, the Texas Defendants, GREGORY BROWN, CLIFF LEE ROBERTS, and FLEMING NOLEN & JEZ LLP, respectfully request this Honorable Court enter an Ordering dismissing Plaintiff's, BRANDON CANUP, First Amended Petition, with prejudice, as well as any other relief deems just and appropriate in light of the foregoing.

[CERTIFICATE OF SERVICE ON THE FOLLOWING PAGE]

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

CASE NO.: 3:26-cv-3359-MCR-HTC

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(F)

I hereby certify that the above Response in Opposition, including the case style, signature block, and any certificate of service, contains 7998 Words, in compliance with Local Rule 7.1(F), and therefore does not exceed eight thousand (8,000) words.

By: _s/ **Jonathan Vine**_
JONATHAN VINE
Florida Bar No. 10966

**Cole, Scott & Kissane**
www.csklegal.com
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

CASE NO.: 3:26-cv-3359-MCR-HTC

## CERTIFICATE OF SERVICE

I hereby certify that on this 5ᵗʰ day of June 2026, a copy of the foregoing is

being served upon all counsel of record by CM/ECF.

> COLE, SCOTT & KISSANE, P.A.
> Counsel for Texas Defendants
> 222 Lakeview Avenue, Suite 500
> West Palm Beach, FL 33401
> Telephone (561) 383-9200
> Facsimile (561) 683-8977
> Jonathan.Vine@csklegal.com

By:   *s/Jonathan Vine*
      JONATHAN VINE
      Florida Bar No. 10966