**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S RESPONSE TO MOSTYN LAW'S MOTION TO ACCEPT MOTION TO DISMISS AS TIMELY |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S RESPONSE TO MOSTYN LAW'S MOTION TO
ACCEPT MOTION TO DISMISS AS TIMELY**

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding *pro se*, and files this Response to Mostyn Law Firm, PC's ("Mostyn") Motion to Accept Motion to Dismiss as Timely, Dkt. 75, and respectfully states as follows:

## I.    INTRODUCTION

Mostyn's motion begins with a false premise. Mostyn asserts that insufficient service gave it "no obligation to respond," that it "waived" insufficient service to advance the merits, and that its motion to dismiss was merely delayed by a couple of hours while it reviewed and adopted another defendant's motion. Dkt. 75 at 1. But service was proper. Mostyn was served through its registered agent on November 4, 2025 and its response deadline was triggered. *See* Ex. 1. Mostyn's failure to timely respond was therefore not excused by lack of service, and any waiver of insufficient service was not a voluntary litigation courtesy. Insufficient service of process is a Rule 12(b)(5) defense. Fed. R. Civ. P. 12(b)(5). A defendant waives that defense by omitting it from its first Rule 12 motion or failing to include it in a responsive pleading. Fed. R. Civ. P. 12(g)(2),

1

12(h)(1). After removal, Rule 81(c)(2) required Mostyn to answer or present its defenses within the longest of: twenty-one days after receiving the initial pleading, twenty-one days after service of the summons, or seven days after the notice of removal was filed. Fed. R. Civ. P. 81(c)(2). Because Mostyn was served on November 4, 2025, Ex. 1, and the notice of removal was filed on November 6, 2025, Dkt. 1, its response deadline was no later than November 25, 2025. Mostyn cannot recast a waiver caused by its failure to timely assert the defense as a voluntary decision to advance the merits.

That distinction matters. Canup does not seek to elevate a two-hour filing delay over the merits. But Canup cannot consent to Mostyn's requested relief without risking waiver of his objections to procedural defects in removal, including his objections based on lack of unanimous consent and Mostyn's failure to timely join in or consent to removal. Canup therefore expressly opposes Dkt. 75 and does not waive any objection to removal, remand, service, unanimity, timeliness, waiver, or any other procedural defect already raised in this action. The problem is not the two-hour delay in isolation. The problem is that Mostyn asks the Court to accept the late-filed motion as timely while giving that filing consequences for the service and remand issues already before the Court. Mostyn also uses the instant motion, in an apparent attempt to circumvent the ordinary rules governing timely service objections, to now raise improper service. *See* Fed. R. Civ. P. 12(h)(1). Those issues overlap with Canup's pending Motion for Reconsideration of the Order denying remand. Dkts. 70, 77. The Court should therefore decide Dkt. 75 together with Canup's pending Motion for Reconsideration, Dkt. 77, so the threshold service, remand, unanimity, and cure issues are resolved in the proper context. Alternatively, the Court should deny Dkt. 75 because Mostyn has not shown excusable neglect.

## II.    BACKGROUND

Canup filed this action in Texas state court on October 27, 2025. The operative Amended Complaint asserts fraud, breach of fiduciary duty, civil conspiracy, and related claims. Dkt. 60 ¶¶ 101–203. Mostyn was properly joined and served prior to removal. *See* Ex. 1. The citation and petition were served on Andrew Browning ("Browning"), Registered Agent for Mostyn on November 4, 2025, *see id*; Texas Secretary of State records identified Browning as Mostyn's registered agent on November 4, 2025, *see* Ex. 3; and Browning's declaration confirms that he accepted service of the state-court documents from the process server that day, *see* Ex. 2 ¶¶ 3–4. Defendant Gregory Brown removed the action on November 6, 2025, Dkt. 1, and Canup timely moved to remand on November 21, 2025, challenging subject matter jurisdiction and lack of unanimous consent. *See* Dkt. 8. Defendant Bryan Aylstock then sought transfer to this Court, and the Judicial Panel on Multidistrict Litigation ("JPML") transferred the action on April 2, 2026. *See* Dkts. 11–12, 23, 30.

After transfer, Canup moved to amend, moved for recusal, and sought a suggestion of remand. *See* Dkts. 34, 37, 38. The Court granted leave to amend and ordered Defendants to respond within fourteen days after the amended complaint was filed as a separate docket entry. Dkt. 54. Canup filed the Amended Complaint on May 12, 2026, making Defendants' responses due May 26, 2026, and the Court denied recusal on May 17, 2026. *See* Dkts. 60, 61.

On May 26, 2026, Defendants Bryan Aylstock, Bobby Bradford and Aylstock, Witkin, Kreis & Overholtz, PLC ("AWKO Defendants") filed a renewed motion to dismiss, asserting that their "only interactions with Plaintiff were on behalf of Plaintiffs' MDL Leadership at the request of the MDL Court" and that Canup's claims improperly challenge conduct undertaken pursuant to court-appointed MDL leadership functions. *See* Dkt. 66 at 2–3, 13–17. On May 27, 2026, Mostyn,

3

appearing for the first time in the case, filed its own procedurally defective motion to dismiss. *See* Dkt. 67. Mostyn did not oppose remand, did not join in or consent to removal, and did not move to dismiss for insufficient service of process. *Id.*

On May 29, 2026, the Court denied Canup's motion to remand. *See* Dkt. 70. In doing so, the Court concluded that federal question jurisdiction existed over Canup's state-law claims and further concluded that Mostyn's procedurally defective motion to dismiss could cure or otherwise defeat Canup's lack-of-unanimous-consent argument, even though Mostyn had not opposed remand and had not joined in or consented to removal within the statutory removal period. *See id.* at 15–17.

On May 30, 2026, Canup filed a Petition for Writ of Mandamus in the United States Court of Appeals for the Eleventh Circuit, seeking an order directing Judge Rodgers to recuse from this action, reassigning the case to a different district judge, and vacating the Order denying recusal. *See* Dkt. 73. Canup also moved for reconsideration of the Order denying remand. *See* Dkt. 77. That motion challenges, among other things, whether Mostyn's motion to dismiss could properly be treated as curing or affecting any defect in removal. *Id.*

On June 3, 2026, Mostyn filed the present motion asking the Court to retroactively accept its late-filed motion to dismiss as timely. *See* Dkt. 75. Mostyn acknowledges that its motion to dismiss was filed after the Court-ordered deadline, but argues that no deadline applied because service was allegedly defective. *Id*. at 1–4. Alternatively, Mostyn seeks relief under Rule 6(b)(1)(B), asserting excusable neglect. *Id*. at 4–5.

Mostyn's request is therefore not an isolated scheduling issue. The filing Mostyn now asks the Court to accept as timely has already been relied upon in connection with the denial of remand. Dkt. 70 at 15–17. And after that reliance occurred, Mostyn confirmed that the alleged curing act

was itself untimely and dependent on later judicial approval. Dkt. 75. The Court should decide Mostyn's discretionary Rule 6 request together with Canup's motion for reconsideration of the remand ruling because both motions turn on the same service, response-deadline, unanimity, and cure issues.

### III.    ARGUMENT AND AUTHORITY

#### A.  Legal Standard

Mostyn invokes Rule 6(b)(1)(B) and argues that if a deadline applied, its untimely motion should be accepted under the excusable-neglect standard. Dkt. 75 at 4–5. Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395 (1993), courts consider prejudice, the length of delay and its impact on the proceedings, the reason for the delay, and good faith. The Eleventh Circuit applies that framework. *Locke v. SunTrust Bank,* 484 F.3d 1343, 1346 (11th Cir. 2007); *Advanced Estimating Sys., Inc. v. Riney,* 77 F.3d 1322, 1324 (11th Cir. 1996).

But Mostyn's motion does not merely ask the Court to excuse a missed filing deadline. Mostyn's primary argument is that service was improper and that it therefore had no obligation to respond at all. Dkt. 75 at 1–4. That argument necessarily places service, the validity of the deadline, and the legal effect of Mostyn's late appearance before the Court. Accordingly, before the Court can determine whether excusable neglect exists, it must first determine whether Mostyn was properly served and whether its response deadline expired before the motion was filed.

Federal Rule of Civil Procedure 4(h)(1)(A) permits service on a corporation[1], partnership, or association in the manner prescribed by Rule 4(e)(1), and Rule 4(e)(1) authorizes service by following the law of the state where the district court is located or where service is made. Because

---

[1] It is undisputed that Mostyn Law Firm, P.C. is a corporation formed under the laws of Texas. *See* Dkt. 60 ¶ 4.

the disputed service on Mostyn occurred in Texas before removal, Texas law governs whether service was properly accomplished.

Under Texas law, a domestic filing entity must "designate and continuously maintain" a registered agent and registered office in Texas. Tex. Bus. Orgs. Code § 5.201(a). The registered agent "is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity." Tex. Bus. Orgs. Code § 5.201(b)(1).

A registered agent's status is not defeated merely by the agent's refusal to accept service or later assertion that he was not authorized. A person may not avoid service simply by refusing to physically accept the papers when service is reasonably attempted. *See Dosamantes v. Dosamantes,* 500 S.W.2d 233, 237 (Tex. Civ. App.—Texarkana 1973, writ dism'd); *Tex. Indus., Inc. v. Sanchez,* 521 S.W.2d 133, 135–36 (Tex. Civ. App.—Dallas 1975), writ ref'd n.r.e., 525 S.W.2d 870 (Tex. 1975). And under Texas law, a registered agent designated by the entity is "an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity." Tex. Bus. Orgs. Code § 5.201(b)(1).

The relevant question is whether, when service occurred, the person served was authorized to receive service under Texas law and the entity's public filings. Texas law requires formal filings to change, resign from, or reject registered-agent status. An entity seeking to change its registered agent or registered office must file the appropriate statement with the Texas Secretary of State. *See id.* § 5.202. A registered agent's resignation requires notice to the entity and the appropriate filing officer. *See id.* § 5.204. And if a person contends he was designated without consent, Texas law provides a mechanism to reject the appointment. *See id.* § 5.206. Those provisions do not permit an entity to retroactively defeat service after process has been delivered to the registered agent reflected in the public record.

Texas law requires proper service of process and a proper return of service. When service is challenged, strict compliance with the rules governing issuance, service, and return of citation must appear from the record. *See Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). If strict compliance is not shown, service of process is "invalid and of no effect." *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam). The party relying on service is responsible not only for ensuring that service is properly accomplished, but also for ensuring that proper service is reflected in the record. *See* Tex. R. Civ. P. 99(a); *Primate Constr.*, 884 S.W.2d at 153; *Hunt v. Yepez*, No. 03-04-00244-CV, 2005 Tex. App. LEXIS 6964, at *7–8 (Tex. App.—Austin Aug. 24, 2005, no pet.) (mem. op.).

Texas Rule of Civil Procedure 107 governs the return of service. It requires that the return be endorsed on or attached to the citation, state when the citation was served and the manner of service, and be signed by the officer or authorized person who executed service. Tex. R. Civ. P. 107. If the return is completed by an authorized person, the return must be verified. *Id*. The return of service is not a trivial or merely formulaic document. *Primate Constr.*, 884 S.W.2d at 152. A return that fails to satisfy Rule 107 may be fatally defective. *See Travieso v. Travieso*, 649 S.W.2d 818, 820 (Tex. App.—San Antonio 1983, no writ); *Rowsey v. Matetich*, No. 03-08-00727-CV, 2010 Tex. App. LEXIS 6532, at *5 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.).

Strict compliance, however, does not require "obeisance to the minutest detail." *Williams v. Williams*, 150 S.W.3d 436, 443–44 (Tex. App.—Austin 2004, pet. denied) (quoting *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 613 (Tex. App.—Corpus Christi 1996, writ denied)); *see also Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ). As long as the record as a whole shows that citation was served

7

on the defendant, service will not be invalidated based on immaterial technical objections. *Williams*, 150 S.W.3d at 444.

The relevant inquiry is whether the record shows personal delivery to the defendant or a person authorized to receive service; a different service address, standing alone, does not defeat service. *See Silver B & Laviolette, LLC v. GH Contracting, Inc.,* No. 03-10-00091-CV, slip op. at 5–6, 10 (Tex. App.—Austin Oct. 12, 2010, no pet.) (mem. op.).

### B.  Argument

#### 1.  Mostyn Law Firm, PC's Response Deadline Was Triggered by Proper Service on Its Registered Agent Andrew Browning

Mostyn's threshold premise is wrong. Mostyn argues that no response deadline ever arose because service was defective. Dkt. 75 at 3–4. But service was made in Texas before removal, *see* Ex. 1, which is the executed citation and return of service previously filed in Canup's remand appendix, Dkt. 9-1, in support of Canup's Motion to Remand, Dkt. 8, and Texas law governs whether that service was effective. The record shows that Mostyn's registered agent was served, Exs. 1, 3, and admittedly received the documents, Ex. 2 ¶¶ 3–4, which is the Declaration of Andrew Browning filed by Gregory Brown and Fleming, Nolen & Jez, LLP as Exhibit 1 to their opposition to remand, Dkt. 14-1. Mostyn's later effort to dispute the legal effect of that service does not convert proper service into a voluntary appearance, nor does it erase the response deadline triggered by service.

Mostyn asserts that Canup served Andrew Browning, but "Browning wasn't" Mostyn's registered agent. Dkt. 75 at 1–2. Mostyn's argument turns on Browning's after-the-fact assertion that he was not the registered agent. Ex. 2 ¶ 2. But Texas law makes registered-agent status and completion of personal service objective inquiries, not matters of subjective belief.

8

A Texas filing entity[2] must "designate and maintain" a registered agent and registered office "on whom may be served any process, notice, or demand required or permitted by law to be served on the entity." *Huffman Asset Mgmt., LLC v. Colter,* No. 24-0205, slip op. at 5 (Tex. May 29, 2026) (quoting Tex. Bus. Orgs. Code §§ 5.201(a)–(b)(1), 5.206). Changes to the registered agent or registered office are effected by filing a statement of change. *Id*. at 7–8; Tex. Bus. Orgs. Code §§ 5.202–.203. A registered agent's resignation is not effective until the 31st day after the Secretary of State receives the resignation notice. Tex. Bus. Orgs. Code § 5.204. Personal service is accomplished by delivering the citation and petition to the proper person. Tex. R. Civ. P. 106(a)(1).

Texas courts enforce those statutory filing obligations because the purpose of requiring a registered agent and registered office is to ensure that aggrieved parties can serve the entity in a lawsuit. *Texas Underground Utilities, Inc. v. Southwestern Bell Tel. Co.,* No. 01-19-00814-CV, slip op. at 10–11, 17–19 (Tex. App.—Houston [1st Dist.] Aug. 3, 2021, pet. denied) (mem. op.). The Texas Business Organizations Code imposes an affirmative duty on the entity to keep the Secretary of State apprised of its current registered agent and registered office. *Id*. at 10–11.

The record shows more than Canup's mere "identification" of Browning as Mostyn's registered agent. The Secretary of State records identified Andrew Browning as Mostyn Law Firm, P.C.'s registered agent when service was effected. *See* Ex. 3; Dkt. 9-3. Mostyn's own Statement of Change of Registered Office/Agent, filed on November 12, 2018, changed its registered agent from John Steven Mostyn to Andrew Browning, and that filing became effective when filed. *See* Ex. 4. That is the last change of registered agent reflected in the Texas Secretary of State public record. Mostyn's later public information reports repeatedly continued to identify Andrew

---

[2] A "filing entity" includes "a domestic entity that is a corporation" *Huffman Asset Mgmt., LLC v. Colter,* No. 24-0205, slip op. at 7 n.3 (Tex. May 29, 2026) (quoting Tex. Bus. Orgs. Code § 1.002(22)).

Browning as the registered agent for Mostyn Law Firm, P.C., and listed 3810 West Alabama as the registered office. *See* Exs. 6–11. Those records are especially significant because Browning personally signed public information reports for Mostyn that identified him as the registered agent, including the 2019 report and the 2021 report. *See* Exs. 7, 9. Those signed filings confirm, or at minimum ratify, Browning's role as Mostyn's registered agent and show Browning's own express acknowledgment of and consent to that status. They also raise the question whether Browning may hold an officer, manager, or director role with Mostyn in addition to serving as its registered agent, because Browning signed one public information report as "President," Ex. 6, and another as "Registered A," Ex. 9. In any event, to eliminate any doubt that a later change occurred, Texas Secretary of State records still identified Andrew Browning as Mostyn's registered agent as of June 14, 2026. *See* Ex. 12.

Browning's declaration does not overcome the public records. Browning makes the conclusory assertion that he is "not an agent, registered or otherwise, of Mostyn Law Firm, P.C." Ex. 2 ¶ 2. But the declaration does not acknowledge that Browning was Mostyn's registered agent, does not state that he never was the registered agent, does not identify any resignation, statement of change, termination of appointment, replacement registered agent, or effective date on which his registered-agent status allegedly ended, and does not state that Browning is not an officer, director, manager, or other representative of Mostyn. Nor does Browning address the public filings identifying him as Mostyn's registered agent, including filings he personally signed. His declaration therefore does not create a legal defect in service; it merely disputes the legal effect of service after the fact.

Mostyn also has not submitted any evidence supporting its assertion that Browning was not its registered agent when served. Mostyn did not submit Browning's declaration; Gregory

10

Brown and Fleming, Nolen & Jez, LLP filed it in opposition to remand. *See* Dkt. 14-1. No officer, director, manager, or authorized representative of Mostyn has submitted a declaration identifying facts showing that Browning's registered-agent status ended before service. Mostyn has not identified any statement of change filed with the Texas Secretary of State, any resignation by Browning, any termination or replacement of Browning as registered agent, or any new registered agent in effect before November 4, 2025. Against the Secretary of State records[3] and Mostyn's own public filings,[4] Browning's conclusory after-the-fact assertion[5] is insufficient to defeat service.

Mostyn next asserts that Browning told the process server he was not the registered agent, refused to accept the complaint, accepted it only after the server allegedly said Browning was also named as a defendant, and that service was therefore defective. Dkt. 75 at 2. Those assertions do not defeat service. Browning's statement alleging that he was not the registered agent is contradicted by the Secretary of State records in this record. *See* Exs. 3, 4, 6–12. Mostyn cannot defeat service by relying on Browning's later statement when its public filings identified Browning as the registered agent and Mostyn identifies no filing, resignation, or statement of change terminating that status before service.

Nor does Browning's alleged refusal defeat service. Browning admits he accepted the documents. Ex. 2 ¶¶ 3–4. Even if Browning initially refused to accept service on behalf of Mostyn, Texas law recognizes that a person within the jurisdiction generally has an obligation to accept service when reasonably attempted. *Dosamantes,* 500 S.W.2d at 237. A person who physically

---

[3] *See* Exs. 3, 12.

[4] *See* Exs.4, 6–11.

[5] *See* Ex. 2 ¶ 2.

11

refuses to accept process may still be personally served if the papers are deposited in an appropriate place in his presence or near him where he is likely to find them, and he is informed of the nature of the process and that service is being attempted. *Id*.; *Red Hot Enters., LLC v. Yellow Book Sales & Distrib. Co.,* No. 04-11-00686-CV, 2012 WL 3025914, at *2–3 (Tex. App.—San Antonio July 25, 2012, no pet.); *Tex. Indus.,* 521 S.W.2d at 135–36 (recognizing that avoidance of service may show notice of the nature of the process and that service was being attempted). If a person cannot defeat service by refusing to take the papers when service is reasonably attempted, Browning's alleged refusal to accept service "on behalf of Mostyn Law" does not invalidate service where the record shows he was the registered agent and he admittedly accepted the documents. Ex. 2 ¶¶ 3–4.

Canup does not concede that the process server made any false statement or engaged in any dishonesty. Nor does Canup condone dishonesty by any process server. The *Certified Process Servers Code of Ethics* provides that a process server must not "engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or obstruction of justice." *Certified Process Servers Code of Ethics* ¶ 14(e). But the same Code states that a violation may subject a process server to discipline by the Judicial Branch Certification Commission and "does not give rise to a claim that service of process was defective." *Id*. Preamble. Thus, even if Mostyn had established an ethics issue, which it has not, that would not establish defective service.

Mostyn's assertion that "[t]hrusting a complaint on a person who is no longer an agent is ineffective," Dkt. 75 at 2, assumes the point it must prove. The record shows Browning was the registered agent, *see* Exs. 3–4, 6–12, and this is not a "thrusting" case because Browning admits he accepted the documents, Ex. 2 ¶¶ 3–4. Service was not defective merely because Browning later disputed the legal effect of receiving them.

Mostyn also argues that Canup should have served "Mostyn Law's manager at the firm's office on Alabama Street," Dkt. 75 at 2, but the process server attempted service at 3810 West Alabama and was told no one there was authorized to accept service. Ex. 5. Mostyn cannot rely on its office's refusal to identify an authorized recipient as a basis to fault Canup for serving the registered agent identified in Texas Secretary of State records. *See* Exs. 1, 3–4, 6–12. In any event, Texas law did not require service on Browning to occur only at Alabama Street. Tex. R. Civ. P. 106(a)(1), 103. Because Browning was Mostyn's registered agent, personal delivery to him was service on Mostyn.

Texas courts reject the argument that personal service is invalid merely because the address where service occurs differs from the address listed on the citation. *See Turbo Rests., LLC v. Reid's Refrigeration Inc.,* 657 S.W.3d 490, 497–98 (Tex. App.—El Paso 2022, no pet.) ("When an individual defendant is personally served, the rules governing service do not require that the address listed on the citation and the return of service must match."); *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revocable Tr.,* 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.) ("[T]he law is settled that listing a different address on the return and citation will not render service invalid."); *Silver B,* slip op. at 9–10 (mem. op.) (recognizing that a different address on the citation and return does not render service invalid); *Garcia v. Gutierrez,* 697 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1985, no writ) (holding that where the return shows the named defendant was served, the person executing citation is not limited to the address stated in the citation).

Texas courts apply the same rule where service is made on a registered agent. In *Silver B,* the Austin Court of Appeals held that Rule 107 does not require the citation and return to recite the same address, and Rule 106 does not require personal service to occur at the address listed in the citation. *Silver B,* slip op. at 5–6. The court held that a return satisfies strict compliance where

it shows personal delivery to the defendant's registered agent, even though the address on the return differs from the address on the citation. *Id.* at 6, 10. *See also Westcliffe, Inc. v. Bear Creek Constr., Ltd.,* 105 S.W.3d 286, 291 (Tex. App.—Dallas 2003, no pet.); *Then W., Inc./Bait House, Inc. v. Sorrells,* No. 05-01-01874-CV, 2002 WL 1397477, at *4 (Tex. App.—Dallas June 28, 2002, no pet.) (mem. op.); *Eagle Commercial Builders, Inc. v. Milam & Co. Painting, Inc.,* No. 07-01-0310-CV, slip op. at 4–6 (Tex. App.—Amarillo Aug. 12, 2002, pet. denied) (mem. op.).; *Myan Mgmt.,* 292 S.W.3d at 754 (return stating service was made "by delivering to" registered agent sufficiently reflected personal service).

Likewise, in *Cotton Patch Cafe, Inc. v. McCarty,* the Fort Worth Court of Appeals held that service was not defective where the return complied with Rule 107, the defendant did not deny receiving service, and the citation and return showed that citation was actually served on the defendant's registered agent. No. 02-05-082-CV, slip op. at 19–22 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op.). Mostyn does not deny receipt; Browning admits he accepted the documents. Ex. 2 ¶¶ 3–4.

Accordingly, the relevant inquiry is whether citation was personally delivered to a person authorized to receive service. A discrepancy between the address listed on the citation and the address where personal service occurred does not invalidate service. *See Silver B,* slip op. at 5–6, 10; *Westcliffe,* 105 S.W.3d at 291; *Then W.,* 2002 WL 1397477, at *4; *Eagle Commercial Builders,* No. 07-01-0310-CV, slip op. at 4–6 (mem. op.). Browning was Mostyn's registered agent under the public records, Exs. 3–4, 6–11, and he admittedly received the documents. Ex. 2 ¶¶ 3–4. Service was therefore proper.

Mostyn next argues that, if it failed to notify the Texas Secretary of State of a new registered agent, Canup could have served Mostyn through the Secretary of State but did not do

14

so. Dkt. 75 at 2. That argument does not show defective service. Canup was not required to serve Mostyn through the Secretary of State because Canup accomplished personal service on Mostyn's registered agent. Exs. 1, 3–4, 6–11. Service through the Secretary of State is an alternative method available when the statutory prerequisites are met; it is not the exclusive means of serving a Texas filing entity. *See* Tex. Bus. Orgs. Code § 5.251; *Eagle Commercial Builders,* No. 07-01-0310-CV, slip op. at 11–12 (rejecting argument that service on a corporation's registered agent may occur only at the registered office and explaining that substituted service through the Secretary of State applies when no agent has been designated or reasonable diligence to serve the registered agent has failed). Before resorting to substituted service through the Secretary of State, a plaintiff generally must exercise reasonable diligence in attempting to serve the entity's registered agent at the registered office. *See Autodynamics Inc. v. Vervoort,* No. 14-10-00021-CV, slip op. at 3–4 (Tex. App.—Houston [14th Dist.] Apr. 5, 2011, no pet.) (mem. op.); *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.,* 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Here, Canup did exercise diligence. The process server first attempted service at 3810 West Alabama, Mostyn's registered office, and asked whether anyone in the office was authorized to accept service. Ex. 5. Mostyn's office stated that no one was authorized to accept service. *Id*. The process server then located and personally served Andrew Browning, the registered agent identified in the Texas Secretary of State records. Exs. 1, 3–4, 6–11. Browning is a Texas attorney[6], and Texas attorneys are required to keep current contact information with the State Bar of Texas. *See* Tex. Gov't Code § 81.115. Under those circumstances, attempting to locate and serve

---

[6] Andrew Browning's State Bar profile is judicially noticeable. *See* Fed. R. Evid. 201(b)(2); State Bar of Texas, Attorney Profile for Andrew Browning,
https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/
CustomsourceMemberDirectory/MemberDirectoryDetail.cfm&ContactID=295364.

Browning personally was diligent; failing to do so before resorting to substituted service would have been the less diligent course.

Mostyn's argument also ignores where the statutory duty falls. The Texas Business Organizations Code requires a Texas filing entity to designate and continuously maintain a registered agent and registered office and to keep the Secretary of State apprised of changes. Tex. Bus. Orgs. Code §§ 5.201, 5.202. Texas courts describe that obligation as an affirmative duty to ensure that the Secretary of State has current and accurate information concerning the entity's registered office and registered agent. *Texas Underground Utils.,* No. 01-19-00814-CV, slip op. at 10–11 (mem. op.). Accordingly, if Mostyn believed Browning was no longer its registered agent, the burden was on Mostyn to update its public filings. It cannot fault Canup for relying on the registered-agent information Mostyn was required by law to maintain, especially where Canup did not merely rely on substituted service through the Secretary of State but instead personally served the registered agent identified in those records.[7]

Mostyn also asserts that it "did not initially file a motion to dismiss" because it had not been properly served. Dkt. 75 at 2. But that assertion depends entirely on the defective-service premise addressed above. If service was proper, Mostyn's response deadline was triggered regardless of its subjective belief that it had no obligation to respond. That conclusion is reinforced by Mostyn's failure to deny receipt. Texas courts have upheld service where the return complied with Rule 107, the defendant did not deny receiving service, and the citation and return showed

---

[7] *See Texas Underground Utils.,* No. 01-19-00814-CV, slip op. at 10–11, 18–19 (mem. op.) (entity has affirmative duty to keep current and accurate registered-agent information on file with the Secretary of State, and failure of service method caused by entity's own failure to comply with statutory duties does not violate due process); *Campus Invs., Inc. v. Cullever,* 144 S.W.3d 464, 466 (Tex. 2004) (lack of notice caused by defendant's failure to update registered-agent and registered-office addresses was not a defect in service); *Tankard-Smith Inc. Gen. Contractors v. Thursby,* 663 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (corporation cannot complain where failure of service method resulted from its own failure to comply with statutory requirements designed to assure notice).

service on the defendant's registered agent. *See Cotton Patch Cafe, No. 02-05-082-CV, slip op. at 19–22 (mem. op.).* Mostyn does not deny receipt; Browning admits he accepted the documents. Ex. 2 ¶¶ 3–4.

### 2. Mostyn Has Shown Conscious Indifference Not Excusable Neglect

Mostyn's alternative excusable-neglect argument also fails. Rule 6(b)(1)(B) permits an extension after a deadline has expired only where the party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). That standard requires more than a showing that the delay was short, that Canup was not prejudiced, or that Mostyn acted in good faith. Those considerations are relevant, but they do not replace the requirement that Mostyn identify a legally sufficient reason for failing to act on time. *See Pioneer,* 507 U.S. at 392, 395.

Mostyn treats this as a routine two-hour delay caused by a desire to review and adopt the AWKO Defendants' motion to dismiss. Dkt. 75 at 4–5. That framing is incomplete. The relevant circumstances include not only the short delay between midnight and the filing of Dkt. 67, but also Mostyn's failure to appear or respond for more than six months after service, its attempt to use the present motion to avoid the consequences of Rule 12(h)(1) and raise improper service, and the fact that the late-filed motion was relied on in denying remand. *See* Dkts. 70, 75. Under *Pioneer*, those circumstances weigh against excusable neglect.

Mostyn's conduct is not consistent with excusable neglect; it is consistent with conscious indifference to service and to the duties Texas law imposes on filing entities. Texas courts describe conscious indifference as occurring when "the defendant knew it was sued but did not care," and they look to the defendant's knowledge and acts. *Milestone Operating, Inc. v. ExxonMobil Corp.,* 388 S.W.3d 307, 310 (Tex. 2012); *Dir., State Emps. Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 269 (Tex. 1994). That description fits this record. Mostyn's registered agent was served on

17

November 4, 2025, and Browning admits that he accepted the documents. Exs. 1–2. Yet Mostyn did not appear or respond for more than six months. Dkt. 67.

Mostyn also cannot treat its own registered-agent records as irrelevant. Texas law requires a filing entity to designate and maintain a registered agent and registered office for the very purpose of receiving service of process. If Mostyn's position is that Browning was not its registered agent, then Mostyn had notice of that alleged problem no later than December 11, 2025, when Browning signed his declaration, yet the public records still identified Browning as Mostyn's registered agent as of June 14, 2026. *See* Ex. 12. Thus, either Mostyn ignored its statutory duty to maintain accurate registered-agent records, or this service dispute rests on a false assertion that Browning was not the registered agent. Either way, Mostyn has not shown a real excuse for failing to respond; it has shown indifference to the fact that it was sued, indifference to the public records it is required to maintain, and indifference to the response deadline triggered by service.

First, Canup was prejudiced. Mostyn argues there is no prejudice because discovery has not begun and no scheduling order has issued. Dkt. 75 at 5. But prejudice under *Pioneer* is not limited to discovery burdens or trial disruption; the Court must consider "all relevant circumstances," including the danger of prejudice and the delay's potential impact on the proceedings. *Pioneer*, 507 U.S. at 395.

Here, the late filing affected the procedural posture of the entire case. The Court relied on Mostyn's late-filed motion to dismiss in denying remand, concluding that any unanimity defect had been cured. Dkt. 70. Accepting the motion as timely therefore does not merely excuse an isolated two-hour delay. It retroactively validates the very filing used to avoid remand consequences and undermines Canup's choice of forum. That is prejudice.

The prejudice is compounded because Mostyn now uses Dkt. 75 to litigate service outside the removal and remand context. That matters because removal statutes are strictly construed, and all doubts or uncertainties about removal jurisdiction must be resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (recognizing the presumption against federal removal jurisdiction and requiring uncertainties to be resolved in favor of remand); *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999) (explaining that federalism concerns require strict construction of removal statutes with all doubts resolved in favor of remand). By raising service in a Rule 6(b)(1)(B) motion, Mostyn seeks to move the service issue out of the remand framework, where doubts favor remand, and into an equitable excusable-neglect framework. That shift itself is prejudicial.

In the removal context, the Eleventh Circuit has made clear that a defendant's removal right and a plaintiff's forum choice "are not on equal footing." *Burns,* 31 F.3d at 1095. The Supreme Court likewise has recognized the weight accorded to a plaintiff's selected forum, explaining that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

Nor should Rule 6(b)(1)(B) be used to undo the consequences of Mostyn's failure to timely respond after service. Mostyn was properly served on November 4, 2025, Ex. 1, its deadline to respond expired long before its May 27, 2026 motion to dismiss. Mostyn did not timely appear, did not timely answer, and did not timely assert any Rule 12(b)(2)–(5) defense. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), 12(b), 12(h)(1). Mostyn therefore cannot use a motion to accept a late Rule 12 filing as timely to preserve service-based objections that were already lost by its failure to respond when a response was due. Rule 6(b)(1)(B) permits relief from a missed deadline only upon a

19

showing of excusable neglect; it does not erase the jurisdictional and waiver consequences created by a served defendant's months-long failure to respond.

Second, the length of delay is not fairly measured only from midnight to the time Dkt. 67 was filed. Mostyn was properly served on November 4, 2025, its deadline to answer or present Rule 12 defenses was triggered by that service and governed after removal by Rule 81(c)(2). Mostyn did not file its motion to dismiss until May 27, 2026. *Id.* The relevant delay is therefore not merely two hours; it is the delay between Mostyn's response deadline and Mostyn's first appearance, which is six months. Mostyn's two-hour framing assumes the very point in dispute: that no earlier deadline existed because service was allegedly defective.

Third, the good-faith and reason-for-delay factors weigh against relief. *Pioneer* requires consideration of "all relevant circumstances," including the reason for the delay, whether it was within the movant's control, and whether the movant acted in good faith. 507 U.S. at 395. Rule 6(b)(1)(B) is equitable, but equity does not reward lack of diligence or strategic delay. *See Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984) ("[O]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *L.A. Pub. Ins. Adjusters, Inc. v. Nelson,* 17 F.4th 521, 530–31 (5th Cir. 2021) (same). Nor does excusable neglect include failure to understand or comply with clear procedural law. *Advanced Estimating, 77 F.3d at 1324–25*; *see also United States v. Beaufils,* No. 22-13292, slip op. at 44 (11th Cir. Nov. 25, 2025).

Mostyn says it waited to review Aylstock's motion before adopting it and to avoid duplicative briefing. Dkt. 75 at 5. Even if that explanation appears reasonable in isolation, it does not explain Mostyn's failure to appear or respond for months after service. Nor does it explain why Mostyn did not timely appear, preserve any Rule 12(b)(5) objection, move to quash service, seek

an extension, or file a timely motion while preserving its objection. If Mostyn believed service was defective, that belief did not prevent timely action.

To the extent Mostyn implies that it delayed because it believed service was improper, that belief does not establish excusable neglect. If service was ineffective, then Mostyn may argue that no response deadline ran. But unless the Court first makes that service finding, Mostyn must satisfy Rule 6(b)(1)(B). A disputed belief about the legal effect of service is not itself excusable neglect. The Supreme Court has explained that "ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." *Pioneer,* 507 U.S. at 392. The Eleventh Circuit likewise holds that misunderstanding clear procedural requirements does not establish excusable neglect. *See Advanced Estimating, 77 F.3d at 1324–25*.

Mostyn's filing sequence therefore matters. Mostyn did not raise improper service in a timely Rule 12 motion. Instead, six months after being properly served it filed an untimely motion to dismiss, allowed that motion to be relied upon as implied consent to removal, then sought leave to accept that filing as timely, and then used the Rule 6(b) motion as the vehicle to argue improper service. Mostyn cannot use Rule 6(b)(1)(B) to convert a late, procedurally defective filing into both a timely Rule 12 response and a retroactive cure for removal, especially where Mostyn raised alleged defective service only after that filing had already been relied upon to deny remand.

The record also does not support Mostyn's assertion that good faith is "clear." Dkt. 75 at 5. Canup does not lightly assert gamesmanship, and Canup does not ask the Court to find bad faith unnecessarily. But Canup also does not concede good faith. The timing and context raise a legitimate concern that the late filing was deliberate and strategic. Mostyn was served on November 4, 2025, Ex. 1, did not appear for six months, Dkt. 67, waiving any defenses as to improper service, filed its motion to dismiss after the court-ordered deadline to respond to the

21

amended complaint, Dkt. 54, and then used the motion to accept that filing as timely to argue improper service. Dkt. 67. That sequence does not support excusable neglect. It confirms why the Court should decide the service issue directly rather than treat an implied belief about service as a reason to excuse noncompliance with a deadline.

Mostyn's good-faith showing is further undermined by its reliance on Browning's assertion that he was not Mostyn's registered agent. *See* Ex. 2 ¶ 2. On the face of this record, that assertion appears to be false. Mostyn's public filings and the Texas Secretary of State records identify Browning as Mostyn's registered agent. *See* Exs. 3–4, 6–12. Mostyn has not attempted to reconcile those records with Browning's assertion, identify any filing that removed Browning as registered agent before service, or identify any other person who allegedly held that position when service occurred. Canup does not concede that any such person existed. The point is that Mostyn's service argument depends on an after-the-fact assertion that appears false on the face of the public record.

The surrounding record reinforces that concern. After the Court denied remand on May 29, 2026, Dkt. 70, Canup intended to seek reconsideration of that ruling and conferred with Mostyn's counsel as required by N.D. Fla. Local Rule 7.1(B). The purpose of the conferral was to determine whether Mostyn opposed reconsideration of the remand denial.

Mostyn's counsel initially understood the issue. On May 31, 2026, counsel wrote: "Let me discuss this with my client. Do you still need an answer about the motion for reconsideration of the remand denial?" Dkt. 78-2. Canup responded: "Yes." *Id*.

The next morning, however, counsel changed course. On June 1, 2026, after the Court had already entered Dkt. 70 denying remand, counsel wrote: "To clarify, you will seek reconsideration of the U.S. Judicial Panel on Multidistrict Litigation's transfer order (ECF 2051)? As Judge Rodgers has not yet ruled on your motion for remand to Texas state court (ECF 8) or your motion

for remand to MDL panel (ECF 37), I assume that the reconsideration motion will be filed with the MDL panel directly. Please confirm." Dkt. 78-2. That statement was incorrect. The Court had already ruled on remand. Dkt. 70.

The problem is not merely that counsel misstated the docket. The statement was made during required conferral, where the Local Rules require good-faith efforts to resolve or narrow disputes through a meaningful conference. *See* N.D. Fla. Loc. R. 7.1(B). In that context, counsel's statement appears to have directed a *pro se* party away from this Court and toward the JPML for reconsideration of an order that this Court had entered. That matters because Canup was attempting to seek reconsideration of Dkt. 70, and the email created confusion about where that relief should be sought. At minimum, that record does not support a clean finding that Mostyn acted in obvious good faith throughout the relevant proceedings.

Accordingly, the *Pioneer* factors do not favor Mostyn. The prejudice is real because the late filing affected remand; the delay cannot be reduced to two hours if service was proper; the stated reason does not explain the six-month failure to respond or the procedural use of this motion to raise an improper service defense; and good faith is disputed by the sequence of events. The Court should not accept Mostyn's late motion as timely on this record.

## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Canup respectfully requests that the Court decide Mostyn Law Firm, P.C.'s Motion to Accept Its Motion to Dismiss as Timely, Dkt. 75, together with Canup's pending Motion for Reconsideration of the Order denying remand, Dkt. 77. The timeliness and legal effect of Mostyn's Motion to Dismiss are intertwined with the service, unanimity, remand, and cure issues raised in the Motion for Reconsideration. *Id*. The service

dispute should be decided in that context because the Court relied on Mostyn's late-filed Motion to Dismiss in denying remand and concluding that any unanimity defect had been cured. Dkt. 70.

Canup does not seek to elevate a two-hour delay over the merits. Rather, Canup seeks to avoid the procedural prejudice created by treating Mostyn's late-filed Motion to Dismiss as timely or legally effective before the Court resolves the threshold issues that control its effect: whether Mostyn was properly served, whether its response deadline expired, whether any removal defect existed, whether Mostyn timely joined in or consented to removal, and whether a late-filed motion to dismiss could cure any such defect.

Canup further requests that the Court immediately stay all proceedings pending resolution of the Motion for Reconsideration, Dkt. 77, and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73. **Canup respectfully requests an expedited ruling on his request to stay all proceedings so that, if the Court declines to stay proceedings, Canup can seek a stay of these proceedings from the Eleventh Circuit in the related mandamus proceedings without delay.**

Alternatively, if the Court declines to decide Dkt. 75 together with the Motion for Reconsideration, Canup respectfully requests that the Court deny Mostyn's Motion to Accept Its Motion to Dismiss as Timely. If the Court grants Dkt. 75 or otherwise treats Mostyn's Motion to Dismiss, Dkt. 67, as timely or legally effective, Canup respectfully requests that the Court make express factual findings necessary for meaningful appellate review, including: whether Mostyn was properly served before removal; whether Canup timely raised the unanimity defect; when Mostyn's thirty-day deadline to join in or consent to removal expired; whether any defect in unanimous consent existed at the time of removal; whether Mostyn's Motion to Dismiss clearly and unambiguously manifested consent to removal; the specific filing or conduct by which Mostyn

24

allegedly cured any defect; the date on which any such cure occurred; and any other findings necessary to decide the issue.

Canup further requests that, if the Court maintains its denial of remand, the Court amend the Order, Dkt. 70, to include certification for interlocutory appeal under 28 U.S.C. § 1292(b), because the Order presents controlling questions of law as to federal subject-matter jurisdiction and removal procedure, substantial grounds exist for difference of opinion, and immediate appellate review may materially advance the ultimate termination of this litigation. If the Court certifies the Order for interlocutory appeal, Canup respectfully requests that the Court stay all proceedings pending interlocutory appeal and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73.

In the further alternative, if the Court denies this response's requested relief in full, Canup respectfully requests that the Court stay all proceedings pending resolution of the mandamus proceedings currently pending in the United States Court of Appeals for the Eleventh Circuit. *Id.*

Canup respectfully requests all other and further relief to which he may be justly entitled.

Signed this 17th day of June, 2026.

Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on or about June 17, 2026, a true and correct copy of this response was sent to counsel for all parties via email, US Mail and/or the CM/ECF service pursuant to the Federal Rules of Civil Procedure.

Brandon Canup

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Response contains 7,936 words, inclusive of headings, footnotes, and quotations.

Brandon Canup