**No. 26-11887-C**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

IN RE BRANDON CANUP,

*Petitioner*,

On Petition from the United States District Court for the Northern District of Florida

No. 3:26-cv-03359-MCR-ZCB

---

**PETITIONERS MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING RESOLUTION OF PETITION FOR WRIT OF MANDAMUS**

---

Brandon Canup
4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314
canup.brandon@gmail.com

Appeal No.: 26-11887-C    IN RE: BRANDON CANUP

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Petitioner Brandon Canup certifies that, to the best of his knowledge, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this mandamus petition, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. Petitioner is unaware of any publicly traded corporation owning 10% or more of any corporate party.

1. Aylstock, Bryan F.

2. Aylstock, Witkin, Kreis & Overholtz, PLC

3. Bolitho, Hon. Zachary

4. Bradford, Bobby J.

5. Brown, Gregory

6. Burns, Michael A.

7. Canup, Brandon

8. Cole, Scott & Kissane, PA

9. Fernandez, Jonathan

C-1 of 2

Appeal No.: 26-11887-C    IN RE: BRANDON CANUP

10. Fleming, Nolen & Jez, LLP

11. Keeton, Justin

12. Lloyd, Gray, Whitehead & Monroe, PC

13. Mostyn Law Firm, PC

14. Rettig, Gregory

15. Roberts, Cliff

16. Rodgers, Hon. M. Casey

17. Stevenson, Benjamin James

18. Stevenson Legal, PLLC

19. Vine, Jonathan

/s/ Brandon Canup

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

***pro se***

C-2 of 2

**IN THE UNITED STATES COURT OF APPEALS FOR THE
ELEVENTH CIRCUIT**

| | |
|---|---|
| IN RE: BRANDON CANUP | Appeal No.: 26-11887-C |

**PETITIONER'S OPPOSED MOTION TO STAY DISTRICT COURT
PROCEEDINGS PENDING MANDAMUS PROCEEDINGS**

COMES NOW Petitioner Brandon Canup ("Canup"), proceeding *pro se*, hereby files his Motion to Stay District Court Proceedings Pending Mandamus Proceedings. In support, Canup states as follows:

## I. INTRODUCTION

Petitioner Brandon Canup respectfully moves this Court under Federal Rule of Appellate Procedure 8, Federal Rule of Appellate Procedure 21, and the All Writs Act, 28 U.S.C. § 1651(a), for an order staying all proceedings in the district court pending resolution of this mandamus proceeding.

The requested stay is narrow in duration and necessary to preserve the status quo. Canup's mandamus petition seeks recusal and related relief based on circumstances that, in Canup's view, reasonably call the district judge's impartiality into question. Canup also continues to challenge the district court's subject-matter jurisdiction in his pending motion for reconsideration of the order denying remand. (Exs. 8, 10).

1

The need for a stay is immediate because the mandamus petition challenges the presiding judge's continued participation, the district court's subject-matter jurisdiction remains disputed, and the case continues to advance while both issues remain unresolved. Each additional ruling, deadline, or merits-related step requires Canup to proceed before the judge whose recusal is at issue and in a court whose jurisdiction Canup continues to contest. Further proceedings risk compounding the appearance-of-impartiality harm that § 455 is designed to prevent while advancing a case that Canup contends the district court lacks authority to adjudicate. A stay is therefore necessary to preserve the status quo.

Canup has complied with Federal Rule of Appellate Procedure 8 by seeking stay relief in the district court. Canup previously moved to stay all proceedings pending resolution of threshold issues, including his motion to remand, motion to recuse, and motion for suggestion of remand. (Ex. 6). That request was denied as moot in the district court's order denying remand. (Ex. 8 at 19).

Canup later renewed his request for a stay in his motion for reconsideration of the remand order and again in his response to Mostyn Law Firm, P.C.'s ("Mostyn") Motion to Accept Its Motion to Dismiss as Timely. (Ex. 10 at 2–3, 24–25; Ex. 11 at 23–25). Those requests asked the district court to stay further proceedings pending resolution of mandamus and resolution of the reconsideration and timeliness motions because resolution of those threshold matters could

2

materially affect this mandamus proceeding and, at minimum, assist this Court in its duty to examine subject-matter jurisdiction. *See Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974–75 (11th Cir. 2005) (explaining that a federal court is "powerless to continue" once it determines that subject-matter jurisdiction is lacking, that jurisdiction must be examined "at the earliest possible stage," and that an appellate court "must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review" (quoting *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999), and *Mitchell v. Maurer,* 293 U.S. 237, 244 (1934))).

The district court has not indicated that it will stay proceedings. Although a ruling on the pending threshold motions could assist this Court, the possible benefit of awaiting such a ruling is outweighed by the immediate and irreparable harm caused by continued proceedings before the judge whose recusal is the subject of this petition. The Eleventh Circuit has recognized "the systemic and case-specific importance of recusal in our judicial system and the grave consequences that may result from an erroneous failure to recuse." *In re Moody,* 755 F.3d 891, 899 (11th Cir. 2014). Continued proceedings also risk the separate institutional harm to public confidence that § 455 is designed to prevent. *See Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864 (1988); *United States v. Torkington,* 874 F.2d 1441, 1446–47 (11th Cir. 1989).

3

Canup has also conferred with counsel for Respondents regarding the relief requested in this motion. Respondents oppose the requested relief.

A stay will not prejudice Respondents. It would merely pause district-court proceedings for the limited period necessary for this Court to consider the pending mandamus petition. By contrast, allowing proceedings to continue before resolution of the petition would risk the very harm § 455 is designed to prevent: erosion of public confidence in the integrity and impartiality of judicial proceedings.

## II.    RELEVANT BACKGROUND

This action arises from Canup's former 3M Combat Arms Earplug litigation and is governed by his First Amended Complaint, which asserts claims for fraud by nondisclosure, breach of fiduciary duty, fraudulent inducement, and civil conspiracy. (App. Tab 60 ¶¶ 136–203). Canup alleges that, after he rejected the 3M Master Settlement Agreement ("MSA") and retained separate counsel to continue pursuing his individual claims, Defendants participated in his litigation through communications, proceedings, and case-specific conduct extending from February through April 2024. Canup later resolved his claims against 3M independently of the MSA.

Canup filed this action in Texas state court on October 27, 2025. The action was removed to the Northern District of Texas on November 6, 2025, and Canup promptly moved to remand. (Ex. 2, Dkts. 1, 8). After Defendants sought transfer, the

JPML transferred the action to the 3M MDL court on April 2, 2026. (*Id.* Dkt. 30). Canup thereafter filed his First Amended Complaint, moved for recusal under 28 U.S.C. § 455(a) and § 455(b)(1), and sought a suggestion of remand. (*Id.* Dkts. 34, 37, 38, 60). The district court denied recusal on May 17, 2026. (Ex. 1). Defendants then renewed their motions to dismiss, again asserting that the challenged conduct occurred at the MDL Court's request and pursuant to MDL leadership functions. (Ex. 2, Dkts. 66, 67, 79). That asserted Court-created authority is central to both Defendants' merits defenses and the recusal issues presented in this mandamus proceeding.

Canup filed this mandamus proceeding on May 30, 2026, seeking relief from proceedings in the MDL court. The petition seeks recusal and disqualification of United States District Judge M. Casey Rodgers under 28 U.S.C. § 455(a) and § 455(b)(1), vacatur of the order denying recusal, and related relief. (Ex. 1; App. Tab 61). The petition presents issues concerning the propriety of continued proceedings before a judge who Canup contends has personal knowledge of disputed evidentiary facts and whose impartiality may reasonably be questioned. (*See* Pet. at 1, 5–12).

The updated district-court docket reflects a rapidly developing procedural posture surrounding the filing of the mandamus petition. (Ex. 2). On May 29, 2026, the day before Canup filed the petition, the district court denied Canup's motion to remand and denied his motion to stay proceedings as moot. (Exs. 3–4, 6, 8; App.

Tab 70). In that order, Judge Rodgers found that federal subject-matter jurisdiction existed over Canup's state-law claims. (Ex. 8 at 10–14). The court also declined to make factual findings regarding whether Mostyn had been properly served, but nevertheless concluded that Mostyn's motion to dismiss was sufficient to establish implied consent to removal. (*Id*. at 15–16).

Mostyn filed that motion to dismiss two days earlier, on May 27, 2026, six months after Mostyn was served, and approximately ninety minutes after the court-ordered deadline for Defendants to respond to Canup's First Amended Complaint. (Exs. 5, 9 at 3).[1] The motion was silent as to consent, removal, and remand. (Ex. 7). It also did not challenge sufficiency of service. *Id*.

On June 3, 2026, five days after the court relied on Mostyn's motion to dismiss in denying remand, (Ex. 8 at 15–16), Mostyn filed a Motion to Accept Its Motion to Dismiss as Timely, arguing for the first time that service on Mostyn was improper. (Ex. 9 at 1–4).

On June 5, 2026, Canup filed a consolidated Motion for Reconsideration of the remand order or, in the alternative, to certify the order for interlocutory appeal, and requested a stay of proceedings. (Ex. 10).

---

[1] Canup filed his First Amended Complaint (App. Tab 60) on May 12, 2026. According to the MDL Court's Order (Ex. 5) Defendants were required to respond within 14 days, no later than May 26, 2026.

On June 17, 2026, Canup filed his response opposing Mostyn's Motion to Accept Its Motion to Dismiss as Timely and again requested a stay of proceedings. (Ex. 11).

### III.   ARGUMENT AND AUTHORITY

#### A. Legal Standard

This Court has the inherent power to stay proceedings in the interest of judicial economy and fairness. *See Landis v. North American Co.,* 299 U.S. 248, 254 (1936). A stay pending appellate review is an extraordinary remedy. A court considering whether to issue a stay considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See Garcia-Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir. 1986); *Swain v. Junior,* 958 F.3d 1081, 1088 (11th Cir. 2020) (quoting *Nken v. Holder,* 556 U.S. 418, 426 (2009)). The first two factors are "the most critical." *Id.* at 1088.

While generally "'[t]he first two factors ... are the most critical,' [] a motion can still be 'granted upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay.'" *LabMD, Inc. v. Fed. Trade Comm'n,* 678 F. App'x 816, 819 (11th

Cir. 2016) (citing, in part, *Garcia–Mir,* 781 F.2d at 1453). The Court has further recognized that a stay preserving the status quo is appropriate where a serious legal question is presented, little if any harm will befall other interested persons or the public, and denial of the stay would inflict irreparable injury on the movant. *See Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981) (per curiam).[2]

Because this motion is filed in connection with a pending petition for writ of mandamus, the merits inquiry focuses on whether Canup has presented a substantial case for mandamus relief. Mandamus is available only in extraordinary circumstances. *Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380–81 (2004). The petitioner must show that he has no other adequate means to obtain relief, that his right to issuance of the writ is clear and indisputable, and that issuance of the writ is appropriate under the circumstances. *Id.*

**B. The Factors Support a Stay**

    **1. Canup Is Likely to Succeed on the Merits, or at Minimum Has Presented a Substantial Case Warranting a Stay**

Canup is likely to prevail on the merits of his mandamus petition. At minimum, the petition presents a substantial case and serious legal questions warranting a stay while this Court considers whether recusal is required.

---

[2] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21 as set forth in the Petition for Writ of Mandamus filed on May 30, 2026. Petitioner incorporates the arguments and authorities supporting this Court's jurisdiction set out in that filing. Mandamus is a recognized mechanism for reviewing orders denying recusal and disqualification. *See Wyatt ex rel. Rawlins v. Rogers,* 92 F.3d 1074, 1081 (11th Cir. 1996); *In re Corrugated Container Antitrust Litig.,* 614 F.2d 958, 961 n.4 (5th Cir. 1980). Although mandamus is extraordinary, it is available where the petitioner has no other adequate means to obtain relief, the right to issuance of the writ is clear and indisputable, and issuance of the writ is appropriate under the circumstances. *Cheney,* 542 U.S. at 380–81; *In re WellCare Health Plans, Inc.,* 754 F.3d 1234, 1238 (11th Cir. 2014).

Canup has made that showing, or at least has presented a substantial case. The petition challenges the denial of recusal where Defendants rely on an off-record request by the presiding judge and alleged Court-created authority arising from that request as a substantive defense to Canup's claims. In the petition, Canup identified Defendant Bryan Aylstock's affidavit stating that Aylstock and Bradford were "requested by Judge Rodgers" to appear at Canup's March 13, 2024 hearing and that Bradford communicated with Canup's counsel "at the MDL Court's request." (Pet. at 5, 9; App. Tab 27-1 ¶¶ 11–12). Defendants then relied on those alleged requests

9

to argue that they acted only pursuant to Court-created MDL authority and therefore owed Canup no attorney-client or fiduciary duties. (Pet. at 9–10; App. Tab 23 at 1–2, 4–5, 7–10; App. Tab 27 at 2, 18–25).

The order under review confirms the problem. In denying recusal, the district court acknowledged that the order requiring Canup's appearance did not expressly state that leadership counsel must be present, but nevertheless concluded that "the record clearly reflects" that leadership counsel were requested to attend hearings involving opt-out plaintiffs and that "[n]othing about this is in dispute." (Pet. at 11–12; App. Tab 61 at 6–7 & n.3; Ex. 1 at 6–7 & n.3). That ruling effectively confirms the existence of the request while resolving against Canup the significance of a Court request that Defendants use as a merits defense.

That creates a substantial basis for relief under 28 U.S.C. § 455(b)(1). Section 455(b)(1) requires disqualification where a judge has personal knowledge of disputed evidentiary facts concerning the proceeding. The disputed issue is not whether the off-record Court request occurred, but what the request required, if anything, what authority, if any, arose from it, and whether Defendants' conduct toward Canup was shielded by that authority. Those issues bear directly on Defendants' asserted defenses and Canup's claims. Because those disputed issues concern the scope and legal effect of the judge's own off-the-record request and bear

directly on Defendants' merits defenses, Canup has presented a substantial case that § 455(b)(1) required disqualification.

Canup has also presented a substantial case under 28 U.S.C. § 455(a). Defendants rely on alleged Court-created authority as a merits defense, while the public MDL orders terminated the plaintiffs' leadership structure and limited any remaining common-benefit authority to settlement-administration functions. (Pet. at 2–3, 10–12; App. Tabs B, C). Canup disputes that the public record establishes the additional authority Defendants claim. Yet the district court denied recusal while concluding that the record clearly reflected the relevant request and participation. (Ex. 1 at 6; App. Tab 61 at 6). Under these circumstances, an objective observer could reasonably question whether the presiding judge can remain detached from disputes involving the judge's own request and its legal significance.

The appearance concerns are heightened by the additional circumstances identified in the petition, including public statements praising MDL leadership, statements concerning opt-out plaintiffs, and prior recusals in materially similar attorney-misconduct actions arising from the same MDL. (Pet. at 5–6, 17–20; App. Tab 37 at 2–3, 7–11; App. Tabs 37-5, 37-6, 37-8, 37-9). Canup need not show actual bias or bad faith; the question is whether an objective, fully informed observer would reasonably question impartiality. *See United States v. Patti,* 337 F.3d 1317, 1321 (11th Cir. 2003); *United States v. Kelly,* 888 F.2d 732, 745 (11th Cir. 1989).

The district court's denial of recusal was therefore a clear abuse of discretion. At minimum, Canup has presented a substantial case and serious legal questions. Because the mandamus petition challenges the propriety of continued proceedings before the presiding judge, a stay is necessary to prevent those proceedings from continuing before this Court determines whether recusal is required. The first stay factor supports relief.

### 2. Canup Will Suffer Irreparable Harm Absent a Stay

Irreparable harm will result if a stay is not granted. Without a stay, Canup will be required to continue litigating before the very judge whose recusal is the subject of the pending mandamus petition. That harm is not merely the burden of litigation. It is the continuation of proceedings under circumstances where Canup contends that the presiding judge's impartiality may reasonably be questioned and where the scope and legal effect Defendants attribute to the judge's request bear directly on their merits defenses.

Continued proceedings before this Court resolves the recusal issue therefore risk both case-specific harm to Canup and institutional harm that later review cannot fully remedy. If the district court continues issuing rulings, imposing deadlines, requiring briefing, or moving the case toward discovery and merits adjudication before this Court resolves the petition, the injury will occur before mandamus review can provide meaningful relief. Although later review may, at substantial cost,

12

remedy some harm to Canup, it "cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent." *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163 (3d Cir. 1993) (quoting *In re Sch. Asbestos Litig.,* 977 F.2d 764, 776 (3d Cir. 1992)). The Eleventh Circuit has likewise recognized that recusal serves both case-specific and systemic interests and that an erroneous failure to recuse may have grave consequences. *See Moody,* 755 F.3d at 899.

That harm is heightened by the district court's remand ruling. In denying remand, the court characterized Canup's state-law claims as a "post hoc, post-settlement collateral challenge" that could "disrupt the entire MDL 3M settlement structure involving over 250,000 plaintiffs" and have "far reaching implications across the federal judiciary." (Ex. 8 at 13). The court further stated that "allowing an individual litigant to maintain this sort of challenge in a state court could have serious ramifications for the MDL system as [a] whole." *Id*.

Those statements bear directly on the appearance concerns presented in mandamus. The concern is not merely that the remand ruling was erroneous; it is that the ruling reflects the Court's view that Canup's individual state-law claims threaten the 3M settlement structure, the MDL system, and broader federal judicial administration. Viewing the case through that lens, and expressly framing remand as "allowing" Canup to maintain such a challenge in state court, could cause a

reasonable observer to question whether the Court can approach the remand issue with the impartiality required by § 455.

Although judicial remarks made during proceedings ordinarily do not require recusal, they may do so when they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555 (1994). Actual ill will need not be established under § 455(a)'s objective standard; it is enough that "the average layperson would have doubts about any judge's impartiality under these circumstances." *Kelly,* 888 F.2d at 745. Even if the remand ruling would not independently require recusal, its language remains materially relevant when considered together with the other circumstances presented in the mandamus petition.

The concern is compounded by the procedural posture that developed after the Court denied remand. The district court declined to determine whether Mostyn had been properly served, yet concluded that any removal defect was cured by Mostyn's motion to dismiss. (Ex. 8 at 15–16). That motion was silent concerning removal, remand, consent, and service. (Ex. 7). The resulting service, consent, waiver, and cure issues are now being litigated through Mostyn's later motion to accept its motion to dismiss as timely, (Ex. 9), and Canup's motion for reconsideration, (Ex. 10), rather than in the threshold remand posture, where removal statutes are strictly construed and all doubts concerning federal jurisdiction

14

are resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994); *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

A stay is also necessary to preserve meaningful review. A stay operates on the proceeding itself by halting or postponing it and "simply suspend[s] judicial alteration of the status quo." *Nken,* 556 U.S. at 428–29. Several threshold matters remain pending, including Canup's motion for reconsideration of the order denying remand and Mostyn's motion to accept its motion to dismiss as timely. Further rulings could materially change the posture of the case, generate additional disputes concerning jurisdiction, service, consent, waiver, and prejudice, and require unnecessary motion practice in a case that may require reassignment if mandamus relief is granted.

The harm is therefore immediate and irreparable. Without a stay, Canup must continue litigating before the judge whose continued participation is under mandamus review, while additional proceedings risk compounding an appearance-based injury that later appellate correction cannot fully remedy. This factor weighs strongly in favor of relief.

### 3.  A Stay Will Not Substantially Harm Respondents

Issuance of a stay will not substantially harm Respondents or any other interested party. The requested relief would preserve the status quo while this Court

considers the pending mandamus petition. *See Nken,* 556 U.S. at 429; *Ruiz,* 650 F.2d at 565. It would not decide the merits of Canup's claims, deprive Respondents of any defense, prevent Respondents from pursuing their pending motions when the stay is lifted, or alter any party's substantive rights. This factor therefore weighs in favor of relief.

Any delay would be limited and justified by the nature of the relief sought. This mandamus proceeding concerns whether the presiding judge should continue to participate in the case. A temporary pause while this Court considers that issue does not impose substantial prejudice on Respondents. *See Nken,* 556 U.S. at 426; *Swain,* 958 F.3d at 1088. By contrast, allowing the case to proceed could require the parties to brief and litigate issues that may later have to be revisited if mandamus relief is granted.

A stay may also avoid unnecessary expense for all parties. Several threshold and merits-related issues remain pending, including motions to dismiss, (Ex. 2, Dkts. 66, 67, 79), reconsideration of the remand ruling, (Ex. 10), and Mostyn's motion to accept its motion to dismiss as timely. (Ex. 9). Proceeding with additional briefing, scheduling activity, discovery obligations, or rulings while the mandamus petition is pending risks duplicative litigation and unnecessary expenditure of party and judicial resources.

### 4. A Limited Stay Serves, Rather Than Harms, The Public Interest

The public interest will be served by granting a stay. This mandamus proceeding concerns whether recusal is required under 28 U.S.C. § 455(a) and § 455(b)(1). Those provisions protect not only the litigants, but also public confidence in the integrity and impartiality of the judiciary. *See Liljeberg,* 486 U.S. at 859–60, 864 (explaining that § 455(a) promotes public confidence in the judicial process and directing courts to consider "the risk of undermining the public's confidence in the judicial process").

The public has a strong interest in ensuring that judicial proceedings are conducted before a judge whose impartiality cannot reasonably be questioned. "To perform its high function in the best way, 'justice must satisfy the appearance of justice.'" *In re Murchison,* 349 U.S. 133, 136 (1955) (citation omitted). Section 455(a) therefore asks whether an objective, fully informed observer would entertain a significant doubt about the judge's impartiality. *Torkington,* 874 F.2d at 1446. The public interest strongly favors protecting the appearance of impartial justice, particularly where the propriety of the presiding judge's continued participation is under mandamus review. *See White,* 846 F.2d at 695; *Torkington,* 874 F.2d at 1446–47; *Moody,* 755 F.3d at 899.

A stay would protect those institutional interests while this Court determines whether recusal is required. Allowing proceedings to continue while the propriety of the presiding judge's participation remains under mandamus review risks

17

undermining public confidence and may require additional proceedings to be revisited if relief is granted. *See Liljeberg,* 486 U.S. at 859–60, 864.

The public interest also favors judicial economy. The Eleventh Circuit has recognized that judicial economy is served by avoiding district-court proceedings on questions that may be rendered moot or materially altered by appellate review, while also preventing the parties from being forced to litigate on two fronts. *See Shewchun v. United States,* 797 F.2d 941, 943 (11th Cir. 1986). Several threshold issues remain disputed, including subject-matter jurisdiction, removal, consent, service, waiver, reconsideration of the remand ruling, and the legal effect of Mostyn's late-filed motion to dismiss. (*See* Exs. 1, 2–4, 7–11). Continued proceedings risk unnecessary rulings and expenditures that may later be affected by this Court's resolution of the recusal issue.

Because a stay would preserve the status quo for the limited period necessary to resolve the mandamus petition, the public-interest factor weighs in favor of granting relief.

## IV.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Petitioner Brandon Canup respectfully requests that this Court enter an order staying all proceedings in the district court pending resolution of this mandamus proceeding.

Canup further requests such other and further relief as this Court deems just and proper.

Signed this 22nd day of June, 2026.                    Respectfully submitted,

/s/ Brandon Canup

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## Certificate Of Compliance

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 4,118 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

/s/ Brandon Canup

Brandon Canup, Petitioner

19

4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

***pro se***

## Certificate Of Service

I HEREBY CERTIFY that I filed this Petition for Writ of Mandamus using the court's electronic-filing system and that a copy of the Petition was furnished pursuant to Federal Rules of Appellate Procedure 21 and 25(d) via email on this 22nd day of June 2026 to the following:

Hon. M. Casey Rodgers
District Judge of the United States District Court,
Northern District of Florida
flnd_rodgers@flnd.uscourts.gov

Gregory K. Rettig
Counsel for Defendants Bryan Aylstock,
Bobby Bradford and Aylstock, Witkin, Kreis &
Overholtz, PLC
grettig@lgwmlaw.com

Jonathan Vine
Counsel for Defendants Gregory Brown and
Fleming, Nolen & Jez, LLP
jonathan.vine@csklegal.com

Benjamin Stevenson
Counsel for Defendant
Mostyn Law Firm, PC
bjs@stevenson-legal.com

/s/ Brandon Canup

Brandon Canup, Petitioner
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

21

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**BRANDON CANUP,**

> **Plaintiff,**

v.                                                    **CASE NO. 3:26cv3359-MCR-ZCB**

**BRYAN F AYLSTOCK, et al.,**

> **Defendants.**

_____/

## <u>ORDER</u>

Plaintiff Brandon Canup has filed a Motion for Recusal and Disqualification pursuant to 28 U.S.C. § 455(a), (b)(1), ECF No. 37, which Defendants oppose, ECF Nos. 51, 52. Having fully reviewed the arguments, I find no grounds to justify recusal.

By way of background, Canup filed a products liability action against the 3M Company that was part of a multidistrict litigation ("MDL") proceeding consolidated in this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), pursuant to 28 U.S.C. § 1407. *See In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885; *Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.). This was by far the largest MDL in the federal judiciary's history. Weighing in at 400,000 plaintiffs represented by some 500 different law firms, this behemoth comprised one-third of the judiciary's entire civil docket for more than two years.

Page 2 of 10

At the outset of the litigation, I appointed leadership counsel for the universe of plaintiffs, to shepherd all cases through the coordinated MDL proceedings. Leadership counsel expended enormous resources and extraordinary efforts on behalf of all plaintiffs, including conducting extremely complex discovery involving not only the defendants but also the Department of Defense, the Department of Justice, and the Veterans Administration; retaining and deposing dozens of experts on topics ranging from the science of hearing and sound to the design and testing of hearing devices to military rules and regulations to military weaponry and ballistics, and beyond; engaging in complex motion practice; successfully fighting a bankruptcy along the way; and trying 16 bellwether cases in a period of 14 months. These efforts were conducted on behalf of all plaintiffs and all plaintiffs benefited when leadership successfully negotiated a $6 billion global settlement. Shortly after the settlement was reached, I held a hearing to outline the settlement terms and thank everyone involved for their outstanding service in the litigation—plaintiffs' leadership counsel, defense counsel, my staff, clerk's office staff, and others. *In re 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885-MCR-HTC, Master Docket, ECF No. 3862 (Transcript) (N.D. Fla. Sept. 8, 2023).

Defendant Gregory Brown of Fleming Nolen & Jez LLP ("FNJ") represented Canup in his member case until the global settlement was reached and Canup elected

CASE NO: 3:26cv3359-MCR-ZCB

USCA11 Case: 26-11887    Document: 7    Date Filed: 06/22/2026    Page: 28 of 281

Page 3 of 10

not to participate in the settlement benefits program, at which time Brown withdrew.

After opting out of the global settlement, Canup retained new counsel, David

Gamble.  I required every opt-out plaintiff to attend an in-person hearing before

continuing to litigate their individual case, at which I discussed the settlement

program and its benefits as well as the risks of going forward individually, provided

a final opportunity for the plaintiff to participate in the settlement program, and

verified that the plaintiff was fully informed before proceeding further.  Canup was

no exception.  He and Gamble attended such a hearing on March 13, 2024.  Also in

attendance were counsel for 3M and three court-appointed MDL plaintiffs'

leadership attorneys, namely Defendants Bryan Aylstock and Bobby Bradford of

Aylstock Witkin Kreis & Overholtz PLLC (the "Aylstock Defendants") and Michael

Burns of Mostyn Law.

At Canup's hearing, as was my practice, I discussed the settlement program,

all the benefits that had been conferred on all plaintiffs by leadership, as well as the

risks of litigating an individual claim on remand.  Leadership counsel were present

to offer details about the settlement program and answer questions.  I made certain

that Canup was fully informed, and I made clear that whether he chose to participate

or opt out of the settlement was his decision.  Canup was then given one final

opportunity to participate in the global settlement, which he declined, as was his

CASE NO: 3:26cv3359-MCR-ZCB

right to do.  Still, with the assistance of his new attorney, Gamble, he then satisfied

the MDL requirements to proceed with his individual opt-out case.  He later attended

court-assisted mediation with his counsel, through which he negotiated his own

settlement with 3M outside of the settlement program.

Canup then filed the instant *pro se* suit in Texas state court against his original

MDL attorneys and the MDL leadership counsel who attended the March 13, 2024

hearing, alleging claims of professional negligence, fraud, breach of fiduciary duty,

and civil conspiracy arising out of their conduct in the MDL.  Brown removed the

case to federal court, and the Aylstock Defendants filed a motion with the JPML,

requesting that the case be transferred to this Court as a tag-along case in the MDL.[1]

After an opportunity for briefing, the JPML granted the request and transferred the

case to this Court on April 2, 2026.  The JPML concluded that Canup's case involves

common questions of fact with the MDL, that this Court (the transferee court)

retained jurisdiction over miscellaneous issues necessary to complete the

administration of the MDL cases, and that Canup's claims against his counsel arise

---

[1] After the global settlement was reached, the undersigned retained jurisdiction over the settlement administration, enforcement of orders, and all miscellaneous issues related to the MDL.  The JPML has since reopened the MDL on the transfer of additional actions.

CASE NO: 3:26cv3359-MCR-ZCB

USCA11 Case: 26-11887   Document: 7   Date Filed: 06/22/2026   Page: 30 of 281

out of the settlement program and related orders regarding case management, common benefit, and the appointment of leadership counsel in the MDL.

Canup seeks my disqualification under 28 U.S.C. § 455(a) and (b)(1). Under § 455(a), a judge must recuse herself from any proceeding in which her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Determining whether there is an appearance of impropriety involves consideration of "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotations omitted) (noting also that any doubts should be resolved in favor of recusal). Recusal is mandatory under subsection (b) if the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Canup argues that bias, an appearance of impropriety, and extra-judicial communications/knowledge require my disqualification. I disagree. He points first to the fact that leadership counsel were present at a hearing held on March 13, 2024, and suggests impropriety because the request for leadership to attend does not appear

CASE NO: 3:26cv3359-MCR-ZCB

Page 6 of 10

on the public docket in advance of the hearing.[2]  Canup also suggests that the reason

leadership was present and whether the undersigned requested their presence is a

disputed fact in this litigation.  Neither assertion is correct.  The record clearly

reflects that all 160 opt-out plaintiffs were required to attend a hearing, and that at

each hearing held, I requested leadership counsel to be present, along with 3M's

counsel, for the individual plaintiff's (in this case Canup's) benefit—so that the

individual plaintiff could hear the pros and cons of settling or continuing to litigate

and ask any questions before making a final decision on whether to participate in the

settlement program.  This purpose was outlined in the order setting each hearing,

including Canup's.[3]  And, as shown in the hearing transcript from Canup's March

13, 2024 hearing, I explained on the record that I felt it would be important to afford

him one final opportunity to participate in the settlement, to ask me any questions,

and also to have leadership counsel from both sides present to answer questions.

---

[2] Canup's argument is grounded in statements within the affidavit of Defendant Bryan Aylstock, submitted with a now-moot motion to dismiss, stating that Aylstock and Bradford attended a hearing on March 13, 2024, on behalf of leadership, as "requested by Judge Rodgers," and that Bradford communicated with Canup's counsel, Gamble, in advance of the hearing on behalf of leadership and "at the MDL Court's request."  ECF No. 27–1 (Aylstock Affidavit).

[3] While the order setting the March 13, 2024 hearing did not expressly state that leadership counsel must be present, it did require Canup and his attorney to appear and be prepared to discuss not only his continued obligations for litigating a claim but also the benefits of participating in the settlement program.  Member Case No. 8:20cv14021-MCR-HTC, ECF No. 6 (Order, Feb. 5, 2024).

CASE NO: 3:26cv3359-MCR-ZCB

Page 7 of 10

Member Case No. 8:20cv14021-MCR-HTC, ECF No. 59 at 4. At the hearing, plaintiffs' leadership counsel and 3M's counsel were invited to make remarks about the challenges of the MDL, the benefits of the settlement, and the litigation obligations and obstacles going forward. Nothing about this is in dispute or suggests any personal bias, extra-judicial knowledge, or a basis on which a fully informed observer would question my impartiality in the instant case. *See* 28 U.S.C. § 455(a), (b)(1). While judges should err on the side of recusal if potential conflicts exist, recusal is not warranted for "imaginary reasons." *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001).

Canup also argues that I made prior statements to all plaintiffs, including him, about the adequacy of representation provided by leadership counsel that a neutral observer would see as reflecting a prejudgment of issues in dispute in this case. Again, I disagree. The record reflects that after the global settlement was reached, I made general comments on the record commending the professionalism and efforts of the MDL leadership on both sides and thanking them for their hard work that ultimately resolved the MDL in a global settlement. I also assured all plaintiffs that they had been well represented by leadership counsel, who had vigorously pursued

Page 8 of 10

a fair resolution for plaintiffs as a whole.[4]  Contrary to Canup's suggestion, these were general comments about how leadership on both sides of the aisle conducted the MDL and the settlement negotiations and could not be viewed as favoritism or as a comment on the performance of every retained attorney.

As the Supreme Court has stated, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (discussing § 455(a) and (b)(1)).  My prior comments do not display the type of deep-seated favoritism that "would make fair judgment impossible," *id.*, or that could raise a "significant doubt" about my impartiality, *Patti*, 337 F.3d at 1321.  And I have no bias or personal knowledge of any disputed facts in this case—the only facts within my knowledge are those learned through the course of the MDL, which is not a basis for bias or recusal.

---

[4] I stated that "in my view, the leadership teams on both sides really do exemplify the very best of the legal profession" and that the 250,000 plaintiffs were "represented very well." *In re 3M Combat Arms Earplug Products Liability Litigation*, 3:19-md-2885-MCR-HTC, ECF No. 3862 at 13 (Hearing Tr. Sept. 8, 2023).  Over fifty attorneys participated in plaintiff leadership roles. Again, at its height, the MDL involved 500 law firms with over 400,000 plaintiffs.

CASE NO: 3:26cv3359-MCR-ZCB

Canup's final argument is that because I recused myself in another "materially similar" case, this bolsters his argument for recusal here. But the case Canup references, *Kelly v. Aylstock*, Case No. 3:25cv1947-TKW-ZCB (N.D. Fla.), is not "materially similar." Kelly's suit alleges professional negligence by Bryan Aylstock in his capacity as Kelly's retained attorney in the MDL. This is a material difference from the instant case. Not one of the leadership attorneys Canup sues in this suit was retained to represent him in the MDL. Moreover, in *Kelly*, when Aylstock (his retained attorney) moved to withdraw, Kelly objected, and I held an *ex parte* hearing. *See Kelly v. 3M,* Member Case No. 7:20-cv-36595-MCR-GRJ, ECF No. 15 (N.D. Fla. Mar. 13, 2024). In the subsequent order granting the motion to withdraw, which is filed under seal, I explained the basis for withdrawal (a fundamental disagreement with counsel) and made comments directly about Aylstock's handling of Kelly's case. Because my remarks commenting on the quality of representation by Kelly's retained counsel could have been viewed as prejudgment of an issue that would be presented in Kelly's professional negligence case, I recused. By contrast, my comments on the record commending the efforts and professionalism of leadership counsel as a whole during the MDL are entirely different and do not reflect any prejudgment on my part about leadership counsel's conduct toward any particular litigant who might have retained them. I recused myself in *Kelly* not out of any

CASE NO: 3:26cv3359-MCR-ZCB

personal bias or extra-judicial knowledge of facts but because leadership counsel

served also as Kelly's retained counsel and, most importantly, I had commented

directly on the quality of that representation.  That simply is not the case here.

Accordingly, Canup's Motion for Recusal and Disqualification, ECF No. 37,

is **DENIED**.

**DONE AND ORDERED** this 17th day of May 2026.


*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**


CASE NO: 3:26cv3359-MCR-ZCB

# EXHIBIT 2

# U.S. District Court
## Northern District of Florida (Pensacola)
## CIVIL DOCKET FOR CASE #: 3:26-cv-03359-MCR-ZCB

CANUP v AYLSTOCK et al
Assigned to: JUDGE M CASEY RODGERS
Referred to: MAGISTRATE JUDGE ZACHARY C BOLITHO
Lead case: 3:19-md-02885-MCR-HTC
Member case: (View Member Case)
Case in other court: Texas Northern, 4:25-cv-01255
Cause: 28:1332 Diversity-Notice of Removal

Date Filed: 04/03/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**BRANDON CANUP**

represented by **BRANDON CANUP**
4812 HIDDEN OAKS LANE
ARLINGTON, TX 76017
972-762-4314
Email: canup.brandon@gmail.com
PRO SE

V.

**Defendant**

**BRYAN F AYLSTOCK**

represented by **GREGORY KENT RETTIG**
LLOYD GRAY WHITEHEAD &
MONROE - PENSACOLA FL
125 W ROMANA STREET
SUITE 330
PENSACOLA, FL 32502
850-777-3322
Fax: 850-777-3290
Email: grettig@lgwmlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JUSTIN TYLER KEETON**
LLOYD GRAY WHITEHEAD &
MONROE - PENSACOLA FL
125 W ROMANA STREET
SUITE 330
PENSACOLA, FL 32502
850-777-3322
Fax: 850-434-6491
Email: jkeeton@lgwmlaw.com
*TERMINATED: 06/18/2026*

**Defendant**

**BOBBY BRADFORD**

represented by **GREGORY KENT RETTIG**
(See above for address)

6/22/26, 1:24 PM Case 3:26-cv-03359-MCR-ZCB Document 97-1 Filed 06/22/26 Page 38 of 281
CM/ECF - U.S. District Court:flnd

USCA11 Case: 26-11887 Document: 7 Date Filed: 06/22/2026 Page: 38 of 281

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JUSTIN TYLER KEETON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL BURNS**

**Defendant**

**CLIFF ROBERTS**                                    represented by   **JONATHAN ANDRES FERNANDEZ**
COLE SCOTT & KISSANE PA -
PLANTATION FL
600 N PINE ISLAND ROAD
SUITE 500
PLANTATION, FL 33324
954-343-3960
Email: jonathan.fernandez@csklegal.com
*ATTORNEY TO BE NOTICED*

**SKIPPER JONATHAN VINE**
COLE SCOTT & KISSANE PA - WEST
PALM BEACH FL
222 LAKEVIEW AVENUE
SUITE 500
WEST PALM BEACH, FL 33401
561-383-9200
Fax: 561-683-8977
Email: jonathan.vine@csklegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GREGORY BROWN**                                   represented by   **JONATHAN ANDRES FERNANDEZ**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SKIPPER JONATHAN VINE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALYSTOCK WITKIN KREIS &**                         represented by   **GREGORY KENT RETTIG**
**OVERHOLTZ PLC**                                                    (See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JUSTIN TYLER KEETON**
(See above for address)
*TERMINATED: 06/18/2026*

**Defendant**

**FLEMING NOLEN & JEZ LLP**     represented by **JONATHAN ANDRES FERNANDEZ**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SKIPPER JONATHAN VINE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MOSTYN LAW FIRM PC**     represented by **BENJAMIN JAMES STEVENSON**
STEVENSON LEGAL PLLC -
PENSACOLA BEACH FL
919 PANFERIO DRIVE
PENSACOLA BEACH, FL 32561
702-306-6708
Email: bjs@stevenson-legal.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/06/2025 | 1 | NOTICE OF REMOVAL filed by Gregory Donald Brown, Alystock, Witkin, Kreis & Overholtz, PLL. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Exhibit(s) Plaintiff's State Court Petition, # 2 Exhibit(s) State Court Docket Sheet) (Sorrels, Randy) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/06/2025 | 2 | New Case Notes: A filing fee has not been paid. No prior sanctions found. (For court use only - links to the national and circuit indexes.) File to: appropriate staff attorney. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/06/2025 | 3 | Notice and Instruction to Pro Se Party (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/06/2025 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:2, 3. Thu Nov 6 09:37:25 CST 2025 (crt) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/06/2025) |
| 11/10/2025 | 4 | NOTICE of Filing Executed Return of Service filed by Brandon Canup (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/10/2025) |
| 11/10/2025 | 5 | Appendix in Support filed by Brandon Canup re: 4 Notice of Filing Executed Return of Service (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/10/2025) |
| 11/10/2025 | 6 | CERTIFICATE OF SERVICE by Brandon Canup re 5 Appendix in Support, 4 Notice (Other) *Corrected Certificate of Service* (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/10/2025) |

6/22/26, 1:24 PM Case 3:26-cv-03359-MCR-ZCB Document 97-1 CM/ECF - U.S. District Court Live Filed 06/22/26 Page 40 of 281

USCA11 Case: 26-11887 Document: 7 Date Filed: 06/22/2026 Page: 40 of 281

| 11/21/2025 | 7 | SUMMONS Returned Unexecuted as to Gregory Brown, Cliff Roberts. (Attachments: # 1 Affidavit(s) Attempted Service on Defendant Gregory Brown, # 2 Affidavit(s) Attempted Service on Defendant Cliff Roberts) (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/21/2025) |
|---|---|---|
| 11/21/2025 | 8 | First MOTION to Remand filed by Brandon Canup with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/21/2025) |
| 11/21/2025 | 9 | Appendix in Support filed by Brandon Canup re 8 First MOTION to Remand (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 11/21/2025) |
| 12/01/2025 | 10 | MOTION to Dismiss filed by Gregory Brown, Fleming Nolen & Jez LLP Attorney Michael Steven Cedillo added to party Gregory Brown(pty:dft), Attorney Michael Steven Cedillo added to party Fleming Nolen & Jez LLP(pty:dft) (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/01/2025) |
| 12/09/2025 | 11 | NOTICE of Potential Tag-Along Actions filed by Bryan F. Aylstock (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/09/2025) |
| 12/09/2025 | 12 | NOTICE of Errata for Dkt. 2029, 11 Notice of Potential Tag-Along Actions filed by Bryan F. Aylstock (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/09/2025) |
| 12/12/2025 | 14 | RESPONSE filed by Gregory Brown, Fleming Nolen & Jez LLP re: 8 First MOTION to Remand (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2) (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/12/2025) |
| 12/12/2025 | 15 | MOTION to Stay *Proceedings* filed by Gregory Brown, Fleming Nolen & Jez LLP (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/12/2025) |
| 12/15/2025 | 16 | RESPONSE filed by Brandon Canup re: 15 MOTION to Stay *Proceedings* (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/15/2025 | 17 | Appendix in Support filed by Brandon Canup re 16 Response/Objection (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/15/2025 | 18 | RESPONSE filed by Brandon Canup re: 10 MOTION to Dismiss (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/15/2025 | 19 | REPLY filed by Brandon Canup re: 8 First MOTION to Remand (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/15/2025) |
| 12/23/2025 | 20 | Court's Copy of MOTION for Miscellaneous Relief Requesting Permission for Electronic Filing by Pro Se Litigant with JPML filed by Brandon Canup (jnp) Modified on 1/12/2026 (mmw). [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/23/2025) |
| 12/29/2025 | 21 | REPLY filed by Gregory Brown, Fleming Nolen & Jez LLP re: 15 MOTION to Stay *Proceedings* (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/29/2025) |
| 12/29/2025 | 22 | REPLY filed by Gregory Brown, Fleming Nolen & Jez LLP re: 10 MOTION to Dismiss (Cedillo, Michael) [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/29/2025) |
| 12/29/2025 | 23 | Court's copy of documents filed by Bryan F. Aylstock at the JPML (jnp) (Main Document 23 replaced on 12/29/2025) (jnp). [Transferred from Texas Northern on 4/3/2026.] (Entered: 12/29/2025) |
| 01/05/2026 | 24 | Court's copy of documents filed by Brandon Canup at the JPML (jnp) Modified filed on 1/12/2026 (mmw). [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/05/2026) |

| | | |
|---|---|---|
| 01/11/2026 | 25 | CERTIFICATE OF SERVICE by Brandon Canup (Attachments: # 1 Exhibit(s) SOS Certificate of Service for Bryan Aylstock, # 2 Exhibit(s) SOS Certificate of Service for Bobby Bradford, # 3 Exhibit(s) SOS Certificate of Service for Michael Burns, # 4 Exhibit(s) SOS Certificate of Service for Aylstock, Witkin, Kreis & Overholtz, PLC, # 5 Exhibit(s) SOS Certificate of Service for Fleming, Nolen & Jez, LLP, # 6 Declaration(s) Declaration of Brandon Canup) (Canup, Brandon) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/11/2026) |
| 01/12/2026 | 26 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-16110109) filed by Alystock Witkin Kreis & Overholtz PLC, Bryan F. Aylstock, Bobby Bradford Attorney Gregory Kent Rettig added to party Alystock Witkin Kreis & Overholtz PLC(pty:dft), Attorney Gregory Kent Rettig added to party Bryan F. Aylstock(pty:dft), Attorney Gregory Kent Rettig added to party Bobby Bradford(pty:dft) (Rettig, Gregory) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/12/2026) |
| 01/12/2026 | 27 | MOTION to Dismiss filed by Alystock Witkin Kreis & Overholtz PLC, Bryan F. Aylstock, Bobby Bradford (Attachments: # 1 Affidavit(s) Affidavit of Bryan Aylstock, # 2 Exhibit(s) Transcript) (Rettig, Gregory) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/12/2026) |
| 01/16/2026 | 28 | ORDER FOR ADMISSION PRO HAC VICE: The Court has considered the Application for Admission Pro Hac Vice of Gregory K. Rettig (doc. 26 ). The application is GRANTED. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Senior Judge Terry R Means on 1/16/2026) (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/16/2026) |
| 01/23/2026 | 29 | ORDER GRANTING 15 MOTION TO STAY AND ADMINISTRATIVELY CLOSING CASE: In an effort to more efficiently manage this Court's docket, this case is hereby ADMINISTRATIVELY CLOSED pending the JPML's decision. If this case is not ultimately transferred to the JPML, either party may move to reopen this case within thirty days of the JPML's final decision on the motion to transfer. (Ordered by Senior Judge Terry R Means on 1/23/2026) (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 01/23/2026) |
| 04/02/2026 | 30 | Transfer Order: The JPML has issued the attached order in MDL 2885, and that order has now been filed in the Northern District of Florida. (jnp) [Transferred from Texas Northern on 4/3/2026.] (Entered: 04/03/2026) |
| 04/03/2026 | 31 | Case transferred in from District of Texas Northern; Case Number 4:25-cv-01255. Original file certified copy of transfer order and docket sheet received. (Entered: 04/03/2026) |
| 04/03/2026 | 32 | NOTICE REGARDING ATTORNEY ADMISSION. re 31 Case Transferred In - District Transfer. (emailed to Michael S. Cedillo, counsel for Gregory Brown and Fleming Nolen & Jes LLP) (djb) (Entered: 04/03/2026) |
| 04/03/2026 | 33 | ORDER - The docket reflects case was transferred with several motions pending, including a Motion to Dismiss, ECF No. 27 , filed by Defendants Aylstock Witkin Kreis & Overholtz, PLC, Byran Aylstock, and Bobby Bradford, which Plaintiff has not yet responded to. Plaintiff must respond to the 27 Motion to Dismiss within 14 days of the date of this Order. Signed by JUDGE M CASEY RODGERS on 4/3/2026. (Response to motion due by 4/17/2026.) (djb) (Entered: 04/03/2026) |
| 04/06/2026 | 34 | Plaintiff Brandon Canup's Motion for Leave to File First Amended Complaint and Memorandum in Support, by BRANDON CANUP. (alb) (Entered: 04/07/2026) |

| 04/06/2026 | 35 | (Proposed) FIRST AMENDED COMPLAINT against ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD, GREGORY BROWN, MICHAEL BURNS, FLEMING NOLEN & JEZ LLP, MOSTYN LAW FIRM PC, Cliff Lee Roberts, filed by BRANDON CANUP. (One service copy provided.) (alb) (Entered: 04/07/2026) |
|---|---|---|
| 04/07/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 35 First Amended Complaint, 34 Plaintiff Brandon Canup's Motion for Leave to File First Amended Complaint and Memorandum in Support. (alb) (Entered: 04/07/2026) |
| 04/07/2026 | 36 | ORDER re 34 Motion to File an Amended Complaint. Defendants must respond to the motion within 14 days of the date of this Order.(Internal deadline for referral to judge if response not filed earlier: **4/21/2026**). Signed by JUDGE M CASEY RODGERS on 04/07/2026. (alb) (Entered: 04/07/2026) |
| 04/14/2026 | 37 | Plaintiff Brandon Canup's Motion for Recusal and Disqualification and Memorandum in Support, by BRANDON CANUP. (alb) (Entered: 04/14/2026) |
| 04/14/2026 | 38 | Plaintiff Brandon Canup's Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation and Memorandum in Support, by BRANDON CANUP. (alb) (Entered: 04/14/2026) |
| 04/14/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 37 Plaintiff Brandon Canup's Motion for Recusal and Disqualification and Memorandum in Support, 38 Plaintiff Brandon Canup's Motion for Suggestion of Remand to the Judicial Panel on Multi-district Litigation and Memorandum in Support. (alb) (Entered: 04/14/2026) |
| 04/14/2026 | | Set Deadlines as to 37 MOTION for Recusal and Disqualification, 38 MOTION for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation. (Internal deadline for referral to judge if response not filed earlier: **4/28/2026**). (djb) (Entered: 04/15/2026) |
| 04/16/2026 | 39 | Plaintiff Brandon Canup's MOTION for Permission to File Electronically by BRANDON CANUP. (djb) (Entered: 04/16/2026) |
| 04/16/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 39 MOTION for Permission to File Electronically (djb) (Entered: 04/16/2026) |
| 04/16/2026 | 40 | ORDER OF RECUSAL. MAGISTRATE JUDGE HOPE T CANNON recused. Case reassigned to MAGISTRATE JUDGE ZACHARY C BOLITHO for all further proceedings. Signed by MAGISTRATE JUDGE HOPE T CANNON on 4/16/2026. Motions referred to ZACHARY C BOLITHO. (djb) (Entered: 04/16/2026) |
| 04/16/2026 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 39 MOTION for Permission to File Electronically, See also, 40 Order of Recusal. Referred to ZACHARY C BOLITHO. (djb) (Entered: 04/16/2026) |
| 04/17/2026 | | Motions No Longer Referred to MAGISTRATE JUDGE ZACHARY C BOLITHO : 39 MOTION for Permission to File Electronically (djb) (Entered: 04/17/2026) |
| 04/17/2026 | 41 | ORDER - Plaintiff has filed 37 MOTION for Recusal and Disqualification, 38 MOTION for Suggestion of Remand. The motions do not include Defendants position. Accordingly, to the extent Defendants want to respond, their response is due within 14 days of the date of this Order. Signed by JUDGE M CASEY RODGERS on 4/17/2026. (Response to motions due by **5/1/2026**.) (djb) (Entered: 04/17/2026) |

6/22/26, 1:24 PM Case 3:26-cv-03359-MCR-ZCB Document 97-1 CM/ECF - U.S. District Court:flnd Filed 06/22/26 Page 43 of 281

USCA11 Case: 26-11887 Document: 7 Date Filed: 06/22/2026 Page: 43 of 281

| | | |
|---|---|---|
| 04/17/2026 | 42 | ORDER - Canup's 39 MOTION for Permission to File Electronically is GRANTED. Any questions concerning the procedures for registering and filing documents electronically should be directed to Erica Smith, Erica_L_Smith@flnd.uscourts.gov, in the Northern District of Florida, Pensacola Division. Signed by JUDGE M CASEY RODGERS on 4/17/2026. (djb) (Entered: 04/17/2026) |
| 04/17/2026 | 43 | RESPONSE and MEMORANDUM IN OPPOSITION TO AWKO DEFENDANTS' 27 MOTION TO DISMISS, filed by BRANDON CANUP. (djb) (Entered: 04/17/2026) |
| 04/17/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 43 Response to Motion 27 Motion to Dismiss. (djb) (Entered: 04/17/2026) |
| 04/20/2026 | 44 | MOTION for Substituted Service on Defendants Michael Burns and Cliff Roberts by BRANDON CANUP. (djb) (Entered: 04/21/2026) |
| 04/21/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 44 MOTION for Substituted Service on Defendants Michael Burns and Cliff Roberts (djb) (Entered: 04/21/2026) |
| 04/21/2026 | 45 | NOTICE of Appearance by SKIPPER JONATHAN VINE on behalf of GREGORY BROWN, FLEMING NOLEN & JEZ LLP (VINE, SKIPPER) (Entered: 04/21/2026) |
| 04/21/2026 | 46 | RESPONSE in Opposition re 34 MOTION to Amend/Correct filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 04/21/2026) |
| 04/21/2026 | 47 | RESPONSE to Motion re 34 MOTION to Amend/Correct *DEFENDANTS, GREGORY BROWN AND FLEMING NOLEN & JEZ LLP, RESPONSE TO PLAINTIFFS MOTION TO FILE FIRST AMENDED COMPLAINT* filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 04/21/2026) |
| 04/22/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 34 MOTION to Amend Complaint, 35 Amended Complaint, 46 Response in Opposition to Motion, 47 Response to Motion (djb) (Entered: 04/22/2026) |
| 04/28/2026 | 48 | MOTION for Leave to File re 46 Response in Opposition to Motion, 34 MOTION to Amend/Correct, 47 Response to Motion *Motion for Leave to File Reply Memorandum in Support of Motion to Amend Complaint* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 04/28/2026) |
| 04/28/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 48 MOTION for Leave to File Reply Memorandum re 46 Response in Opposition to Motion, 47 Response to Motion, re: 34 MOTION to Amend Complaint. (djb) (Entered: 04/28/2026) |
| 05/01/2026 | 49 | RESPONSE to Motion re 38 MOTION to Remand filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 05/01/2026) |
| 05/01/2026 | 50 | RESPONSE in Opposition re 38 MOTION to Remand filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/01/2026) |
| 05/01/2026 | 51 | RESPONSE in Opposition re 37 MOTION for Recusal MOTION to Disqualify Judge filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/01/2026) |

| | | |
|---|---|---|
| 05/01/2026 | 52 | REPLY to Response to Motion re 37 MOTION for Recusal MOTION to Disqualify Judge filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 05/01/2026) |
| 05/04/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 51 Response in Opposition to Motion, 52 Reply to Response to Motion, re: 37 MOTION for Recusal and Disqualification and Memorandum in Support; 49 Response to Motion, 50 Response in Opposition to Motion, 38 MOTION for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation and Memorandum in Support. (djb) (Entered: 05/04/2026) |
| 05/05/2026 | 53 | MOTION for Leave to File re 52 Reply to Response to Motion, 51 Response in Opposition to Motion, 37 MOTION for Recusal MOTION to Disqualify Judge *Motion for Leave to File Reply Memorandum in Support of Motion for Recusal and Disqualification* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 05/05/2026) |
| 05/05/2026 | | Set Deadlines as to 53 MOTION for Leave to File Reply Memorandum in Support of Motion for Recusal and Disqualification. re 52 Reply to Response to Motion, 51 Response in Opposition to Motion. (Internal deadline for referral to judge if response not filed earlier: **5/19/2026**). (djb) (Entered: 05/07/2026) |
| 05/06/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 53 MOTION for Leave to File Reply, re 52 Reply to Response to Motion for Recusal and Disqualification. (djb) (Entered: 05/06/2026) |
| 05/06/2026 | 54 | ORDER - Canup's 34 Motion for Leave to File First Amended Complaint is GRANTED. Defendants' Motions to Dismiss, ECF Nos. 10 , 27 , are DENIED as moot. Canup must file his amended complaint as a separate docket entry within 7 days of the date of this Order. Once filed as a separate docket entry, Canup's amended complaint will be the operative pleading and Defendants must respond to the amended complaint within **14 days** thereafter. Canups Motion for Leave to File Reply Memorandum in Support of his Motion to Amend Complaint, ECF No. 48 , is DENIED as moot. Signed by JUDGE M CASEY RODGERS on 5/6/2026. (Amended Complaint due by **5/13/2026**.) (djb). (Main Document 54 replaced on 5/6/2026) (djb). Modified on 5/6/2026 to note this order is amended (djb). (Entered: 05/06/2026) |
| 05/07/2026 | 55 | RESPONSE to Motion re 53 MOTION for Leave to File re 52 Reply to Response to Motion, 51 Response in Opposition to Motion, 37 MOTION for Recusal MOTION to Disqualify Judge *Motion for Leave to File Reply Memorandum in Support of Motion for Recusal and Disqualifica FNJ DEFENDANTS RESPONSE TO PLAINTIFFS MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECUSAL AND DISQUALIFICATION filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/07/2026)* |
| 05/08/2026 | 56 | ORDER denying 53 Motion for Leave to File Reply Memorandum in Support of His Motion for Recusal and Disqualification. Signed by JUDGE M CASEY RODGERS on 05/08/2026. (alb) (Entered: 05/08/2026) |
| 05/08/2026 | 57 | MOTION for Leave to File re 50 Response in Opposition to Motion, 38 MOTION to Remand *Motion for Leave to File Reply Memorandum in Support of Motion for Suggestion of Remand* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 05/08/2026) |
| 05/11/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 57 Motion for Leave to File Reply Memorandum in Support of Motion for Suggestion of Remand. (djb) (Entered: 05/11/2026) |

| 05/11/2026 | 58 | ORDER denying 57 Motion for Leave to File Reply Memorandum in Support of Motion for Suggestion of Remand. No extraordinary circumstances have been shown to justify a reply. The undersigned is fully capable of deciding whether the transfer order, prior transcripts, and/or prior orders of this Court have been mischaracterized, without further briefing. Signed by JUDGE M CASEY RODGERS on 5/11/2026. (djb) (Entered: 05/11/2026) |
|---|---|---|
| 05/12/2026 | 59 | Plaintiff Brandon Canup's Motion to Stay Proceedings and Memorandum of Law in Support, re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 Motion to Stay Pending Remand. (CANUP, BRANDON) Modified on 5/13/2026 to match title of document (alb). (Entered: 05/12/2026) |
| 05/12/2026 | 60 | FIRST AMENDED COMPLAINT against All Defendants All Defendants., filed by BRANDON CANUP. (CANUP, BRANDON) (Entered: 05/12/2026) |
| 05/12/2026 | | Set Deadlines as to 59 Plaintiff Brandon Canup's Motion to Stay Proceedings and Memorandum of Law in Support. (Internal deadline for referral to judge if response not filed earlier: **5/26/2026**). (djb) (Entered: 05/15/2026) |
| 05/13/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 60 Amended Complaint, 59 Plaintiff Brandon Canup's Motion to Stay Proceedings and Memorandum of Law in Support, re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 Motion to Stay Pending Remand. (alb) (Entered: 05/13/2026) |
| 05/17/2026 | 61 | ORDER denying 37 Motion for Recusal and Disqualification. Signed by JUDGE M CASEY RODGERS on May 17, 2026. (aow) (Entered: 05/17/2026) |
| 05/26/2026 | 62 | NOTICE of Appearance by BENJAMIN JAMES STEVENSON on behalf of MOSTYN LAW FIRM PC (STEVENSON, BENJAMIN) (Entered: 05/26/2026) |
| 05/26/2026 | 63 | MOTION for Extension of Time to File Response/Reply *FNJ DEFENDANTS MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFFS FIRST AMENDED PETITION WITH MEMORANDUM OF LAW* by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/26/2026) |
| 05/26/2026 | 64 | RESPONSE in Opposition re 59 MOTION to Stay re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 *Motion to Stay Pending Remand FNJ DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFFS MOTION TO STAY PROCEEDINGS WITH MEMORANDUM OF LAW* filed by GREGORY BROWN, FLEMING NOLEN & JEZ LLP. (VINE, SKIPPER) (Entered: 05/26/2026) |
| 05/26/2026 | 65 | RESPONSE in Support re 59 MOTION to Stay re 38 MOTION to Remand, 37 MOTION for Recusal MOTION to Disqualify Judge, 8 *Motion to Stay Pending Remand* filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 05/26/2026) |
| 05/26/2026 | 66 | MOTION to Dismiss *Plaintiff's Amended Complaint* by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (Internal deadline for referral to judge if response not filed earlier: **6/9/2026**). (RETTIG, GREGORY) (Entered: 05/26/2026) |
| 05/26/2026 | | Set Deadlines/Hearings re 63 Motion for Enlargement of Time to Respond to Plaintiff's First Amended Petition. (Internal deadline for referral to judge if response not filed earlier: **6/9/2026**). (alb) (Entered: 05/27/2026) |
| 05/27/2026 | 67 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by MOSTYN LAW FIRM PC. (STEVENSON, BENJAMIN) (Entered: 05/27/2026) |

| 05/27/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 64 Response in Opposition to 59 Motion to Stay, 65 Response in Support of 59 Motion to Stay. (alb) (Entered: 05/27/2026) |
|---|---|---|
| 05/27/2026 | 68 | ORDER re 63 Motion for Enlargement of Time to Respond to Plaintiff's First Amended Petition. Defendants Brown and Fleming Nole & Jez LLP must file their response to the amended complaint on or before June 5, 2026. (Internal deadline for referral to judge if response not filed earlier: **6/5/2026**). Signed by JUDGE M CASEY RODGERS on 05/27/2026. (alb) (Entered: 05/27/2026) |
| 05/29/2026 | 69 | ORDER - The 44 MOTION for Substituted Service on Defendants Michael Burns and Cliff Roberts is GRANTED, as requested. Plaintiff is authorized to effect substitute service on Defendants Michael Burns and Cliff Roberts by the methods stated in the motion. Signed by JUDGE M CASEY RODGERS on 5/29/2026. (djb) (Entered: 05/29/2026) |
| 05/29/2026 | 70 | ORDER - Canup's 8 Motion for Remand, is DENIED. Canup's 38 Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation, is DENIED. Canup's 59 Motion to Stay Proceedings, is DENIED as MOOT. Signed by JUDGE M CASEY RODGERS on 5/29/2026. (djb) (Entered: 05/29/2026) |
| 06/02/2026 | 71 | NOTICE *of Filing Summons Request* by BRANDON CANUP (CANUP, BRANDON) (Entered: 06/02/2026) |
| 06/02/2026 | 72 | NOTICE *of Filing Summons Request* by BRANDON CANUP (CANUP, BRANDON) (Entered: 06/02/2026) |
| 06/02/2026 | 73 | NOTICE *of Filing of Petition for Writ of Mandamus in the U.S. Court of Appeals for the Eleventh Circuit* by BRANDON CANUP (Attachments: # 1 Exhibit Petition for Writ of Mandamus) (CANUP, BRANDON) (Entered: 06/02/2026) |
| 06/03/2026 | 74 | Summons Issued as to MICHAEL BURNS, # 1 CLIFF ROBERTS. (djb) Modified on 6/3/2026 (djb). (Entered: 06/03/2026) |
| 06/03/2026 | 75 | MOTION Accept Motion to Dismiss as Timely re 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by MOSTYN LAW FIRM PC. (STEVENSON, BENJAMIN) (Entered: 06/03/2026) |
| 06/03/2026 | | Set Deadlines as to 75 MOTION Accept Motion to Dismiss as Timely re 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Internal deadline for referral to judge if response not filed earlier: **6/17/2026**). (djb) (Entered: 06/03/2026) |
| 06/04/2026 | 76 | NOTICE of Appearance by SKIPPER JONATHAN VINE on behalf of CLIFF ROBERTS (VINE, SKIPPER) (Entered: 06/04/2026) |
| 06/05/2026 | 77 | Plaintiff Brandon Canup's Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings re 70 Order, by BRANDON CANUP. (CANUP, BRANDON) Modified on 6/5/2026 (djb). (Entered: 06/05/2026) |
| 06/05/2026 | | Set Deadlines as to 77 MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings, re 70 Order. (Internal deadline for referral to judge if response not filed earlier: **6/22/2026**). (djb) (Entered: 06/05/2026) |
| 06/05/2026 | 78 | MOTION *Motion for Clarification* by BRANDON CANUP. (Attachments: # 1 Exhibit Email with attachments from Diana Rafael of CSK to Brandon Canup on behalf of Cliff Roberts, # 2 Exhibit Emails between Brandon Canup and Benjamin Stevenson on behalf of Mostyn Law Firm, PC, # 3 Exhibit Declaration of Brandon Canup) (CANUP, BRANDON) (Entered: 06/05/2026) |

| 06/05/2026 | 79 | MOTION to Dismiss *Amended Petition* by GREGORY BROWN, FLEMING NOLEN & JEZ LLP, CLIFF ROBERTS. (Internal deadline for referral to judge if response not filed earlier: **6/22/2026**). (Attachments: # 1 Exhibit) (VINE, SKIPPER) (Entered: 06/05/2026) |
|---|---|---|
| 06/05/2026 | 80 | NOTICE of Appearance by JONATHAN ANDRES FERNANDEZ on behalf of GREGORY BROWN, FLEMING NOLEN & JEZ LLP, CLIFF ROBERTS (FERNANDEZ, JONATHAN) (Entered: 06/05/2026) |
| 06/05/2026 | 81 | MOTION to Seal Document *Attachment 1 to Docket Entry 79* by GREGORY BROWN, FLEMING NOLEN & JEZ LLP, CLIFF ROBERTS. (FERNANDEZ, JONATHAN) (Entered: 06/05/2026) |
| 06/05/2026 | 82 | NOTICE *of Filing Redacted Substitute and Request Clerk Seal Attachment 1 to Docket Entry 79* by GREGORY BROWN, FLEMING NOLEN & JEZ LLP, CLIFF ROBERTS (Attachments: # 1 Supplement) (FERNANDEZ, JONATHAN) (Entered: 06/05/2026) |
| 06/06/2026 | 83 | MOTION for Extension of Time to File Response/Reply as to 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 66 MOTION to Dismiss *Plaintiff's Amended Complaint* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 06/06/2026) |
| 06/08/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 78 Plaintiff's MOTION for Clarification; 81 MOTION to Seal Attachment 1 to Docket Entry 79 ; 83 Plaintiff's MOTION for Extension of Time to File Response as to 67 MOTION TO DISMISS, 66 MOTION to Dismiss Plaintiff's Amended Complaint. (See also 82 NOTICE of Filing Redacted Substitute and Request Clerk Seal Attachment 1 to Docket Entry 79) (djb) (Entered: 06/08/2026) |
| 06/08/2026 | 84 | ORDER granting 81 MOTION to Seal Document Attachment 1 to Docket Entry 79 . The Clerk is instructed to maintain Exhibit 1 to Defendants' Motion to Dismiss (ECF No. 79 -1) under seal. Signed by JUDGE M CASEY RODGERS on 6/8/2026. (djb) (Entered: 06/08/2026) |
| 06/08/2026 | 85 | ORDER granting 83 MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO AWKO DEFENDANTS' MOTION TO DISMISS AND MOSTYN LAW'S PROCEDURALLY DEFECTIVE MOTION TO DISMISS. Plaintiff's deadline is extended as follows: response to AWKO Defendant's Motion to Dismiss (ECF No. 66 ) is due **June 23, 2026**, and response to Mostyn Law Firm's Motion to Dismiss (ECF No. 67 ) is due **June 24, 2026**. Signed by JUDGE M CASEY RODGERS on 6/8/2026. (djb) (Entered: 06/08/2026) |
| 06/11/2026 | 86 | NOTICE *Notice of Filing of Appendix to Petition For Writ of Mandamus* by BRANDON CANUP re 73 Notice (Other) (Attachments: # 1 Exhibit Appendix to Petition For Writ of Mandamus Volumes I & II) (CANUP, BRANDON) (Entered: 06/11/2026) |
| 06/11/2026 | 87 | ORDER Canup's 78 MOTION for Clarification is granted in part and denied in part. (see order) Signed by JUDGE M CASEY RODGERS on 6/11/2026. (djb) (Entered: 06/11/2026) |
| 06/15/2026 | 88 | MOTION for Extension of Time to File Response/Reply as to 79 MOTION to Dismiss *Amended Petition* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 06/15/2026) |
| 06/16/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 88 MOTION for Extension of Time to File Response as to 79 MOTION to Dismiss Amended Petition. (djb) (Entered: 06/16/2026) |
| 06/16/2026 | 89 | ORDER granting 88 Unopposed Motion for Enlargement of Time to Respond to Texas Defendants' 79 Motion to Dismiss. Signed by JUDGE M CASEY RODGERS on 6/16/2026. (Response to motion is due on or before **7/2/2026**.) (djb) (Entered: 06/16/2026) |

| 06/16/2026 | 90 | NOTICE *Amended Certificate of Interested Persons Filed* by BRANDON CANUP re 73 Notice (Other) (Attachments: # 1 Exhibit Amended Certificate of Interested Persons) (CANUP, BRANDON) (Entered: 06/16/2026) |
|---|---|---|
| 06/17/2026 | 91 | RESPONSE in Opposition re 75 MOTION Accept Motion to Dismiss as Timely re 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by BRANDON CANUP. (Attachments: # 1 Exhibit Executed Citation and Return of Service showing service on Mostyn Law Firm, PC through Registered Agent Andrew Browning, # 2 Exhibit Unsworn Declaration of Andrew Browning, # 3 Exhibit Franchise Tax Account Status Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC on November 4, 2025, # 4 Exhibit Change of Registered Agent Naming Andrew Browning as Registered Agent for Mostyn Law Firm, PC on November 11, 2018, # 5 Exhibit Due Diligence Declaration of Christina Edwards, # 6 Exhibit 2018 Public Information Report Identifying Andrew Browning as President of Mostyn Law Firm, PC Signed by Andrew Browning, # 7 Exhibit 2019 Public Information Report Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC Signed by Andrew Browning, # 8 Exhibit 2020 Public Information Report Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC, # 9 Exhibit 2021 Public Information Report Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC Signed by Andrew Browning, # 10 Exhibit 2022 Public Information Report Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC, # 11 Exhibit 2023 Public Information Report Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC, # 12 Exhibit Franchise Tax Account Status Identifying Andrew Browning as Registered Agent for Mostyn Law Firm, PC on June 14, 2026, # 13 Exhibit Declaration of Brandon Canup) (CANUP, BRANDON) (Entered: 06/17/2026) |
| 06/18/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 91 Response in Opposition to Motion,,,,,, 75 MOTION Accept Motion to Dismiss as Timely re 67 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (djb) (Entered: 06/18/2026) |
| 06/18/2026 | 92 | NOTICE to Withdraw as Attorney by Justin T. Keeton by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK. (RETTIG, GREGORY) Modified on 6/18/2026 to correct civil event to Notice. Motion will be terminated. (djb). (Entered: 06/18/2026) |
| 06/18/2026 | 93 | RESPONSE to Motion re 77 Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings, re 70 Order. filed by ALYSTOCK WITKIN KREIS & OVERHOLTZ PLC, BRYAN F AYLSTOCK, BOBBY BRADFORD. (RETTIG, GREGORY) (Entered: 06/18/2026) |
| 06/19/2026 | 94 | MOTION for Extension of Time to File Response/Reply *to Plaintiff's, Brandon Canup, Consolidated Motion [DE 77]* by GREGORY BROWN, FLEMING NOLEN & JEZ LLP, CLIFF ROBERTS. (FERNANDEZ, JONATHAN) (Entered: 06/19/2026) |
| 06/19/2026 | 95 | RESPONSE in Opposition re 77 Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings, re 70 Order. filed by MOSTYN LAW FIRM PC. (STEVENSON, BENJAMIN) (Entered: 06/19/2026) |
| 06/22/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 93 Response to Motion, 95 Response in Opposition to Motion re 77 Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings. (djb) (Entered: 06/22/2026) |

USCA11 Case: 26-11887 Document: 7 Date Filed: 06/22/2026 Page: 49 of 281

| 06/22/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 94 MOTION for Extension of Time to File Response to Plaintiff's, 77 Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings. (djb) (Entered: 06/22/2026) |
|---|---|---|
| 06/22/2026 | 96 | MOTION for Leave to File re 77 Consolidated MOTION for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal, Motion to Stay Proceedings, re 70 Order., 95 Response in Opposition to Motion *Motion for Leave to File Reply* by BRANDON CANUP. (CANUP, BRANDON) (Entered: 06/22/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/22/2026 13:24:09 | | |
| **PACER Login:** bcanup1986 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 3:26-cv-03359-MCR-ZCB |
| **Billable Pages:** 12 | **Cost:** | 1.20 |

# EXHIBIT 3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 4:25-cv-01255-Y |
| *Plaintiff,* | Senior Judge Terry R Means |
| v. | |
| BRYAN F AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC | PLAINTIFF BRANDON CANUP'S MOTION FOR REMAND AND BRIEF IN SUPPORT |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S MOTION FOR REMAND
AND BRIEF IN SUPPORT**

**MOTION FOR REMAND**

COMES NOW Plaintiff Brandon Canup ("Plaintiff" or "Canup") and, pursuant to 28 U.S.C. § 1447(c), files this Motion for Remand ("Motion for Remand") and respectfully states as follows:

On November 6, 2025 Defendant Gregory Brown ("Brown") filed a Notice of Removal in *Brandon Canup v. Bryan F. Aylstock et al.* (Cause No 067-371499-25 67th Judicial District Court of Tarrant County) to the United States District Court for the Northern District of Texas, Fort Worth Division, "based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(a), 28 U.S.C. § 1332(a), and 28 U.S.C. §1446(b), as well as federal question jurisdiction pursuant to 28 U.S.C. § 1331." (See Dkt. 1)

1

As explained more fully in the Brief in Support (found below in this Instrument), removal was improper and remand is mandatory because:

1. **Removal is procedurally defective:** Brown failed to pay the filing fee required by 28 U.S.C. § 1914(a) and failed to file "all process, pleadings, and orders" as required by 28 U.S.C. § 1446(a) and N.D. Tex. Local Civ. R. 81.1(a)(4), leaving no operative complaint on file and preventing issuance of summons under Fed. R. Civ. P. 4(b) and not all properly served defendants have joined in or consented to removal, as required by 28 U.S.C. § 1446(b)(2)(A);

2. **Forum-defendant rule triggered before removal:** A Texas defendant, Mostyn Law Firm, P.C. ("Mostyn"), was personally served on November 4, 2025, two days before removal, barring removal under 28 U.S.C. § 1441(b)(2);

3. **No "snap removal":** Because service on a forum defendant had already occurred, any snap-removal theory fails;

4. **Lack of complete diversity:** Canup and removing defendant Brown are both Texas citizens, defeating § 1332(a);

5. **No improper joinder shown:** Brown's improper-joinder assertion is vague, conclusory, and unsupported by any discrete facts or applicable analysis. Brown has not met his heavy burden to prove improper joinder;

6. **No federal question on the face of the petition:** Canup's well-pleaded claims arise solely under Texas law; § 1407 is procedural and does not confer jurisdiction; and

7. **No collateral attack on MDL orders:** Canup seeks damages for defendants'
   independent misconduct, not modification of any MDL ruling. Canup is not
   collaterally attacking any MDL order or judgment.

This Court should resolve subject-matter jurisdiction before any transfer or stay related to the MDL is considered. Canup incorporates the Brief in Support as if fully stated herein.

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that this Court remand this action back to the 67th Judicial District Court of Tarrant County Texas, award costs under § 1447(c), and grant Canup such other and further relief to which he may be entitled at law or in equity.

DATED: November 21, 2025

Respectfully submitted,

*s/ Brandon Canup*
Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

3

## CERTIFICATE OF CONFERENCE

The moving party complied with the attorney-conference requirement of Local Rule 7.1(b). Brandon Canup tried to contact Gregory Brown in good faith by email on November 7th, 10th, 13th and 17th of 2025, in an attempt to resolve the issue(s) set forth in this instrument. Results of conference(s):  Despite such good faith attempts, Defendant Gregory Brown never responded to Brandon Canup. Therefore, this motion is submitted to the Court as opposed.

*s/ Brandon Canup*

## CERTIFICATE OF SERVICE

On this 21st day of November 2025, the undersigned, Brandon Canup, caused a true and correct copy of the foregoing instrument to be served on Gregory Brown via e-filing, and on all other parties to this lawsuit via first class U.S. Mail postage prepaid, pursuant to the Federal Rules of Civil Procedure.

*s/ Brandon Canup*

4

**TABLE OF CONTENTS**

Page

I. Background ......................................................................................................1

II. Argument and Authority ................................................................................3

　A.  Removal Is Procedurally Defective Under 28 U.S.C. § 1446
　　and Local Rule 81.1 ...................................................................................3

　B. Plaintiff Properly Joined the Texas Defendants .......................................5
　　1. Legal Standard ......................................................................................5
　　2. Brown's Argument Fails Because It Is Entirely Conclusory ................6
　　3. Canup's Claims Against the Texas Defendants Are Well-Pleaded and Viable.......6
　　4. The Allegation That Joinder Was Designed to "Avoid Federal Court"
　　　is Not Only Manufactured but is also Legally Irrelevant .......................7

　C. Lack of Complete Diversity and Prior Service of a
　Texas Defendant Bars Removal .....................................................................8
　　1. "Snap Removal" Presupposes Complete Diversity,
　　　Which Does Not Exist Here .................................................................8
　　2. Forum Defendant Rule Bars Removal Once Texas Defendant is Served ..............9
　　3. The Record Proves Service Was Completed Prior To Removal ...........10
　　4. Because the Forum Defendant Rule Was Triggered,
　　　This Court Lacks Subject-Matter Jurisdiction ...................................10

　D. Brown Fails to Establish Federal Question Jurisdiction
　　Under 28 U.S.C. § 1331 ...........................................................................11
　　1. Section 1407 Does Not Create Federal Jurisdiction ...........................12
　　2. Canup's Claims Arise Independently of Any Federal Issue ................12
　　3. Allegations Concerning MDL Orders Do Not Create
　　　a "Substantial Federal Issue" .............................................................13
　　4. The "Collateral Attack" Theory Misconstrues Canup's Claims ..........14
　　5. This Court Should Decide Remand Before Any Transfer Consideration ............15

　E. Summary and Conclusion ........................................................................16

III. Request for Relief ......................................................................................17

**Table of Authorities**

**Cases**                                                          Page

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ....................................................15

*B, Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. Unit A 1981) ....................................6

*Burden v. Gen. Dynamics Corp.*, 60 F.3d 213 (5th Cir. 1995) ....................................6

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ..........................................7, 13

*Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242 (5th Cir. 2011) .......................5

*Dukes v. S.C. Ins. Co.*, 770 F.2d 545 (5th Cir. 1985) ..........................................4

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) ....................11, 13

*Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262–63 (5th Cir. 1988) ................4

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ...........14

*Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999) .....................................5

*Gunn v. Minton*, 568 U.S. 251 (2013) ..........................................................13, 14

*In re 1994 Exxon Chem. Fire*, 558 F.3d 378 (5th Cir. 2009) ..........................................10

*In re Bear River Drainage Dist.*, 267 F.2d 849 (10th Cir. 1959) ......................................15

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162
(4th Cir. 1992) .........................................................................................12

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ..........12, 15

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002) ....................5

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) ..........................................13

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) .........10

*Perez v. Kirk & Carrigan*, 822 S.W.2d 261
(Tex. App.—Corpus Christi 1991, writ denied) ..................................................7

*Primate Constr., Inc. v. Silver*, 884 S.W.2d 151 (Tex. 1994) ..........................................10

*Pullman Co. v. Jenkins*, 305 U.S. 534 (1939) .................................................................9

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941) .....................................5

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746
(5th Cir. 1996) .....................................................................................5, 6

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) ..............................6, 7, 17

*Sullivan v. Bickel & Brewer*, 943 S.W.2d 477 (Tex. App.—Dallas 1995, writ denied) ......7

*Texas Brine Co., LLC v. Am. Arbitration Ass'n*, 955 F.3d 482 (5th Cir. 2020) ..............8, 9

*Thompson v. Brown*, 91 F.3d 20 (5th Cir. 1996) ..........................................................10

*Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003) ..............................................................5, 6

*Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783 (5th Cir. 1993) ....10

*Wright v. Combined Ins. Co. of Am.*, 959 F. Supp. 356 (N.D. Miss. 1997) ........................4

**Statutes**

28 U.S.C. § 1331 ........................................................................................3, 11

28 U.S.C. § 1332(a) .............................................................................3, 8, 9, 17

28 U.S.C. § 1407 ..................................................................................11, 12, 17

28 U.S.C. § 1441(a) ........................................................................................3

28 U.S.C. § 1441(b)(2) ....................................................................8, 9, 11, 16

28 U.S.C. § 1446(a) ..................................................................................3, 4, 16

28 U.S.C. § 1446(b) .....................................................................................3, 4

28 U.S.C. § 1446(d) .........................................................................................4

28 U.S.C. § 1447(c) .................................................................................4, 5, 17

28 U.S.C. § 1914(a) ....................................................................................4, 16

**Rules**

Fed. R. Civ. P. 4(b) ........................................................................................4

Fed. R. Civ. P. 11 ..........................................................................................11

N.D. Tex. Local Rule 5.1(e) ...........................................................................3

N.D. Tex. Local Rule 81.1(a)(4) ...................................................................16

Tex. R. Civ. P. 107 .......................................................................................10

**Other Authorities**

Northern District of Texas CM/ECF Administrative Procedures Manual .........................3

U.S. District Court for the Northern District of Texas Electronic
Case Filing Registration Website, *https://www.txnd.uscourts.gov/file-registration* ...........3

## BRIEF IN SUPPORT OF PLAINTIFF BRANDON CANUP'S MOTION FOR REMAND

COMES NOW Plaintiff Brandon Canup ("Plaintiff" or "Canup") and files this Brief in Support of his Motion for Remand ("Motion for Remand") and respectfully states as follows:

### I.

### Background

Defendant Gregory Brown's ("Brown") Notice of Removal contains several incomplete and misleading statements in its recitation of "procedural overview and legal basis for removal." Canup provides the following clarifications for the Court:

Canup is one of thousands of claimants who filed a case, *Brandon Canup v. 3M Company et al.* Case No. 8:20-cv-14021, in the largest multi-district litigation in history, IN RE:3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION No. 3:19-md-2885 ("MDL") in the United States District Court for the Northern District of Florida, Pensacola Division before the Honorable M. Casey Rodgers.

To be more specific about how large the MDL was, more than 391,000 individual lawsuits were filed with 250,000 of those individuals participating in a global settlement agreement. Around 141,000 claims were dismissed without partaking in settlement of any kind, showing how the MDL was overwhelmed with meritless cases driven by the attorneys themselves.

Despite the tremendous amount of effort that the above-named Defendants put into attempting to manipulate and coerce Canup into accepting the global settlement agreement, Canup refused. Canup ultimately entered into a settlement agreement with 3M that was separate from the global settlement agreement in the MDL.

1

On October 27, 2025 Canup filed his Original Petition suing the above-named Defendants, all of whom are his former attorneys, in a Texas state court action, *Brandon Canup v. Bryan F. Aylstock et al.* Cause No 067-371499-25 in the 67th Judicial District Court of Tarrant County, Texas based strictly on their individual misconduct, including fraud, civil conspiracy and other breaches of duties recognized under Texas law. (See Appx. pp. 22-43) None of these claims depend on the MDL, and none seek to overturn, modify, or otherwise impact any MDL order or judgment.

The statement that the Petition was "designed to avoid federal court" is both baseless and legally irrelevant. The forum in which Canup chose to file suit, Texas state court, is a lawful and proper forum for tort claims against Texas Defendants. A Plaintiff's choice of a state forum is not evidence of gamesmanship; it is his right.

On October 29, 2025 citations were issued by the Tarrant County District Clerk for all of the above-named Defendants. Canup hired Process Server Christina Edwards PSC#13296 to serve process on all Defendants residing in Texas including, Gegory Brown, Cliff Roberts, Mostyn Law Firm, P.C. and Fleming, Nolen & Jez, L.L.P.

On November 4, 2025 Christina Edwards personally served Mostyn Law Firm, P.C. through their registered agent, Andrew Browning at 10:16 a.m. at 10000 Memorial Dr., Ste 740, Houston, Texas 77024, two days prior to Brown's Notice of Removal.[1] (See Appx. p. 2)

---

[1] Canup attaches as Exhibit 2 the *Affidavit of Due Diligence* from process server Christina Edwards (PSC #13296), which documents that on October 30, 2025, personnel at Mostyn Law Firm, P.C. informed her that their registered agent, Andrew Browning, was "not an employee," "not listed on the company registry," and that "no one in the office was authorized to accept service." These statements gave the clear impression that Mr. Browning was no longer affiliated with the firm or able to accept service on its behalf. However, the Texas Secretary of State's records confirm that Mr. Browning remained the registered agent of record for Mostyn Law Firm, P.C. on that date. Despite the misleading representations, Ms. Edwards later located and personally served Mr. Browning on November 4, 2025. (See Appx. p. 2) This record demonstrates that any delay in service resulted from confusion created by the firm's own personnel rather than any lack of diligence by the process server. (See Appx. p. 4) (*Affidavit of Due Diligence*) and (See Appx. pp. 6-7) (*Texas Secretary of State Franchise Tax Account Status for Mostyn*).

On November 6, 2025 Brown filed a Notice of Removal in *Brandon Canup v. Bryan F. Aylstock et al.* to this Court, "based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(a), 28 U.S.C. § 1332(a), and 28 U.S.C. §1446(b), as well as federal question jurisdiction pursuant to 28 U.S.C. § 1331."[2] (*See* Dkt. 1.)

For the reasons stated herein, this case, *Brandon Canup v. Bryan F. Aylstock et al.* (Case No. 4:25-cv-01255-Y) should be remanded back to the 67th Judicial District Court of Tarrant County, Texas.

## II.

### Argument and Authority

### A.  Brown's Removal Is Procedurally Defective and Jurisdiction Has Not Attached

Brown's Notice of Removal is fatally defective because he failed to comply with the mandatory procedural requirements of 28 U.S.C. § 1446. Subsection (a) requires the removing defendant to file "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action" together with the notice of removal, and to pay the applicable federal filing fee. None of these prerequisites has been satisfied. (See Dkt. 2) In addition, under § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." The Fifth Circuit has long held that removal without the unanimous consent of all properly served defendants is procedurally defective and requires remand. *See Getty*

---

[2] Canup notes that Brown, though a licensed attorney, filed the Notice of Removal electronically *pro se* without first complying with the Northern District of Texas's electronic filing prerequisites for pro se litigants. Local Civil Rule 5.1(**e**) requires electronic filing "subject to the restrictions and requirements of the ECF Administrative Procedures Manual." That Manual, in turn, conditions registration on compliance with the Court's ECF Registration procedures, which expressly require that a non-prisoner pro se civil litigant "must first file at least one document in paper in his or her case" before ECF privileges are granted. The Court's ECF registration site makes no distinction between attorney and non-attorney pro se filers, both are required to file their first document in paper before being authorized for electronic filing. Accordingly, Brown's electronic filing of the Notice of Removal appears inconsistent with the governing filing procedures. See *N.D. Tex. Local Civ. R. 5.1(e); N.D. Tex. ECF Administrative Procedures Manual §§ II.A–B; U.S. Dist. Ct. N.D. Tex.,* https://www.txnd.uscourts.gov/file-registration

*Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1262–63 (5th Cir. 1988). Mostyn Law Firm, P.C. has not joined in or consented to the removal.

To date, Brown has not paid the federal filing fee required by 28 U.S.C. § 1914(a). As a result, no civil action has been properly docketed in the United States District Court for the Northern District of Texas, and no summons may be issued under Federal Rule of Civil Procedure 4(b). A notice of removal that fails to comply with the procedural requirements of 28 U.S.C. § 1446 is defective and does not properly invoke federal jurisdiction. The Fifth Circuit has recognized that such procedural defects, including the failure to satisfy statutory filing obligations, render a removal invalid unless timely corrected and may warrant remand if timely challenged. In this case, Brown's failure to meet the procedural requirements of § 1446, including payment of the filing fee and submission of all required state court documents, renders the removal defective and subject to remand. *See Dukes v. S.C. Ins. Co.*, 770 F.2d 545 (5th Cir. 1985).

Brown also failed to attach all state-court pleadings and process. (See Dkt. 2). These omissions violate § 1446(a) and Local Civil Rule 81.1(a)(4), which both require complete filing of the state-court record. Under 28 U.S.C. § 1447(c), a district court must act on a timely motion to remand when a defect in the removal procedure is identified, and district courts within the Fifth Circuit have recognized that such procedural defects require remand when timely challenged. *See Wright v. Combined Ins. Co. of Am.*, 959 F. Supp. 356, 359 (N.D. Miss. 1997).

Because Brown has not filed a complete record or paid the filing fee, this case has never been properly docketed as a federal civil action. There is no operative complaint on file and no valid summons may issue, leaving both courts unable to proceed. The procedural defects are not minor technicalities; they prevent this Court from exercising jurisdiction altogether. The Supreme Court and Fifth Circuit strictly construe the removal statutes, requiring remand whenever there is

4

any doubt as to the existence of federal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Until Brown perfects removal by filing a complete record and paying the filing fee, the state court retains exclusive jurisdiction, and this Court cannot issue summons or take any substantive action. Accordingly, remand is required under 28 U.S.C. § 1447(c).

### B. Plaintiff Properly Joined the Texas Defendants

Brown asserts that Canup "improperly joined the Texas Defendants … in a clear effort to avoid federal court." This statement is conclusory, unsupported, and legally irrelevant. Brown provides no factual or legal basis to show that Canup cannot recover against any Texas Defendant. The Notice of Removal merely recites the general standard for improper joinder without applying it to the allegations in Canup's Petition. Because Brown fails to identify any defect in the pleadings supporting improper joinder, this argument collapses under settled Fifth Circuit precedent.

### 1. Legal Standard

A defendant alleging improper or fraudulent joinder bears a heavy burden. In the Fifth Circuit, "[F]raudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). All factual allegations and ambiguities in state law must be resolved in favor of the plaintiff. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

The test is not whether the plaintiff will ultimately prevail, but whether there is any reasonable possibility of recovery. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.,*

*Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). The Fifth Circuit repeatedly cautions that improper joinder is a narrow exception, not a broad tool for removing cases that defendants simply prefer to litigate in federal court. *Smallwood*, 385 F.3d at 576.

In evaluating such claims, courts must resolve all contested factual issues and ambiguities in the controlling state law in favor of the plaintiff. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995); *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549–50 (5th Cir. Unit A 1981). If there is any possibility that the plaintiff has stated a viable cause of action against a nondiverse defendant, joinder is proper and the case must be remanded. *Burden*, 60 F.3d at 216.

### 2. Brown's Argument Fails Because It Is Entirely Conclusory

Brown's Notice of Removal does not identify a single defect in Canup's claims against the Texas defendants. Instead, it simply asserts that "there is no possible recovery" and cites *Smallwood* and *Travis* without analysis or application. (See Dkt. 1 ¶¶ 5-6) Conclusory statements of this kind do not satisfy the removing party's burden. *Travis*, 326 F.3d at 648 (Any contested issues of fact and any ambiguities of state law must be resolved in favor of the plaintiff).

To meet its burden, a removing party must "identify the presence of discrete and undisputed facts that would preclude plaintiffs recovery" or demonstrate that the pleadings fail under the applicable standard. *Smallwood*, 385 F.3d at 573–74. Brown has done neither. He has not pointed to any allegation that fails to state a claim, nor offered any argument showing that Canup's state-law causes of action are legally impossible. (See Dkt. 1 ¶¶ 5-7) The absence of any factual or legal support renders the improper-joinder argument meritless as a matter of law.

### 3. Canup's Claims Against the Texas Defendants Are Well-Pleaded and Viable

Canup's Original Petition alleges specific misconduct by the Texas defendants that states viable causes of action under well-established Texas law. (See Appx. pp. 22-30) Canup alleges

that the defendants pressured him to accept a settlement while concealing material terms, conduct that constitutes both fraud and breach of fiduciary duty under Texas precedent. (See Appx. pp. 8, 26, 28, 40) Canup further alleges that, after he declined to settle, the defendants withheld his complete client file despite his written requests, thereby violating their fiduciary duty and his absolute right to the return of his papers. (See Appx. pp. 17, 21, 26, 29, 40) Canup also alleges that the defendants failed to disclose material conflicts of interest between their own financial interests in the multidistrict litigation and their duties of loyalty and independent judgment owed to him. (See Appx. pp. 16, 23, 26, 28-29, 40)

Texas law recognizes that attorneys owe their clients the highest fiduciary duties of loyalty, honesty, and full disclosure. Conduct such as concealing or misrepresenting material settlement terms, or failing to disclose conflicts of interest that compromise independent judgment, supports actionable claims for fraud and breach of fiduciary duty. *See Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265–66 (Tex. App.—Corpus Christi 1991, writ denied); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied).

Because Brown's notice provides no factual or legal reason why recovery against the Texas defendants is impossible or even improbable, the removing party has not met its burden under *Smallwood*. The presumption of validity of Canup's well-pleaded claims therefore remains intact.

### 4. The Allegation That Joinder Was Designed to "Avoid Federal Court" Is not only Manufactured, but also Legally Irrelevant

Even if Canup's choice of forum incidentally defeats federal jurisdiction, that is not "improper joinder." The Fifth Circuit has long held that a plaintiff may structure his complaint to stay within state court so long as he asserts valid state-law claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).   Plaintiff is the master of his complaint. The motive behind joinder is irrelevant where the claims themselves are colorable.  Further, a review of the Canup's Petition

7

makes it clear that the Texas defendants are at the center of the wrongdoing alleged and causes of action at issue. (See Appx. pp. 16-17, 21-30, 39-43)

Brown's accusation that Canup "improperly joined" the Texas defendants is simply a disagreement with Canup's litigation strategy, and frustration that Texas defendants are heavily involved in the wrongdoing and causes of action alleged, not evidence of fraud or a jurisdictional defect. The burden of proving improper joinder rests entirely with the removing party, and Brown has failed to meet it.

### C. Lack of Complete Diversity and Prior Service of a Texas Defendant Bar Removal

Brown next asserts that removal was proper under the so-called "snap removal" doctrine because "no defendant has been properly joined and served." That assertion is both factually and jurisdictionally incorrect. The record shows that Mostyn Law Firm, P.C., a Texas citizen and named defendant, was personally served on November 4, 2025, two days before Brown filed the Notice of Removal on November 6, 2025. (See Appx. p. 2) Moreover, complete diversity is lacking on the face of the pleadings because both Brown and Canup are citizens of Texas, eliminating any basis for original jurisdiction under 28 U.S.C. § 1332.

### 1. "Snap Removal" Presupposes Complete Diversity, Which Does Not Exist Here

Brown's reliance on the "snap removal" theory is misplaced because the forum-defendant rule in 28 U.S.C. § 1441(b)(2) applies only when the district court otherwise has original jurisdiction under § 1332(a), that is, when complete diversity exists. The Fifth Circuit's decision in *Texas Brine Co., LLC v. American Arbitration Ass'n*, 955 F.3d 482 (5th Cir. 2020), confirms this point. The court began by noting that the forum-defendant rule is merely procedural, not jurisdictional, and that the district court "had subject-matter jurisdiction because each defendant

was diverse from the plaintiff." *Id.* at 493–94. In *Texas Brine*, the plaintiff was a Texas limited liability company, while the defendants were a New York corporation and two Louisiana citizens, thus, "there [was] no jurisdictional defect under 28 U.S.C. § 1332(a)." *Id.*

That essential premise is absent here. Brown, the removing party, is himself a Texas citizen, as is Canup. (See Appx. pp. 10, 12) Complete diversity therefore never existed, and § 1441(b)(2) cannot be invoked to manufacture jurisdiction that § 1332(a) does not supply. The "snap removal" doctrine merely permits a properly diverse defendant to remove before service on a forum defendant; it does not authorize a nondiverse defendant to create jurisdiction by racing to remove. See *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) (citizenship of all named defendants, served or unserved, controls for diversity). Accordingly, Brown's reliance on *Texas Brine* is wholly without merit, because that decision expressly rested on the existence of complete diversity, something lacking on the face of this case.  See *Texas Brine Co., LLC*, 955 F.3d 482.

For the avoidance of doubt, even if the Court were to consider Brown's removal attempt under the "snap removal" framework, it still fails because a properly joined and served Texas defendant, Mostyn Law Firm, P.C., was served prior to removal, triggering the forum-defendant rule and barring removal under § 1441(b)(2). (See Appx. p. 2)

### 2.  Forum Defendant Rule Bars Removal Once Texas Defendant is Served

Under 28 U.S.C. § 1441(b)(2), a case otherwise removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Once service is accomplished on a forum defendant, the statutory prohibition is absolute. See *Texas Brine Co., LLC v. Am. Arbitration Ass'n*, 955 F.3d 482, 486–87 (5th Cir. 2020) (forum-defendant rule is mandatory and should be strictly applied).

9

### 3. The Record Proves Service Was Completed Prior To Removal

Canup's sworn Return of Service establishes that process was served on November 4, 2025, upon Andrew Browning, the authorized agent for Mostyn Law Firm, P.C. (See Appx. p. 2) The return fully complies with Texas Rule of Civil Procedure 107 and constitutes prima facie evidence of valid service. See *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152–53 (Tex. 1994).

Brown's reliance on the state court docket sheet is both misplaced and misleading. (See Dkt. 1-B.) Under well-established Fifth Circuit and Texas law, service of process is effected at the time of delivery, not when the return is later filed or recorded. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding that service occurs when the defendant is formally served with the summons and complaint); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) (service complete upon delivery of summons and complaint to defendant); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152–53 (Tex. 1994) (service effective upon actual delivery even if return filed later). The filing of the return is merely a ministerial act that documents a service already accomplished; it does not control the fact or timing of service. Accordingly, Canup's service on Mostyn was perfected prior to removal, triggering the forum-defendant rule and defeating removal jurisdiction.

### 4. Because the Forum Defendant Rule Was Triggered, This Court Lacks Subject-Matter Jurisdiction

Once a forum defendant is served, diversity removal is no longer available. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009) (holding that § 1441(b)(2) prohibits removal when a properly joined and served forum defendant is present). The Fifth Circuit recognizes this rule as a statutory restriction on removal jurisdiction, not a mere procedural defect. See *Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783, 786-787 (5th Cir. 1993) (The presence of a properly joined and served forum defendant precludes removal).

10

Accordingly, the "forum-defendant rule" was triggered on November 4, 2025, and removal two days later was barred. Because a Texas defendant was properly served before removal, § 1441(b)(2) applies by its plain text, and removal was barred. Brown's attempt to invoke "snap removal" fails because the doctrine applies only when removal occurs before a forum defendant has been served. Here, service had already occurred, making removal improper as a matter of law. This Court therefore lacks subject-matter jurisdiction, and the case must be remanded to state court.[3]

### D.  Brown Fails to Establish Federal Question Jurisdiction Under 28 U.S.C. § 1331

Brown's alternative claim of federal question jurisdiction fares no better. His notice of removal makes only vague and conclusory assertions that Canup's claims "arise under" federal law or 28 U.S.C. § 1407, the multidistrict litigation statute, without identifying any specific federal issue actually presented on the face of the petition. (See Dkt. 1)  That omission is fatal. The well-pleaded complaint rule requires that a federal question appear affirmatively from the plaintiff's own statement of his cause of action, not from speculative characterizations offered by a removing defendant. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983). Canup's causes of action sound exclusively in Texas law, fraud, civil conspiracy, and breach of fiduciary duty, and none depend on the interpretation or application of any federal statute, regulation, or order. (See Appx. pp. 22-30)

---

[3] Brown's *Notice of Removal* is baseless and procedurally defective, designed to delay adjudication and evade state-court jurisdiction. The removal rests on vague, conclusory assertions unsupported by law or fact. Canup expressly reserves all rights to seek appropriate remedies, including sanctions under Federal Rule of Civil Procedure 11, should any Defendant persist in filing frivolous or dilatory pleadings in connection with this removal or any subsequent proceedings.

11

### 1.   Section 1407 Does Not Create Federal Jurisdiction

Brown's reliance on 28 U.S.C. § 1407 as a jurisdictional hook is wholly misplaced. His notice of removal offers only vague and conclusory assertions that Plaintiff's claims "arise under" the MDL statute, but it identifies no provision within § 1407 that creates a substantive federal right or cause of action. (See Dkt. 1 ¶¶ 12-14) The statute is purely procedural, authorizing temporary transfer and coordination of related cases for pretrial purposes. It does not itself confer subject-matter jurisdiction. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998) (Section 1407 does not create jurisdiction); *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992) (same). Even if this lawsuit concerns events that occurred during an MDL, that fact alone does not transform purely state-law claims into federal ones.

### 2.   Canup's Claims Arise Independently of Any Federal Issue

Brown's notice of removal does not identify a single federal statute, regulation, or order that must be interpreted or applied to resolve any of Canup's claims. Instead, it relies on vague and conclusory assertions that the alleged misconduct somehow "arises from" compliance with MDL orders, without explaining how those orders are even relevant to the elements of any pleaded cause of action. (See Dkt. 1 ¶ 13) That is insufficient to establish federal-question jurisdiction under the well-pleaded complaint rule.

Canup's claims are based solely on the Defendants' misconduct as his former attorneys, material misrepresentations, failure to disclose conflicts of interest, withholding Canup's client file, and attempting to coerce settlement without full disclosure. These duties arise under Texas common law and the Texas Disciplinary Rules of Professional Conduct, not under any federal statute or order.

A federal question exists only if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983) (emphasis added); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). None of Canup's claims require proving or construing any federal law; they require showing that Defendants violated duties recognized under Texas law.

Federal jurisdiction cannot rest on a defense that references federal proceedings. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[A] case may not be removed to federal court on the basis of a federal defense."). Brown's attempt to invoke the MDL as a jurisdictional anchor is therefore doubly flawed: it neither appears on the face of the complaint nor provides any independent basis for federal-question jurisdiction.

### 3. Allegations Concerning MDL Orders Do Not Create a "Substantial Federal Issue"

Brown's assertion that this case "arises under" federal law merely because it references MDL orders is both legally and factually unfounded. His notice of removal offers only conclusory statements that Canup's claims implicate federal orders, yet nowhere explains how the interpretation or validity of any such order forms an essential element of Canup's state-law causes of action. (See Dkt. 1 ¶¶ 11-13) Simply citing or describing a federal court's prior orders does not transform a state-law claim into a federal one.

In *Gunn v. Minton*, 568 U.S. 251, 258 (2013), the Supreme Court reaffirmed that even where a state claim touches on federal law, the federal issue must be (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without upsetting the federal–state balance. That demanding test is not met here.

13

While certain MDL orders, such as common-benefit fee orders or leadership appointments, may provide factual background for Defendants' conduct, their interpretation is merely incidental. The claims do not require this Court to construe, modify, or determine the validity of any federal order. As *Gunn* explains, even when the case involves applying federal law as part of the underlying facts, that does not, by itself, create a substantial federal question. *Id.* at 263; see also *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

None of the *Grable* factors are present. The MDL orders serve only as background context, not as elements of any cause of action. Brown's failure to identify any concrete, disputed, or outcome-determinative federal issue confirms that this case belongs in state court.

### 4. The "Collateral Attack" Theory Misconstrues Canup's Claims

Brown's "collateral attack" theory is a mischaracterization both legally and factually. (See Dkt. 1 ¶ 14) His notice of removal vaguely asserts that Canup is suing Defendants for complying with MDL Court Orders, but provides no specific example of any order that required or authorized the misconduct alleged. This conclusory framing ignores the well-pleaded allegations of the Petition, which concern independent acts of professional wrongdoing, not challenges to any judicial decree.

Canup does not seek to modify, overturn, or enjoin any MDL ruling. (See Appx. p. 46) He seeks damages for Defendants' individual misconduct, actions taken outside their lawful authority and in breach of their fiduciary duties. Courts consistently hold that claims for attorney malpractice, fraud, and breach of fiduciary duty arise under state law even when the underlying representation occurred in federal proceedings. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005) (state-law claims remain in state court unless a substantial federal issue is necessarily raised and disputed); *Gunn v. Minton*, 568 U.S. 251, 258–59 (2013)

(legal malpractice claims involving federal litigation belong in state court because they do not present substantial federal questions).

Brown's assertion that Defendants merely complied with MDL orders is both factually inaccurate and legally irrelevant. (See Dkt. 1 ¶ 13) None of the misconduct alleged, failing to disclose conflicts of interest, failing to disclose material facts, coercing settlement, or withholding client papers, was required, authorized, or compelled by any MDL directive. These actions were contrary to, not in compliance with, any federal order. The wrongs alleged stem from Defendants' own independent misconduct governed by Texas law, not from obligations imposed by the MDL.

**5.  This Court Should Decide Remand Before Any Transfer Consideration**

Brown's request for transfer to the MDL Court rests on the same vague, conclusory assertions that underlie his removal notice. (See Dkt. 1 ¶ 14) He fails to identify any concrete factual or legal basis for federal jurisdiction, let alone a reason why this case, grounded exclusively in Texas law, should be diverted to a multidistrict forum. Federal courts have an independent and continuing obligation to examine their own jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Section 1407 does not confer jurisdiction, it merely authorizes coordination of cases that are already within federal jurisdiction. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998).

Because subject-matter jurisdiction is a threshold issue, judicial economy and fairness strongly favor resolving the remand motion first. If this Court lacks jurisdiction, transfer to another federal court would be futile and would needlessly consume the resources of both the JPML and the MDL court. See *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959) (When jurisdiction is doubtful, the court should resolve that question before taking further action in the case).

Moreover, this case concerns state-law duties of attorneys to a Texas client, issues far removed from the scope of the 3M earplug litigation. The MDL Court possesses significant experience with the underlying federal proceedings, but this case concerns distinct state-law claims that are best addressed by the Texas courts, which regularly adjudicate such matters. Transfer would only delay resolution of the threshold jurisdictional question that should be decided here.

Accordingly, this Court should decide the pending remand motion before any consideration of transfer and return the case to state court where it properly belongs.

### E.  Summary and Conclusion

Brown's removal relies on procedural shortcuts and conclusory assertions. He did not pay the filing fee, did not file the complete state-court record required by § 1446(a) and Local Rule 81.1, and identifies no specific defect in the pleadings, no discrete fact that would foreclose recovery against the Texas defendants, and no federal issue on the face of the complaint. Saying "improper joinder" or "federal question" without facts or analysis doesn't make federal jurisdiction appear.

Multiple, independent grounds require remand:

- **Procedural defect:** Failure to comply with § 1446(a), Local Rule 81.1, and § 1914(a) leaves the case improperly removed and not properly docketed. In addition, because not all defendants properly joined and served have consented to removal, this Court lacks jurisdiction over a procedurally defective removal;

- **Forum-defendant bar:** Mostyn Law Firm, P.C., a Texas citizen, was served **before** removal, foreclosing removal under § 1441(b)(2);

- **No complete diversity:** Plaintiff and removing defendant are both Texas citizens, defeating § 1332(a);

- **No improper joinder shown:** Improper joinder is a narrow exception; Brown offers only buzzwords, not the "discrete and undisputed facts" Smallwood requires; and

- **No federal question:** The well-pleaded complaint asserts only Texas-law claims; § 1407 is procedural and cannot supply jurisdiction; any MDL orders are incidental background, not elements of the claims.

Because federal courts are courts of limited jurisdiction and the removing party bears the burden, remand is mandatory under 28 U.S.C. § 1447(c). Brown's removal, grounded in speculation and legal boilerplate rather than fact or law, only underscores the need to return this case to Texas state court, where these state-law claims properly belong.

### Request for Relief

WHEREFORE PREMISES CONSIDERED, Plaintiff Brandon Canup respectfully moves this Court to remand this action to the 67th Judicial District Court of Tarrant County, Texas, under 28 U.S.C. § 1447(c). Canup also requests costs associated with improper removal and all further relief to which he may be entitled at law or in equity.

DATED: November 21, 2025                     Respectfully submitted,

                                             *s/ Brandon Canup*
                                             Brandon Canup, Plaintiff
                                             4812 Hidden Oaks Ln
                                             Arlington, Texas 76017
                                             Tel.: (972) 762-4314
                                             canup.brandon@gmail.com

                                             ***pro se***

17

## <u>CERTIFICATE OF SERVICE</u>

On this 21st day of November 2025, the undersigned, Brandon Canup, caused a true and correct copy of the foregoing instrument to be served on Gregory Brown via e-filing, and on all other parties to this lawsuit via first class U.S. Mail postage prepaid, pursuant to the Federal Rules of Civil Procedure.

*s/ Brandon Canup*

# EXHIBIT 4

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| BRANDON CANUP,<br><br>*Plaintiff,*<br><br>v.<br><br>BRYAN F AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC<br><br>*Defendants.* | Case No. 4:25-cv-01255-Y<br><br>Senior Judge Terry R Means<br><br><br>APPENDIX IN SUPPORT OF PLAINTIFF BRANDON CANUP'S MOTION FOR REMAND AND BRIEF IN SUPPORT |

**APPENDIX IN SUPPORT OF
PLAINTIFF BRANDON CANUP'S MOTION FOR REMAND
AND BRIEF IN SUPPORT**

COMES NOW Plaintiff Brandon Canup and respectfully submits this Appendix in Support of his Motion for Remand and Brief in Support.

DATED: November 21, 2025

Respectfully submitted,

*s/ Brandon Canup*
Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

***pro se***

**CERTIFICATE OF SERVICE**

On this 21st day of November 2025, the undersigned, Brandon Canup, caused a true and correct copy of the foregoing instrument to be served on Gregory Brown via e-filing, and on all other parties to this lawsuit via first class U.S. Mail postage prepaid, pursuant to the Federal Rules of Civil Procedure.

*s/ Brandon Canup*

# APPENDIX TABLE OF CONTENTS

**EXHIBIT 1**

Executed Return of Service showing service on
Mostyn Law Firm, P.C. by Christina Edwards
PSC#13296 on November 4, 2025......................................................................................................2

**EXHIBIT 2**

Affidavit of Due Diligence showing service
attempt on Mostyn Law Firm, P.C. by Christina
Edwards PSC#13296 on October 30, 2025.....................................................................................4

**EXHIBIT 3**

Document from Texas Secretary of State
website showing Andrew Browning listed as
registered agent for Mostyn Law Firm, P.C. on
November 4, 2025.................................................................................................................. 6-7

**EXHIBIT 4**

Original Petition............................................................................................................... 9-47

**EXHIBIT 5**

Declaration of Brandon Canup ...................................................................................... 49-50

# EXHIBIT 1

Executed Return of Service showing service on Mostyn Law Firm, P.C. by Christina Edwards PSC#13296 on November 4, 2025.

1

## THE STATE OF TEXAS
### DISTRICT COURT, TARRANT COUNTY

*CITATION*                    Cause No. 067-371499-25

BRANDON CANUP

VS.

BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, ET AL

TO: MOSTYN LAW FIRM PC

B/S REG AGT-ANDREW BROWNING
3810 W ALABAMA ST
HOUSTON, TX 77027-5204

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 67th District Court ,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFF being

BRANDON ALLEN CANUP

Filed in said Court on October 27th, 2025 Against
AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, MOSTYN LAW FIRM PC, FLEMING NOLEN & JEZ LLP, BRYAN FREDERICK AYLSTOCK, BOBBY J BRADFORD, MICHAEL ANDREW BURNS, GREGORY DONALD BROWN, CLIFF LEE ROBERTS
For suit, said suit being numbered 067-371499-25 the nature of which demand is as shown on said
PLAINTIFF'S ORIGINAL PETITION  a copy of which accompanies this citation.

PRO SE
Attorney for BRANDON ALLEN CANUP Phone No. (972)762-4314
Address    4812 HIDDEN OAKS LN ARLINGTON, TX 76017

_____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 29th day of October, 2025.

By _____
AMANDA DURAN

A CERTIFIED COPY
ATTEST: 10/29/2025
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Duran

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM, on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

### OFFICER'S RETURN  *06737149925000006*

Received this Citation on the 29th day of October , 2025 at 10.16 o'clock A M, and executed at 10000 Memorial Dr Str 740 Houston TX within the county of Harris , State of TX at 11.05 o'clock A M on the 4th day of November , 2025 by delivering to the within named (Def.): Mostyn Law Firm PC through defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION Registered Agen Andrew Browning , having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: Christina Edwards                    Process Server
County of Harris    State of TX    By PSC#13296 Exp 10/31/27

Fees $_____
State of TX County of Harris (Must be verified if served outside the State of Texas)
Signed and sworn to by the said Christina Edwards before me this 4th day of November 2025
to certify which witness my hand and seal of office
(Seal)                    County of Harris , State of Texas

TIFFANY B LARA
Notary ID #12292798
My Commission Expires
October 27, 2026

2

# EXHIBIT 2

Affidavit of Due Diligence showing service attempt on Mostyn Law Firm, P.C. by Christina Edwards PSC#13296 on October 30, 2025.

## DUE DILLIGENCE AFFIDAVIT

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE STATE OF TEXAS DISTRICT** |
| | § | **COURT OF TARRANT COUNTY** |

**Cause Number 067-371499-25**

§

**BRANDON CANUP**

**Vs.**

**BRYAN F. AYLSTOCK, BOBBY**     §
**BRADFORD, MICHAEL BURNS, ET**
**AL**

The documents were received by **Christina Edwards** on the **29**TH **day of October 2025 at 10:17 AM** to be served on **THE MOSTYN LAW FIRM PC through Registered Agent Andrew Browning** at **3810 W. Alabama St. Houston, TX 77027.**. I, **Christina Edwards**, attempted to serve the **CITATION AND PLAINTIFF'S ORIGINAL PETITION but** was unsuccessful because of the reasons below:

**10/30/25 @ 11:15 am**- I attempted and I was told by the receptionist that the Registered Agent was not an employee here or listed on the company registry. I then asked her if there was someone in the office that was authorized to accept and she said "no" after making phone calls asking around the office. She was told to tell me that there was no one within the office that is authorized to accept service of process. I went to my car and called the office. Someone answered the phone (that was not the receptionist that I spoke with) and she too said that the Registered Agent did not work here and that there was no one there that was authorized to accept service.

Military Status: ( ) Yes or ( ) No   If yes, what branch?_____**NA**_____
Marital Status: ( ) Married or ( ) Single Name of Spouse____**NA**_____ )

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

**My name is Christina Edwards**
**My DOB is January 2, 1988**
**My business address is 13531 Will Clayton Pkwy Suite 300 PMB 2062 Humble, TX 77346.**

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED IN <u>HARRIS</u> COUNTY, STATE OF <u>TEXAS,</u> ON THE 30TH DAY OF OCTOBER 2025.**

_____
Declarant/Authorized Process Server
**PROCESS SERVER# : 13296**     Expiration Date: **10/31/25**

4

# EXHIBIT 3

Document from Texas Secretary of State website showing Andrew Browning listed as registered agent for Mostyn Law Firm, P.C. on November 4, 2025.

5

# FRANCHISE TAX ACCOUNT STATUS

This record as of November 4, 2025 at 11:49:20

## MOSTYN LAW FIRM P.C.

| | |
|---|---|
| **Texas Taxpayer Number:** | 17605902364 |
| **Mailing Address:** | 3810 W ALABAMA ST HOUSTON, TX 77027 - 5204 |
| **Right to Transact Business in Texas:** | ACTIVE |
| **State of Formation:** | TX |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 12/17/1998 |
| **Texas SOS File Number:** | 0092487502 |
| **Registered Agent Name:** | ANDREW BROWNING |
| **Registered Office Street Address:** | 3810 W. ALABAMA HOUSTON, TX 77027 |

## Public Information Report for Year

6

| Title | Name and Address | |
|---|---|---|
| PRESIDENT | **AMBER MOSTYN**<br>3810 WEST ALABAMA<br>HOUSTON, TX 77027 | |

Case: 3:26-cv-03359-MCR-ZCB Document 9-1 Filed 10/22/26 Page 186 of 281

# EXHIBIT 4

Original Petition

FILED
TARRANT COUNTY
10/27/2025 1:29 PM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. _____ 067-371499-25

| | |
|---|---|
| BRANDON CANUP, | IN THE _____ |
| Plaintiff | DISTRICT COURT |
| v. | |
| BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC, | TARRANT COUNTY,  TEXAS |
| Defendants | |

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW Plaintiff, Brandon Canup, appearing pro se, and files this Original Petition against the Defendants named herein. Plaintiff makes this filing based on personal knowledge as to all matters concerning himself and upon information and belief as to all other matters. In support thereof, Plaintiff respectfully shows the Court as follows:

### I.

### DISCOVERY CONTROL PLAN

ORIGINAL PETITION                                                                **PAGE**        1

9

1.1    Plaintiff pleads that discovery should be conducted in accordance with discovery control plan, level 3, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

## II.

## PARTIES

### A.    Plaintiff

2.1    Brandon Canup ("Canup") is an individual residing in Tarrant County, Texas.

### B.    Defendants

2.2    Aylstock, Witkin, Kreis & Overholtz, P.L.C. ("AWKO") is a foreign professional limited liability company formed under the laws of Florida, doing business in Texas. Its principal office is located at 17 East Main Street, Suite 200, Pensacola, Florida 32502. AWKO may be served via its registered agent for service of process: Justin Witkin, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever it may be found. In the event AWKO does not maintain a registered agent or cannot otherwise be located with reasonable diligence, it may be served through the Texas Secretary of State as provided by *Tex. Bus. Orgs. Code § 5.251* and *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.045*.

2.3    Mostyn Law Firm, P.C. ("Mostyn") is a Texas professional corporation formed under the laws of Texas, with its principal office at 3810 W. Alabama Street,

ORIGINAL PETITION                                                                PAGE    2

10

Houston, Texas 77027-5204. Mostyn may be served via its registered agent for service of process: Andrew Browning, at the same address, or wherever it may be found.

2.4    Fleming, Nolen & Jez, L.L.P. ("FNJ") is a Texas limited liability partnership with its principal office located at 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128. FNJ may be served via a General Partner for service of process: George Fleming, at the same address, or wherever it may be found. Because FNJ does not have a registered agent listed on file with the Texas Comptroller as of the date of this filing, it may also be served with process through the Texas Secretary of State pursuant to *Tex. Bus. Orgs. Code § 5.251*, who shall forward process to FNJ's last known address on file.

2.5    Bryan Frederick Aylstock ("Aylstock") is an attorney licensed in the State of Florida (Florida Bar No. 78263), and a founding partner of AWKO. He may be served at his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.6    Bobby J. Bradford ("Bradford") is an attorney licensed in the State of Florida (Florida Bar No. 173223) and a partner at AWKO. He may be served at at

ORIGINAL PETITION                                                    **PAGE**    3

his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.7    Michael Andrew Burns ("Burns") is an attorney licensed in the State of Florida (Florida Bar No. 973130). At all times relevant to this case, he was affiliated with Mostyn Law Firm, a Texas-based law firm. He may be served at his Florida business address: Burns Law LLC, 362 Gulf Breeze Parkway, #294, Gulf Breeze, Florida 32561-4492, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.8    Gregory Donald Brown ("Brown") is an attorney licensed in the State of Texas (Texas Bar No. 24078266). At all times relevant to this case, he was affiliated with FNJ. Brown is listed as an attorney at FNJ on their website and as an attorney at Sorrels Law on his Texas State Bar profile. He may be served at his primary business address: Sorrels Law, 230 Westcott St., Ste. 100, Houston, Texas 77007, or at Fleming, Nolen & Jez, LLP, 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128, or wherever he may be found.

ORIGINAL PETITION **PAGE** 4

12

2.9    Cliff Lee Roberts ("Roberts") is an attorney licensed in the State of Texas (Texas Bar No. 17002900). He may be served at his business address: 8191 Southwest Freeway, Suite 116, Houston, Texas 77074-1700, or wherever he may be found.

2.10    For ease of reference, Defendants AWKO, Mostyn, Aylstock, Bradford, and Burns may collectively be referred to as the ("Florida Defendants"). Although Mostyn is a Texas law firm, it is included in this group because of its affiliation with Burns, a Florida-based attorney, and its role in the conduct giving rise to this case.

2.11    Defendants FNJ, Brown, and Roberts may collectively be referred to as the ("Texas Defendants").

2.12    All Defendants may collectively be referred to as the ("Defendants").

### III.

### JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction over this action pursuant to Section 24.007, et seq. of the Texas Government Code. The amount in controversy exceeds the Court's minimum jurisdictional requirements, exclusive of interest and costs, and the relief sought is within the jurisdictional limits of this Court.

3.2    This Court has personal jurisdiction over all named Defendants. One or more Defendants are residents of Texas, maintain their principal place of business

ORIGINAL PETITION                                                              **PAGE**        5

in Texas, and/or regularly conduct business in Texas. Additionally, pursuant to the Texas Long-Arm Statute, *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.069*, this Court may exercise jurisdiction over out-of-state Defendants who have purposefully directed activities toward Texas. Out-of-state Defendants purposefully directed activities toward Texas, including but not limited to: providing legal services to a Texas resident, accessing confidential records of a Texas resident, and appearing and purporting to act on behalf of a Texas resident in litigation proceedings connected to Texas, including matters designated for trial in the Northern District of Texas. Furthermore, all out-of-state Defendants performed common benefit work in the underlying litigation entitling them to collect fees from thousands of Texas Residents. Out-of-state Defendants have purposefully availed themselves of the privileges and benefits of conducting business in Texas and are subject to the jurisdiction of this Court. These actions demonstrate the Defendants' purposeful involvement in matters connected to Texas, making it both appropriate and consistent with due process for a Texas court to exercise jurisdiction over them.

3.3     Venue is proper in this Court pursuant to Section 15.001, *et seq.* of the Texas Civil Practice and Remedies Code.  All or a substantial part of the harm resulting from Defendants' conduct was suffered by Plaintiff in Tarrant County, Texas, where Plaintiff resides and relied upon Defendants' actions and representations. Additionally, this lawsuit concerns contracts and attorney-client

ORIGINAL PETITION                                                    **PAGE**      6

14

relationships that were to be performed, in whole or in part, in Tarrant County. Plaintiff's case was designated for trial in the United States District Court for the Northern District of Texas, and Tarrant County was the central location of Plaintiff's litigation preparation, reliance on Defendants, and resulting injury.

## IV.

## STATEMENT PURSUANT TO RULE 47

4.1    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that he seeks monetary relief of less than $250,000, including damages of any kind, penalties, costs, expenses, pre and post-judgment interest. Plaintiff further affirms that he seeks less than $75,000 in monetary damages, exclusive of interest and costs.

## V.

## BACKGROUND FACTS

5.1    On April 3, 2019, the United States Judicial Panel on Multidistrict Litigation transferred multiple actions to the Northern District of Florida for coordinated pretrial proceedings in *In re: 3M Combat Arms Earplug Products Liability Litigation*, Cause No. 3:19-md-02885 ("MDL").

5.2    On May 22, 2019, the MDL court issued Pretrial Order No. 7, appointing various plaintiffs' attorneys to leadership roles ("PSC") to conduct common benefit

ORIGINAL PETITION                                            **PAGE**    7

work on behalf of all claimants in the MDL. These appointments were set to expire after one year unless renewed.

5.3 On June 21, 2019, Canup retained Texas Defendants Brown, FNJ, and Roberts, to investigate, develop, and litigate his claims in the MDL. Despite this agreement, Texas Defendants failed to meaningfully investigate Canup's injuries or develop his case during their years of representation.

5.4 On August 29, 2023, a global settlement agreement ("MSA") was announced between 3M and Plaintiffs' Leadership in the MDL. The agreement imposed obligations on plaintiffs' attorneys to recommend settlement to 100% of their clients, to withdraw from representation of any claimant who declined to participate and other terms that were hidden from Plaintiffs in the MDL in Exhibit 10 of the MSA. These provisions created undisclosed conflicts of interest between attorneys and their clients.

5.5 Canup received several letters and emails from Texas Defendants pressuring him to accept the settlement, warning that rejection would result in withdrawal of representation, delayed access to trial, and onerous litigation deadlines. However, Texas Defendants never disclosed the full terms of the settlement, including Exhibit 10, which contained material provisions.

5.6 Following multiple communications from Texas Defendants indicating their intent to withdraw if Canup declined to participate in the global settlement,

ORIGINAL PETITION **PAGE** 8

16

Canup retained attorney David Gamble ("Gamble") in January 2024. At the time, Texas Defendants were still counsel of record for Canup in the MDL but did not provide substantive legal support. Canup retained Gamble to preserve his ability to litigate, anticipating Texas Defendant's formal withdrawal and recognizing their abdication of duty.

5.7    On January 21, 2024, Canup officially opted out of the MSA triggering his production obligations under Case Management Order 57 ("CMO 57"). Canup and Gamble immediately began preparing for the CMO 57 production requirements which included gathering, organizing, and submitting over 25 GB of data within 30 days under threat of dismissal with prejudice. Despite knowing of these requirements for months, Texas Defendants did not assist in meeting these obligations. Brown filed a motion to withdraw as counsel of record for Canup in the MDL within a week of Canup's CMO 57 production deadline. His motion was granted one day before the CMO 57 deadline.

5.8    Canup requested his file from FNJ in January of 2024. Canup received a few documents but never his full file. FNJ sent Gamble Canup's file which only contained a single four-page pdf.

5.9    On February 5, 2024 Canup was ordered by the MDL Court to appear "in person, with counsel" at a status conference in Pensacola, Florida scheduled for March 13, 2024. In preparation for the March 13, 2024 status conference Bradford

ORIGINAL PETITION                                                    **PAGE**    9

17

contacted Gamble seeking privileged and confidential information about Canup and his case against 3M and to give advice about the settlement programs in the MSA. Gamble and Bradford spoke several times about Canup's case including but not limited to his medical claims and potential recovery. Bradford informed Gamble that Aylstock and Bradford would be present at the status conference but never informed Gamble of Florida Defendants' intent to make a formal appearance.

5.10    Unbeknownst to either Canup or Gamble, Florida Defendants made a formal appearance in the MDL Court on Canup's behalf at the March 13, 2024 status conference. The hearing transcript lists Aylstock and Bradford from AWKO and Burns from Mostyn as appearing "FOR THE PLAINTIFF." Aylstock participated in the hearing by addressing the MDL Court on the record speaking about the MSA in an attempt to convince Canup to accept the global settlement offer.

5.11    Following the first hearing, Canup and Gamble were led to a conference room where Magistrate Judge Hope Cannon conducted a closed-door settlement conference. This settlement conference was a second official proceeding on March 13, 2024. Judge Cannon brought in Aylstock, Bradford, and Burns, who then gave individual legal advice, reviewed Canup's medical records and discussed Canup's case directly with Canup. The medical documents that were already in Florida Defendants' possession when they entered the room included but were not limited to audiograms and post-deployment health assessments from Canup's time in the US

ORIGINAL PETITION                                          **PAGE**    10

Army. These confidential and privileged documents were not provided to Florida Defendants by Canup or Gamble. Florida Defendants had gained access to these confidential and privileged documents from another source unknown to Canup or Gamble.

5.12    During that discussion, Aylstock, Bradford, and Burns attempted to pressure Canup to accept the MSA which Canup had already expressly rejected. Florida Defendants were formerly part of the PSC in the MDL and were bound by the terms of the MSA. Florida Defendants did not disclose that their continued compensation was contingent upon claimant participation levels in the MSA, they did not disclose the full terms of the MSA including Exhibit 10, nor did they inform Canup of the conflict created by the MSA's provisions requiring them to recommend settlement to 100% of claimants and to withdraw from clients who opted out. They also failed to disclose that they were making another formal appearance in this second proceeding in the MDL Court on Canup's behalf.

5.13    Florida Defendants' conduct and formal appearances as Canup's counsel created, at minimum, an implied attorney-client relationship, and arguably an express attorney-client relationship. Bradford reached out to Gamble to obtain confidential and privileged information and to discuss Canup's case strategy prior to the proceedings, conduct consistent with representation. At the hearing itself, Defendants Aylstock, Bradford, and Burns formally appeared "FOR THE

ORIGINAL PETITION                                                **PAGE**    11

PLAINTIFF" on the record, communicated directly with Plaintiff, gave individualized legal advice, and attempted to pressure him into accepting the MSA. These actions, individually and collectively, establish an implied attorney-client relationship, because they would cause any reasonable client to believe Florida Defendants were acting as his attorneys. The formal appearance on the record not only arguably created an express attorney-client relationship but, at the very least, reinforced and confirmed the implied relationship already created by Florida Defendants' conduct. This imposed fiduciary duties including, but not limited to, the duties of loyalty, candor, honesty, disclosure, and conflict avoidance. Despite these obligations, Defendants failed to disclose their intent to appear, their actual formal appearance, their roles in the settlement conference, or their financial stake in maximizing claimant participation.

5.14   Had Canup known that Florida Defendants would appear on his behalf, he could have satisfied the MDL Court's order to appear "in person, with counsel" without transporting Gamble to Florida. Canup incurred substantial costs for Gamble's airfare, lodging, and time. These are expenses he would not have borne had Florida Defendants fulfilled their duty to disclose their participation.

5.15   After the March hearing, Aylstock, Bradford, and Burns took no further action on Canup's behalf, never filed a notice of withdrawal, and never

explained their involvement. Canup did not become aware of their official appearance until he obtained a transcript of the hearing in January 2025.

5.16    Meanwhile, Canup encountered roadblocks accessing the unredacted Master Long Form Complaint ("Master Complaint"). The master complaint was filed on behalf of all claimants and was referenced by all Short Form Complaints filed by the Plaintiffs in this MDL. When the motion to file this document under seal was filed in 2019 it stated that all counsel of record were sent an unredacted copy. Canup was denied access to this document by FNJ. FNJ later contacted Gamble and recommended that he reach out to the PSC to ask for permission to access the master complaint from PSC.

5.17    In April of 2024 Gamble contacted Bradford to get access to the master complaint. On April 24, 2024, Bradford informed Gamble that he would only release the unredacted complaint if Gamble signed a Common Benefit Work Participation Agreement assigning a 9% interest in any future recovery in Canup's case to the PSC. Canup consented to Gamble's signing the agreement to move forward with the litigation.

5.18    On May 1, 2024, Canup filed an amended complaint and Lexecon non-waiver statement as ordered by the MDL Court on April 17, 2024. The order requiring Canup to amend his pleadings stated that he could not add new allegations or causes of action. 3M moved to dismiss. On July 18, 2024, the MDL Court granted

the motion in part, dismissing Canup's hearing-loss-related claims as procedurally barred because they were new allegations and/or causes of action.

5.19 The MDL Court's order stated that Canup's former attorneys never attempted to amend his pleadings to include hearing loss claims, despite representing him for years. The MDL Court cited this as a reason that Canup should not be allowed to add new allegations or causes of action. Canup was harmed by being forced to retain expert witnesses whose work became worthless due to the dismissal of the hearing-loss-related claims, harm that would have been avoided had the Texas Defendants investigated and developed Canup's case as they were legally obligated to do.

5.20 On September 30, 2024, Canup entered into a direct settlement agreement with 3M. Canup's ability to reach this resolution was made possible only through his efforts and the efforts of independent counsel, despite the harm caused by the misconduct of the attorneys named herein.

## VI.

## CAUSES OF ACTION

Alternative Pleadings. To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### A. CLAIMS AGAINST TEXAS DEFENDANTS

**Claim 1: Fraud and Failure to Disclose Facts (pled alternatively as Fraudulent Inducement)**

6.1    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.2    **Material Misrepresentation:** Texas Defendants Brown, Roberts, and FNJ made material representations to Canup, including that they would actively pursue Canup's claims in the MDL and litigate the case on his behalf. These representations were expressly contained in the written contingency fee retainer agreement executed between Canup and Texas Defendants, which promised diligent investigation, development, and prosecution of Canup's claims. These representations were made to induce Canup to sign the agreement and place exclusive control of his case with Texas Defendants.

6.3    **Knowledge of Falsity:** At the time these representations were made, Texas Defendants knew they were false, or at minimum had no reasonable basis to believe them true. FNJ had prior MDL experience and knew that their business model involved securing clients for global settlements without undertaking individualized litigation. Their subsequent conduct, failing to advance Canup's claims for four years, not amending pleadings to preserve critical causes of action, and abandoning Plaintiff just one day before the CMO 57 production deadline, confirms they never intended to perform the promised litigation services.

6.4    **Intent to Induce Reliance:** Texas Defendants made these misrepresentations with the intent and purpose of inducing Canup to rely on them

ORIGINAL PETITION                                          **PAGE**    15

23

and execute the contingency fee agreement, thereby binding Canup to pay them a percentage of any recovery while avoiding the cost and effort of actively litigating his claims.

6.5    **Justifiable Reliance:** Canup justifiably relied on these representations by signing the retainer agreement and allowing Texas Defendants to control and manage his claims in the MDL for approximately four years, without seeking alternative representation or taking independent action, in the belief that Texas Defendants were diligently working on his behalf.

6.6    **Injury Caused by Reliance**: As a direct and proximate result of Canup's reliance on Texas Defendants' misrepresentations, Canup suffered injury. The MDL court cited Texas Defendants' failure to amend pleadings and advance his case as a basis for dismissing Canup's hearing-loss claims, which diminished the value of expert reports prepared for the litigation. Texas Defendants' abandonment of Canup before the CMO 57 compliance deadline caused significant stress, confusion, inconvenience, and anxiety, disrupted Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.7    Texas Defendants' conduct also contradicts the terms of the written agreement, which stated that Canup retained ultimate authority over settlement decisions and that Texas Defendants would provide full legal support. Instead, Texas

ORIGINAL PETITION                                                    **PAGE**    16

24

Defendants used the contract to obtain control of Canup's claims, then abandoned those claims for financial reasons when he exercised his right to opt out of the settlement.

6.8     Texas Defendants violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Texas Defendants acted knowingly and intentionally. Such violations constitute fraud.

6.9     To the extent FNJ is not found directly liable for its own independent misconduct, FNJ is also vicariously liable for any wrongful acts or omissions committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.10    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.11    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 2:  Breach of Fiduciary Duty

6.12    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.13    **Existence of a Fiduciary Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup fiduciary duties of loyalty, candor, disclosure, and zealous representation among others. These duties included the obligation to place Plaintiff's interests above their own, to fully inform Plaintiff of all material facts affecting his case, and to diligently pursue his claims.

6.14    **Breach of the Duty:** Texas Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.15   **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.16   **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.17   To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.18   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.19    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 3:  Negligence (pled in the alternative)

6.20    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.21    **Existence of a Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup a duty to exercise reasonable care, skill, and diligence commonly possessed and exercised by attorneys similarly situated in the State of Texas. This duty included, but was not limited to, properly investigating and preparing Canup's claims, maintaining adequate communication with the client, meeting applicable court deadlines, and taking reasonable steps to protect Plaintiff's interests before, during, and after withdrawal of representation.

6.22    **Breach of the Duty:** Texas Defendants breached their duty of care in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including

ORIGINAL PETITION                                                           **PAGE**    20

Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.23 **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.24 **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

ORIGINAL PETITION                                        **PAGE**    21

29

6.25    To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.26    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

### B.    CLAIMS AGAINST FLORIDA DEFENDANTS

### Claim 1:  Fraud by Non-Disclosure

6.27    Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.28    **Failure to Disclose:** Florida Defendants deliberately failed to disclose material facts. Florida Defendants Aylstock, Bradford, and Burns, while acting on behalf of their respective firms AWKO and Mostyn, deliberately failed to disclose that they intended to formally appear as counsel for Canup at the March 13, 2024 status conference and that they intended to formally appear and participate in a closed-door settlement conference concerning Canup's case. By withholding these facts, Florida Defendants concealed their involvement in Canup's case. These omissions occurred despite their knowledge of a court order requiring Canup to appear "in person, with counsel" if represented.

ORIGINAL PETITION                                            **PAGE**    22

6.29 **Duty to Disclose:** The Defendants had a duty to disclose such facts to Canup. The Florida Defendants' duty to disclose arose from multiple sources:

a) By making a formal appearance on the record, Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup, triggering fiduciary duties of candor, loyalty, and disclosure. They had a duty to disclose their intent to make a formal appearance.

b) By partially disclosing their intent to attend the March 13, 2024 status conference to Canup through Gamble while concealing their intent to formally appear, Florida Defendants created a duty to disclose the full scope of their role.

c) By seeking privileged and confidential information about Canup and his case against 3M prior to the March 13, 2024 status conference and by obtaining and using Canup's confidential medical records, Defendants assumed fiduciary-like duties of confidentiality and fair dealing, requiring them to disclose their access and intent.

6.30 **Canup's Ignorance:** Canup was ignorant of the facts and did not have an equal opportunity to discover them. Canup had no knowledge that Florida Defendants intended to appear in court on his behalf, nor that they had accessed his private medical records from an undisclosed source. Because these actions were being concealed and misrepresented Canup had no equal opportunity to discover their conduct or protect his own interests before incurring unnecessary expenses and attending the conference under false pretenses.

ORIGINAL PETITION **PAGE** 23

6.31 **Intent to Induce:** Florida Defendants intended Canup to act or refrain from acting based on the nondisclosure. Florida Defendants knew that the MDL Court's order required Canup to appear "in person, with counsel." Their nondisclosure was calculated to induce Canup to continue treating Gamble as his sole counsel and to incur the costs of transporting and compensating him to attend the status conference in Florida. By concealing their intention to appear "FOR THE PLAINTIFF," Florida Defendants prevented Canup from making an informed choice such as declining to bring Gamble, objecting to their unauthorized involvement, or challenging their improper access to his records. Their concealment ensured that Canup remained unaware and passive while Florida Defendants acted in ways that advanced their own interests in the MDL.

6.32 **Reliance and Injury:** Canup relied on the Florida Defendants' nondisclosure, which directly resulted in injury. In reliance on their concealment, Canup unnecessarily paid for Gamble's travel, lodging, and appearance at the Florida status conference, expenses that would not have been incurred had he known Florida Defendants would appear as his counsel. Florida Defendants also accessed and used his confidential medical records without consent, depriving him of control over his case and the opportunity to make informed legal decisions with full knowledge of who was acting on his behalf. These harms, including financial costs and disruption of his autonomy, were the direct and foreseeable result of Florida

Defendants' deliberate concealment of material facts they had a duty to disclose.

6.33    Bryan Aylstock, as a founding partner of AWKO, had actual authority to bind the firm. AWKO and Mostyn Law benefitted directly from the concealment and actions of their employees and partners. As such, both firms are directly liable for the misconduct described herein.

6.34    Florida Defendants' omissions and concealments were intentional, material, and calculated to mislead Canup during a critical phase of litigation. This conduct constitutes actionable fraud by non-disclosure under Texas law.

6.35    To the extent AWKO and Mostyn Law are not found directly liable, they are vicariously liable for the acts and omissions of Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.36    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.37    Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## Claim 2:  Breach of Fiduciary Duty

ORIGINAL PETITION    **PAGE**    25

6.38   Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.39   **Existence of Fiduciary Duty:** By formally appearing on the record as counsel "FOR THE PLAINTIFF" at the March 13, 2024 status conference, and by participating in a closed-door settlement discussion regarding Canup's case, the Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup. This appearance, coupled with their access to Canup's confidential medical records, imposed fiduciary duties of loyalty, candor, and full disclosure. Having assumed the role of Canup's representatives in court and in private negotiations, Florida Defendants were obligated to act in Canup's best interests, disclose material facts, and avoid self-dealing or deception.

6.40   **Breach of Duty:** Florida Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. Florida Defendants breached these fiduciary duties in multiple ways. They deliberately failed to inform Canup of their intent to appear as his counsel, concealed their formal appearance in settlement negotiations, and accessed Canup's confidential medical records without authorization. They further failed to disclose material conflicts of interest, including their obligations under the MSA to secure 100% plaintiff participation and the financial penalties they faced if Canup declined to settle. Florida Defendants also

ORIGINAL PETITION                                          **PAGE**    26

failed to disclose Exhibit 10 to the MSA which contained material terms to the agreement. Instead of candor and loyalty, Florida Defendants acted in their own financial interests by pressuring Canup toward settlement while depriving him of the opportunity to make informed decisions about his representation and case strategy.

6.41   **Causation:** Florida Defendants' breaches directly caused Canup to act and incur expenses that he otherwise would not have. Because Florida Defendants concealed their intent to formally appear as counsel, Canup reasonably believed Gamble was his only representative and paid to transport and lodge Gamble in Florida for the status conference. Canup was further deprived of the ability to object to Florida Defendants' unauthorized access to his confidential medical records, or to challenge their improper participation in court and settlement proceedings. Their concealment and deception stripped Canup of control over his own case and forced him to rely on incomplete and misleading information.

6.42   **Damages:** As a direct and proximate result of Florida Defendants' misconduct, Canup suffered both financial and significant inconvenience damages. He incurred unnecessary out-of-pocket expenses for Gamble's travel and representation. Florida Defendants' concealment and breaches also forced Canup to spend substantial time, energy, and effort to learn about the role and duties of a lawyer, MDL procedures, settlement structures, and fiduciary obligations, simply to understand how his rights were being compromised. Instead of being able to trust

ORIGINAL PETITION                                                    **PAGE**   27

Defendants, Canup was required to divert time away from his personal and professional life to protect himself from those who owed him loyalty and candor. This disruption and burden are concrete injuries that flow directly from Florida Defendants' breaches of fiduciary duty.

6.43 To the extent AWKO and Mostyn Law are not found directly liable, they are also vicariously liable for the fiduciary breaches committed by Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.44 Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate it for the harm sustained.

6.45 Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

### Claim 3: Fraudulent Inducement

6.46 Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.47 **Material Misrepresentation:** Defendants Bradford and AWKO represented to Canup, through Gamble, that if Gamble agreed to allocate a 9%

ORIGINAL PETITION **PAGE** 28

interest in Canup's recovery in the MDL to PSC, Canup and Gamble would receive full access to the MDL's common benefit work, including the master complaint and other litigation materials. This promise was material because access to the common benefit work was essential for evaluating Canup's claims, preparing pleadings, and ensuring that Canup's case was prosecuted on equal footing within the MDL.

6.48 **Knowledge of Falsity:** At the time Bradford made these representations, he and AWKO had no intention of providing the promised access beyond the master complaint. Bradford and AWKO also knew their representation was false because the master complaint had been filed on behalf of all Plaintiffs in the MDL, and the motion to file it under seal expressly stated that an unredacted copy had already been provided to all counsel of record, making all Plaintiffs in the MDL, including Canup, entitled to it without additional conditions. Bradford and AWKO's subsequent refusal to respond to Canup's request for the remaining common benefit materials demonstrates they knowingly misrepresented their willingness to perform and concealed their true intent.

6.49 **Intent to Induce Reliance:** Defendants Bradford and AWKO made these false promises for the purpose of inducing Canup and or Gamble as an agent of Canup to agree to the 9% common benefit interest. By doing so, Bradford and AWKO sought to secure both financial gain and strategic leverage within the MDL, binding Canup to terms that benefitted Bradford, AWKO and PSC as a whole while

depriving Canup of the resources promised.

6.50    **Reliance:** Canup, through Gamble, reasonably relied on Bradford and AWKO's misrepresentations by entering into the agreement and granting PSC a 9% interest in his recovery. Canup through Gamble did so in the belief that he would receive the full scope of common benefit materials, which were essential to advancing his claims in the MDL.

6.51    **Injury:** As a direct and proximate result of Bradford and AWKO's fraudulent inducement, Canup suffered injury. He incurred the financial burden of allocating 9% of his recovery to PSC while receiving only the master complaint, which he was entitled to without further conditions, and being deprived of the other promised materials. This left Canup disadvantaged in prosecuting his claims, forced him to expend additional time and effort to understand the underlying issues without the benefit of the promised work product, and unjustly enriched Bradford and AWKO at his expense.

6.52    Defendants Bradford and AWKO violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Defendants Bradford and AWKO committed this conduct knowingly and intentionally. Such violations constitute fraud.

6.53    To the extent AWKO is not found directly liable, it is also vicariously liable for the fraudulent inducement committed by Bradford within in the course and

scope of his employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.54   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.55   Because Bradford and AWKO's conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## C.   CLAIMS AGAINST ALL DEFENDANTS
### Claim 1:  Civil Conspiracy

6.56   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.57   **Combination of two or more persons:** Defendants FNJ, Brown, Roberts, Aylstock, Bradford, Burns, AWKO, and Mostyn Law combined and acted together in connection with the MDL. Their actions were coordinated, not isolated, and each Defendant assumed complementary roles under the framework of the MSA which tied their compensation to Plaintiff participation thresholds and withdrawal requirements. This combination reflects a deliberate, concerted effort to protect their financial interests at Canup's expense.

ORIGINAL PETITION                                                    **PAGE**    31

6.58   **Common object or course of action:** The common object of the conspiracy was to secure maximum Plaintiff participation in the MSA, protect Defendants' fees, and eliminate or marginalize clients unwilling to settle. To accomplish this, Defendants withheld material settlement terms, including Exhibit 10 of the MSA and provisions tying attorney compensation to client participation and mandatory withdrawals, while conditioning access to critical litigation documents on Canup's compliance. The Florida Defendants also concealed their formal appearance as Canup's counsel, depriving him of notice that they were representing him in court and settlement discussions. These coordinated acts were calculated to undermine Canup's autonomy, deprive him of full disclosure, and coerce his participation in the settlement program.

6.59   **Meeting of the minds:** Defendants reached a meeting of the minds through coordinated conduct. Texas defendants abandoned Canup for not agreeing to participate in the MSA. Florida Defendants then formally appeared "FOR THE PLAINTIFF" in court allowing them to pressure Canup, in person, to participate in the MSA. Florida Defendants did this without disclosing their intent to formally appear forcing Canup to take Gamble from Texas to Florida to comply with the MDL Court's order to appear "in person, with counsel" resulting in unnecessary economic pressure on Canup. Texas Defendants then withheld the master complaint, a document that was part of Canup's file, and directed Gamble to obtain it from the

PSC. Bradford and AWKO then conditioned its release on signing a fraudulent participation agreement giving PSC a 9% interest in any recovery in Canup's case. These coordinated acts evidence agreement, whether formal or informal, to act in unison toward their shared objective.

6.60 **Unlawful overt acts:** In furtherance of the conspiracy, Defendants engaged in multiple unlawful overt acts, including:

a) concealing material settlement terms from Canup;

b) concealing their intent to appear, and then appearing as Canup's counsel without authority or disclosure;

c) accessing and reviewing Canup's confidential medical records without authorization;

d) concealing their financial and ethical conflicts tied to the MSA; and

e) requiring Canup's counsel to sign a fraudulent 9% participation agreement as the condition for obtaining the master complaint.

Each of these acts breached duties of candor, loyalty, and disclosure owed to Canup, and unlawfully advanced Defendants' scheme to manipulate settlement participation.

6.61 **Damages:** As a direct and proximate result of this conspiracy, Canup suffered damages. He incurred unnecessary expenses transporting substitute counsel to Florida for a hearing where Florida Defendants secretly appeared on his behalf,

was deprived of access to promised common benefit work, and saw his recovery reduced by the 9% diversion of settlement funds. Canup also suffered significant inconvenience by being forced to investigate and learn about complex legal processes in order to uncover and counteract Defendants' scheme, burdens that arose solely because of Defendants' coordinated misconduct.

6.62   To the extent the law firms named herein are not found directly liable, they are also vicariously liable for the actions of their partners, associates, employees, or agents committed within the scope of employment and in furtherance of the conspiracy.

6.63   Additionally, because Canup's injuries were caused by the joint and concerted actions of multiple Defendants, including acts of fraud, breach of fiduciary duty, and conspiracy, all Defendants are jointly and severally liable under Texas law.

6.64   For the avoidance of doubt, Canup pleads that if any law firm named herein is not found directly liable, it is nonetheless vicariously liable under the doctrine of respondeat superior for the conduct of its partners, agents, or employees acting within the course and scope of their duties.

6.65   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.66   Because Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be

determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## VII.

## DAMAGES

7.1    For each of his claims, Canup demands recovery of all of the following categories of damages as a direct and proximate result of the Defendants' wrongful conduct, which include:

7.2    **Actual Damages**

Canup suffered actual damages totaling **$19,807.35 + common benefit fee set aside from settlement in underlying litigation (common benefit fee is less than $20,000)**, including:

(a) $6,520.00 for representation by David Gamble at the March 13, 2024 status conference in Pensacola, Florida;

(b) $884.59 in related travel and lodging expenses;

(c) $11,925.00 for expert reports and litigation preparation rendered futile by Defendants' misconduct; and

(d) $477.76 in miscellaneous litigation costs;

(e) amount set aside from settlement to cover common benefit fee

These damages are recoverable under all applicable causes of action, including fraud and breach of fiduciary duty.

### 7.3   Inconvenience Damages

Defendants' misconduct forced Canup to learn about and understand duties that competent counsel should have performed, including analyzing complex legal issues as well as studying fiduciary duties owed by attorneys, and uncovering fraud and concealment theories that revealed how his own counsel had deceived him. These burdens disrupted Canup's daily life, imposed unnecessary strain, and deprived him of reliable representation. Canup seeks damages for loss of time, disruption, and inconvenience. The amount is left to the discretion of the trier of fact.

### 7.4   Exemplary Damages

Defendants acted with fraud, malice, and conscious disregard of Canup's rights by:

(a) appearing as counsel without consent;
(b) accessing confidential medical records without authorization;
(c) concealing material terms and conflicts of interest;
(d) withdrawing or refusing to act during critical litigation phases; and
(e) pressuring Canup toward an unfair settlement.

Canup seeks exemplary damages under *Tex. Civ. Prac. & Rem. Code ch. 41.003*, in an amount sufficient to punish and deter.

### 7.5   Disgorgement

ORIGINAL PETITION                                                            **PAGE**      36

Canup seeks disgorgement of any common benefit fees traceable to his settlement, Florida Defendants as former members of the PSC in the MDL obtained such benefits through fraud and in breach of duty.

## 7.6    Interest and Costs

Canup seeks pre- and post-judgment interest as authorized by law, together with all taxable court costs and litigation expenses.

## VIII.

## JURY DEMAND

8.1    Canup requests a jury trial on all claims and issues so triable.

## IX.

## CONDITIONS PRECEDENT

9.1    All conditions precedent have occurred and been satisfied.

## X.

## NOTICE PURSUANT TO T.R.C.P. 193.7

10.1    Canup provides notice to Defendants pursuant to Rule 193.7 of the Texas Rules of Civil Procedure that Canup may utilize as evidence during the trial of this lawsuit all documents exchanged by the parties in discovery in this case.

## XI.

## PRAYER

ORIGINAL PETITION                                              **PAGE**    37

11.1 ACCORDINGLY, Canup respectfully requests that Defendants be cited to appear and answer, and that Canup be granted judgment against Defendants awarding Canup all damages he is entitled to, including all damages and other relief (at law or in equity) pled in the causes of action and other parts of this instrument above, actual damages and losses, economic damages, compensatory damages, exemplary damages, costs, pre- and post-judgment interest, disgorgement of any fees or benefits wrongfully obtained by Defendants, and all other damages Canup is entitled to in equity or by other applicable law.

11.2 Canup further requests such other and further relief, general or special, at law or in equity, to which Canup may show himself justly entitled.

Dated October 27, 2025

Respectfully submitted,

*/s/ Brandon Canup*
Brandon Canup

4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314

canup.brandon@gmail.com

pro se

ORIGINAL PETITION **PAGE** 38

46

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107325134
Filing Code Description: Petition
Filing Description: Original Petition
Status as of 10/27/2025 4:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Brandon Canup | | canup.brandon@gmail.com | 10/27/2025 1:29:54 PM | NOT SENT |

# EXHIBIT 5

## Declaration of Brandon Canup

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 4:25-cv-01255-Y |
| *Plaintiff,* | Senior Judge Terry R Means |
| v. | |
| BRYAN F AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC | DECLARATION OF BRANDON CANUP |
| *Defendants.* | |

**DECLARATION OF BRANDON CANUP**

"I am Brandon Canup, pro-se Plaintiff in the above numbered lawsuit. I have personal knowledge of the facts asserted in this Declaration and such facts are true and correct. I assembled the document entitled:

'APPENDIX IN SUPPORT OF PLAINTIFF BRANDON CANUP'S MOTION FOR REMAND AND BRIEF IN SUPPORT' (the "Appendix"),

to which this Declaration is attached. The Appendix contains true and correct unaltered copies of the documents represented therein. I am personally familiar with each of such documents.

Exhibit 1 to the Appendix is a true and correct copy of the Executed Return of Service showing service on Mostyn Law Firm, P.C. by Christina Edwards PSC#13296 on November 4, 2025. I engaged Christina Edwards as a process server.

Exhibit 2 to the Appendix is a true and correct copy of the Affidavit of Due Diligence showing service attempt on Mostyn Law Firm, P.C. by Christina Edwards PSC#13296 on October 30, 2025.

Exhibit 3 to the Appendix is a true and correct copy of a Document that I personally downloaded from the Texas Secretary of State website showing Andrew Browning listed as

49

registered agent for Mostyn Law Firm, P.C. on November 4, 2025.

Exhibit 4 to the Appendix is a true and correct copy of the Original Petition in this lawsuit, filed in State Court.

I declare under penalty of perjury that the forgoing is true and correct.  Executed on November 21, 2025.

Brandon Canup"

50

## CERTIFICATE OF SERVICE

On this 21st day of November 2025, the undersigned, Brandon Canup, caused a true and correct copy of the foregoing instrument to be served on Gregory Brown via e-filing, and on all other parties to this lawsuit via first class U.S. Mail postage prepaid, pursuant to the Federal Rules of Civil Procedure.

*s/ Brandon Canup*

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**BRANDON CANUP,**

    **Plaintiff,**

**v.**                               **CASE NO. 3:26cv3359-MCR-ZCB**

**BRYAN F. AYLSTOCK, et al.,**

    **Defendants.**

_____/

## ORDER

Plaintiff Brandon Canup, *pro se*, has filed a Motion for Leave to File First Amended Complaint, ECF No. 34, and Defendants have responded indicating they do not oppose the motion, ECF Nos. 46, 47. Accordingly, Canup's motion, ECF No. 34, is **GRANTED**. Defendants' Motions to Dismiss, ECF Nos. 10, 27, are **DENIED** as moot. Canup must file his amended complaint as a separate docket entry within **7 days** of the date of this Order. Once filed as a separate docket entry, Canup's amended complaint will be the operative pleading and Defendants must respond to the amended complaint within **14 days** thereafter.

The Court defers ruling on Canup's Motion for Leave to File Reply Memorandum in Support of his Motion to Amend Complaint, ECF No. 48. The Court will consider whether a reply is necessary after review of the amended complaint and Defendants' response thereto.

**DONE AND ORDERED** this 6th day of May 2026.

_M. Casey Rodgers_

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF'S MOTION TO STAY PROCEEDINGS AND MEMORANDUM IN SUPPORT |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S MOTION TO STAY PROCEEDINGS AND**
**MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding *pro se*, subject to and without waiving his pending Motion to Remand and all objections to this Court's subject-matter jurisdiction, and respectfully moves the Court for a limited stay of proceedings pending resolution of Canup's pending Motion to Remand, Motion for Recusal and Disqualification, and Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation, and in support thereof would respectfully show the Court as follows:

Canup respectfully requests a limited stay of substantive proceedings in this matter pending resolution of the threshold motions presently before the Court, including:

1. Canup's Motion to Remand, Dkt. 8;

2. Canup's Motion for Recusal and Disqualification, Dkt. 37; and

3. Canup's Motion for Suggestion of Remand to the JPML. Dkt. 38.

Canup further requests that the Court permit limited proceedings necessary to preserve the procedural posture of the case, including continued efforts to complete service upon Defendants

1

Michael Burns and Cliff Roberts pursuant to Canup's pending motion for substituted service, Dkt. 44, and applicable rules governing service of process.

Defendants oppose this motion.

## RELIEF REQUESTED

WHEREFORE PREMISES CONSIDERED, Plaintiff Brandon Canup respectfully requests that the Court enter an order:

1. Staying substantive proceedings in this matter pending resolution of Canup's pending Motion to Remand, Motion for Recusal and Disqualification, and Motion for Suggestion of Remand;

2. Temporarily staying merits discovery, Rule 26 obligations, scheduling deadlines, and substantive merits motion practice, and further Rule 12 motion practice or adjudication during the pendency of those motions;

3. Deferring any Rule 12 motion practice, including the filing of Rule 12 motions, related briefing deadlines, and adjudication of Rule 12 issues, until after resolution of the foregoing threshold motions;

4. Permitting Canup to continue efforts necessary to complete service upon Defendants Michael Burns and Cliff Roberts, including pursuant to Canup's pending motion for substituted service, Dkt. 44, and applicable rules governing service of process; and

5. Granting such other and further relief to which Canup may be justly entitled.

Signed this 12th day of May, 2026.

Respectfully submitted,

Brandon Canup, Plaintiff

2

4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that, I, Brandon Canup have complied with the attorney-conference requirement of Local Rule 7.1(B). I attempted to confer in good faith by email to resolve the issue(s) set forth. Results of conference(s): I emailed counsel for AWKO and FNJ Defendants on May 11, 2026 to discuss the motion to stay proceedings. Mr. Rettig responded for the AWKO Defendants stating that they object to any type of motion for a stay. Mr. Vine responded for the FNJ Defendants stating that he needed to speak with his client before indicating whether or not they oppose the motion to stay proceedings. It has been more than 24 hours since our last communication and Mr. Vine has not contacted me with an update. FNJ Defendants are assumed to be opposed, therefore, this motion is submitted to the Court as opposed.

Brandon Canup
*pro se* Plaintiff

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on or about May $\setminus 2$, 2026, a true and correct copy of this entire motion and memorandum was sent to counsel for all parties via email, US Mail and/or the CM/ECF service pursuant to the Federal Rules of Civil Procedure.

**Gregory K. Rettig**
LLOYD, GRAY, WHITEHEAD &
MONROE, P.C.
Counsel for Defendants Bryan F. Aylstock,
Bobby Bradford and Aylstock, Witkin,
Kreis & Overholtz, PLC
125 W. Romana Street, Suite 330
Pensacola, Florida 32502
Telephone: (850) 777-3322
Grettig@lgwmlaw.com

**Jonathan Vine**
COLE, SCOTT & KISSANE, P.A.
Counsel for Defendants Gregory Brown and
Fleming, Nolen & Jez, LLP
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone (561) 383-9200
Jonathan.Vine@csklegal.com

Brandon Canup
*pro se* Plaintiff

**PLAINTIFF BRANDON CANUP'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>MOTION TO STAY PROCEEDINGS</u>**

COMES NOW, Plaintiff Brandon Canup ("Canup" or "Plaintiff"), proceeding *pro se*, subject to and without waiving his pending Motion to Remand and all objections to this Court's subject-matter jurisdiction, respectfully submits this Memorandum of Law in support of his Motion to Stay Proceedings requesting a limited stay pending resolution of Canup's pending Motion to Remand, Motion for Recusal and Disqualification, and Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation, and in support thereof would respectfully show the Court as follows:

## I.   INTRODUCTION

This action presently involves multiple unresolved threshold issues that may substantially alter or entirely eliminate the need for further merits litigation in this Court. Those issues include pending motions concerning subject-matter jurisdiction, judicial disqualification, and whether this action should remain centralized in MDL No. 2885.

Under well-established Eleventh Circuit authority, federal courts must resolve questions concerning subject-matter jurisdiction before proceeding to adjudicate the merits. Courts in this Circuit recognize that subject-matter jurisdiction is a threshold issue and may stay or defer merits proceedings pending resolution of motions to remand and other jurisdictional matters.

The requested stay is narrow, temporary, and directed solely toward avoiding unnecessary expenditure of judicial and party resources while these threshold matters are resolved. At the same time, Canup does not seek to halt all activity in the case and specifically requests leave to continue efforts necessary to complete service upon Defendants Burns and Roberts so that the procedural posture of the case may be properly preserved.

## II.    BACKGROUND

This action was filed by Canup against Defendants asserting multiple causes of action including fraud, breach of fiduciary duty, and civil conspiracy. *See* Dkt. 1, Ex. 1 ¶¶ 5.3–5.20, 6.1–6.66. The lawsuit arises from the *In re: 3M Combat Arms Earplugs Litigation* (the "MDL"), a multi-district litigation proceeding involving claims by service members and veterans against 3M Company ("3M") based upon allegations that its Combat Arms Earplugs were defective. Canup, an MDL claimant, was initially represented by FNJ Defendants and Cliff Roberts. Ultimately, in 2023, after several bellwether trials, 3M entered into a Master Settlement Agreement ("MSA") to resolve the claims in the MDL, which involved the creation of a "benefits program" out of which the attorneys would be paid.

Importantly, the MSA is a private agreement that was voluntarily entered into by participating counsel in the MDL, including Defendants in this action. Also of note, the amount to be paid by 3M under the MSA was dependent on participation levels of eligible claimants. The terms that participating counsel voluntarily agreed to obligated every attorney representing a claimant who had filed a case in the MDL to cease developing their clients' cases in the MDL as of the settlement date, August 29, 2023, recommend to 100% of their clients to agree to the MSA and register in the "benefits program" thereunder and withdraw from representing claimants that chose to opt out of the MSA. After realizing that FNJ Defendants were not actively working on his case, in January of 2024, Canup retained David Gamble to pursue his claims against 3M. Canup rejected the MSA and FNJ Defendants withdrew as his counsel, as they had voluntarily agreed with 3M and other participating counsel to do.[1] During this same period, AWKO Defendants,

---

[1] FNJ Defendants delayed withdrawing from Canup's case, Canup opted out of the MSA on January 21, 2024 and Gregory Brown filed his motion to withdraw on February 15, 2024, one week before a major production deadline in Canup's case and more than five months after FNJ

along with Michael Burns and Mostyn Law Firm, PC, injected themselves into Canup's litigation

with 3M through ongoing communications and interactions with Canup spanning from February

22, 2024, through April 25, 2024. After several more months of litigation and after Canup had

initiated an appeal of one of the MDL Court's Orders, 3M agreed to settle Canup's claims

independently of the MSA.

Canup then filed this fraud, breach of fiduciary duty, and civil conspiracy action on October

27, 2025, in the 67th Judicial District Court of Tarrant County, Texas. On November 6, 2025,

Gregory Brown improperly removed the action to the U.S. District Court for the Northern District

of Texas.[2] Canup promptly filed a motion to remand on November 21, 2025, challenging removal.

*See* Dkt. 8. Beginning on November 26, 2025, Defendant Bryan F. Aylstock made multiple

attempts to transfer this action to the MDL Court for inclusion in the MDL. *See* Dkts. 12 and 23.

On December 12, 2025 FNJ Defendants responded opposing remand, that motion remains

unresolved. *See* Dkt. 14. On the same day, FNJ Defendants filed a Motion to Stay Proceedings

pending a decision by the JPML regarding transfer to the MDL.[3] *See* Dkt. 15. FNJ Defendants

---

Defendants agreed with 3M and other participating counsel to cease developing Canup's case in
the MDL. *See* Dkt. 37, Ex. 2, Docket Report, *Canup v. 3M Co. et al.*, No. 8:20-cv-14021-MCR-
HTC (N.D. Fla.); *see also* MDL Settlement Agreement, MSA 1 at 6 and ¶ 8.1.4 at 20,
*https://www.uscourts.gov/courts/flnd/3M-MSA_I.pdf* (last accessed May 12, 2026).
[2] Brown removed this case despite being a non-diverse Texas defendant, and without ensuring all
of his co-defendants consented to removal, including Mostyn Law Frm, P.C., another Texas
Defendant who had already been properly joined and served. *See* Dkt. 8; Dkt. 9 at 2, 6–7. Brown
filed the Notice of Removal and was the sole signatory. The docket entry, however, reflects
participation by the AWKO Defendants, stating: "NOTICE OF REMOVAL filed by Gregory
Donald Brown, Aylstock, Witkin, Kreis & Overholtz, PLL." *See* Dkt. 1; *see also* Docket Report,
*Canup v. Aylstock, et al.*, No. 3:26-cv-03359-MCR-ZCB (N.D. Fla.)
[3] FNJ Defendants did not attempt to confer with Canup and did not attach the certificate of
conference explicitly required for a motion to stay proceedings in the Northern District of Texas.
*See* N.D. Tex. Civ. R. 7.1(a), (b) and (h); *see also* Dkt. 15.

later moved to dismiss Canup's claims pursuant to FRCP 12(b)(6). Dkt. 10. The JPML transferred this action on April 2, 2026. *See* Transfer Order, Dkt. 30.

On April 6, 2026 Canup filed his Motion for Leave to File First Amended Complaint.[4] *See* Dkts. 34 and 35. On April 17, 2026, Canup timely filed his Motion for Recusal and Disqualification. *See* Dkt. 37. On that same date, Canup also filed his Motion seeking a Suggestion of Remand. *See* Dkt. 38. On May 1, 2026, FNJ Defendants and AWKO Defendants filed responses in opposition to both motions. *See* Dkts. 49, 50, 51, and 52.

### III.     ARGUMENT AND AUTHORITY

#### A.  Legal Standard

District courts possess inherent authority to control their dockets and stay proceedings in the interests of judicial economy and fairness. *Landis v. North American Co.,* 299 U.S. 248, 254–55 (1936); *Clinton v. Jones,* 520 U.S. 681, 706 (1997). Any stay must be reasonable in scope and duration and supported by a clear justification. *Ortega Trujillo v. Conover & Co. Communications, Inc.,* 221 F.3d 1262, 1264–65 (11th Cir. 2000).

---

[4] While Canup did not retain the right to amend as a matter of course as to FNJ Defendants, Canup disputes Defendants' assertions regarding the timeliness of amendment as to AWKO Defendants and compliance with Local Rule 7.1(B). *See* Dkts. 46 at 2–3; 47 at 3. On January 23, 2026, eleven days after AWKO Defendants filed their Rule 12 motion, the case was administratively closed for approximately seventy days, during which time Canup could not proceed. *See* Dkts. 29, 33. Upon reopening on April 3, 2026, Canup filed the motion for leave to amend just three days later and within fourteen days of the AWKO Defendants' Rule 12 motion after accounting for the administrative closure. *See* Dkts. 27, 29, 33, 34. This Court effectively treated the administrative closure as suspending applicable deadlines by resetting response deadlines upon reopening. *See* Dkt. 33. Canup further maintains that because he retained the right to amend as a matter of course as to AWKO Defendants under Fed. R. Civ. P. 15(a)(1)(B), conferral with those Defendants was not required before filing. *See Williams v. Board of Regents of the University System of Georgia,* 477 F.3d 1282, 1291–92 (11th Cir. 2007).

That authority includes the power to stay discovery and defer merits proceedings pending resolution of threshold jurisdictional issues. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367–68 (11th Cir. 1997). Courts routinely recognize that subject-matter jurisdiction constitutes a threshold issue that should ordinarily be resolved before substantial merits litigation proceeds. *See University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) ("a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings"). A federal court lacking subject-matter jurisdiction must remand the action and lacks authority to proceed to the merits. *Id.* A failure to rule on jurisdictional challenges before adjudicating other dispositive matters can constitute an abuse of discretion. *Chudasama*, 123 F.3d at 1367.

Discovery stays and protective orders may be entered upon a showing of good cause and reasonableness. *Feldman v. Flood,* 176 F.R.D. 651, 652 (M.D. Fla. 1996). In determining whether a stay is appropriate, courts balance the potential prejudice resulting from delay against the possibility that resolution of the pending motion may eliminate or substantially narrow the need for further proceedings. *Id.* Courts may take a "preliminary peek" at the merits of the pending motion to determine whether there exists an immediate and clear possibility that the motion will be granted. *Id.*

Consistent with those principles, courts within this Circuit have granted stays or deferred merits litigation pending resolution of motions to remand and related threshold issues. *See Hill v. Allstate Fire and Insurance Company,* No. 6:24-cv-00462-CEM-DCI, ECF No. 23 (M.D. Fla. June 17, 2024) (granting stay after finding apparent preliminary merit in the motion to remand); *AIC Fernandina, LLC v. Buchanan,* No. 3:26-cv-00514-MMH-SJH, ECF No. 37 (M.D. Fla. May 1, 2026) (granting limited stay pending resolution of motion to remand because resolving subject-

matter jurisdiction first would conserve judicial and party resources and ensure the action proceeds in the proper forum).

## B. Argument

### 1. A Limited Stay is Warranted Because the Pending Motions Present Threshold Issues Potentially Dispositive of Further Proceedings in This Court

The pending motions raise threshold issues that may substantially alter the course of this litigation or eliminate the need for further proceedings before this Court entirely.

Courts considering a stay pending resolution of threshold motions may take a "preliminary peek" at the merits of the pending motion to determine whether there exists an immediate and clear possibility that the motion will be granted or materially alter the course of the litigation. *Feldman,* 176 F.R.D. at 652. While Canup does not ask the Court to prejudge the pending Motion to Remand, the jurisdictional issues presented are substantial and potentially dispositive of this Court's authority to proceed further in this action.

#### a. Motion to Remand

First, Canup's Motion to Remand challenges this Court's subject-matter jurisdiction. Subject-matter jurisdiction is not discretionary and must be resolved before the Court proceeds to substantive adjudication. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94–95 (1998); *University of South Alabama,* 168 F.3d at 410.

Canup's Motion to Remand identifies multiple independent grounds supporting remand, including procedural defects in removal, lack of complete diversity, the forum-defendant rule, lack of unanimous consent, and the absence of federal-question jurisdiction. *See* Dkt. 8. Among other things, the Notice of Removal expressly acknowledged that removal was premised in part upon

10

assertions that the action implicated MDL proceedings before this Court. *See* Dkt. 1 at 4–5. Defendants' subsequent opposition likewise relied heavily upon arguments that Canup's claims arise from conduct performed pursuant to MDL orders and that the MDL Court retained jurisdiction over matters related to the settlement proceedings. *See* Dkt. 14 at 7–10.

In substance, Defendants' position depends substantially upon a theory of ancillary or supplemental enforcement jurisdiction arising from prior MDL proceedings and settlement administration. The Supreme Court directly addressed this issue in *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28 (2002). There, the Supreme Court rejected efforts to invoke ancillary jurisdiction as an independent basis for removal jurisdiction and expressly held that 28 U.S.C. § 1367 is not itself a source of original subject-matter jurisdiction. *Id.* at 33–34. The Court further explained that ancillary enforcement concerns cannot independently create removal jurisdiction absent an independent statutory basis conferring federal jurisdiction. *Id.*

The remand motion also presents substantial procedural defects that independently require remand. Canup presented evidence that Mostyn Law Firm, P.C. was served prior to removal, including an executed return of service reflecting service on November 4, 2025, two days before removal. *See* Dkt. 9 at 5. Canup further argued that removal proceeded without unanimous consent despite that prior service. *See* Dkt. 8 at 2 ¶ 1; 9–11. Although Defendants later attempted to challenge service through a post-removal declaration, Dkt. 14, Ex. 1, Canup's reply argued that such post-removal factual theories could not cure defects in the Notice of Removal itself. *See* Dkt. 19 at 2, 4–6.

Accordingly, under the limited "preliminary peek" contemplated by *Feldman,* the pending Motion to Remand presents substantial jurisdictional and procedural issues that may eliminate the need for further proceedings in this Court entirely.

### b. Motion for Recusal and Disqualification

Second, Canup's Motion for Recusal and Disqualification challenges whether the presently assigned judge should continue presiding over this matter under 28 U.S.C. § 455. Resolution of those issues may materially affect further proceedings and judicial administration of this case.

### c. Motion for Suggestion of Remand

Third, Canup's Motion for Suggestion of Remand raises substantial questions concerning whether this action should continue to remain centralized in MDL No. 2885 at all. Resolution of that motion may significantly alter the future procedural posture of this litigation and the forum in which further proceedings occur.

Under these circumstances, requiring the parties and the Court to proceed with extensive merits litigation, discovery, scheduling obligations, and dispositive motion practice before resolution of these threshold matters would risk substantial inefficiency and unnecessary expenditure of resources.

### 2. The Requested Stay is Narrow, Temporary, and Will Not Result in Undue Prejudice

The requested stay is carefully limited in scope and duration. Canup does not seek an indefinite stay or a complete halt of all proceedings. Rather, Canup requests only a temporary stay of substantive merits litigation pending resolution of the pending threshold motions.

Importantly, Canup specifically requests that the Court permit continued efforts related to service of process upon Defendants Michael Burns and Cliff Roberts pursuant to Canup's pending motion for substituted service. *See* Dkt. 44. Those limited proceedings are necessary to preserve

12

the procedural posture of the case and relate directly to threshold procedural issues presently before the Court.

Moreover, Defendants will suffer little, if any, cognizable prejudice from a temporary stay directed toward threshold jurisdictional and procedural issues, particularly where there has been limited substantive activity in this action beyond removal, remand-related briefing, threshold procedural motions, and motions directed to the pleadings. If the pending threshold motions are denied, the stay can be immediately lifted and the case can proceed without undue delay. If, however, remand is granted or the procedural posture of the case is otherwise materially altered, the requested stay will have avoided unnecessary litigation activity and expenditure of judicial and party resources. The requested stay therefore remains moderate and appropriately tailored satisfying the requirement under *Trujillo,* 221 F.3d at 1264–65.

### 3. Canup Will Face Substantial Hardship Absent a Limited Stay

Denial of a limited stay would result in substantial hardship and prejudice to Canup. The pending Motion to Remand directly challenges this Court's subject-matter jurisdiction and raises substantial procedural defects in removal, including lack of unanimous consent and the absence of an independent jurisdictional basis for removal. At the same time, the pending motions for recusal and suggestion of remand raise threshold issues concerning the proper forum and judicial administration of this action. Courts routinely recognize that threshold jurisdictional issues should ordinarily be resolved before extensive merits litigation proceeds. *See Steel,* 523 U.S. at 94–95; *University of South Alabama,* 168 F.3d at 410.

Absent a stay, Canup will be forced to continue litigating substantive Rule 12 issues, briefing potentially duplicative motions directed at amended pleadings, and engaging in broader merits litigation while substantial unresolved questions remain regarding whether this Court may

13

properly exercise jurisdiction at all and whether this action should continue proceeding within MDL No. 2885. If remand is ultimately granted, or if the procedural posture of the case is otherwise materially altered, substantial litigation activity undertaken during the pendency of those threshold motions may prove unnecessary. The Eleventh Circuit has recognized that unnecessary litigation activity should ordinarily be avoided while threshold issues capable of materially affecting the litigation remain unresolved. *See Chudasama,* 123 F.3d at 1367–68.

The hardship to Canup is particularly significant because he proceeds *pro se* against multiple represented parties and faces the prospect of substantial additional motion practice and procedural obligations while the Court's authority to proceed remains actively disputed. By contrast, the requested stay is temporary, narrowly tailored, and directed only toward substantive merits proceedings pending resolution of the threshold motions. Under these circumstances, the balance of hardships and considerations of judicial economy strongly favor entry of a limited stay. *See Landis,* 299 U.S. at 254–55 (courts must weigh competing interests and maintain an even balance); *Trujillo,* 221 F.3d at 1264–65 (recognizing that stays are appropriate where properly limited in scope and duration).

### 4.  Judicial Economy Strongly Supports a Limited Stay

Judicial economy strongly favors resolution of the pending threshold motions before substantial merits litigation proceeds. Federal courts possess inherent authority to control the disposition of cases on their dockets "with economy of time and effort for itself, for counsel, and for litigants." *Landis,* 299 U.S. at 254–255.

If remand is granted, this Court will lack authority to adjudicate the merits of the case further. *See University of South Alabama,* 168 F.3d at 410. If recusal is granted, reassignment may become necessary before further substantive proceedings occur. If the Court suggests remand and

the JPML ultimately remands the case from MDL proceedings, the forum and management of the litigation may materially change.

Proceeding with extensive merits litigation before resolution of those threshold matters risks duplicative proceedings, unnecessary motion practice, inefficient use of judicial resources, and potentially inconsistent procedural rulings. The Eleventh Circuit has recognized that unnecessary litigation activity should ordinarily be avoided while threshold issues capable of materially affecting the litigation remain unresolved. *See Chudasama,* 123 F.3d at 1367–68.

Courts within this Circuit routinely recognize that stays are appropriate where threshold jurisdictional issues may substantially affect the course of the litigation, and the same considerations strongly support a limited stay here. *See Hill,* ECF No. 23; *AIC Fernandina,* ECF No. 37.

## IV.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff Brandon Canup respectfully requests that the Court enter an order:

1. Staying substantive proceedings in this matter pending resolution of Canup's pending Motion to Remand, Motion for Recusal and Disqualification, and Motion for Suggestion of Remand;

2. Temporarily staying merits discovery, Rule 26 obligations, scheduling deadlines, and substantive merits motion practice, and further Rule 12 motion practice or adjudication during the pendency of those motions;

3. Deferring any Rule 12 motion practice, including the filing of Rule 12 motions, related briefing deadlines, and adjudication of Rule 12 issues, until after resolution of the foregoing threshold motions;

4. Permitting Canup to continue efforts necessary to complete service upon Defendants Michael Burns and Cliff Roberts, including pursuant to Canup's pending motion for substituted service, Dkt. 44, and applicable rules governing service of process; and

5. Granting such other and further relief to which Canup may be justly entitled.

Signed this 12th day of May, 2026.

Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(F), based on the Word Count function in Microsoft Word, this Memorandum contains approximately 4,031 words, inclusive of headings, footnotes, and quotations.

Brandon Canup
*pro se* Plaintiff

16

# EXHIBIT 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDON CANUP,

    Plaintiff,

v.

BRYAN F. AYLSTOCK, et al,

    Defendants.

Case No.: 3:26-cv-3359-MCR-ZCB

_____ /

## MOSTYN LAW'S MOTION TO DISMISS

Defendant Mostyn Law Firm P.C. did not advise Plaintiff Brandon Canup, access his medical records, or demand that he agree to anything. Maybe others did, but not Mostyn Law. Under Rule 12(b)(6), because Canup fails to state a claim upon which relief can be granted against Mostyn Law, the Court should dismiss all claims against it.

### ARGUMENT

Canup alleges no direct dealings with Mostyn Law. Canup was not its client—Canup retained other counsel to represent him in pursuing a claim against 3M Company for faulty earplugs. First Am. Compl. (ECF 60) ("FAC") ¶ 28, 64. Instead, Canup identifies Mostyn Law as a "Florida Defendant," FAC ¶ 11, and alleges that these defendants communicated with Canup through his attorney, FAC ¶ 137, 153. In doing so, Canup does not distinguish Mostyn Law's conduct from the others. *See*

*Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (affirming the dismissal of a shotgun pleading that lumped defendants together "rendering it unclear and confusing as to which defendant was being charged with which specific conduct." (cleaned up)). Still, in the light most favorable to Canup, he appears to allege that Mostyn Law acted through Defendant Michael Burns and Defendant Bobby Bradford. That its liability was vicarious.

Canup's four claims against Mostyn Law should be dismissed for two reasons. First, the underlying claims against its alleged agents must be dismissed, and because Mostyn Law's liability depends on the success of those claims, the claims against Mostyn Law cannot survive. Second, Canup fails to plausibly allege that Burns or Bradford acted on behalf of Mostyn Law. Without agency, no vicarious liability follows.

**1.    The claims against alleged agents fail, and consequently, the claims against Mostyn Law fail.**

Mostyn Law's liability depends on Burns's and Bradford's liability. Under Texas and Florida law, respondeat superior and vicarious liability is derivative in nature—a principal cannot be held liable unless an agent's conduct is actionable. *Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995) ("*Respondeat superior* does not impose liability on the employer [or principal] *unless* the employee's [or agent's] conduct has been actionable.") (citing *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807 n.2 (Tex. 1980));

*Tsuji v. Fleet*, 366 So. 3d 1020, 1032 (Fla. 2023). Accordingly, because the claims against the alleged agents fail, so do the claims against Mostyn Law.

To avoid duplicate briefing, Mostyn Law adopts the motions to dismiss filed by Bryan Aylstock, Bradford, and their firm (ECF 66).[1]

**2.    Burns and Bradford were not Mostyn Law's agents.**

Canup fails to plausibly allege that Burns or Bradford acted on Mostyn Law's behalf. Each is considered in turn.

Canup alleges that Burns provided legal advice to Canup. FAC ¶ 84. In doing so, Canup alleges Burns committed fraud (Count B1) and breached a fiduciary duty to Canup (Count B2). FAC at 27-31. Canup identifies Burns as Mostyn Law's agent—Burns was "affiliated with Mostyn Law," FAC ¶ 8. Canup's theory is that Mostyn Law is liable for Burns's alleged misconduct. FAC at ¶ 147-48, 163.

Even if Burns was affiliated with Mostyn Law for some work, the complaint makes clear that he was not acting for Mostyn Law during any alleged misconduct. The misconduct alleged in the complaint began in September 2023, FAC ¶ 56, shortly

---

[1] The Court may apply Florida law because it is substantially the same as Texas law and would not affect the outcome of the issues address in the motion to dismiss. *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283 (Tex. App. 2019) ("We only undertake a choice of law analysis if a conflict of law exists that affects the outcome of an issue."); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984).

after a master settlement was reached in the 3M multidistrict litigation ("MDL"), FAC ¶ 38. Fairly, in 2019, the Court had appointed "Burns of Mostyn" to the plaintiffs' leadership. FAC ¶ 26. Yet by the time of the misconduct in 2023, the Court had already terminated the MDL's existing plaintiffs' leadership structure. FAC ¶ 53. Burns had no further leadership authority. *Id.* Mostyn Law had no role in leadership. FAC ¶ 55. Indeed, its involvement in leadership ended in 2020, when Burns left Mostyn Law, started Burns Law LLC, and served in MDL leadership through his new firm. Because Burns was no longer acting in his leadership role by September 2023, he was no longer acting on Mostyn Law's behalf in that expired role. Canup never alleges otherwise.

Separately, Canup alleges that Bradford committed fraud (Count B3). FAC at 32-34. Bradford was a partner at Defendant Aylstock, Witkin, Kreis & Overholtz PLC. FAC at ¶ 7. Nevertheless, Canup contends that Mostyn Law is liable because it too was "Bradford's principal[]." FAC at ¶ 181-182. Yet Canup never explains what made Bradford an agent of Mostyn Law. This "bare assertion[]" "amount[s] to nothing more than a "formulaic recitation of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). As such, it is "not entitled to be assumed true." *Id.* This Court should reject as implausible Canup's conclusionary allegation that Bradford acted on Mostyn Law's behest while he was a partner in another firm. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). And here, Canup offers nothing aside from a bare assertion that Bradford was Mostyn Law's agent.

## CONCLUSION

As alleged in the complaint, Mostyn Law was not involved any misconduct. Because Canup's claims against the two alleged agents fail, the vicarious claims against Mostyn Law fail. The Court should dismiss all claims against Mostyn Law.

**N.D.  Fla. Loc. R. 56.1(E) Certificate of Word Limit**

This filing contains 1,011 words.

Respectfully submitted,

s/Benjamin James Stevenson
**Benjamin James Stevenson**
Stevenson Legal PLLC
919 Panferio Drive
Pensacola Beach, FL 32561
T. 702.306.6708
bjs@stevenson-legal.com

*Counsel for Mostyn Law Finn*

# EXHIBIT 8

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**BRANDON CANUP,**

> **Plaintiff,**

v.                                              **CASE NO. 3:26cv3359-MCR-ZCB**

**BRYAN F AYLSTOCK, et al.**

> **Defendants.**

_____/

## ORDER

Plaintiff Brandon Canup, appearing *pro se,* filed this action in Texas state court, alleging claims including fraud and professional negligence against several attorneys and law firms involved in multidistrict litigation ("MDL") consolidated in this Court, *In re 3M Combat Arms Earplug Products Liability Litigation,* MDL No. 2885, Case No. 3:19-md-2885-MCR-HTC (N.D. Fla.).  Defendant Gregory Brown removed the case to federal court in the Northern District of Texas, and subsequently, the Judicial Panel on Multidistrict Litigation ("JPML") transferred it to this Court as a tag-along action related to the 3M MDL.[1]  Before the transfer, Canup timely filed a Motion to Remand to state court, ECF No. 8, and after the

---

[1]  In August 2023, a global settlement of the claims against 3M was reached that included all cases in the MDL and Minnesota state court.  In connection with the settlement, the undersigned retained jurisdiction over the settlement, enforcement of all orders, and all related miscellaneous issues.  Also, before Canup's case was transferred, the JPML reopened the MDL for the transfer of additional actions.

transfer to this Court, he filed a Motion for Suggestion of Remand to the JPML, ECF No. 38. Defendants have filed opposition briefs, and now, having fully considered the Parties' arguments and the law, the Court denies both motions.

## I.    Background

To adequately resolve the motions, a full recitation of the background facts is necessary.

### A. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885

On April 3, 2019, the JPML centralized the 3M MDL proceeding in this Court pursuant to 28 U.S.C. § 1407 and transferred eight cases, in which the plaintiffs claimed that 3M and related companies had defectively designed the 3M Combat Arms Earplug, causing the plaintiffs' hearing loss and/or tinnitus. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.,* MDL No. 2885. At the time of centralization, the JPML had been notified of 635 related federal actions filed in 33 federal districts. Case No. 3:19-md-2885-MCR-HTC, Master Docket, ECF No. 1 (JPML initial transfer order). Over the next two years, the number of plaintiffs ballooned to 400,000, by far the largest MDL in the federal judiciary's history, requiring extensive judicial case management and court oversight of all aspects of the pretrial proceedings. At the outset of the litigation, the Court appointed leadership counsel for the universe of plaintiffs, to shepherd all cases through the

CASE NO: 3:26cv3359-MCR-ZCB

coordinated MDL proceedings, and also entered a common benefit order setting out procedures, limitations, and guidelines for participating counsels' access to common benefit work product and sharing of common litigation costs.[2]  For two years, leadership counsel conducted extensive and complex fact and expert discovery related to military rules and regulations, the science of audiometry and sound, and the design and testing of hearing devices.  The discovery involved multiple meetings and exhaustive discussions with the Department of Defense, the Department of Veterans Affairs, and the Department of Justice over the course of three years. During this time, leadership counsel also engaged in vigorous motion practice in this Court and successfully challenged a bankruptcy proceeding in a separate court. After completion of the common discovery, 16 bellwether cases were selected for case specific workup and then tried by juries within a period of 14 months, pursuant to demanding scheduling orders.

After laying this groundwork, plaintiffs' leadership counsel successfully negotiated a $6 billion global settlement with 3M.  The Court appointed a settlement administrator and is currently overseeing the administration of that settlement, as well as resolving miscellaneous issues and processing tag-along cases.

---

[2] As amended, the common benefit order assessed a holdback of 9% from all claimants' gross recoveries.  Master Docket, ECF No. 3875.

CASE NO: 3:26cv3359-MCR-ZCB

In reaching a global settlement, all MDL attorneys agreed that by submitting a registration form, counsel had concluded that the settlement was in each client's best interests and had agreed to recommend participation to every eligible client. The settlement agreement provided that if a plaintiff disregarded his/her counsel's recommendation and opted not to participate in the settlement and to continue litigating, counsel would take steps to withdraw from representation, with Court approval.[3]

The Court established a schedule (CMO 57) to manage any case in which a plaintiff opted not to participate in the settlement program and instead to proceed with litigation.  Case No. 3:19-md-2885, Master Docket, ECF No. 3811 (CMO 57). The Court required every opt-out plaintiff to attend an in-person hearing, at which the undersigned discussed the settlement program and its benefits as well as the risks of going forward in an individual case, provided a final opportunity for the plaintiff to participate in the settlement program, and verified that the plaintiff was fully informed before proceeding further.  The Court invited leadership counsel and

---

[3] Also, as is common in global settlements of this nature, 3M retained a right to walk away from the settlement if, as of the final participation registration date, the participation level was less than 98%. *See* Combat Arms Master Settlement Agreement, Articles 5 and 7 (available on the Court's public website: https://www.flnd.uscourts.gov/3m-products-liability-litigation-mdl-no-2885).

CASE NO: 3:26cv3359-MCR-ZCB

defense counsel to be present at these hearings to explain the details of the settlement program and answer any questions from the plaintiff.

## B. Canup's Underlying 3M Member Suit

Canup asserts that he retained Texas attorneys Gregory Brown, Cliff Roberts, and the law firm of Fleming, Nolen & Jez, LLP ("FNJ") to investigate and develop his claim against 3M.  In June 2020, Canup filed a products liability complaint in the MDL, asserting that the Combat Arms Earplugs were defectively designed and that his use of the product caused him to suffer tinnitus.  *See Canup v. 3M*, Member Case No. 8:20-cv-14021-MCR-HTC, ECF No. 1 (N.D. Fla. Jun. 3, 2020).  Brown appeared on Canup's behalf until the global settlement was reached and Canup elected not to participate in the settlement program, at which time Brown filed an unopposed motion to withdraw.  Canup then retained new counsel, David Gamble. Brown stated in his motion to withdraw that he had begun to transfer Canup's files to Gamble, so the Court allowed him to withdraw.  *See id.* ECF Nos. 9, 10, 12.

Canup and Gamble attended his hearing on March 13, 2024, at which, consistent with the procedure described above, the undersigned discussed the settlement program and its benefits as well as the risks of going forward individually, provided Canup another opportunity to participate in the settlement program, and verified that he was fully informed before proceeding further.  3M's counsel was

CASE NO: 3:26cv3359-MCR-ZCB

also present as were three court-appointed plaintiffs' leadership attorneys, namely, Bryan Aylstock, Bobby Bradford, and Michael Burns. These lawyers were present for the purpose of offering details about the settlement program and answering questions. Also, during a closed-door settlement conference that day with Magistrate Judge Cannon, and with leadership counsel and his own attorney, Gamble, present but not counsel for 3M, Canup was given one final opportunity to participate in the global settlement, which he declined, as was his right.

Aided by Gamble, Canup then successfully completed all requirements under CMO 57 to continue litigating his case against 3M. He later attended mediation with Gamble, as required by CMO 57, through which he negotiated his own settlement with 3M outside of the settlement program. *See id.* ECF Nos. 8 (Order Feb. 12, 2024); 53 (Report of Settlement Sept. 17, 2024).[4] Gamble filed a stipulated dismissal on behalf of Canup, signed also by 3M, on October 13, 2024.

## C. The Instant Litigation

On October 27, 2025, Canup filed the instant lawsuit in Texas state court against Brown, Roberts, and FNJ ("FNJ Defendants") and also leadership counsel Aylstock, Bradford, and the Aylstock firm ("Aylstock Defendants"), Burns, and the

---

[4] Leadership counsel were not present at this mediation.

CASE NO: 3:26cv3359-MCR-ZCB

Page 7 of 19

Mostyn Law Firm. As to his retained counsel (the FNJ Defendants), Canup asserted claims of fraud, breach of fiduciary duty, and professional negligence alleging they failed to disclose conflicts inherent in the MDL proceeding and abandoned his case at a critical point. As to leadership counsel, Canup asserted claims of fraud and breach of fiduciary duty, alleging they failed to disclose that they intended to appear on March 13, 2024 or that they had obtained his confidential medical records.[5] He also alleged that leadership failed to fully disclose conflicts and penalties they faced if they were unable to secure 100% participation in the global settlement (referencing Exhibit 10 to the settlement documents), and that Bradford induced him to accept a 9% fee (common benefit assessment) to be deducted from his MDL recovery. In a civil conspiracy claim against all Defendants, Canup alleged the Defendants conspired to assume "complementary roles" under the global settlement that "tied their compensation to Plaintiff participation thresholds and withdrawal requirements" in an effort to protect their own financial interests at Canup's expense. ECF No. 1–1. He seeks actual damages in the amount of $19,807.35 (Gamble's fee and travel expenses for attending the March 13, 2024 hearing and costs of obtaining expert reports and other litigation preparation expenses) plus disgorgement of the

---

[5] Canup asserted that leadership counsel created an implied attorney-client relationship when they appeared at his March 13, 2024 hearing and in a closed-door settlement conference that day.

CASE NO: 3:26cv3359-MCR-ZCB

Page 8 of 19

9% common benefit fee that he asserts was set aside from his settlement pursuant to the Court's order, and additional unspecified damages for inconvenience, exemplary damages, and interest and costs.

Brown immediately removed the lawsuit to federal court in the Northern District of Texas, *see* 28 U.S.C. § 1441(a), and Canup filed a timely motion to remand, contesting jurisdiction and asserting that several defects in the removal process require remand to state court.

Before any ruling was entered on that motion, Aylstock asked the JPML to transfer the case to this Court as a tag-along action in the 3M MDL.[6] Canup opposed transfer and had an opportunity to fully brief his objections. The JPML rejected Canup's arguments and issued a transfer order, concluding that the instant case involves common questions of fact with the MDL actions, implicates conduct by court-appointed leadership counsel in settlement matters arising from the MDL proceedings, and challenges MDL orders regarding case management, settlement, leadership appointment, and common benefit. Following the transfer to this Court, Canup moved for a suggestion of remand to the JPML.

---

[6] The Northern District of Texas case was stayed pending a transfer decision.

CASE NO: 3:26cv3359-MCR-ZCB

## II.    Discussion

### A. Motion to Remand to State Court

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a case from state court only if the federal court has original jurisdiction over the subject matter. *See* 28 U.S.C. § 1441(a). Original jurisdiction is established through a federal question or diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332. And the removing defendant bears the burden of demonstrating that federal jurisdiction exists. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

The Notice of Removal alleges diversity jurisdiction based on fraudulent and improper joinder[7] and federal question jurisdiction on grounds that the claims arise out of the MDL proceedings, which were consolidated through 28 U.S.C. § 1407, and involve a substantial federal issue, consistent with *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Because the Court agrees that federal question jurisdiction is met, as discussed below, diversity jurisdiction and the issues related to fraudulent joinder need not be addressed.[8]

---

[7] Complete diversity is not met. Canup is a Texas citizen. The FNJ Defendants and Mostyn Law Firm are also Texas citizens, and the Aylstock Defendants and Burns are Florida citizens.

[8] Canup argues also that the forum defendant rule precludes removal. Under that rule, an action "removable solely on the basis of the jurisdiction under § 1332(a) of this title may not be removed

CASE NO: 3:26cv3359-MCR-ZCB

Page 10 of 19

The causes of action alleged in Canup's suit are all framed as state law claims. But in *Grable*, the Supreme Court adopted a rule recognizing that some state court causes of action support federal question jurisdiction if the claims necessarily "implicate significant federal issues."  545 U.S. at 312 (allowing removal of a quiet title action filed in state court after a tax sale, involving an issue of whether the IRS gave proper notice, as "arising under" federal law).  The Court explained, however, that "even when the state action discloses a contested and substantial federal question," a federal forum is appropriate "only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  *Id.* at 313–14.  Four factors guide the *Grable* analysis—the federal issue must be:  "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14).  The doctrine applies in only a "special and small category of cases," in which all four requirements are met.  *AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249,

---

if any of the parties in interest, joined and properly served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  By its terms, the forum defendant rule only applies to bar removal in a case that is removed "solely" on diversity grounds, *id.*, so it is inapplicable here where removal is also based on federal question jurisdiction.

CASE NO: 3:26cv3359-MCR-ZCB

Page 11 of 19

1252–53 (11th Cir.) (quoting *Gunn*, 568 U.S. at 258), *cert. denied*, 146 S. Ct. 370 (2025).

This is one of those special cases. An MDL proceeding is unique. While § 1407 does not establish or create federal jurisdiction, the litigation that occurs under the MDL umbrella is carried out under federal court oversight, federal court scheduling orders, and federal court leadership appointment and common benefit orders. Here, Canup's allegations about the Defendants' breach of professional duties owed to him and allegations of fraud based on MDL leadership's conduct are inextricably intertwined with the Court's case management and settlement administration orders. Thus, the first *Grable* factor (whether a federal issue is necessarily raised) is met. It is disingenuous for Canup to argue otherwise. And there is no question that the issues—concerning whether the conduct alleged was taken pursuant to or governed by this Court's orders—are actually disputed, so the second *Grable* factor is also met.

Although the federal question presented here is unique, the Court concludes that the third factor (which requires a substantial federal issue) is also satisfied. The 3M MDL was created and transferred to the undersigned pursuant to 28 U.S.C. § 1407. All case management and settlement administration orders were entered under that statutory authorization. The crux of Canup's complaint concerns

CASE NO: 3:26cv3359-MCR-ZCB

Defendants' misconduct in connection with the 3M MDL settlement. And notably the undersigned specifically retained jurisdiction to enforce all orders related to the settlement and to handle any matters related to it and/or any miscellaneous issues necessary to complete the administration of the cases.

As the undersigned has previously recognized, "[a]n MDL judge bears the 'enormous' task of 'moving thousands of cases toward resolution on the merits while at the same time respecting their individuality.'" *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2023 WL 9197648, at *1 (N.D. Fla. June 29, 2023) (quoting *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.,* 460 F.3d 1217, 1231 (9th Cir. 2006)). Carrying out this task in an organized and efficient manner demands that the transferee judge define and strictly adhere to broadly applicable and even-handedly applied case management rules. *See id.* (noting that firm MDL case management is required "if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial" (quoting *In re PPA*, 460 F.3d at 1232)). In the 3M MDL, leadership counsel on both sides had a hand in collaborating with the Court to fashion workable case management and settlement procedures. All counsel were required to comply. *See id.* ("counsel must collaborate with the court")*; In re PPA*, 460 F.3d at 1231-32 ("For it all to work, multidistrict litigation assumes cooperation by counsel"). Those pretrial orders, and counsels'

CASE NO: 3:26cv3359-MCR-ZCB

Page 13 of 19

and the parties' compliance with those orders, "are the engine that drives disposition on the merits," and the transferee judge's firm enforcement of them results "in better administration of the vehicle of multidistrict litigation." *In re 3M*, 2023 WL 9197648, at *1 (quoting *In re Cook Medical, Inc. Pelvic Repair Sys. Prof. Liab. Litig.*, 2018 WL 4698953, at *2 (S.D. W.Va. Sept. 28, 2018)).  A post hoc, post-settlement collateral challenge to those orders by an individual litigant could disrupt the entire MDL 3M settlement structure involving over 250,000 plaintiffs, which in turn would have far reaching implications across the federal judiciary both in the 3M MDL and more broadly, given that similar MDL management structures are implemented routinely in MDLs across the federal system as a whole.[9]  Thus, allowing an individual litigant to maintain this sort of challenge in a state court could have serious ramifications for the MDL system as whole.  Consequently, Canup's claims present a substantial federal issue.

The final *Grable* factor is also met.  While state courts ordinarily are vested with "a special responsibility for maintaining standards among members of the licensed professions," *Gunn*, 568 U.S. at 264, the federal-state balance is not disturbed here because the standards of conduct at issue and the allegations of fraud

---

[9] Notably, the 3M MDL settlement administration is on-going and will not be complete until 2029.

CASE NO: 3:26cv3359-MCR-ZCB

arise out of duties counsel performed under federal court orders in the MDL proceeding. The *Grable* doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312. Common sense dictates that this Court should be able to hear these state law claims because they turn on the interpretation and construction of federal court orders within the MDL, which this Court has retained jurisdiction to address. Allowing a state court to decide those issues would undermine this Court's responsibility to oversee the 3M MDL and enforce its orders and would threaten uniformity in their application, which is essential to the overall MDL process, as discussed above. Admittedly, the situation is out of the ordinary, but in the undersigned's assessment, applying arising-under jurisdiction in this narrow MDL-centered context will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. To the extent Canup's complaint raises any purely state law claims having no impact on the MDL process, those claims can be addressed under the Court's supplemental jurisdiction. 28 U.S.C. § 1367.

CASE NO: 3:26cv3359-MCR-ZCB

Case 3:26-cv-03359-MCR-ZCB   Document 9-1   Filed 06/22/26   Page 172 of 281
USCA11 Case: 26-11887   Document: 7   Date Filed: 06/22/2026   Page: 172 of 281

Page 15 of 19

Finally, Canup argues that the rule of unanimity requires remand due to Brown's failure to obtain the consent of all properly joined and served defendants—namely, Mostyn Law Firm, which Canup argues was properly served two days before the Notice of Removal was filed.  The rule of unanimity applies "when a civil action is removed solely under section 1441(a)" and requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action."[10]  28 U.S.C. § 1446(b)(2)(A).  The rule must be strictly enforced but does not "establish a wooden rule;" a technical defect related to unanimity can be cured.  *Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015)[11] (quoting *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009)); *see id.* ("A technical defect related to the unanimity requirement may be cured by opposing a motion to remand prior to the entry of summary judgment.").

While there are questions concerning whether Mostyn Law Firm was properly joined and served at the time of removal, the Court need not address the merits of these arguments because to the extent any defect in unanimity existed, it has been

---

[10] By its express terms, the unanimity rule applies to all actions removed based on original jurisdiction—§ 1441(a)—and thus, it applies regardless of whether removal is based on diversity or federal question jurisdiction.  *See Mulder v. Wilson*, 462 F. Supp. 2d 1214, 1215 (M.D. Ala. 2006).

[11] While *Stone* is unpublished, the undersigned finds it persuasive.

CASE NO: 3:26cv3359-MCR-ZCB

cured.  The record now reflects that all Defendants who have been served, including

Mostyn Law Firm, have appeared in this proceeding and that Mostyn Law Firm has

challenged the Amended Complaint on its merits.  Its consent to removal can be

implied by the filing of a motion to dismiss that does not challenge jurisdiction.  *See*

*Stone*, 609 F. App'x at 981; *see also Frink v. Cargill, Inc*., No. 1:22-cv-4330-VMC-

CCB, 2023 WL 11780360, at *3 & n.1 (N.D. Ga. June 22, 2023) (defendant indicates

its consent to the court's jurisdiction without procedural defect in removal by filing

an answer), *report and recommendation adopted*, No. 1:22-cv-04330-VMC, 2023

WL 11780359 (N.D. Ga. July 12, 2023); *Stephens v. GuideOne Mut. Ins. Co.,* No.

1:19-cv-05534-ELR, 2020 WL 13587976, at *1 n.1 (N.D. Ga. Apr. 21, 2020) (citing

*Stone* for the proposition that that courts also recognize "other forms of manifested

consent, such as filing a motion to dismiss after the removal of the case"); *Griffin v.*

*Jonesboro Nursing & Rehab. Ctr., LLC,* No. 1:19-cv-03096-ELR, 2019 WL

13212709, at *3 (N.D. Ga. Nov. 7, 2019) (citing *Stone* and concluding procedural

defect in the manner or timing of consent can be cured); *Frederick v. Lafont*, No.

3:16cv35-MCR/EMT, 2016 WL 11745551, at *1 (N.D. Fla. May 27, 2016) (citing

*Stone* and noting that the Eleventh Circuit has rejected "a formalistic application of

CASE NO: 3:26cv3359-MCR-ZCB

the unanimity rule"). Any technical lack of unanimity or issue as to the timing of the consent has been remedied and thus is not a basis for remand.[12]

### B. Motion for Suggestion of Remand to JPML

The transferee court may make a suggestion of remand to the JPML, pursuant to the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Rule 10.1(b). The rule does not enumerate under what grounds the suggestion may be made, and Canup does not cite to any case law authorizing the undersigned to suggest remand to the JPML in this circumstance. But typically, a suggestion for remand would occur when the "pretrial proceedings have run their course" in a particular case, even if the consolidated proceedings have not yet concluded. *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, 2025 WL 4072664, at *2 (D.S.C. June 24, 2025) (internal quotations omitted), *reconsideration denied*, 2025 WL 4072671 (D.S.C. Oct. 14, 2025); *see also In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("A transferee judge's suggestion of remand to the Panel is an obvious indication that he has concluded that the game no longer is worth

---

[12] Canup also alleged procedural defects in removal due to Brown's failure to pay the filing fee with the Notice of Removal and include the state court record. These arguments do not justify remand and are thus rejected because the record reflects that the filing fee has been paid, and the Notice of Removal included the state court petition.

CASE NO: 3:26cv3359-MCR-ZCB

the candle (and, therefore, that he perceives his role under section 1407 to have ended).").  "Because the purpose of multidistrict litigation is for the convenience of the parties and witnesses and to promote the just and efficient conduct of the cases, the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary." *In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-CV-1898, 2024 WL 4711129, at *3 (S.D.N.Y. Nov. 7, 2024) (internal quotation marks omitted).

In its transfer order, the JPML acknowledged that this action was not typical but rejected Canup's arguments and concluded that the allegations of his complaint involve common questions of fact with the centralized MDL actions.  The JPML noted that "there is no better court to determine whether defendants acted at the transferee court's direction than the transferee court itself."  ECF No. 30 at 2 n.3.  The JPML also concluded that Canup is challenging orders of the transferee court regarding case management, settlement, leadership appointment, and common benefit and expressly noted that the undersigned (transferee court) retained "continuing jurisdiction to enforce its orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the

CASE NO: 3:26cv3359-MCR-ZCB

administration of these cases." ECF No. 30 at 2 (JPML Transfer Order, quoting MDL 2885, ECF No. 4171 at 1 (N.D. Fla. Sept. 19, 2025)).

Canup's arguments have been fully addressed and rejected by the JPML. His request for a suggestion of remand, rehashing the same arguments he presented to the JPML and challenging the JPML's conclusion, is essentially asking the undersigned to reconsider the JPML's transfer decision.  The undersigned declines to do so.

Accordingly:

1.  Canup's Motion for Remand, ECF No. 8, is **DENIED**.

2.  Canup's Motion for Suggestion of Remand to the Judicial Panel on Multidistrict Litigation, ECF No. 38, is **DENIED**.

3.  Canup's Motion to Stay Proceedings, ECF No. 59, is **DENIED as MOOT**.

**DONE AND ORDERED** this 29th day of May 2026.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO: 3:26cv3359-MCR-ZCB

# EXHIBIT 9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDON CANUP,

    Plaintiff,

    v.

BRYAN F. AYLSTOCK, et al,

    Defendants.

Case No.: 3:26-cv-3359-MCR-ZCB

_____/

## MOSTYN LAW'S MOTION TO ACCEPT MOTION TO DISMISS AS TIMELY

Insufficient service of process meant Defendant Mostyn Law Firm P.C had no obligation to respond to the complaint. Nevertheless, to advance a speedy resolution on the merits, Mostyn Law waived that defense and strived to file its motion to dismiss on the Court's set schedule. It was delayed by a couple of hours while it reviewed and adopted another defendant's motion to dismiss to avoid duplicative briefing. The Court should accept Mostyn Law's motion to dismiss (ECF 67) as timely.

### BACKGROUND

On October 27, 2025, Plaintiff Brandon Canup filed this action in Texas state court against Mostyn Law and others. State Compl., ECF 49 at 42. Days later, Canup served the complaint on Andrew Browning, whom Canup identified as Mostyn Law's

registered agent. Certificate of Service, ECF 5 at 3. Yet Browning wasn't. Browning Decl., ECF 65 at 19. Browning told the process server he was not the registered agent and refused to accept the complaint. *Id.* at ¶ 3. He only accepted it after the server falsely told him he was also named as a defendant. *Id.*

Service was therefore defective. Thrusting a complaint on a person who is no longer an agent is ineffective. Canup might have proceeded in two ways. He could have served Mostyn Law's manager at the firm's office on Alabama Street, the address listed on the summons. Tex. Bus. Org. Code § 5.255. Canup didn't; instead, he located Browning at his new place of employment. Browning Decl., ECF 65 at 19; Certificate of Service, ECF 5 at 3 (service on Memorial Drive, not Alabama Street). Alternatively, if Mostyn Law had failed to notify the Texas Secretary of State of its new registered agent, Canup would have been authorized to serve the secretary. Tex. Bus. Org. Code § 5.251. Yet Canup did not serve the secretary either. Service was never completed.

The case was removed to federal court and transferred from Texas to this Court. Because Mostyn Law had not been properly served under Texas law, it did not initially file a motion to dismiss.

On May 12, 2026, Canup filed a First Amended Complaint. ECF 60. Under the Court's scheduling order, defendants had 14 days to respond. Order (ECF 54). Defendant Gregory Brown sought and received a 10-day extension. ECF 63, 68.

Defendant Bryan Aylstock filed a motion to dismiss after 11:00 p.m. on May 26—the deadline. ECF 66. Mostyn Law reviewed Aylstock's motion, adopted it, and filed its own motion to dismiss two hours later, at 1:31 a.m. on May 27. ECF 67.

### ARGUMENT

The Court should accept Mostyn Law's motion to dismiss (ECF 67) as timely for two reasons. First, because Canup never properly served Mostyn Law, the firm had no obligation to respond by any deadline. Second, even if a deadline applied, Mostyn Law has excusable neglect for the modest delay: it waited to review and adopt Aylstock's motion to avoid duplicative briefing, Canup suffered no prejudice, the delay was minimal, and Mostyn Law acted in good faith throughout.

### 1. Mostyn Law had no obligation to respond to the complaint.

Because Canup never properly served Mostyn Law, no deadline to respond ever arose. Service of process is a jurisdictional prerequisite: "[a] court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments,* 553 F.3d 1351, 1360 (11th Cir. 2008) (quoting *Pardazi v. Cullman Med. Ctr.,* 896 F.2d 1313, 1317 (11th Cir. 1990)).

The U.S. Supreme Court is equally clear: "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347 (1999). A defendant's time to act is "triggered by

formal service"—"not by mere receipt of the complaint unattended by any formal service." *Id.* at 348. Service is the *sine qua non* that brings a defendant within the Court's authority and starts the clock. *Id.* at 351.

Because Canup's service was defective, Mostyn Law had no legal obligation to respond by any deadline. Its filing of the motion to dismiss, however "late," was entirely voluntary—a good-faith effort to resolve this case on the merits rather than on procedural grounds. The Court should accept Mostyn Law's motion to dismiss as timely.

**2.   Alternatively, excusable neglect warrants relief.**

Even if a deadline applied, Mostyn Law satisfies the excusable neglect standard under Rule 6(b)(1)(B). It wanted to streamline the litigation by reviewing Aylstock's motion to dismiss before adopting it. This Court should accept the motion to dismiss as timely.

Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395 (1993), courts weigh four factors: (1) prejudice to the opposing party; (2) length of the delay and its impact on proceedings; (3) reason for the delay; and (4) good faith. The Eleventh Circuit applies this framework. *Locke v. SunTrust Bank,* 484 F.3d 1343, 1346 (11th Cir. 2007); *Advanced Estimating Sys. v. Riney,* 77 F.3d 1322, 1324 (11th Cir. 1996). All four factors favor Mostyn Law.

Prejudice: none. This case is in its earliest stages—no scheduling order has issued, no discovery has begun, and Canup's ability to litigate is wholly unaffected.

Length of delay: de minimis. The motion was filed two hours after the deadline. Defendant Brown has not yet filed a motion to dismiss. *See* Order (ECF 68). Other defendants have not yet been served. *See* ECF 69.

Reason for delay: legitimate and reasonable. Mostyn Law delayed its filing to review Aylstock's motion before adopting it. This avoided duplicative briefing and served the interests of judicial economy. *See* Fed. R. Civ. P. 1. Aylstock's motion was not filed until after 11:00 p.m., leaving Mostyn Law little choice but to file after midnight.

Good faith: clear. Mostyn Law promptly conferred with Canup upon discovering the issue and filed this motion without delay. There is no hint of gamesmanship or dilatory intent.

## CONCLUSION

The Court should accept its motion to dismiss (ECF 67) as timely filed. Treating the motion as a nullity would be a drastic and unwarranted sanction for a two-hour delay that harmed no one. *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1317 (11th Cir. 2002). Granting leave will allow the Court to reach the merits promptly and efficiently.

**Certificate of Conferral—Local Rule 7.1(B)**

Benjamin Stevenson reached out to Brandon Canup on May 27, 2026. The following day, they conferred on the telephone in good faith to resolve the dispute raised in this motion. On May 29, after additional time to consider the motion, Canup stated that he opposed the relief.

**N.D.  Fla. Loc. R. 7.1(F) Certificate of Word Limit**

This filing contains 1,183 words.

Respectfully submitted,

s/Benjamin James Stevenson
**Benjamin James Stevenson**
Stevenson Legal PLLC
919 Panferio Drive
Pensacola Beach, FL 32561
T. 702.306.6708
bjs@stevenson-legal.com

*Counsel for Mostyn Law Firm*

# EXHIBIT 10

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S MOTION FOR RECONSIDERATION |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S CONSOLIDATED MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL, MOTION TO STAY PROCEEDINGS AND <u>INCORPORATED MEMORANDUM OF LAW</u>**

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding pro se, and pursuant to Rule 54(b), files this Motion for Reconsideration ("Motion for Reconsideration") and respectfully states as follows:

On May 29, 2026, the Court entered an Order denying Canup's Motion to Remand. *See* Dkt. 70. In that Order, the Court found federal-question jurisdiction over Canup's claims and further concluded that Mostyn Law Firm, P.C. ("Mostyn") cured any defect in unanimous consent by filing a procedurally defective motion to dismiss approximately six months after removal. The Court reached that conclusion without first determining whether Mostyn had been properly served before removal. *Id.*

That unresolved factual issue is material. If Mostyn was properly served before removal, then its timely consent was required under 28 U.S.C. § 1446(b)(2)(A). If Mostyn was not properly served before removal, then its consent was not required. The Court's conclusion that Mostyn later "manifested consent" to federal jurisdiction by filing a motion to dismiss does not resolve the

1

threshold issue whether a defect existed at the time of removal or whether such a defect could be cured months later.

For the reasons stated in the Memorandum in Support below, Canup respectfully requests that the Court reconsider its Order denying remand, make the necessary factual findings as to whether Mostyn was properly served before removal, and remand this action to Texas state court. Canup incorporates the Memorandum in Support as if fully set forth herein.

## REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that this Court reconsider its Order denying remand, Dkt. 70, and remand this action to Texas state court. Canup further requests that the Court immediately stay all proceedings pending resolution of this Motion for Reconsideration and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73. **Canup respectfully requests an expedited ruling on his request to stay all proceedings so that if the Court declines to stay proceedings, Canup can seek a stay of these proceedings from the Eleventh Circuit in the related mandamus proceedings without delay.**

Alternatively, if the Court declines to remand, Canup respectfully requests that the Court make express factual findings necessary for meaningful appellate review, including: whether Mostyn was properly served before removal; whether Canup timely raised the unanimity defect; when Mostyn's thirty-day deadline to join in or consent to removal expired; whether any defect in unanimous consent existed at the time of removal; whether Mostyn's Motion to Dismiss clearly and unambiguously manifested consent to removal; the specific filing or conduct by which Mostyn allegedly cured any defect; the date on which any such cure occurred and any other findings necessary to decide the issue.

2

Canup further requests that, if the Court maintains its denial of remand, the Court amend the Order, Dkt. 70, to include certification for interlocutory appeal under 28 U.S.C. § 1292(b), because the Order presents controlling questions of law as to federal subject-matter jurisdiction and removal procedure, substantial grounds exist for difference of opinion, and immediate appellate review may materially advance the ultimate termination of this litigation. If the Court certifies the Order for interlocutory appeal, Canup respectfully requests that the Court stay all proceedings pending interlocutory appeal and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73.

In the further alternative, if the Court denies this Motion in full, Canup respectfully requests that the Court stay all proceedings pending resolution of the mandamus proceedings currently pending in the United States Court of Appeals for the Eleventh Circuit. *Id.*

Canup respectfully requests all other and further relief to which he may be justly entitled.

Signed this 5th day of June, 2026.

**Respectfully submitted,**

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

3

## CERTIFICATE OF CONFERENCE

The moving party complied with the attorney-conference requirement of Local Rule 7.1(B). Canup attempted to confer in good faith by email to resolve the issue(s) set forth. Results of conference(s): I emailed counsel of record for all Defendants, all Defendants are opposed, therefore, this motion is submitted to the Court as opposed.

Brandon Canup

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on or about June 5, 2026, a true and correct copy of this response was sent to counsel for all parties via email, US Mail and/or the CM/ECF service pursuant to the Federal Rules of Civil Procedure.

Brandon Canup

4

## INCORPORATED MEMORANDUM OF LAW

### I.    INTRODUCTION

This Motion seeks reconsideration of two threshold rulings in the Court's May 29, 2026 Order denying remand. *See* Dkt. 70. First, the Court found federal-question jurisdiction under *Grable* even though Canup's operative claims are state-law claims for fraud, breach of fiduciary duty, civil conspiracy, and related relief, and even though any asserted federal issue arises, if at all, from Defendants' anticipated reliance on MDL orders, settlement procedures, or purported court-created authority as defenses. *See* Dkt. 70 at 10–14. That conclusion overlooks the distinction between a federal issue necessarily raised by a plaintiff's well-pleaded claim and one raised by a defendant's anticipated defense.

Second, the Court concluded that any unanimity defect was cured by Mostyn Law Firm, P.C.'s procedurally defective motion to dismiss without first determining whether Mostyn was properly served before removal, whether its consent was required, when any consent deadline expired, whether a defect existed at removal, and whether such a defect could be cured months later by a motion to dismiss. *See* Dkt. 70 at 15–17. Mostyn has since moved to accept its out-of-time motion to dismiss as timely, confirming that the Order's cure analysis rested on an unresolved procedural premise: whether the late-filed motion relied upon as implied consent was properly before the Court and legally capable of curing any removal defect.

Because these issues go to removal jurisdiction and the validity of removal procedure, Canup respectfully requests reconsideration, remand to Texas state court, or, alternatively, amendment of the Order to make the necessary findings and certify the controlling jurisdictional questions for interlocutory appeal under 28 U.S.C. § 1292(b).

### II.    BACKGROUND

This action arises from Canup's underlying claim in the 3M Combat Arms Earplugs MDL. Canup was initially represented by FNJ Defendants and Cliff Roberts. After the 2023 Master Settlement Agreement, participating counsel agreed to recommend the settlement to eligible claimants and withdraw from representing claimants who opted out. Canup rejected the settlement, retained David Gamble in January 2024, and Defendants withdrew.[1]

Canup alleges that AWKO Defendants, Michael Burns, and Mostyn Law Firm, P.C. then became involved in his 3M litigation through case-specific communications and interactions between February 22, 2024, and April 25, 2024. Canup later settled his 3M claims independently of the MSA. Dkt. 60 ¶¶ 79–92, 95.

Canup filed this action in Texas state court on October 27, 2025. The operative Amended Complaint asserts fraud, breach of fiduciary duty, civil conspiracy, and related claims. *Id.* ¶¶ 101–203. Gregory Brown removed the action on November 6, 2025,[2] and Canup timely moved to remand on November 21, 2025 challenging subject matter jurisdiction and lack of unanimous consent. *See* Dkt. 8. Aylstock then sought transfer to the MDL Court, and the JPML transferred the action on April 2, 2026. See Dkts. 11–12, 23, 30.

---

[1] FNJ Defendants delayed withdrawing from Canup's case, Canup opted out of the MSA on January 21, 2024 and Gregory Brown filed his motion to withdraw on February 15, 2024, one week before a major production deadline in Canup's case and more than five months after FNJ Defendants agreed with 3M and other participating counsel to cease developing Canup's case in the MDL. *See* Dkt. 37, Ex. 2, Docket Report, *Canup v. 3M Co. et al.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla.); *see also* MDL Settlement Agreement, MSA 1 at 6 and ¶ 8.1.4 at 20, *https://www.uscourts.gov/courts/flnd/3M-MSA_I.pdf* (last accessed May 12, 2026).

[2] Brown removed this case despite being a non-diverse Texas defendant, and without ensuring all of his co-defendants consented to removal, including Mostyn Law Firm, P.C., another Texas Defendant who had already been properly joined and served. *See* Dkt. 8; Dkt. 9 at 2, 6–7. Brown filed the Notice of Removal and was the sole signatory. The docket entry, however, reflects participation by the AWKO Defendants, stating: "NOTICE OF REMOVAL filed by Gregory Donald Brown, Aylstock, Witkin, Kreis & Overholtz, PLL." *See* Dkt. 1; *see also* Docket Report, *Canup v. Aylstock, et al.*, No. 3:26-cv-03359-MCR-ZCB (N.D. Fla.)

After transfer, Canup moved to amend, moved for recusal, and sought a suggestion of remand. *See* Dkts. 34, 37, 38. The Court granted leave to amend, and Canup filed the Amended Complaint on May 12, 2026. *See* Dkts. 54, 60. The Court denied recusal on May 17, 2026. *See* Dkt. 61.

On May 26, 2026, AWKO Defendants filed a renewed motion to dismiss again asserting that their "only interactions with Plaintiff were on behalf of Plaintiffs' MDL Leadership at the request of the MDL Court" and that Canup's claims improperly challenge conduct undertaken pursuant to court-appointed MDL leadership functions. *See* Dkt. 66 at 2–3, 13–17.

On May 29, 2026, the MDL Court denied Canup's motion to remand, concluding that federal question jurisdiction existed over his state law claims and permitting Defendant Mostyn Law Firm, PC to "cure" the lack of unanimous consent[3] by filing a motion to dismiss more than 6 months after removal of this case from state court and without ever opposing remand. *See* Dkt. 70 at 15–17.

On May 30, 2026, Canup filed a Petition for Writ of Mandamus in the United States Court of Appeals for the Eleventh Circuit, seeking an order directing Judge Rodgers to recuse from this action, reassigning the case to a different district judge, and vacating the Order denying recusal. *See* Dkt. 73.

On June 3, 2026, Mostyn Law Firm, P.C. filed a motion asking the Court to retroactively accept its late-filed motion to dismiss as timely. *See* Dkt. 75. Mostyn acknowledged that its motion to dismiss was filed after the Court-ordered deadline, but argued that no deadline applied because service was allegedly defective. *Id.* at 1–4. Alternatively, Mostyn sought relief under Rule

---

[3] *See* Dkts. 9-1, 9-3 (showing Mostyn was properly served on November 4, 2025, 2 days before removal, when it's registered agent Andrew Browning accepted the state court petition and citation).

6(b)(1)(B), asserting excusable neglect. *Id.* at 4–5. Thus, after the Court relied on Mostyn's motion to dismiss as implied consent sufficient to cure the lack of unanimous consent, Mostyn confirmed that the purported curing act was itself untimely and dependent on later judicial approval.

### III.    ARGUMENT AND AUTHORITY

#### A.  Legal Standard

Because the order at issue is interlocutory, reconsideration is governed by Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that any order adjudicating fewer than all claims or the rights and liabilities of fewer than all parties "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). The decision whether to reconsider an interlocutory order is committed to the sound discretion of the district court. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 806 (11th Cir. 1993).

Although Rule 54(b) gives the Court authority to revise interlocutory orders, reconsideration remains an extraordinary remedy to be used sparingly. An interlocutory motion for reconsideration consumes "scarce judicial resources" and is an "extraordinary remedy to be employed sparingly." *Madura v. BAC Home Loans Servicing L.P.,* 851 F. Supp. 2d 1291, 1296 (M.D. Fla. 2012) (quoting *Lamar Adver. of Mobile, Inc. v. City of Lakeland,* 189 F.R.D. 480, 489 (M.D. Fla. 1999)). Motions for reconsideration under Rule 54(b), Rule 59, and Rule 60 are generally evaluated under the same standard. *Grasso v. Electrolux Home Prod., Inc.,* No. 15-cv-20774, 2016 WL 2625746, at *1 (S.D. Fla. Mar. 24, 2016) (citing *Alcock,* 993 F.2d at 805–06).

Reconsideration is appropriate only in limited circumstances: where there has been an intervening change in controlling law, newly available evidence, or a need to correct clear error or prevent manifest injustice. *Parker v. Esper,* No. 19-cv-126, 2020 WL 4480739, at *1 (N.D. Fla. Aug. 4, 2020), aff'd, 856 F. App'x 807 (11th Cir. 2021); *Fenello v. Bank of Am., NA,* 577 F. App'x

899, 903 n.7 (11th Cir. 2014). The factors identified in Rule 60(b), including mistake, inadvertence, surprise, excusable neglect, or other reasons justifying relief, may also inform the Court's Rule 54(b) analysis. See Fed. R. Civ. P. 60(b)(1), (6); *Hermann v. Hartford Life & Accident Ins. Co.,* 508 F. App'x 923, 927 n.1 (11th Cir. 2013); *Berisha v. Stan, Inc.,* 461 F. Supp. 3d 1257, 1259 (S.D. Fla. 2020).

A motion for reconsideration is not a vehicle to relitigate matters already decided or to present arguments that could have been raised earlier. *Roig v. United Parcel Serv., Inc.,* No. 20-60811-CIV, 2022 WL 3581354, at *4 (S.D. Fla. Aug. 17, 2022), aff'd sub nom. *Est. of Roig by & through Olivera v. United Parcel Serv., Inc.,* No. 22-13043, 2023 WL 5321473 (11th Cir. Aug. 18, 2023). Rather, the movant must identify facts or law of a "strongly convincing nature" sufficient to justify revision of the Court's prior ruling. *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

Accordingly, reconsideration is warranted here only to the extent necessary to correct clear error, prevent manifest injustice, or address a material mistake in the Court's prior ruling.

### B. Argument

**1. Reconsideration Is Warranted Because the Order Did Not Determine Whether Mostyn Was Properly Served Before Removal or Whether Any Unanimity Defect Was Timely Curable**

Reconsideration is warranted because the Order denied remand based on a presumed cure of any unanimity defect without resolving the threshold issues necessary to determine whether removal was procedurally proper. Those unresolved issues include: whether Mostyn Law Firm, P.C. was properly served before removal; whether Canup timely raised the unanimity defect; whether Mostyn's consent was required at the time of removal; if so, when Mostyn's thirty-day deadline to join in or consent to removal expired; whether any defect in unanimous consent existed at the time of removal; whether Mostyn's Motion to Dismiss clearly and unambiguously

9

manifested consent to removal; the specific filing or conduct by which Mostyn allegedly cured any defect; the date on which any such cure occurred; and whether any alleged cure occurred within a legally effective time period. The rule of unanimity requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The Order correctly recognizes that the unanimity rule applies regardless of whether removal is based on diversity jurisdiction or federal-question jurisdiction. Dkt. 70 at 15 n.10. The Order also recognizes that "Canup filed a timely motion to remand, contesting jurisdiction and asserting that several defects in the removal process require remand to state court."[4] *Id.* at 8.

Canup's executed Return of Service showed that Mostyn was served on November 4, 2025, through Andrew Browning, its registered agent. *See* Dkt. 9, App., Ex. 1. Brown removed the action two days later, on November 6, 2025, without Mostyn's consent. *See* Dkt. 1. If Mostyn was properly served on November 4, 2025, then its consent was required when the case was removed, and its thirty-day deadline to join in or consent to removal expired on December 4, 2025.

The factual and legal issues surrounding service were fully briefed in Canup's Motion to Remand and Reply in support of that motion. *See* Dkts. 8, 9, 19. Canup incorporates those arguments here by reference as if fully set forth herein. Canup relied on a sworn executed return of service and Texas Secretary of State records identifying Andrew Browning as Mostyn's registered agent. *See* Dkt. 9, App., Ex. 3. FNJ Defendants disputed service through post-removal

---

[4] A timely raised unanimity defect cannot be disregarded as harmless or technical merely because the delay was minor or inadvertent. *See Beard v. Lehman Bros. Holdings, Inc.,* 458 F. Supp. 2d 1314, 1317–18 (M.D. Ala. 2006) ("Where a plaintiff timely alleges and proves that a defendant has not timely filed a removal petition in accordance with statutory procedures, the district court, as a court of limited jurisdiction, cannot disregard an evident procedural defect, regardless of the triviality or inadvertent nature of the defect."); *Yezzi v. Hawker Fin. Corp.,* No. 09-0537-KD-N, 2009 WL 4898380, at *7 (S.D. Ala. Nov. 20, 2009), report and recommendation adopted, No. 09-0537-KD-N, 2009 WL 10688917 (S.D. Ala. Dec. 10, 2009) (same).

10

arguments and an unsworn declaration executed after removal. That dispute required a finding because § 1446(b)(2)(A) turns on whether a defendant was "properly joined and served." If Mostyn was properly served before removal, its consent was required. If Mostyn was not properly served before removal, then no Mostyn-based unanimity defect existed to cure. Either way, the Court could not determine whether a defect existed, or whether it was cured, without first determining whether Mostyn was properly served before removal.

The Order acknowledges that "there are questions concerning whether Mostyn Law Firm was properly joined and served at the time of removal,"[5] but concludes that the Court "need not address the merits of these arguments because to the extent any defect in unanimity existed, it has been cured."[6] Dkt. 70 at 15–16. Respectfully, that sequence was clear error. The existence, timing, and cure of any unanimity defect depended on the threshold service finding. Although the Order treated Mostyn's Motion to Dismiss as the alleged curing conduct, it did not establish whether Mostyn's consent was required, whether Canup timely raised the unanimity defect, when any

---

[5] Removal statutes are strictly construed, and all doubts or uncertainties about removal jurisdiction must be resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (recognizing the presumption against federal removal jurisdiction and requiring uncertainties to be resolved in favor of remand); *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999) (explaining that federalism concerns require strict construction of removal statutes with all doubts resolved in favor of remand ).

[6] The unanimity requirement does not require every defendant to sign the same notice of removal, but each properly served defendant must clearly, officially, and unambiguously communicate its consent to removal to the court within the thirty-day removal period. *See Clyde v. Nat'l Data Corp.,* 609 F. Supp. 216, 218 (N.D. Ga. 1985) (consent "must be expressed to the court within the thirty day period, whether by petition, written consent or oral consent"); *Newman v. Spectrum Stores, Inc.,* 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000) (unanimity must be communicated to the court within thirty days after service of the initial pleading containing the removable claim); *Miles v. Kilgore,* 928 F. Supp. 1071, 1076 (N.D. Ala. 1996) (remand is required when a defendant fails to join in, file its own notice, or officially and unambiguously consent to removal within thirty days of service); *Jones ex rel. Bazerman v. Fla. Dep't of Children & Family Servs.,* 202 F. Supp. 2d 1352, 1355 (S.D. Fla. 2002) (failure to consent before expiration of the thirty-day period violates the unanimity rule and requires remand).

consent deadline expired, whether removal was defective when filed, whether the Motion to Dismiss clearly and unambiguously manifested consent to removal, or whether that filing could legally cure the defect after the statutory removal period had expired.

Clear error exists where the prior ruling contains a manifest error of law or fact. *See Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007) ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."). A finding is clearly erroneous where, after reviewing the record as a whole, the court is left with the "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985); *United States v. Rothenberg,* 610 F.3d 621, 624 (11th Cir. 2010). Here, the clear error is not mere disagreement with the Court's conclusion. The error is that the Order found any unanimity defect cured without first deciding the threshold factual issues that controlled whether Mostyn's consent was required, whether the defect existed, and whether any later filing could legally cure it.

The Order relies on Mostyn's procedurally defective Motion to Dismiss as implied consent, but the motion does not clearly and unambiguously express consent to removal.[7] Mostyn's Motion to Dismiss is a Rule 12(b)(6) merits motion. It argues that Mostyn did not advise Canup, access his medical records, demand that he agree to anything, or plausibly act through Burns or Bradford. *See* Dkt. 67. It does not state that Mostyn joins in or consents to removal. It does not mention removal. It does not mention remand. It does not oppose Canup's Motion to Remand. It does not

---

[7] A defendant's later participation in federal court does not cure a unanimity defect unless the filing clearly and unambiguously expresses consent to removal. *See Diebel v. S.B. Trucking Co.,* 262 F. Supp. 2d 1319, 1328 (M.D. Fla. 2003) ("each defendant must join in the removal by signing the notice of removal or by explicitly stating for itself its consent on the record, either orally or in writing, within the 30-day period prescribed in 28 U.S.C. § 1446(b)"); *Newman v. Spectrum Stores, Inc.,* 109 F. Supp. 2d 1342, 1346 (M.D. Ala. 2000) (late-filed consent did not cure defendant's failure to consent within the thirty-day removal period); *Leaming v. Liberty Univ., Inc.,* No. 07-0225-WS-C, 2007 WL 1589542, at *6 (S.D. Ala. May 31, 2007) (filing an answer within the thirty-day period did not cure the defect where the answer was silent as to consent to removal).

12

state that removal was proper. It does not waive any defect in removal. It does not purport to bind Mostyn to Brown's Notice of Removal. A motion to dismiss that is silent as to removal and remand is not the same thing as a clear, affirmative, and binding consent to removal. *Id.*

Although the Order relies primarily on *Stone,* that opinion is unpublished and therefore nonbinding. *See* 11th Cir. R. 36-2; *Stone v. Bank of New York Mellon,* N.A., 609 F. App'x 979, 981 (11th Cir. 2015). In any event, *Stone* is materially distinguishable. There, the non-joining defendant was served on December 14, 2010, the action was removed on January 13, 2011, and the non-joining defendant moved to dismiss and opposed remand on January 26, 2011. Id. *Stone* therefore involved prompt post-removal participation and affirmative opposition to remand near the outset of the federal case and within thirty days of removal. It did not involve a court bypassing threshold service and consent-deadline findings and then inferring consent from a merits filing six months after removal that was silent as to removal and remand.

Nor does *Esposito* support the broad cure rule applied here. *Stone* relied on *Esposito,* but in *Esposito* the First Circuit noted that Home Depot had filed an answer in federal court within the thirty-day period, and the district court concluded that the answer constituted consent under the circumstances. *Esposito v. Home Depot U.S.A., Inc.,* 590 F.3d 72, 74 (1st Cir. 2009). Thus, even the authority *Stone* relied upon involved participation within the statutory period, not a procedurally defective motion to dismiss filed 6 months after the consent deadline had expired.

Other courts within this Circuit have applied the unanimity rule more strictly. In *Leaming,* Liberty removed the action on March 23, 2007, even though defendant Lee had already been served on March 15, 2007 and did not join in or consent to removal. *Leaming v. Liberty Univ., Inc.,* No. 07-0225-WS-C, 2007 WL 1589542, at *1–2 (S.D. Ala. May 31, 2007). The court held that the unanimity requirement must be strictly enforced and that a properly served defendant must

13

clearly and timely express consent to removal. *Id.* at *2–4. The court rejected the argument that consent could be inferred from joint representation or from a later statement in opposition to remand because Lee's first manifestation of consent came 46 days after service and was untimely. *Id.* at *4–5.

*Yezzi* further supports reconsideration. There, the removing defendant stated in the notice of removal that a served co-defendant consented to removal, but the co-defendant did not itself join in the notice or file timely consent. *Yezzi v. Hawker Fin. Corp.,* No. 09-0537-KD-N, 2009 WL 4898380, at *1, 5 (S.D. Ala. Nov. 20, 2009), report and recommendation adopted, 2009 WL 10688917 (S.D. Ala. Dec. 10, 2009). The court held that a conclusory statement in the notice of removal was insufficient and that each served defendant must communicate consent to the court in a manner that is timely and binding. *Id.* at *4–6. The court also rejected reliance on private attorney communications because consent must be expressed to the court, on the record, within the removal period. *Id.* at *6.

The Second Circuit's decision in *Taylor* is also persuasive authority supporting reconsideration. There, four defendants timely removed, but a fifth defendant, Covidien LP, did not join or consent because the defendants mistakenly believed Covidien LP had not been properly served. *Taylor v. Medtronic, Inc.,* 15 F.4th 148, 151–52 (2d Cir. 2021). Covidien LP later joined the opposition to remand, and the district court found the defect cured. *Id.* The Second Circuit reversed, holding that "[a] properly served defendant cannot cure a failure to timely consent to removal by opposing a motion for remand when the opposition is filed after the thirty-day statutory period for removal lapsed." *Id.* at 150. The court emphasized that § 1446(b) uses mandatory language and that courts are not free to create exceptions to Congress's requirement that properly served defendants timely join in or consent to removal. *Id.* at 153–57.

14

Like this case, *Taylor* involved a disputed service issue and a later attempt to rely on post-removal conduct as a cure. The Second Circuit's reasoning demonstrates why the Court needed to decide whether Mostyn was properly served before removal, when Mostyn's consent deadline expired, and whether any alleged cure occurred within that deadline.

The cases cited in the Order do not eliminate the need for those findings. *Frink* involved a defendant that filed an answer within the thirty-day removal period, filed a notice of consent the same day the plaintiff moved to remand, and jointly opposed remand. *Frink v. Cargill, Inc.,* No. 1:22-cv-4330-VMC-CCB, 2023 WL 11780360, at *3 & n.1 (N.D. Ga. June 22, 2023), report and recommendation adopted, 2023 WL 11780359 (N.D. Ga. July 12, 2023). *Stephens* involved non-removing defendants who joined the removing defendant in filing a motion to dismiss immediately upon removal. *Stephens v. GuideOne Mut. Ins. Co.,* No. 1:19-cv-05534-ELR, 2020 WL 13587976, at *1 n.1 (N.D. Ga. Apr. 21, 2020). *Griffin* involved a non-signing defendant that filed its answer and motion to dismiss on the same day the case was removed, and the court found the filings were made within the thirty-day time limit. *Griffin v. Jonesboro Nursing & Rehab. Ctr., LLC,* No. 1:19-cv-03096-ELR, 2019 WL 13212709, at *3 (N.D. Ga. Nov. 7, 2019). *Frederick* involved a notice of removal stating that one defendant had consented before removal, an assertion that another defendant had not yet been served, and later express notices of consent. *Frederick v. LaFont,* No. 3:16cv35-MCR/EMT, 2016 WL 11745551, at *1 (N.D. Fla. May 27, 2016).

This case is different. The Order did not identify any prompt opposition to remand by Mostyn, any notice of consent from Mostyn, any answer filed by Mostyn within the thirty-day period, any joint filing by Mostyn at the outset of the federal case, any pre-removal consent from Mostyn, or any clear and unambiguous statement in Mostyn's Motion to Dismiss consenting to removal. Instead, the Court relied on Mostyn's motion to dismiss filed approximately six months

15

after removal as implied consent, even though the motion is silent as to removal and remand. *See* Dkt. 70. The Court did so without first determining whether Mostyn had been served, whether its consent was required, whether Canup timely raised the unanimity defect, whether Mostyn's December 4, 2025 consent deadline expired without consent, whether a defect existed at removal, and whether the later filing could timely and clearly cure that defect. *Id.*

Accordingly, reconsideration is warranted. The Court should determine whether Mostyn was properly served on November 4, 2025; whether Mostyn's consent was required when Brown removed this action on November 6, 2025; whether Canup timely raised the unanimity defect; when Mostyn's thirty-day deadline to join in or consent to removal expired; whether a unanimity defect existed at removal; whether Mostyn's Motion to Dismiss clearly and unambiguously manifested consent to removal; what filing or conduct allegedly cured the defect; and whether any alleged cure occurred within a legally effective time period. Because the record establishes that Mostyn was served before removal and did not timely, clearly, or unambiguously consent to removal, remand is required.[8] *See Russell Corp. v. Am. Home Assurance Co.,* 264 F.3d 1040, 1044, 1049–50 (11th Cir. 2001); *Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1262 n.11 (5th Cir. 1988).[9]

### 2. Reconsideration Is Warranted Because the Order Relied on Mostyn's Motion to Dismiss as a Cure Before Determining Whether That Filing Was Timely or Legally Effective

---

[8] *See also Jones ex rel. Bazerman v. Fla. Dep't of Children & Family Servs.,* 202 F. Supp. 2d 1352, 1355 (S.D. Fla. 2002) (holding that failure to consent to removal before expiration of the thirty-day removal period violates the rule of unanimity and requires remand).

[9] Although *Getty Oil* is Fifth Circuit authority and is not binding on this Court, this action was removed in the Northern District of Texas before transfer to this Court. *Getty Oil* is therefore persuasive authority on the removal procedure at issue and has also been cited by district courts within the Eleventh Circuit when analyzing the rule of unanimity.

Reconsideration is further warranted because the Order treated Mostyn Law Firm, P.C.'s motion to dismiss as implied consent sufficient to cure any unanimity defect, but Mostyn has now acknowledged that the motion was filed after the deadline and has separately moved for leave to have it accepted as timely. *See* Dkt. 75 at 2–5. The Order therefore rests on a procedural premise that was not resolved before remand was denied: whether Mostyn's late-filed motion was properly before the Court and legally capable of supplying implied consent to removal.

The Court stated that it "need not address" whether Mostyn was properly joined and served at the time of removal because, "to the extent any defect in unanimity existed, it has been cured." Dkt. 70 at 15–16. The asserted cure was Mostyn's appearance and merits-based motion to dismiss. *Id.* at 16. But Mostyn's later motion confirms that its motion to dismiss was filed at 1:31 a.m. on May 27, 2026, after the Court-ordered deadline, and that Mostyn seeks relief under Rule 6(b)(1)(B) based on excusable neglect. Dkt. 75 at 2–5. Thus, at the time remand was denied, the Court had not determined whether the very filing relied upon as the curing act was timely, accepted, or legally operative.

That matters because the unanimity issue turns on threshold questions the Order did not resolve. If Mostyn was not properly served before removal, then its consent was not required under 28 U.S.C. § 1446(b)(2)(A). If Mostyn was properly served before removal, then the Court was required to determine whether Mostyn timely, clearly, and unambiguously consented to removal, and whether any later filing could cure the defect after Canup had already timely moved for remand. The Order did neither. Instead, it presumed a cure based on a late-filed merits motion whose timeliness and procedural effect were not yet before the Court.

Mostyn's own filing underscores the problem. Mostyn argues that defective service meant it had "no obligation to respond to the complaint," while also asking the Court to accept its late

17

merits motion as timely and while the remand order treats that same motion as implied consent to removal. Dkt. 75 at 1, 3–5. Those positions cannot supply a basis for denying remand unless the Court first resolves the service, deadline, and consent issues that control whether Mostyn's consent was required and whether its late motion could cure any defect.

Accordingly, the Order's failure to resolve the threshold service and consent issues before finding any unanimity defect cured constitutes clear error, or at minimum warrants reconsideration to prevent manifest injustice. *See Arthur,* 500 F.3d at 1343; *Anderson,* 470 U.S. at 573; *Rothenberg,* 610 F.3d at 624.

### 3. Reconsideration is Warranted Because the Order Expands Grable Jurisdiction Beyond the Well-Pleaded Complaint by Relying on Defendants' Anticipated Federal Defenses

The Order should also be reconsidered because it finds federal-question jurisdiction under *Grable* based on issues that arise, if at all, from Defendants' anticipated defenses and justifications rather than from the necessary elements of Canup's claims. The Order acknowledges that Canup's causes of action "are all framed as state law claims." Dkt. 70 at 10. It nevertheless concludes that this is one of the "special" *Grable* cases because the claims are "inextricably intertwined with the Court's case management and settlement administration orders." *Id.* at 11. The Order further states that the disputed issues concern "whether the conduct alleged was taken pursuant to or governed by this Court's orders." *Id.*

Respectfully, that analysis overlooks the limited nature of *Grable* jurisdiction and the well-pleaded complaint rule. A federal issue must be necessarily raised by the plaintiff's own claim. A case may not be removed based on a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 13–14 (1983). Defendants' contention that their conduct was authorized, excused, or governed

18

by MDL orders, MDL procedures, federal-court supervision, or purported court-created authority is defensive. It does not transform Canup's state-law claims for fraud, breach of fiduciary duty, professional negligence, and civil conspiracy into federal claims.

Canup does not contend that the issues have no relationship to the 3M MDL. The MDL is the factual backdrop. But a federal backdrop is not the same thing as a federal issue necessarily raised by a well-pleaded claim. All federal litigation occurs under federal court oversight and federal court orders. If the existence of federal case-management orders, settlement procedures, or attorney activity in federal litigation were enough to create *Grable* jurisdiction, ordinary state-law attorney-misconduct claims could become federal cases whenever the defendant attorney contends that the challenged conduct occurred in connection with federal litigation. That is not the narrow "special and small category" contemplated by *Grable* and *Gunn. See Gunn v. Minton,* 568 U.S. 251, 258 (2013).

The Order's conclusion that the claims are "inextricably intertwined" with MDL orders also risks accepting Defendants' defense theory as the jurisdictional premise. Dkt. 70 at 11. Canup's claims do not require him to prove that any MDL order is invalid, unenforceable, incorrectly entered, or subject to modification. Nor does Canup seek to void, modify, or collaterally attack any MDL order or the 3M settlement. He seeks damages from Defendants for their own alleged misconduct. Defendants may respond that their conduct was authorized by MDL orders or court-created authority, but that is a defense or justification. It is not an element of Canup's claims.

The Court's substantiality analysis likewise warrants reconsideration. The Order reasons that the federal issue is substantial because the 3M MDL was created under 28 U.S.C. § 1407, the MDL Court entered case-management and settlement-administration orders, and the Court

19

retained jurisdiction over settlement-related matters. Dkt. 70 at 11–12. But § 1407 does not itself create federal jurisdiction, and retained jurisdiction over settlement-related matters does not supply an independent basis for removal jurisdiction over later state-law claims. *See Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 33–34 (2002) (rejecting ancillary jurisdiction as an independent basis for removal and explaining that § 1367 is not itself a source of original jurisdiction).

Nor is a federal issue "substantial" under *Grable* merely because it is important to the parties or because a federal court may be more familiar with the underlying federal proceedings. *Gunn* makes clear that the substantiality inquiry looks to the importance of the issue "to the federal system as a whole," not merely to the parties in the immediate dispute. 568 U.S. at 260. In *Gunn*, the Supreme Court held that even a state-law legal-malpractice claim requiring resolution of an underlying federal patent issue did not arise under federal law because the federal issue was not substantial in the relevant *Grable* sense. *Id.* at 258–65. The Court emphasized that state legal-malpractice claims based on underlying federal patent matters would "rarely, if ever," arise under federal law. *Id.* at 258–59.

That reasoning applies with even greater force here. Canup's claims do not require the Court to decide the validity of any federal statute, the authority of the JPML, the validity of § 1407, or the validity of any MDL order. At most, Defendants may argue that MDL orders or settlement procedures authorized or excused their conduct, as a defense. Any resulting issue would be fact-bound and situation-specific, limited to Canup's claims and Defendants' conduct. Such effects are not sufficient to establish *Grable* jurisdiction. *See Empire HealthChoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700–01 (2006) (holding that *Grable* does not extend to claims that are "fact-bound and situation-specific" and emphasizing that it takes more than a federal element to open the arising-under door).

20

The Order also characterizes this lawsuit as a "post hoc, post-settlement collateral challenge" to MDL orders that could disrupt the 3M settlement structure and have broad implications for the MDL system. Dkt. 70 at 13. Respectfully, that characterization is unsupported by the relief Canup seeks. Canup does not ask any court to invalidate, alter, enforce, or nullify any MDL order or the 3M settlement. Nor does Canup seek relief on behalf of the 250,000-plus plaintiffs in the MDL. His claims are individual, fact-specific claims for redress based on Defendants' alleged conduct toward him. *See* Dkt. 60 ¶¶ 101–203. A damages claim against attorneys for alleged fraud, fiduciary breach, professional negligence, or conspiracy is not transformed into a federal collateral attack simply because Defendants invoke MDL orders as a defense.

Finally, the fourth *Grable* factor confirms that reconsideration is warranted. The Supreme Court has recognized that States have a "special responsibility for maintaining standards among members of the licensed professions," and that the state interest in regulating lawyers is "especially great." *Gunn,* 568 U.S. at 264. The Order acknowledges that principle but concludes that the federal-state balance is not disturbed because the standards of conduct and allegations of fraud arise out of duties allegedly performed under federal court orders. Dkt. 70 at 13–14. That conclusion again assumes the disputed defense premise: that Defendants were performing duties under federal court orders when they engaged in the conduct alleged. Canup disputes that premise, including because the relevant MDL leadership structure had been terminated before the alleged misconduct by CMO 66 and CMO 67.

The claims therefore turn on Texas law and Defendants' alleged conduct, not on the construction or enforcement of federal MDL orders. Expanding *Grable* jurisdiction to cover these claims would disturb the congressionally approved balance of federal and state judicial

responsibilities by moving traditional state-law attorney-misconduct claims into federal court whenever the defendant attorneys assert that their conduct was connected to an MDL, a federal settlement process, or federal court supervision. *Gunn* rejected that kind of expansion in the legal-malpractice context, and *Syngenta* confirms that ancillary or retained jurisdiction cannot independently supply removal jurisdiction.

Accordingly, reconsideration is warranted. The Order's *Grable* analysis depends on Defendants' anticipated federal defenses, MDL-related context, and retained-jurisdiction concepts, rather than a federal issue necessarily raised and substantial under Canup's well-pleaded claims. The Court should reconsider its finding of federal-question jurisdiction and remand this action to Texas state court.

### 4. Alternatively, the Court Should Amend the Order to Make Express Findings and Certify the Issues for Interlocutory Appeal

Alternatively, if the Court declines to remand, Canup respectfully requests that the Court amend the Order to make the factual findings necessary for meaningful appellate review, including whether Mostyn was properly served before removal; whether Canup timely raised the unanimity defect; whether Mostyn's consent was required and, if so, when its thirty-day deadline expired; whether a unanimity defect existed at removal; whether Mostyn's Motion to Dismiss clearly and unambiguously manifested consent to removal; and what specific filing or conduct allegedly cured the defect and when.

Canup further requests that, if the Court maintains its denial of remand, the Court certify the following controlling questions of law for interlocutory appeal under 28 U.S.C. § 1292(b):

1.  Whether, under 28 U.S.C. § 1446(b)(2)(A), a procedurally defective motion to dismiss filed six months after removal that is silent as to removal, remand, and consent can clearly

22

and unambiguously cure a properly served defendant's failure to join in or consent to removal within the thirty-day statutory period.

2. Whether *Grable* federal-question jurisdiction extends to state-law legal-malpractice, fiduciary-duty, fraud, civil conspiracy and attorney-misconduct claims merely because defendants contend their conduct was authorized, governed, or excused by federal MDL orders, settlement procedures, or court-created authority, where the plaintiff does not seek to invalidate, modify, or enforce any federal order.

These questions are controlling because either, if resolved in Canup's favor, would require remand. Substantial grounds for difference of opinion exist because courts are divided over when unanimity defects may be cured, whether silence in a later merits filing can constitute clear consent to removal, and whether *Grable* applies to traditional state-law attorney-misconduct claims arising against the backdrop of federal litigation. Immediate appellate review may materially advance the ultimate termination of this federal litigation because resolution of these threshold jurisdictional and removal questions now would avoid unnecessary federal motion practice, discovery, and pretrial proceedings in a forum that may lack jurisdiction or may have received the case through defective removal. *See McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004) (explaining that this requirement is met where resolution of the controlling legal question would "avoid a trial or otherwise substantially shorten the litigation")

### 5. Proceedings Should be Stayed Pending Reconsideration and Mandamus

Finally, Canup respectfully requests that the Court stay all proceedings pending resolution of Canup's Motion for Reconsideration and pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. The mandamus proceedings concern recusal, reassignment, and vacatur of the recusal order, and the issues surrounding the denial of remand are inextricably intertwined with those proceedings. The public-policy and appearance concerns

23

implicated by the mandamus petition warrant a stay to prevent further irreparable harm. The stay would be brief and it would not prejudice any of the parties.

As the Eleventh Circuit has explained, courts need not speculate about actual bias where the circumstances would cause an average layperson to question impartiality. *See United States v. Kelly,* 888 F.2d 732, 745 (11th Cir. 1989). The Supreme Court likewise has recognized that justice must satisfy the appearance of justice. *In re Murchison,* 349 U.S. 133, 136 (1955). And because the harm from an erroneous failure to recuse includes harm to public confidence in the judiciary, later review after final judgment may not fully cure it. *See Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 163 (3d Cir. 1993); *In re Sch. Asbestos Litig.,* 977 F.2d 764, 776 (3d Cir. 1992). The Eleventh Circuit has likewise recognized the systemic and case-specific importance of recusal and the grave consequences that may result from an erroneous failure to recuse. *See In re Moody,* 755 F.3d 891, 899 (11th Cir. 2014).

## IV.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that this Court reconsider its Order denying remand, Dkt. 70, and remand this action to Texas state court. Canup further requests that the Court immediately stay all proceedings pending resolution of this Motion for Reconsideration and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73. **Canup respectfully requests an expedited ruling on his request to stay all proceedings so that if the Court declines to stay proceedings, Canup can seek a stay from the Eleventh Circuit in the related mandamus proceedings without delay.**

Alternatively, if the Court declines to remand, Canup respectfully requests that the Court make express factual findings necessary for meaningful appellate review, including: whether Mostyn was properly served before removal; whether Canup timely raised the unanimity defect;

24

if Mostyn was properly served, when Mostyn's thirty-day deadline to join in or consent to removal expired; whether any defect in unanimous consent existed at the time of removal; whether Mostyn's Motion to Dismiss clearly and unambiguously manifested consent to removal; the specific filing or conduct by which Mostyn allegedly cured any defect; the date on which any such cure occurred and any other findings necessary to decide the issue.

Canup further requests that, if the Court maintains its denial of remand, the Court amend the Order, Dkt. 70, to include certification for interlocutory appeal under 28 U.S.C. § 1292(b), because the Order presents controlling questions of law as to federal subject-matter jurisdiction and removal procedure, substantial grounds exist for difference of opinion, and immediate appellate review may materially advance the ultimate termination of this litigation. If the Court certifies the Order for interlocutory appeal, Canup respectfully requests that the Court stay all proceedings pending interlocutory appeal and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73.

In the further alternative, if the Court denies this Motion in full, Canup respectfully requests that the Court stay all proceedings pending resolution of the mandamus proceedings currently pending in the United States Court of Appeals for the Eleventh Circuit. *Id.*

Canup respectfully requests all other and further relief to which he may be justly entitled.

Signed this 5th day of June, 2026.

Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln

25

Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Memorandum contains 7,790 words, inclusive of headings, footnotes, and quotations.

_____
Brandon Canup

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S RESPONSE TO MOSTYN LAW'S MOTION TO ACCEPT MOTION TO DISMISS AS TIMELY |
| *Defendants.* | |

## PLAINTIFF BRANDON CANUP'S RESPONSE TO MOSTYN LAW'S MOTION TO ACCEPT MOTION TO DISMISS AS TIMELY

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding *pro se*, and files this Response to Mostyn Law Firm, PC's ("Mostyn") Motion to Accept Motion to Dismiss as Timely, Dkt. 75, and respectfully states as follows:

### I. INTRODUCTION

Mostyn's motion begins with a false premise. Mostyn asserts that insufficient service gave it "no obligation to respond," that it "waived" insufficient service to advance the merits, and that its motion to dismiss was merely delayed by a couple of hours while it reviewed and adopted another defendant's motion. Dkt. 75 at 1. But service was proper. Mostyn was served through its registered agent on November 4, 2025 and its response deadline was triggered. *See* Ex. 1. Mostyn's failure to timely respond was therefore not excused by lack of service, and any waiver of insufficient service was not a voluntary litigation courtesy. Insufficient service of process is a Rule 12(b)(5) defense. Fed. R. Civ. P. 12(b)(5). A defendant waives that defense by omitting it from its first Rule 12 motion or failing to include it in a responsive pleading. Fed. R. Civ. P. 12(g)(2),

1

12(h)(1). After removal, Rule 81(c)(2) required Mostyn to answer or present its defenses within the longest of: twenty-one days after receiving the initial pleading, twenty-one days after service of the summons, or seven days after the notice of removal was filed. Fed. R. Civ. P. 81(c)(2). Because Mostyn was served on November 4, 2025, Ex. 1, and the notice of removal was filed on November 6, 2025, Dkt. 1, its response deadline was no later than November 25, 2025. Mostyn cannot recast a waiver caused by its failure to timely assert the defense as a voluntary decision to advance the merits.

That distinction matters. Canup does not seek to elevate a two-hour filing delay over the merits. But Canup cannot consent to Mostyn's requested relief without risking waiver of his objections to procedural defects in removal, including his objections based on lack of unanimous consent and Mostyn's failure to timely join in or consent to removal. Canup therefore expressly opposes Dkt. 75 and does not waive any objection to removal, remand, service, unanimity, timeliness, waiver, or any other procedural defect already raised in this action. The problem is not the two-hour delay in isolation. The problem is that Mostyn asks the Court to accept the late-filed motion as timely while giving that filing consequences for the service and remand issues already before the Court. Mostyn also uses the instant motion, in an apparent attempt to circumvent the ordinary rules governing timely service objections, to now raise improper service. *See* Fed. R. Civ. P. 12(h)(1). Those issues overlap with Canup's pending Motion for Reconsideration of the Order denying remand. Dkts. 70, 77. The Court should therefore decide Dkt. 75 together with Canup's pending Motion for Reconsideration, Dkt. 77, so the threshold service, remand, unanimity, and cure issues are resolved in the proper context. Alternatively, the Court should deny Dkt. 75 because Mostyn has not shown excusable neglect.

## II. BACKGROUND

Canup filed this action in Texas state court on October 27, 2025. The operative Amended Complaint asserts fraud, breach of fiduciary duty, civil conspiracy, and related claims. Dkt. 60 ¶¶ 101–203. Mostyn was properly joined and served prior to removal. *See* Ex. 1. The citation and petition were served on Andrew Browning ("Browning"), Registered Agent for Mostyn on November 4, 2025, *see id*; Texas Secretary of State records identified Browning as Mostyn's registered agent on November 4, 2025, *see* Ex. 3; and Browning's declaration confirms that he accepted service of the state-court documents from the process server that day, *see* Ex. 2 ¶¶ 3–4. Defendant Gregory Brown removed the action on November 6, 2025, Dkt. 1, and Canup timely moved to remand on November 21, 2025, challenging subject matter jurisdiction and lack of unanimous consent. *See* Dkt. 8. Defendant Bryan Aylstock then sought transfer to this Court, and the Judicial Panel on Multidistrict Litigation ("JPML") transferred the action on April 2, 2026. *See* Dkts. 11–12, 23, 30.

After transfer, Canup moved to amend, moved for recusal, and sought a suggestion of remand. *See* Dkts. 34, 37, 38. The Court granted leave to amend and ordered Defendants to respond within fourteen days after the amended complaint was filed as a separate docket entry. Dkt. 54. Canup filed the Amended Complaint on May 12, 2026, making Defendants' responses due May 26, 2026, and the Court denied recusal on May 17, 2026. *See* Dkts. 60, 61.

On May 26, 2026, Defendants Bryan Aylstock, Bobby Bradford and Aylstock, Witkin, Kreis & Overholtz, PLC ("AWKO Defendants") filed a renewed motion to dismiss, asserting that their "only interactions with Plaintiff were on behalf of Plaintiffs' MDL Leadership at the request of the MDL Court" and that Canup's claims improperly challenge conduct undertaken pursuant to court-appointed MDL leadership functions. *See* Dkt. 66 at 2–3, 13–17. On May 27, 2026, Mostyn,

appearing for the first time in the case, filed its own procedurally defective motion to dismiss. *See* Dkt. 67. Mostyn did not oppose remand, did not join in or consent to removal, and did not move to dismiss for insufficient service of process. *Id.*

On May 29, 2026, the Court denied Canup's motion to remand. *See* Dkt. 70. In doing so, the Court concluded that federal question jurisdiction existed over Canup's state-law claims and further concluded that Mostyn's procedurally defective motion to dismiss could cure or otherwise defeat Canup's lack-of-unanimous-consent argument, even though Mostyn had not opposed remand and had not joined in or consented to removal within the statutory removal period. *See id.* at 15–17.

On May 30, 2026, Canup filed a Petition for Writ of Mandamus in the United States Court of Appeals for the Eleventh Circuit, seeking an order directing Judge Rodgers to recuse from this action, reassigning the case to a different district judge, and vacating the Order denying recusal. *See* Dkt. 73. Canup also moved for reconsideration of the Order denying remand. *See* Dkt. 77. That motion challenges, among other things, whether Mostyn's motion to dismiss could properly be treated as curing or affecting any defect in removal. *Id.*

On June 3, 2026, Mostyn filed the present motion asking the Court to retroactively accept its late-filed motion to dismiss as timely. *See* Dkt. 75. Mostyn acknowledges that its motion to dismiss was filed after the Court-ordered deadline, but argues that no deadline applied because service was allegedly defective. *Id*. at 1–4. Alternatively, Mostyn seeks relief under Rule 6(b)(1)(B), asserting excusable neglect. *Id*. at 4–5.

Mostyn's request is therefore not an isolated scheduling issue. The filing Mostyn now asks the Court to accept as timely has already been relied upon in connection with the denial of remand. Dkt. 70 at 15–17. And after that reliance occurred, Mostyn confirmed that the alleged curing act

was itself untimely and dependent on later judicial approval. Dkt. 75. The Court should decide Mostyn's discretionary Rule 6 request together with Canup's motion for reconsideration of the remand ruling because both motions turn on the same service, response-deadline, unanimity, and cure issues.

### III.     ARGUMENT AND AUTHORITY

### A. Legal Standard

Mostyn invokes Rule 6(b)(1)(B) and argues that if a deadline applied, its untimely motion should be accepted under the excusable-neglect standard. Dkt. 75 at 4–5. Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395 (1993), courts consider prejudice, the length of delay and its impact on the proceedings, the reason for the delay, and good faith. The Eleventh Circuit applies that framework. *Locke v. SunTrust Bank,* 484 F.3d 1343, 1346 (11th Cir. 2007); *Advanced Estimating Sys., Inc. v. Riney,* 77 F.3d 1322, 1324 (11th Cir. 1996).

But Mostyn's motion does not merely ask the Court to excuse a missed filing deadline. Mostyn's primary argument is that service was improper and that it therefore had no obligation to respond at all. Dkt. 75 at 1–4. That argument necessarily places service, the validity of the deadline, and the legal effect of Mostyn's late appearance before the Court. Accordingly, before the Court can determine whether excusable neglect exists, it must first determine whether Mostyn was properly served and whether its response deadline expired before the motion was filed.

Federal Rule of Civil Procedure 4(h)(1)(A) permits service on a corporation[1], partnership, or association in the manner prescribed by Rule 4(e)(1), and Rule 4(e)(1) authorizes service by following the law of the state where the district court is located or where service is made. Because

---

[1] It is undisputed that Mostyn Law Firm, P.C. is a corporation formed under the laws of Texas. *See* Dkt. 60 ¶ 4.

5

the disputed service on Mostyn occurred in Texas before removal, Texas law governs whether service was properly accomplished.

Under Texas law, a domestic filing entity must "designate and continuously maintain" a registered agent and registered office in Texas. Tex. Bus. Orgs. Code § 5.201(a). The registered agent "is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity." Tex. Bus. Orgs. Code § 5.201(b)(1).

A registered agent's status is not defeated merely by the agent's refusal to accept service or later assertion that he was not authorized. A person may not avoid service simply by refusing to physically accept the papers when service is reasonably attempted. *See Dosamantes v. Dosamantes,* 500 S.W.2d 233, 237 (Tex. Civ. App.—Texarkana 1973, writ dism'd); *Tex. Indus., Inc. v. Sanchez,* 521 S.W.2d 133, 135–36 (Tex. Civ. App.—Dallas 1975), writ ref'd n.r.e., 525 S.W.2d 870 (Tex. 1975). And under Texas law, a registered agent designated by the entity is "an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity." Tex. Bus. Orgs. Code § 5.201(b)(1).

The relevant question is whether, when service occurred, the person served was authorized to receive service under Texas law and the entity's public filings. Texas law requires formal filings to change, resign from, or reject registered-agent status. An entity seeking to change its registered agent or registered office must file the appropriate statement with the Texas Secretary of State. *See id.* § 5.202. A registered agent's resignation requires notice to the entity and the appropriate filing officer. *See id.* § 5.204. And if a person contends he was designated without consent, Texas law provides a mechanism to reject the appointment. *See id.* § 5.206. Those provisions do not permit an entity to retroactively defeat service after process has been delivered to the registered agent reflected in the public record.

6

Texas law requires proper service of process and a proper return of service. When service is challenged, strict compliance with the rules governing issuance, service, and return of citation must appear from the record. *See Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). If strict compliance is not shown, service of process is "invalid and of no effect." *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam). The party relying on service is responsible not only for ensuring that service is properly accomplished, but also for ensuring that proper service is reflected in the record. *See* Tex. R. Civ. P. 99(a); *Primate Constr.*, 884 S.W.2d at 153; *Hunt v. Yepez*, No. 03-04-00244-CV, 2005 Tex. App. LEXIS 6964, at *7–8 (Tex. App.—Austin Aug. 24, 2005, no pet.) (mem. op.).

Texas Rule of Civil Procedure 107 governs the return of service. It requires that the return be endorsed on or attached to the citation, state when the citation was served and the manner of service, and be signed by the officer or authorized person who executed service. Tex. R. Civ. P. 107. If the return is completed by an authorized person, the return must be verified. *Id*. The return of service is not a trivial or merely formulaic document. *Primate Constr.*, 884 S.W.2d at 152. A return that fails to satisfy Rule 107 may be fatally defective. *See Travieso v. Travieso*, 649 S.W.2d 818, 820 (Tex. App.—San Antonio 1983, no writ); *Rowsey v. Matetich*, No. 03-08-00727-CV, 2010 Tex. App. LEXIS 6532, at *5 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.).

Strict compliance, however, does not require "obeisance to the minutest detail." *Williams v. Williams*, 150 S.W.3d 436, 443–44 (Tex. App.—Austin 2004, pet. denied) (quoting *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 613 (Tex. App.—Corpus Christi 1996, writ denied)); *see also Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ). As long as the record as a whole shows that citation was served

on the defendant, service will not be invalidated based on immaterial technical objections. *Williams*, 150 S.W.3d at 444.

The relevant inquiry is whether the record shows personal delivery to the defendant or a person authorized to receive service; a different service address, standing alone, does not defeat service. *See Silver B & Laviolette, LLC v. GH Contracting, Inc.,* No. 03-10-00091-CV, slip op. at 5–6, 10 (Tex. App.—Austin Oct. 12, 2010, no pet.) (mem. op.).

## B. Argument

### 1. Mostyn Law Firm, PC's Response Deadline Was Triggered by Proper Service on Its Registered Agent Andrew Browning

Mostyn's threshold premise is wrong. Mostyn argues that no response deadline ever arose because service was defective. Dkt. 75 at 3–4. But service was made in Texas before removal, *see* Ex. 1, which is the executed citation and return of service previously filed in Canup's remand appendix, Dkt. 9-1, in support of Canup's Motion to Remand, Dkt. 8, and Texas law governs whether that service was effective. The record shows that Mostyn's registered agent was served, Exs. 1, 3, and admittedly received the documents, Ex. 2 ¶¶ 3–4, which is the Declaration of Andrew Browning filed by Gregory Brown and Fleming, Nolen & Jez, LLP as Exhibit 1 to their opposition to remand, Dkt. 14-1. Mostyn's later effort to dispute the legal effect of that service does not convert proper service into a voluntary appearance, nor does it erase the response deadline triggered by service.

Mostyn asserts that Canup served Andrew Browning, but "Browning wasn't" Mostyn's registered agent. Dkt. 75 at 1–2. Mostyn's argument turns on Browning's after-the-fact assertion that he was not the registered agent. Ex. 2 ¶ 2. But Texas law makes registered-agent status and completion of personal service objective inquiries, not matters of subjective belief.

A Texas filing entity[2] must "designate and maintain" a registered agent and registered office "on whom may be served any process, notice, or demand required or permitted by law to be served on the entity." *Huffman Asset Mgmt., LLC v. Colter,* No. 24-0205, slip op. at 5 (Tex. May 29, 2026) (quoting Tex. Bus. Orgs. Code §§ 5.201(a)–(b)(1), 5.206). Changes to the registered agent or registered office are effected by filing a statement of change. *Id*. at 7–8; Tex. Bus. Orgs. Code §§ 5.202–.203. A registered agent's resignation is not effective until the 31st day after the Secretary of State receives the resignation notice. Tex. Bus. Orgs. Code § 5.204. Personal service is accomplished by delivering the citation and petition to the proper person. Tex. R. Civ. P. 106(a)(1).

Texas courts enforce those statutory filing obligations because the purpose of requiring a registered agent and registered office is to ensure that aggrieved parties can serve the entity in a lawsuit. *Texas Underground Utilities, Inc. v. Southwestern Bell Tel. Co.,* No. 01-19-00814-CV, slip op. at 10–11, 17–19 (Tex. App.—Houston [1st Dist.] Aug. 3, 2021, pet. denied) (mem. op.). The Texas Business Organizations Code imposes an affirmative duty on the entity to keep the Secretary of State apprised of its current registered agent and registered office. *Id*. at 10–11.

The record shows more than Canup's mere "identification" of Browning as Mostyn's registered agent. The Secretary of State records identified Andrew Browning as Mostyn Law Firm, P.C.'s registered agent when service was effected. *See* Ex. 3; Dkt. 9-3. Mostyn's own Statement of Change of Registered Office/Agent, filed on November 12, 2018, changed its registered agent from John Steven Mostyn to Andrew Browning, and that filing became effective when filed. *See* Ex. 4. That is the last change of registered agent reflected in the Texas Secretary of State public record. Mostyn's later public information reports repeatedly continued to identify Andrew

---

[2] A "filing entity" includes "a domestic entity that is a corporation" *Huffman Asset Mgmt., LLC v. Colter,* No. 24-0205, slip op. at 7 n.3 (Tex. May 29, 2026) (quoting Tex. Bus. Orgs. Code § 1.002(22)).

Browning as the registered agent for Mostyn Law Firm, P.C., and listed 3810 West Alabama as the registered office. *See* Exs. 6–11. Those records are especially significant because Browning personally signed public information reports for Mostyn that identified him as the registered agent, including the 2019 report and the 2021 report. *See* Exs. 7, 9. Those signed filings confirm, or at minimum ratify, Browning's role as Mostyn's registered agent and show Browning's own express acknowledgment of and consent to that status. They also raise the question whether Browning may hold an officer, manager, or director role with Mostyn in addition to serving as its registered agent, because Browning signed one public information report as "President," Ex. 6, and another as "Registered A," Ex. 9. In any event, to eliminate any doubt that a later change occurred, Texas Secretary of State records still identified Andrew Browning as Mostyn's registered agent as of June 14, 2026. *See* Ex. 12.

Browning's declaration does not overcome the public records. Browning makes the conclusory assertion that he is "not an agent, registered or otherwise, of Mostyn Law Firm, P.C." Ex. 2 ¶ 2. But the declaration does not acknowledge that Browning was Mostyn's registered agent, does not state that he never was the registered agent, does not identify any resignation, statement of change, termination of appointment, replacement registered agent, or effective date on which his registered-agent status allegedly ended, and does not state that Browning is not an officer, director, manager, or other representative of Mostyn. Nor does Browning address the public filings identifying him as Mostyn's registered agent, including filings he personally signed. His declaration therefore does not create a legal defect in service; it merely disputes the legal effect of service after the fact.

Mostyn also has not submitted any evidence supporting its assertion that Browning was not its registered agent when served. Mostyn did not submit Browning's declaration; Gregory

10

Brown and Fleming, Nolen & Jez, LLP filed it in opposition to remand. *See* Dkt. 14-1. No officer, director, manager, or authorized representative of Mostyn has submitted a declaration identifying facts showing that Browning's registered-agent status ended before service. Mostyn has not identified any statement of change filed with the Texas Secretary of State, any resignation by Browning, any termination or replacement of Browning as registered agent, or any new registered agent in effect before November 4, 2025. Against the Secretary of State records[3] and Mostyn's own public filings,[4] Browning's conclusory after-the-fact assertion[5] is insufficient to defeat service.

Mostyn next asserts that Browning told the process server he was not the registered agent, refused to accept the complaint, accepted it only after the server allegedly said Browning was also named as a defendant, and that service was therefore defective. Dkt. 75 at 2. Those assertions do not defeat service. Browning's statement alleging that he was not the registered agent is contradicted by the Secretary of State records in this record. *See* Exs. 3, 4, 6–12. Mostyn cannot defeat service by relying on Browning's later statement when its public filings identified Browning as the registered agent and Mostyn identifies no filing, resignation, or statement of change terminating that status before service.

Nor does Browning's alleged refusal defeat service. Browning admits he accepted the documents. Ex. 2 ¶¶ 3–4. Even if Browning initially refused to accept service on behalf of Mostyn, Texas law recognizes that a person within the jurisdiction generally has an obligation to accept service when reasonably attempted. *Dosamantes,* 500 S.W.2d at 237. A person who physically

---

[3] *See* Exs. 3, 12.

[4] *See* Exs.4, 6–11.

[5] *See* Ex. 2 ¶ 2.

11

refuses to accept process may still be personally served if the papers are deposited in an appropriate place in his presence or near him where he is likely to find them, and he is informed of the nature of the process and that service is being attempted. *Id*.; *Red Hot Enters., LLC v. Yellow Book Sales & Distrib. Co.,* No. 04-11-00686-CV, 2012 WL 3025914, at *2–3 (Tex. App.—San Antonio July 25, 2012, no pet.); *Tex. Indus.,* 521 S.W.2d at 135–36 (recognizing that avoidance of service may show notice of the nature of the process and that service was being attempted). If a person cannot defeat service by refusing to take the papers when service is reasonably attempted, Browning's alleged refusal to accept service "on behalf of Mostyn Law" does not invalidate service where the record shows he was the registered agent and he admittedly accepted the documents. Ex. 2 ¶¶ 3–4.

Canup does not concede that the process server made any false statement or engaged in any dishonesty. Nor does Canup condone dishonesty by any process server. The *Certified Process Servers Code of Ethics* provides that a process server must not "engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or obstruction of justice." *Certified Process Servers Code of Ethics* ¶ 14(e). But the same Code states that a violation may subject a process server to discipline by the Judicial Branch Certification Commission and "does not give rise to a claim that service of process was defective." *Id*. Preamble. Thus, even if Mostyn had established an ethics issue, which it has not, that would not establish defective service.

Mostyn's assertion that "[t]hrusting a complaint on a person who is no longer an agent is ineffective," Dkt. 75 at 2, assumes the point it must prove. The record shows Browning was the registered agent, *see* Exs. 3–4, 6–12, and this is not a "thrusting" case because Browning admits he accepted the documents, Ex. 2 ¶¶ 3–4. Service was not defective merely because Browning later disputed the legal effect of receiving them.

12

Mostyn also argues that Canup should have served "Mostyn Law's manager at the firm's office on Alabama Street," Dkt. 75 at 2, but the process server attempted service at 3810 West Alabama and was told no one there was authorized to accept service. Ex. 5. Mostyn cannot rely on its office's refusal to identify an authorized recipient as a basis to fault Canup for serving the registered agent identified in Texas Secretary of State records. *See* Exs. 1, 3–4, 6–12. In any event, Texas law did not require service on Browning to occur only at Alabama Street. Tex. R. Civ. P. 106(a)(1), 103. Because Browning was Mostyn's registered agent, personal delivery to him was service on Mostyn.

Texas courts reject the argument that personal service is invalid merely because the address where service occurs differs from the address listed on the citation. *See Turbo Rests., LLC v. Reid's Refrigeration Inc.,* 657 S.W.3d 490, 497–98 (Tex. App.—El Paso 2022, no pet.) ("When an individual defendant is personally served, the rules governing service do not require that the address listed on the citation and the return of service must match."); *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revocable Tr.,* 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.) ("[T]he law is settled that listing a different address on the return and citation will not render service invalid."); *Silver B,* slip op. at 9–10 (mem. op.) (recognizing that a different address on the citation and return does not render service invalid); *Garcia v. Gutierrez,* 697 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1985, no writ) (holding that where the return shows the named defendant was served, the person executing citation is not limited to the address stated in the citation).

Texas courts apply the same rule where service is made on a registered agent. In *Silver B,* the Austin Court of Appeals held that Rule 107 does not require the citation and return to recite the same address, and Rule 106 does not require personal service to occur at the address listed in the citation. *Silver B,* slip op. at 5–6. The court held that a return satisfies strict compliance where

it shows personal delivery to the defendant's registered agent, even though the address on the return differs from the address on the citation. *Id*. at 6, 10. *See also Westcliffe, Inc. v. Bear Creek Constr., Ltd.,* 105 S.W.3d 286, 291 (Tex. App.—Dallas 2003, no pet.); *Then W., Inc./Bait House, Inc. v. Sorrells,* No. 05-01-01874-CV, 2002 WL 1397477, at *4 (Tex. App.—Dallas June 28, 2002, no pet.) (mem. op.); *Eagle Commercial Builders, Inc. v. Milam & Co. Painting, Inc.,* No. 07-01-0310-CV, slip op. at 4–6 (Tex. App.—Amarillo Aug. 12, 2002, pet. denied) (mem. op.).; *Myan Mgmt.,* 292 S.W.3d at 754 (return stating service was made "by delivering to" registered agent sufficiently reflected personal service).

Likewise, in *Cotton Patch Cafe, Inc. v. McCarty,* the Fort Worth Court of Appeals held that service was not defective where the return complied with Rule 107, the defendant did not deny receiving service, and the citation and return showed that citation was actually served on the defendant's registered agent. No. 02-05-082-CV, slip op. at 19–22 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op.). Mostyn does not deny receipt; Browning admits he accepted the documents. Ex. 2 ¶¶ 3–4.

Accordingly, the relevant inquiry is whether citation was personally delivered to a person authorized to receive service. A discrepancy between the address listed on the citation and the address where personal service occurred does not invalidate service. *See Silver B,* slip op. at 5–6, 10; *Westcliffe,* 105 S.W.3d at 291; *Then W.,* 2002 WL 1397477, at *4; *Eagle Commercial Builders,* No. 07-01-0310-CV, slip op. at 4–6 (mem. op.). Browning was Mostyn's registered agent under the public records, Exs. 3–4, 6–11, and he admittedly received the documents. Ex. 2 ¶¶ 3–4. Service was therefore proper.

Mostyn next argues that, if it failed to notify the Texas Secretary of State of a new registered agent, Canup could have served Mostyn through the Secretary of State but did not do

14

so. Dkt. 75 at 2. That argument does not show defective service. Canup was not required to serve Mostyn through the Secretary of State because Canup accomplished personal service on Mostyn's registered agent. Exs. 1, 3–4, 6–11. Service through the Secretary of State is an alternative method available when the statutory prerequisites are met; it is not the exclusive means of serving a Texas filing entity. *See* Tex. Bus. Orgs. Code § 5.251; *Eagle Commercial Builders,* No. 07-01-0310-CV, slip op. at 11–12 (rejecting argument that service on a corporation's registered agent may occur only at the registered office and explaining that substituted service through the Secretary of State applies when no agent has been designated or reasonable diligence to serve the registered agent has failed). Before resorting to substituted service through the Secretary of State, a plaintiff generally must exercise reasonable diligence in attempting to serve the entity's registered agent at the registered office. *See Autodynamics Inc. v. Vervoort,* No. 14-10-00021-CV, slip op. at 3–4 (Tex. App.—Houston [14th Dist.] Apr. 5, 2011, no pet.) (mem. op.); *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.,* 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Here, Canup did exercise diligence. The process server first attempted service at 3810 West Alabama, Mostyn's registered office, and asked whether anyone in the office was authorized to accept service. Ex. 5. Mostyn's office stated that no one was authorized to accept service. *Id*. The process server then located and personally served Andrew Browning, the registered agent identified in the Texas Secretary of State records. Exs. 1, 3–4, 6–11. Browning is a Texas attorney[6], and Texas attorneys are required to keep current contact information with the State Bar of Texas. *See* Tex. Gov't Code § 81.115. Under those circumstances, attempting to locate and serve

---

[6] Andrew Browning's State Bar profile is judicially noticeable. *See* Fed. R. Evid. 201(b)(2); State Bar of Texas, Attorney Profile for Andrew Browning,
https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/
CustomsourceMemberDirectory/MemberDirectoryDetail.cfm&ContactID=295364.

Browning personally was diligent; failing to do so before resorting to substituted service would have been the less diligent course.

Mostyn's argument also ignores where the statutory duty falls. The Texas Business Organizations Code requires a Texas filing entity to designate and continuously maintain a registered agent and registered office and to keep the Secretary of State apprised of changes. Tex. Bus. Orgs. Code §§ 5.201, 5.202. Texas courts describe that obligation as an affirmative duty to ensure that the Secretary of State has current and accurate information concerning the entity's registered office and registered agent. *Texas Underground Utils.,* No. 01-19-00814-CV, slip op. at 10–11 (mem. op.). Accordingly, if Mostyn believed Browning was no longer its registered agent, the burden was on Mostyn to update its public filings. It cannot fault Canup for relying on the registered-agent information Mostyn was required by law to maintain, especially where Canup did not merely rely on substituted service through the Secretary of State but instead personally served the registered agent identified in those records.[7]

Mostyn also asserts that it "did not initially file a motion to dismiss" because it had not been properly served. Dkt. 75 at 2. But that assertion depends entirely on the defective-service premise addressed above. If service was proper, Mostyn's response deadline was triggered regardless of its subjective belief that it had no obligation to respond. That conclusion is reinforced by Mostyn's failure to deny receipt. Texas courts have upheld service where the return complied with Rule 107, the defendant did not deny receiving service, and the citation and return showed

---

[7] *See Texas Underground Utils.,* No. 01-19-00814-CV, slip op. at 10–11, 18–19 (mem. op.) (entity has affirmative duty to keep current and accurate registered-agent information on file with the Secretary of State, and failure of service method caused by entity's own failure to comply with statutory duties does not violate due process); *Campus Invs., Inc. v. Cullever,* 144 S.W.3d 464, 466 (Tex. 2004) (lack of notice caused by defendant's failure to update registered-agent and registered-office addresses was not a defect in service); *Tankard-Smith Inc. Gen. Contractors v. Thursby,* 663 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (corporation cannot complain where failure of service method resulted from its own failure to comply with statutory requirements designed to assure notice).

16

service on the defendant's registered agent. *See Cotton Patch Cafe, No. 02-05-082-CV, slip op. at 19–22 (mem. op.).* Mostyn does not deny receipt; Browning admits he accepted the documents. Ex. 2 ¶¶ 3–4.

### 2. Mostyn Has Shown Conscious Indifference Not Excusable Neglect

Mostyn's alternative excusable-neglect argument also fails. Rule 6(b)(1)(B) permits an extension after a deadline has expired only where the party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). That standard requires more than a showing that the delay was short, that Canup was not prejudiced, or that Mostyn acted in good faith. Those considerations are relevant, but they do not replace the requirement that Mostyn identify a legally sufficient reason for failing to act on time. *See Pioneer,* 507 U.S. at 392, 395.

Mostyn treats this as a routine two-hour delay caused by a desire to review and adopt the AWKO Defendants' motion to dismiss. Dkt. 75 at 4–5. That framing is incomplete. The relevant circumstances include not only the short delay between midnight and the filing of Dkt. 67, but also Mostyn's failure to appear or respond for more than six months after service, its attempt to use the present motion to avoid the consequences of Rule 12(h)(1) and raise improper service, and the fact that the late-filed motion was relied on in denying remand. *See* Dkts. 70, 75. Under *Pioneer*, those circumstances weigh against excusable neglect.

Mostyn's conduct is not consistent with excusable neglect; it is consistent with conscious indifference to service and to the duties Texas law imposes on filing entities. Texas courts describe conscious indifference as occurring when "the defendant knew it was sued but did not care," and they look to the defendant's knowledge and acts. *Milestone Operating, Inc. v. ExxonMobil Corp.,* 388 S.W.3d 307, 310 (Tex. 2012); *Dir., State Emps. Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 269 (Tex. 1994). That description fits this record. Mostyn's registered agent was served on

17

November 4, 2025, and Browning admits that he accepted the documents. Exs. 1–2. Yet Mostyn did not appear or respond for more than six months. Dkt. 67.

Mostyn also cannot treat its own registered-agent records as irrelevant. Texas law requires a filing entity to designate and maintain a registered agent and registered office for the very purpose of receiving service of process. If Mostyn's position is that Browning was not its registered agent, then Mostyn had notice of that alleged problem no later than December 11, 2025, when Browning signed his declaration, yet the public records still identified Browning as Mostyn's registered agent as of June 14, 2026. *See* Ex. 12. Thus, either Mostyn ignored its statutory duty to maintain accurate registered-agent records, or this service dispute rests on a false assertion that Browning was not the registered agent. Either way, Mostyn has not shown a real excuse for failing to respond; it has shown indifference to the fact that it was sued, indifference to the public records it is required to maintain, and indifference to the response deadline triggered by service.

First, Canup was prejudiced. Mostyn argues there is no prejudice because discovery has not begun and no scheduling order has issued. Dkt. 75 at 5. But prejudice under *Pioneer* is not limited to discovery burdens or trial disruption; the Court must consider "all relevant circumstances," including the danger of prejudice and the delay's potential impact on the proceedings. *Pioneer*, 507 U.S. at 395.

Here, the late filing affected the procedural posture of the entire case. The Court relied on Mostyn's late-filed motion to dismiss in denying remand, concluding that any unanimity defect had been cured. Dkt. 70. Accepting the motion as timely therefore does not merely excuse an isolated two-hour delay. It retroactively validates the very filing used to avoid remand consequences and undermines Canup's choice of forum. That is prejudice.

18

The prejudice is compounded because Mostyn now uses Dkt. 75 to litigate service outside the removal and remand context. That matters because removal statutes are strictly construed, and all doubts or uncertainties about removal jurisdiction must be resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (recognizing the presumption against federal removal jurisdiction and requiring uncertainties to be resolved in favor of remand); *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999) (explaining that federalism concerns require strict construction of removal statutes with all doubts resolved in favor of remand). By raising service in a Rule 6(b)(1)(B) motion, Mostyn seeks to move the service issue out of the remand framework, where doubts favor remand, and into an equitable excusable-neglect framework. That shift itself is prejudicial.

In the removal context, the Eleventh Circuit has made clear that a defendant's removal right and a plaintiff's forum choice "are not on equal footing." *Burns,* 31 F.3d at 1095. The Supreme Court likewise has recognized the weight accorded to a plaintiff's selected forum, explaining that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

Nor should Rule 6(b)(1)(B) be used to undo the consequences of Mostyn's failure to timely respond after service. Mostyn was properly served on November 4, 2025, Ex. 1, its deadline to respond expired long before its May 27, 2026 motion to dismiss. Mostyn did not timely appear, did not timely answer, and did not timely assert any Rule 12(b)(2)–(5) defense. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), 12(b), 12(h)(1). Mostyn therefore cannot use a motion to accept a late Rule 12 filing as timely to preserve service-based objections that were already lost by its failure to respond when a response was due. Rule 6(b)(1)(B) permits relief from a missed deadline only upon a

19

showing of excusable neglect; it does not erase the jurisdictional and waiver consequences created by a served defendant's months-long failure to respond.

Second, the length of delay is not fairly measured only from midnight to the time Dkt. 67 was filed. Mostyn was properly served on November 4, 2025, its deadline to answer or present Rule 12 defenses was triggered by that service and governed after removal by Rule 81(c)(2). Mostyn did not file its motion to dismiss until May 27, 2026. *Id.* The relevant delay is therefore not merely two hours; it is the delay between Mostyn's response deadline and Mostyn's first appearance, which is six months. Mostyn's two-hour framing assumes the very point in dispute: that no earlier deadline existed because service was allegedly defective.

Third, the good-faith and reason-for-delay factors weigh against relief. *Pioneer* requires consideration of "all relevant circumstances," including the reason for the delay, whether it was within the movant's control, and whether the movant acted in good faith. 507 U.S. at 395. Rule 6(b)(1)(B) is equitable, but equity does not reward lack of diligence or strategic delay. *See Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984) ("[O]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *L.A. Pub. Ins. Adjusters, Inc. v. Nelson,* 17 F.4th 521, 530–31 (5th Cir. 2021) (same). Nor does excusable neglect include failure to understand or comply with clear procedural law. *Advanced Estimating, 77 F.3d at 1324–25*; *see also United States v. Beaufils,* No. 22-13292, slip op. at 44 (11th Cir. Nov. 25, 2025).

Mostyn says it waited to review Aylstock's motion before adopting it and to avoid duplicative briefing. Dkt. 75 at 5. Even if that explanation appears reasonable in isolation, it does not explain Mostyn's failure to appear or respond for months after service. Nor does it explain why Mostyn did not timely appear, preserve any Rule 12(b)(5) objection, move to quash service, seek

20

an extension, or file a timely motion while preserving its objection. If Mostyn believed service was defective, that belief did not prevent timely action.

To the extent Mostyn implies that it delayed because it believed service was improper, that belief does not establish excusable neglect. If service was ineffective, then Mostyn may argue that no response deadline ran. But unless the Court first makes that service finding, Mostyn must satisfy Rule 6(b)(1)(B). A disputed belief about the legal effect of service is not itself excusable neglect. The Supreme Court has explained that "ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." *Pioneer,* 507 U.S. at 392. The Eleventh Circuit likewise holds that misunderstanding clear procedural requirements does not establish excusable neglect. *See Advanced Estimating, 77 F.3d at 1324–25.*

Mostyn's filing sequence therefore matters. Mostyn did not raise improper service in a timely Rule 12 motion. Instead, six months after being properly served it filed an untimely motion to dismiss, allowed that motion to be relied upon as implied consent to removal, then sought leave to accept that filing as timely, and then used the Rule 6(b) motion as the vehicle to argue improper service. Mostyn cannot use Rule 6(b)(1)(B) to convert a late, procedurally defective filing into both a timely Rule 12 response and a retroactive cure for removal, especially where Mostyn raised alleged defective service only after that filing had already been relied upon to deny remand.

The record also does not support Mostyn's assertion that good faith is "clear." Dkt. 75 at 5. Canup does not lightly assert gamesmanship, and Canup does not ask the Court to find bad faith unnecessarily. But Canup also does not concede good faith. The timing and context raise a legitimate concern that the late filing was deliberate and strategic. Mostyn was served on November 4, 2025, Ex. 1, did not appear for six months, Dkt. 67, waiving any defenses as to improper service, filed its motion to dismiss after the court-ordered deadline to respond to the

21

amended complaint, Dkt. 54, and then used the motion to accept that filing as timely to argue improper service. Dkt. 67. That sequence does not support excusable neglect. It confirms why the Court should decide the service issue directly rather than treat an implied belief about service as a reason to excuse noncompliance with a deadline.

Mostyn's good-faith showing is further undermined by its reliance on Browning's assertion that he was not Mostyn's registered agent. *See* Ex. 2 ¶ 2. On the face of this record, that assertion appears to be false. Mostyn's public filings and the Texas Secretary of State records identify Browning as Mostyn's registered agent. *See* Exs. 3–4, 6–12. Mostyn has not attempted to reconcile those records with Browning's assertion, identify any filing that removed Browning as registered agent before service, or identify any other person who allegedly held that position when service occurred. Canup does not concede that any such person existed. The point is that Mostyn's service argument depends on an after-the-fact assertion that appears false on the face of the public record.

The surrounding record reinforces that concern. After the Court denied remand on May 29, 2026, Dkt. 70, Canup intended to seek reconsideration of that ruling and conferred with Mostyn's counsel as required by N.D. Fla. Local Rule 7.1(B). The purpose of the conferral was to determine whether Mostyn opposed reconsideration of the remand denial.

Mostyn's counsel initially understood the issue. On May 31, 2026, counsel wrote: "Let me discuss this with my client. Do you still need an answer about the motion for reconsideration of the remand denial?" Dkt. 78-2. Canup responded: "Yes." *Id*.

The next morning, however, counsel changed course. On June 1, 2026, after the Court had already entered Dkt. 70 denying remand, counsel wrote: "To clarify, you will seek reconsideration of the U.S. Judicial Panel on Multidistrict Litigation's transfer order (ECF 2051)? As Judge Rodgers has not yet ruled on your motion for remand to Texas state court (ECF 8) or your motion

22

for remand to MDL panel (ECF 37), I assume that the reconsideration motion will be filed with the MDL panel directly. Please confirm." Dkt. 78-2. That statement was incorrect. The Court had already ruled on remand. Dkt. 70.

The problem is not merely that counsel misstated the docket. The statement was made during required conferral, where the Local Rules require good-faith efforts to resolve or narrow disputes through a meaningful conference. *See* N.D. Fla. Loc. R. 7.1(B). In that context, counsel's statement appears to have directed a *pro se* party away from this Court and toward the JPML for reconsideration of an order that this Court had entered. That matters because Canup was attempting to seek reconsideration of Dkt. 70, and the email created confusion about where that relief should be sought. At minimum, that record does not support a clean finding that Mostyn acted in obvious good faith throughout the relevant proceedings.

Accordingly, the *Pioneer* factors do not favor Mostyn. The prejudice is real because the late filing affected remand; the delay cannot be reduced to two hours if service was proper; the stated reason does not explain the six-month failure to respond or the procedural use of this motion to raise an improper service defense; and good faith is disputed by the sequence of events. The Court should not accept Mostyn's late motion as timely on this record.

## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Canup respectfully requests that the Court decide Mostyn Law Firm, P.C.'s Motion to Accept Its Motion to Dismiss as Timely, Dkt. 75, together with Canup's pending Motion for Reconsideration of the Order denying remand, Dkt. 77. The timeliness and legal effect of Mostyn's Motion to Dismiss are intertwined with the service, unanimity, remand, and cure issues raised in the Motion for Reconsideration. *Id.* The service

23

dispute should be decided in that context because the Court relied on Mostyn's late-filed Motion to Dismiss in denying remand and concluding that any unanimity defect had been cured. Dkt. 70.

Canup does not seek to elevate a two-hour delay over the merits. Rather, Canup seeks to avoid the procedural prejudice created by treating Mostyn's late-filed Motion to Dismiss as timely or legally effective before the Court resolves the threshold issues that control its effect: whether Mostyn was properly served, whether its response deadline expired, whether any removal defect existed, whether Mostyn timely joined in or consented to removal, and whether a late-filed motion to dismiss could cure any such defect.

Canup further requests that the Court immediately stay all proceedings pending resolution of the Motion for Reconsideration, Dkt. 77, and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73. **Canup respectfully requests an expedited ruling on his request to stay all proceedings so that, if the Court declines to stay proceedings, Canup can seek a stay of these proceedings from the Eleventh Circuit in the related mandamus proceedings without delay.**

Alternatively, if the Court declines to decide Dkt. 75 together with the Motion for Reconsideration, Canup respectfully requests that the Court deny Mostyn's Motion to Accept Its Motion to Dismiss as Timely. If the Court grants Dkt. 75 or otherwise treats Mostyn's Motion to Dismiss, Dkt. 67, as timely or legally effective, Canup respectfully requests that the Court make express factual findings necessary for meaningful appellate review, including: whether Mostyn was properly served before removal; whether Canup timely raised the unanimity defect; when Mostyn's thirty-day deadline to join in or consent to removal expired; whether any defect in unanimous consent existed at the time of removal; whether Mostyn's Motion to Dismiss clearly and unambiguously manifested consent to removal; the specific filing or conduct by which Mostyn

24

allegedly cured any defect; the date on which any such cure occurred; and any other findings necessary to decide the issue.

Canup further requests that, if the Court maintains its denial of remand, the Court amend the Order, Dkt. 70, to include certification for interlocutory appeal under 28 U.S.C. § 1292(b), because the Order presents controlling questions of law as to federal subject-matter jurisdiction and removal procedure, substantial grounds exist for difference of opinion, and immediate appellate review may materially advance the ultimate termination of this litigation. If the Court certifies the Order for interlocutory appeal, Canup respectfully requests that the Court stay all proceedings pending interlocutory appeal and the pending mandamus proceedings in the United States Court of Appeals for the Eleventh Circuit. *See* Dkt. 73.

In the further alternative, if the Court denies this response's requested relief in full, Canup respectfully requests that the Court stay all proceedings pending resolution of the mandamus proceedings currently pending in the United States Court of Appeals for the Eleventh Circuit. *Id.*

Canup respectfully requests all other and further relief to which he may be justly entitled.

Signed this 17th day of June, 2026.                    Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on or about June 17, 2026, a true and correct copy of this response was sent to counsel for all parties via email, US Mail and/or the CM/ECF service pursuant to the Federal Rules of Civil Procedure.

Brandon Canup

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Response contains 7,936 words, inclusive of headings, footnotes, and quotations.

Brandon Canup

# EXHIBIT 1

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION*                        Cause No. 067-371499-25

BRANDON CANUP
VS.
BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, ET AL

TO: MOSTYN LAW FIRM PC

B/S REG AGT-ANDREW BROWNING
3810 W ALABAMA ST
HOUSTON, TX 77027-5204

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 67th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFF being

BRANDON ALLEN CANUP

Filed in said Court on October 27th, 2025 Against
AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, MOSTYN LAW FIRM PC, FLEMING NOLEN & JEZ LLP, BRYAN FREDERICK AYLSTOCK, BOBBY J
BRADFORD, MICHAEL ANDREW BURNS, GREGORY DONALD BROWN, CLIFF LEE ROBERTS
For suit, said suit being numbered 067-371499-25 the nature of which demand is as shown on said
PLAINTIFF'S ORIGINAL PETITION  a copy of which accompanies this citation.

PRO SE
Attorney for BRANDON ALLEN CANUP Phone No. (972)762-4314
Address    4812 HIDDEN OAKS LN ARLINGTON, TX 76017

_____Thomas A. Wilder_____, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 29th day of October, 2025.

By _____
AMANDA DURAN

A CERTIFIED COPY
ATTEST: 10/29/2025
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Amanda Duran

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of
twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures
to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.
Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

OFFICER'S RETURN *06737149925000006*
Received this Citation on the 29th day of October, 2025 at 10.16 o'clock A M, and executed at
10000 Memorial Dr Str 740 Houston TX within the county of Harris, State of TX at 11.05 o'clock A M
on the 4th day of November, 2025 by delivering to the within named (Def.): Mostyn Law Firm PC through
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION Registered Agn
, having first endorsed on same the date of delivery.                              Andrew Browning

Authorized Person/Constable/Sheriff: Christina Edwards                      Process Server
County of Harris  State of TX  By PSC#13296  Exp 10/31/27        Deputy be
Fees $_____
State of TX, County of Harris        (Must be verified if served outside the State of Texas)
Signed and sworn to by thesaid Christina Edwards before me this 6th day of November 2025
to certify which witness my hand and seal of office
(Seal):
County of Harris, State of Texas

TIFFANY B LARA
Notary ID #12292798
My Commission Expires
October 27, 2026

2

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| BRANDON CANUP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-01255-Y |
| | § | |
| BRYAN F. AYLSTOCK, BOBBY | § | |
| BRADFORD, MICHAEL BURNS, | § | |
| CLIFF ROBERTS, GREGORY | § | |
| BROWN, AYLSTOCK WITKIN KREIS | § | |
| & OVERHOLTZ PLC, FLEMING | § | |
| NOLEN & JEZ LLP, and MOSTYN | § | |
| LAW FIRM PC, | § | |
| | § | |
| *Defendants.* | § | |

## UNSWORN DECLARATION OF ANDREW BROWNING

1. My name is Andrew Browning. I am over 18 years of age, of sound mind, and fully capable of making this Unsworn Declaration in accordance with 28 U.S.C. § 1746. I have personal knowledge of the facts stated herein, and they are all true and correct.

2. I serve as Director of Finance and Compliance to a registered investment advisory firm based in Houston, Texas. Though I previously served as counsel to J. Steve Mostyn, I am not an agent, registered or otherwise, of Mostyn Law Firm, P.C. ("Mostyn Law Firm").

3. On November 4, 2025, Christina Edwards, a process server, attempted to personally serve me with a copy of *Plaintiff's Original Petition* (the "Petition") in Cause No. 067-371499-25, *Canup v. Aylstock, et al.*, pending in the 67th Judicial District Court of Tarrant County, Texas, and informed me I was being served in my capacity as a registered agent for Mostyn Law Firm, to which I responded that I was not a registered agent for Mostyn Law Firm and therefore could not accept service on its behalf. Ms. Edwards acknowledged my response then further informed me that, in the very same Petition, I was being sued in my personal capacity. Upon hearing that, I expressed doubt as to the likelihood that I was being sued in my personal capacity, but she reaffirmed that I was. After reiterating to Ms. Edwards that I am not a registered agent for the Mostyn Law Firm and that I could not and would not accept service on behalf of the Mostyn Law Firm, I told her that, because I had been named as a defendant, I would accept service but only in my personal capacity. She indicated that she understood and handed me the Petition. Based upon Ms. Edwards's representations, I accepted service of the Petition.

4. Promptly after receiving the Petition, I reviewed it in its entirety and discovered I had not been named as a defendant and therefore that Ms. Edwards's representation that I had been sued in my personal capacity was false.

5. I did not accept service of the Petition on behalf of Mostyn Law Firm and did not intend to accept service on its behalf by accepting service of the Petition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Harris County, Texas on the _11th_ day of December, 2025.

Andrew Browning

# EXHIBIT 3

Case 3:23-cv-03859-VC Document 91-3 Filed 06/22/26 Page 244 of 281
USCA11 Case: 26-11887     Document: 7     Date Filed: 06/22/2026     Page: 244 of 281

# FRANCHISE TAX ACCOUNT STATUS

This record as of November 4, 2025 at 11:49:20

# MOSTYN LAW FIRM P.C.

| | |
|---|---|
| **Texas Taxpayer Number:** | |
| **Mailing Address:** | 3810 W ALABAMA ST<br>HOUSTON, TX 77027 - 5204 |
| **Right to Transact Business in Texas:** | ACTIVE |
| **State of Formation:** | TX |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 12/17/1998 |
| **Texas SOS File Number:** | |
| **Registered Agent Name:** | ANDREW BROWNING |
| **Registered Office Street Address:** | 3810 W. ALABAMA<br>HOUSTON, TX 77027 |

## Public Information Report for Year

6

**2023**

| Title | Name and Address | |
|-------|------------------|---|
| PRESIDENT | **AMBER MOSTYN**<br>3810 WEST ALABAMA<br>HOUSTON, TX 77027 | |

7

# EXHIBIT 4



| **Form 401** | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>**Filing Fee: See Instructions** | **Statement of Change of<br>Registered Office/Agent** | **Filed in the Office of the<br>Secretary of State of Texas<br>Filing #: ~~~~~~~~~~ 11/12/2018<br>Document #: 848923940017<br>Image Generated Electronically<br>for Web Filing** |

### Entity Information

The name of the entity is :

**MOSTYN LAW FIRM P.C.**

The file number issued to the entity by the secretary of state is: ~~~~~~~~~~

The registered agent and registered office of the entity as currently shown on the records of the secretary of state are:

**John Steven Mostyn**

**3810 W. Alabama, Houston, TX, USA 77027**

### Change to Registered Agent/Registered Office

The following changes are made to the registered agent and/or office information of the named entity:

Registered Agent Change

☐ A. The new registered agent is an organization by the name of:

OR

☑ B. The new registered agent is an individual resident of the state whose name is:

**Andrew Browning**

Registered Office Change

☐ C. The business address of the registered agent and the registered office address is changed to:

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

☑ B. The consent of the registered agent is maintained by the entity.

### Statement of Approval

The change specified in this statement has been authorized by the entity in the manner required by the BOC or in the manner required by the law governing the filing entity, as applicable.

### Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: **November 12, 2018**

**John Steven Mostyn**

Signature of authorized person(s)

**FILING OFFICE COPY**

# EXHIBIT 5

## DUE DILLIGENCE AFFIDAVIT

| | |
|---|---|
| **STATE OF TEXAS** | § IN THE STATE OF TEXAS DISTRICT |
| | § COURT OF TARRANT COUNTY |

**Cause Number 067-371499-25**

§

**BRANDON CANUP**

**Vs.**

**BRYAN F. AYLSTOCK, BOBBY**    §
**BRADFORD, MICHAEL BURNS, ET**
**AL**

The documents were received by **Christina Edwards** on the **29**TH **day of October 2025 at 10:17 AM** to be served on **THE MOSTYN LAW FIRM PC through Registered Agent Andrew Browning** at **3810 W. Alabama St. Houston, TX  77027.**. I, **Christina Edwards**, attempted to serve the **CITATION AND PLAINTIFF'S ORIGINAL PETITION but** was unsuccessful because of the reasons below:

**10/30/25 @ 11:15 am**- I attempted and I was told by the receptionist that the Registered Agent was not an employee here or listed on the company registry.  I then asked her if there was someone in the office that was authorized to accept and she said "no" after making phone calls asking around the office.  She was told to tell me that there was no one within the office that is authorized to accept service of process.  I went to my car and called the office.  Someone answered the phone (that was not the receptionist that I spoke with) and she too said that the Registered Agent did not work here and that there was no one there that was authorized to accept service.

Military Status: (  ) Yes or (  ) No  If yes, what branch?_____**NA**_____
Marital Status:  (  ) Married or (  ) Single Name of Spouse_____**NA**_____ )

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

**My name is Christina Edwards**
**My DOB is January 2, 1988**
**My business address is 13531 Will Clayton Pkwy Suite 300 PMB 2062 Humble, TX  77346.**

I **DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED IN HARRIS COUNTY, STATE OF TEXAS, ON THE 30TH DAY OF OCTOBER 2025.**

_____
Declarant/Authorized Process Server
PROCESS SERVER# :  **13296**     Expiration Date: **10/31/25**

4

# EXHIBIT 6

■ Tcode 13196 Franchise

**Texas Franchise Tax Public Information Report**

05-102
(Rev.9-15/33)

Comptroller of Public Accounts FORM

To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),
Professional Associations (PA) and Financial Institutions

■ Taxpayer number

■ Report year: **2 0 1 8**

**You have certain rights** under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.

Taxpayer name: **MOSTYN LAW FIRM, P.C.**

○ Blacken circle if the mailing address has changed.

Mailing address: **3810 WEST ALABAMA**

City: **HOUSTON**   State: **TX**   ZIP code plus 4: **77027**

Secretary of State (SOS) file number or Comptroller file number

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office: **3810 WEST ALABAMA, HOUSTON, TX, 77027**

Principal place of business: **3810 WEST ALABAMA, HOUSTON, TX, 77027**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

**Please sign below!** **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A**   Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | Term expiration | m | m | d | d | y | y |
|------|-------|----------|-----------------|---|---|---|---|---|---|
| AMBER L ANDERSON | | ○ YES | | 1 | 2 | 3 | 1 | 2 | 0 |

| Mailing address | City | State | ZIP Code |
|-----------------|------|-------|----------|
| 5750 MAIN STREET | HOUSTON | TX | 77005 |

| Name | Title | Director | Term expiration | m | m | d | d | y | y |
|------|-------|----------|-----------------|---|---|---|---|---|---|
| | | ○ YES | | | | | | | |

| Mailing address | City | State | ZIP Code |
|-----------------|------|-------|----------|
| | | | |

| Name | Title | Director | Term expiration | m | m | d | d | y | y |
|------|-------|----------|-----------------|---|---|---|---|---|---|
| | | ○ YES | | | | | | | |

| Mailing address | City | State | ZIP Code |
|-----------------|------|-------|----------|
| | | | |

**SECTION B**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|------|------|------|------|
| NONE | | | |
| | | | |

**SECTION C**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|------|------|------|------|
| NONE | | | |

Registered agent and registered office currently on file *(see instructions if you need to make changes)*

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

Agent: **JOHN STEVEN MOSTYN**

Office: **3810 WEST ALABAMA**   City: **HOUSTON**   State: **TX**   ZIP Code: **77027**

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

sign here ►

| | Title | Date | Area code and phone number |
|------|------|------|------|
| **ANDREW BROWNING** | **PRESIDENT** | **11/12/2018** | **( 713 ) 861 - 6616** |

**Texas Comptroller Official Use Only**

VE/DE ○   PIR IND ○

TRANSMITTER ID = CSPROFTWSPROD

TLN = 00043050173

USCA11 Case: 26-11887   Document: 7   Date Filed: 06/22/2026   Page: 253 of 281

# EXHIBIT 7

# Texas Franchise Tax Public Information Report

Comptroller of Public Accounts FORM  05-102 (Rev.9-11/30)

■ Tcode  13196 Franchise

*To be filed by Corporations , Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ Taxpayer number

■ Report year  **2 0 1 9**

*You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (800) 252-1381or (512) 463-4600.*

| Taxpayer name | | |
|---|---|---|
| **MOSTYN LAW FIRM P.C.** | | |
| Mailing address | | Secretary of State (SOS) file number or Comptroller file number |
| **3810 W ALABAMA ST** | | |
| City **HOUSTON** | State **TX**  ZIP Code **77027**  Plus 4 | |

○  Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office | 3810 W ALABAMA ST, HOUSTON TX 77027 |
|---|---|
| Principal place of business | 3810 W ALABAMA ST, HOUSTON TX 77027 5204 |

**Please sign below!**

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

1760590236419

**SECTION A**  Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| **AMBER L ANDERSON** | **GOVERNING** | ● YES | Term expiration | |
| Mailing address **3810 W ALABAMA ST** | City **HOUSTON** | State **TX** | | ZIP Code **77027** |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | State | | ZIP Code |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | State | | ZIP Code |

**SECTION B**  Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| **EQUITAS FINANCE COMPANY LLC** | **TEXAS** | | **100.0** |
| **MLF PR LLC** | **TEXAS** | | **100.0** |

**SECTION C**  Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |

| Registered agent and registered office currently on file. *(see instructions if you need to make changes)* | ○ Blacken circle if you need forms to change the registered agent or registered office information. |
|---|---|
| Agent: **ANDREW BROWNING** | |
| Office: **3810 W. ALABAMA**  City **HOUSTON**  State **TX**  ZIP Code **77027** | |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ Andrew Browning | Title **Electronic** | Date **09-26-2019** | Area code and phone number ( **713** ) **861 - 6616** |
|---|---|---|---|

**Texas Comptroller Official Use Only**

| VE/DE ○ | PIR IND ○ |
|---|---|

# EXHIBIT 8

**Texas Franchise Tax Public Information Report**

05-102
(Rev.9-15/33)

Comptroller of Public Accounts FORM

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),*
*Professional Associations (PA) and Financial Institutions*

■ **Tcode** 13196 Franchise

| ■ Taxpayer number | ■ Report year | |
|---|---|---|
| ] - - | 2 0 2 0 | *You have certain rights* under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381. |

| Taxpayer name | |
|---|---|
| MOSTYN LAW FIRM, P.C. | ○ Blacken circle if the mailing address has changed. |

| Mailing address | |
|---|---|
| 3810 WEST ALABAMA | Secretary of State (SOS) file number or Comptroller file number |

| City | State | ZIP code plus 4 | |
|---|---|---|---|
| HOUSTON | TX | 77027 | |

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office | 3810 WEST ALABAMA, HOUSTON, TX, 77027 |
|---|---|
| Principal place of business | 3810 WEST ALABAMA, HOUSTON, TX, 77027 |

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| AMBER MOSTYN | | ○ YES | Term expiration | |

| Mailing address | City | State | ZIP Code |
|---|---|---|---|
| 3810 WEST ALABAMA | HOUSTON | TX | 77027 |

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| | | ○ YES | Term expiration | |

| Mailing address | City | State | ZIP Code |
|---|---|---|---|
| | | | |

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| | | ○ YES | Term expiration | |

| Mailing address | City | State | ZIP Code |
|---|---|---|---|
| | | | |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | You must make a filing with the Secretary of State to change registered agent, registered office or general partner information. |
|---|---|
| Agent: **ANDREW BROWNING** | |

| Office: **3810 WEST ALABAMA** | City **HOUSTON** | State **TX** | ZIP Code **77027** |
|---|---|---|---|

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ | AMBER MOSTYN | Title PRESIDENT | Date 11/16/2020 | Area code and phone number ( 713 ) 861 - 6616 |
|---|---|---|---|---|

**Texas Comptroller Official Use Only**

| VE/DE ○ | PIR IND ○ |
|---|---|

# EXHIBIT 9

Comptroller
of Public
Accounts
FORM

05-102
(Rev.9-15/33)

# Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),*
*Professional Associations (PA) and Financial Institutions*

■ **Tcode** 13196 Franchise

| ■ Taxpayer number | ■ Report year | |
|---|---|---|
| | **2 0 2 1** | *You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.* |

Taxpayer name
**MOSTYN LAW FIRM, P.C.**

■ ○ Blacken circle if the mailing address has changed.

Mailing address
**3810 WEST ALABAMA**

Secretary of State (SOS) file number or Comptroller file number

| City **HOUSTON** | State **TX** | ZIP code plus 4 **77027** |
|---|---|---|

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
**3810 WEST ALABAMA, HOUSTON, TX, 77027**

Principal place of business
**3810 WEST ALABAMA, HOUSTON, TX, 77027**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A**   Name, title and mailing address of each officer, director, member, general partner  or manager.

| Name | Title | Director | | m m d d y y |
|---|---|---|---|---|
| **AMBER MOSTYN** | **PRESIDENT** | ○ YES | Term expiration | |
| Mailing address **3810 WEST ALABAMA** | City **HOUSTON** | | State **TX** | ZIP Code **77027** |
| Name | Title | Director | | m m d d y y |
| | | ○ YES | Term expiration | |
| Mailing address | City | | State | ZIP Code |
| Name | Title | Director | | m m d d y y |
| | | ○ YES | Term expiration | |
| Mailing address | City | | State | ZIP Code |

**SECTION B**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent  or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C**   Enter information for each corporation , LLC, LP, PA or financial institution, if any, that owns an interest of 10  percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

Registered agent and registered office currently on file *(see instructions if you need to make changes)*
Agent:  **ANDREW BROWNING**

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

| Office:  **3810 WEST ALABAMA** | City **HOUSTON** | State **TX** | ZIP Code **77027** |
|---|---|---|---|

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ | **ANDREW BROWNING** | Title **REGISTERED A** | Date **11/07/2021** | Area code and phone number **( 713 )   861 - 6616** |
|---|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE ○ | PIR IND ○ |
|---|---|

# EXHIBIT 10

05-102
(Rev.9-15/33)

**Texas Franchise Tax Public Information Report**

To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),
Professional Associations (PA) and Financial Institutions

■ **Tcode** 13196 Franchise

■ Taxpayer number

■ Report year

| 2 | 0 | 2 | 2 |
|---|---|---|---|

**You have certain rights** under Chapter 552 and 559,
Government Code, to review, request and correct information
we have on file about you. Contact us at 1-800-252-1381.

Taxpayer name
**MOSTYN LAW FIRM, P.C.**

○ Blacken circle if the mailing address has changed.

Mailing address
**3810 WEST ALABAMA**

Secretary of State (SOS) file number or
Comptroller file number

| City **HOUSTON** | State **TX** | ZIP code plus 4 **77027** |
|---|---|---|

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
**3810 WEST ALABAMA, HOUSTON, TX, 77027**

Principal place of business
**3810 WEST ALABAMA, HOUSTON, TX, 77027**

You must report officer, director, member, general partner and manager information as of the date you complete this report.

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A**   Name, title and mailing address of each officer, director, member, general partner or manager.

| Name **AMBER MOSTYN** | Title **PRESIDENT** | Director ○ YES | Term expiration | m | m | d | d | y | y |
|---|---|---|---|---|---|---|---|---|---|
| Mailing address **3810 WEST ALABAMA** | City **HOUSTON** | | State **TX** | ZIP Code **77027** | | | | | |
| Name | Title | Director ○ YES | Term expiration | m | m | d | d | y | y |
| Mailing address | City | | State | ZIP Code | | | | | |
| Name | Title | Director ○ YES | Term expiration | m | m | d | d | y | y |
| Mailing address | City | | State | ZIP Code | | | | | |

**SECTION B**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

Registered agent and registered office currently on file *(see instructions if you need to make changes)*
Agent: **ANDREW BROWNING**

You must make a filing with the Secretary of State to change registered
agent, registered office or general partner information.

| Office: **3810 WEST ALABAMA** | City **HOUSTON** | State **TX** | ZIP Code **77027** |
|---|---|---|---|

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP or financial institution.

| sign here ► | **AMBER MOSTYN** | Title **PRESIDENT** | Date **11/15/2022** | Area code and phone number **( 713 )  861 - 6616** |
|---|---|---|---|---|

**Texas Comptroller Official Use Only**

| VE/DE ○ | PIR IND ○ |
|---|---|

# EXHIBIT 11

05-102
(Rev.9-15/33)

Comptroller of Public Accounts FORM

# Texas Franchise Tax Public Information Report

**Tcode** 13196 Franchise

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),*
*Professional Associations (PA) and Financial Institutions*

■ Taxpayer number

■ Report year

| 2 | 0 | 2 | 3 |

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

Taxpayer name
**MOSTYN LAW FIRM, P.C.**

○ Blacken circle if the mailing address has changed.

Mailing address
**3810 WEST ALABAMA**

Secretary of State (SOS) file number or Comptroller file number

| City **HOUSTON** | State **TX** | ZIP code plus 4 **77027** |

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
**3810 WEST ALABAMA, HOUSTON, TX, 77027**

Principal place of business
**3810 WEST ALABAMA, HOUSTON, TX, 77027**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

**Please sign below!** **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A**   Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| **AMBER MOSTYN** | **PRESIDENT** | ○ YES | | |
| Mailing address **3810 WEST ALABAMA** | City **HOUSTON** | State **TX** | ZIP Code **77027** | |
| Name | Title | ○ YES Director | Term expiration | m m d d y y |
| Mailing address | City | State | ZIP Code | |
| Name | Title | ○ YES Director | Term expiration | m m d d y y |
| Mailing address | City | State | ZIP Code | |

**SECTION B**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C**   Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

Registered agent and registered office currently on file *(see instructions if you need to make changes)*
Agent: **ANDREW BROWNING**

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

| Office: **3810 WEST ALABAMA** | City **HOUSTON** | State **TX** | ZIP Code **77027** |

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ | **AMBER MOSTYN** | Title **PRESIDENT** | Date **10/14/2023** | Area code and phone number **( 713 ) 861 - 6616** |

**Texas Comptroller Official Use Only**

| VE/DE ○ | PIR IND ○ |

Case 3:26-cv-03339-MCR-ZCB   Document 71-12   Filed 06/22/26   Page 264 of 281

# EXHIBIT 12

# FRANCHISE TAX ACCOUNT STATUS

This record as of June 14, 2026 at 12:15:42

## MOSTYN LAW FIRM P.C.

| | |
|---|---|
| **Texas Taxpayer Number:** | |
| **Mailing Address:** | 3810 W ALABAMA ST<br>HOUSTON, TX 77027 - 5204 |
| **Right to Transact Business in Texas:** | ACTIVE |
| **State of Formation:** | TX |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 12/17/1998 |
| **Texas SOS File Number:** | |
| **Registered Agent Name:** | ANDREW BROWNING |
| **Registered Office Street Address:** | 3810 W. ALABAMA<br>HOUSTON, TX 77027 |

## Public Information Report for Year 2023

| Title | Name and Address |
|---|---|
| PRESIDENT | **AMBER MOSTYN**<br>3810 WEST ALABAMA<br>HOUSTON, TX 77027<br>**Source:** SOS |

Information on this site is obtained from the most recent Public Information

Report (PIR) submitted to the Comptroller of Public Accounts (CPA) or from the most recent PIR processed by the Secretary of State (SOS). Annual PIRs submitted to the CPA are forwarded to the SOS.

# EXHIBIT 13

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | DECLARATION OF BRANDON CANUP |
| *Defendants.* | |

**DECLARATION OF BRANDON CANUP**

"I am Brandon Canup, *pro se* Plaintiff in the above numbered lawsuit. I am over the age of eighteen (18) years. I reside in Tarrant County, Texas. I have personal knowledge of the facts asserted in this Declaration and such facts are true and correct. I assembled the document entitled:

'PLAINTIFF BRANDON CANUP'S RESPONSE TO MOSTYN LAW'S MOTION TO ACCEPT MOTION TO DISMISS AS TIMELY' (the "Response"),

to which this Declaration is attached. The exhibits attached to the Response are true and correct copies of the documents represented therein. They have not been altered, except that personal identifying information has been redacted pursuant to Federal Rule of Civil Procedure 5.2. I am personally familiar with each of such documents.

Attached as Exhibit 1 is a true and correct copy of the executed citation issued to Mostyn Law Firm, P.C., through its registered agent Andrew Browning, showing service of the citation and Plaintiff's Original Petition on November 4, 2025 that was previously filed in this action.

Attached as Exhibit 2 is a true and correct copy of the Unsworn Declaration of Andrew Browning previously filed in this action.

Attached as Exhibit 3 is a true and correct copy of the Texas Comptroller/SOS franchise-tax account status record for Mostyn Law Firm, P.C., generated as of November 4, 2025, identifying Andrew Browning as Mostyn Law Firm, P.C.'s registered agent and listing the registered office address. I have redacted personal identifying information from this exhibit. This document was previously filed in this action.

Attached as Exhibit 4 is a true and correct copy of Mostyn Law Firm, P.C.'s Statement of Change of Registered Office/Agent filed with the Texas Secretary of State on November 12, 2018. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 5 is a true and correct copy of the Due Diligence Affidavit of process server Christina Edwards concerning attempted service on Mostyn Law Firm, P.C. through registered agent Andrew Browning at 3810 W. Alabama Street, Houston, Texas. This document was previously filed in this action.

Attached as Exhibit 6 is a true and correct copy of Mostyn Law Firm, P.C.'s 2018 Texas Public Information Report. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 7 is a true and correct copy of Mostyn Law Firm, P.C.'s 2019 Texas Public Information Report. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 8 is a true and correct copy of Mostyn Law Firm, P.C.'s 2020 Texas Public Information Report. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 9 is a true and correct copy of Mostyn Law Firm, P.C.'s 2021 Texas Public Information Report. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 10 is a true and correct copy of Mostyn Law Firm, P.C.'s 2022 Texas Public Information Report. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 11 is a true and correct copy of Mostyn Law Firm, P.C.'s 2023 Texas Public Information Report. I have redacted personal identifying information from this exhibit.

Attached as Exhibit 12 is a true and correct copy of the Texas Comptroller/SOS franchise-tax account status record for Mostyn Law Firm, P.C., generated as of June 14, 2026, identifying Andrew Browning as Mostyn Law Firm, P.C.'s registered agent and listing the registered office address. I have redacted personal identifying information from this exhibit.

I declare under penalty of perjury that the forgoing is true and correct. Executed on Jun 17, 2026.

Brandon Canup"

# EXHIBIT 12

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF'S MOTION TO FILE REPLY MEMORANDUM AND MEMORANDUM IN SUPPORT |
| *Defendants.* | |

## PLAINTIFF BRANDON CANUP'S MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECONSIDERATION

COMES NOW, Plaintiff Brandon Canup ("Canup" or "Plaintiff"), proceeding *pro se*, and pursuant to N.D. Fla. Local Rule 7.1(I), respectfully moves this Court for leave to file a reply memorandum in support of his Motion for Reconsideration, Certification for Interlocutory Appeal and Stay, Dkt. 77, and respectfully states as follows:

1. On June 19, 2026 Mostyn Law Firm, PC's ("Mostyn") filed a Response in Opposition to Canup's Motion for Reconsideration. Dkt. 95.

2. Local Rule 7.1(I) provides that a reply memorandum ordinarily may not be filed absent leave of Court and extraordinary circumstances. The rule further requires a party to obtain leave before tendering the reply. Canup therefore seeks leave before filing any reply.

3. Extraordinary circumstances exist because the Court denied remand by treating Mostyn's motion to dismiss as implied consent to removal, even though Mostyn filed that motion approximately six months after being properly served before removal and the motion said nothing about consent, removal, or remand. Dkts. 67, 70. After remand was denied, Mostyn moved to have the untimely motion accepted and, for the first time, challenged the validity

1

of service. Dkt. 75. Mostyn, in its Response in Opposition to Canup's Motion for Reconsideration has now raised additional issues bearing directly on the basis of the remand ruling, Dkt. 95, and Canup should be permitted to file a reply addressing those issues.

4. First, Mostyn now expressly states, "[t]o eliminate any doubt," that it consents to removal. *Id.* at 1. Canup seeks leave to address the significance of that newly asserted consent because the Court denied remand by treating Mostyn's earlier motion to dismiss as implied consent, even though that motion was silent as to consent, removal, and remand. Mostyn's first express statement of consent, made only in opposition to reconsideration, raises a new issue concerning whether that later consent can retroactively support the filing on which the Court relied.

5. This issue also bears directly on certification. The question is not simply whether service was valid in the abstract. The question is whether the Court may avoid deciding service and unanimity by relying on a late, procedurally disputed motion to dismiss as implied consent when Mostyn only later supplied express consent after reconsideration was filed. A short, consolidated reply would assist the Court in resolving that narrow issue without requiring Canup to reargue the entire motion.

6. Second, Mostyn raises a last-served-defendant and futility argument that warrants a limited response. Mostyn argues that remand would be a "pointless formality" because Defendant Burns was allegedly later served and could allegedly remove the case again under the last-served-defendant rule. Dkt. 95 at 3. Canup does not concede Mostyn's characterization of when Burns was served. Mostyn's argument raises a new futility theory, dependent on

disputed service facts and a series of speculative future events, that was neither addressed in the remand ruling nor available for Canup to answer in his opening memorandum.

7. Canup's proposed reply will address why Mostyn's hypothetical future-removal argument does not make remand a "pointless formality." Remand would return this action to Texas state court, and any later notice of removal would have to be filed in the Northern District of Texas, within the Fifth Circuit. Mostyn's theory assumes that Burns wishes to remove; that a second removal would survive remand under Fifth Circuit law governing successive removals; and that the JPML would transfer the action to this Court a second time. It also disregards the mandatory language Congress used in § 1446(b)(2)(A)–(B) and the absence of any statutory futility exception. Canup seeks leave to address those newly raised matters, including the disputed premise concerning when Burns received service or notice, in a narrowly tailored reply.

8. A reply limited to the issues identified above would assist the Court, avoid duplication, and prevent the threshold remand issues from being resolved through procedural assumptions rather than under the removal statutes.

9. Canup's proposed reply will be narrowly tailored to address only those matters raised in Mostyn's response and will comply with the word limitations set forth in Local Rule 7.1(I).

10. Allowing a reply will aid the Court by ensuring that the record is complete and that all issues are fully and fairly presented.

11. Mostyn opposes this motion.

<u>**RELIEF REQUESTED**</u>

WHEREFORE PRESMISES CONSIDERED, Plaintiff Brandon Canup respectfully requests that the Court grant leave to file a reply in support of Dkt. 77, limited to the issues identified above, and grant such further relief as the Court deems just and proper.

Signed this 22nd day of June, 2026.

Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that, I, Brandon Canup have complied with the attorney-conference requirement of Local Rule 7.1(B). I attempted to confer in good faith by email to resolve the issue(s) set forth. Results of conference(s): I emailed counsel for Mostyn on June 21, 2026, Mr. Stevenson replied that Mostyn is opposed, therefore, this motion is submitted to the Court as opposed.

Brandon Canup
*pro se* Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on or about June 22, 2026, a true and correct copy of this entire motion and memorandum was sent to counsel for all parties via email, US Mail and/or the CM/ECF service pursuant to the Federal Rules of Civil Procedure.

Brandon Canup
*pro se* Plaintiff

5

**PLAINTIFF BRANDON CANUP'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF HIS MOTION FOR <u>RECONSIDERATION</u>**

COMES NOW, Plaintiff Brandon Canup ("Canup" or "Plaintiff"), proceeding *pro se*, and pursuant to N.D. Fla. Local Rule 7.1(I), respectfully submits this Memorandum of Law in support of his Motion for Leave to File a Reply Memorandum in Support of his Motion for Reconsideration, and states as follows:

## I.    BACKGROUND

This action arises from Canup's former 3M Combat Arms Earplug litigation. The operative First Amended Complaint asserts state-law claims for fraud by nondisclosure, breach of fiduciary duty, fraudulent inducement, and civil conspiracy arising from Defendants' alleged communications, participation in proceedings, and case-specific conduct after Canup rejected the 3M Master Settlement Agreement and continued pursuing his individual claims. Dkt. 60 ¶¶ 136–203. Canup later resolved his claims against 3M independently of the MSA.

Canup filed this action in Texas state court on October 27, 2025. The action was removed to the Northern District of Texas on November 6, 2025, and Canup timely moved to remand. Dkts. 1, 8. After Defendants sought transfer, the JPML transferred the action to this Court on April 2, 2026. Dkt. 30.

On May 27, 2026, approximately six months after Canup contends Mostyn was properly served before removal, Mostyn filed a motion to dismiss that was silent as to consent, removal, remand, and sufficiency of service. Dkt. 67. On May 29, 2026, the Court denied remand, declined to resolve whether Mostyn had been properly served, and treated Mostyn's motion to dismiss as implied consent sufficient to cure the asserted unanimity defect. Dkt. 70 at 15–17.

On June 3, 2026, Mostyn moved to have its motion to dismiss accepted as timely and asserted improper service for the first time. Dkt. 75. Canup thereafter moved for reconsideration

6

or, alternatively, certification for interlocutory appeal, and requested a stay. Dkt. 77. In opposing reconsideration, Mostyn now expressly states for the first time, "[t]o eliminate any doubt," that it consents to removal and separately argues that remand would be a "pointless formality" because Burns could allegedly remove the action again under the last-served-defendant rule. Dkt. 95 at 1, 3. Those newly asserted matters form the limited basis for Canup's request for leave to reply.

## II.    ARGUMENT AND AUTHORITY

### A.  Legal Standard

Under N.D. Fla. Local Rule 7.1(I), a party ordinarily may not file a reply memorandum in support of a motion. In extraordinary circumstances, however, the Court may grant leave to file a reply, provided the party obtains leave before tendering it. Extraordinary circumstances exist where an opposition raises a new argument or materially changes the issues the Court must resolve, such that a limited reply would assist the Court and provide the movant a meaningful opportunity to respond.

Fundamental fairness ordinarily requires that a party receive notice and a meaningful opportunity to address new matters that may affect the disposition of its motion. *See Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950); *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). Leave is particularly appropriate where the newly raised matters bear on subject-matter jurisdiction, removal procedure, and the factual or procedural premise on which the Court previously relied.

### B.  Argument

#### 1.  Mostyn's Newly Expressed Consent Raises an Issue Not Previously Presented

The unusual procedural sequence surrounding Mostyn's consent constitutes an extraordinary circumstance warranting a limited reply. The Court denied remand by treating

Mostyn's motion to dismiss as implied consent to removal. That motion was filed approximately six months after Mostyn was properly served before removal, was filed after Mostyn's response deadline, and said nothing about consent, removal, or remand. After remand was denied, Mostyn moved to have that motion accepted as timely and asserted improper service for the first time.

Mostyn now expressly states in opposition to reconsideration, "[t]o eliminate any doubt," that it consents to removal. Dkt. 95 at 1. That is Mostyn's first express statement of consent. It raises a new issue concerning whether consent first expressly given in opposition to reconsideration can retroactively support the Court's earlier reliance on a different filing that contained no such statement.

The AWKO Defendants' response reinforces the significance of that issue. They acknowledge that the Court did not resolve whether Mostyn was properly served because it instead treated Mostyn's motion to dismiss as implied consent sufficient to cure the asserted unanimity defect. Dkt. 93 at 6–7. Mostyn's newly expressed consent therefore bears directly on the premise used to avoid resolving service and unanimity.

Canup does not seek to repeat his prior service or unanimity arguments. He seeks leave to address the distinct issue created by Mostyn's newly asserted express consent: whether that later statement can retroactively validate the Court's prior reliance on an untimely and procedurally disputed motion that was silent as to consent, removal, and remand. That issue also bears directly on Canup's request for certification because it concerns whether the Court may bypass unresolved service and unanimity questions by inferring consent from that earlier filing.

### 2. Mostyn's Last-Served-Defendant Argument Raises a New Futility Theory Dependent on Disputed Facts

Mostyn also argues for the first time that remand would be a "pointless formality" because Burns was allegedly later served and could allegedly remove the action again under the last-served-

8

defendant rule. Dkt. 95 at 3. That argument raises a new futility theory that was neither addressed in the remand ruling nor available for Canup to answer in his opening memorandum.

Canup does not concede that the earlier efforts to serve Burns were legally ineffective.

Mostyn's theory also depends on several speculative procedural assumptions. Remand would return this action to Texas state court. Any later notice of removal would have to be filed in the Northern District of Texas, within the Fifth Circuit, where a second removal on the same factual basis is generally prohibited absent a new and different factual development, and doubts concerning removal are resolved in favor of remand.

Mostyn's assertion that this action would simply return to this Court therefore assumes that Burns would choose to remove; that all properly joined and served Defendants would consent to that removal; that the Northern District of Texas would permit the second removal to proceed; and that the JPML would transfer the action to this Court a second time. The first JPML transfer itself required approximately four months. None of those events is certain.

Mostyn's theory also implicates the mandatory requirements of the removal statutes, including the requirements that all properly joined and served defendants join in or consent to removal and that each defendant act within the applicable thirty-day period. It further raises whether futility may be used to excuse compliance with those requirements.

Canup seeks leave to address why speculation about a series of possible future events cannot excuse compliance with the statutory requirements governing the removal presently before the Court. Because Mostyn introduced this theory only in opposition to reconsideration, denying Canup an opportunity to answer it would leave the Court with one-sided briefing on an issue bearing directly on remand.

9

Canup seeks leave to address why a disputed service premise and speculation about a series of possible future events cannot excuse compliance with the statutory requirements governing the removal presently before the Court. Because Mostyn introduced this theory only in opposition to reconsideration, denying Canup an opportunity to answer it would leave the Court with one-sided briefing on an issue bearing directly on remand.

### 3.  Leave to File a Limited Reply Will Aid the Court

Canup's proposed reply will be confined to two issues: (1) the significance of Mostyn's first express statement of consent in light of the Court's prior reliance on Mostyn's motion to dismiss as implied consent; and (2) Mostyn's newly asserted last-served-defendant and futility theory. Canup will not use the reply to repeat arguments already fully presented except to the limited extent necessary to answer those new matters.

Allowing a reply will provide the Court with focused adversarial briefing on issues that directly concern removal, remand, and the basis of the Court's prior ruling. It will also avoid multiple filings because Canup seeks permission to file one consolidated reply addressing the overlapping responses of Mostyn and the AWKO Defendants.

Courts within this District recognize that leave to reply is appropriate where a reply will aid the Court's consideration of the issues. *See Am. C.L. Union of Fla., Inc. v. Dixie County,* 570 F. Supp. 2d 1378, 1380 (N.D. Fla. 2008). Here, the proposed reply will assist the Court by addressing newly raised matters without unnecessarily reopening issues already briefed.

### III.     REQUEST FOR RELIEF

Extraordinary circumstances warrant leave to file a limited consolidated reply. Mostyn has, for the first time, expressly consented to removal after the Court previously relied on a motion that contained no express consent, and Mostyn has introduced a new last-served-defendant and futility

10

theory premised on a hypothetical second removal. Those matters bear directly on the threshold

remand ruling and were not available for Canup to address in his opening memorandum.

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that the Court

grant him leave to file one consolidated reply memorandum in support of Dkt. 77, limited to the

issues identified above, and grant such other and further relief as the Court deems just and proper.

Signed this 22nd day of June, 2026.

Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(F), based on the Word Count function in Microsoft Word, this Memorandum contains approximately 2,448 words, inclusive of headings, footnotes, and quotations.

Brandon Canup
*pro se* Plaintiff

11