**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S RESPONSE TO AWKO DEFENDANTS' MOTION TO DISMISS |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S RESPONSE IN OPPOSITION TO AWKO
DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding *pro se*, hereby files his Response in Opposition of AWKO Defendants'[1] Motion to Dismiss. In support, Canup states as follows:

Canup preserves all objections previously asserted concerning removal and remand. This Response is submitted without waiver of those objections and subject to Canup's pending requests that these proceedings be stayed pending resolution of the mandamus proceedings. *See* Dkts. 73, 77, 91, 97. Canup files this Response solely to comply with the existing deadline and does not concede that further district-court proceedings should continue while those stay requests remain pending.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

AWKO Defendants begin by recasting Canup's pleaded fraud and fiduciary-duty claims as a disguised legal-malpractice action arising from ordinary MDL administration. That

---

[1] AWKO Defendants refers to Bryan Aylstock, Bobby Bradford and Aylstock, Witkin, Kreis & Overholtz, PLC.

characterization cannot control a Rule 12(b)(6) analysis. The Amended Complaint alleges that, after Plaintiffs' Leadership authority had been terminated,[2] AWKO Defendants undertook individualized communications and conduct concerning Canup's claim, obtained and used case-specific and confidential information, participated in proceedings concerning his individual matter, and continued communicating with Canup and Gamble regarding legal strategy, settlement options, and access to case materials.[3] *See* Dkt. 60 ¶¶ 53–54, 79–99.

AWKO Defendants' prior leadership positions do not establish that all subsequent conduct was undertaken within the scope of those positions or at the MDL Court's request. That is a disputed factual premise, not a fact established by the pleadings. Texas law permits an attorney-client relationship and resulting fiduciary duties to arise from the parties' objective words and conduct, even without a formal retention agreement and even where the client has separate counsel. The detailed allegations concerning AWKO Defendants' individualized conduct therefore plausibly allege duties owed directly to Canup.

Nor is this action a collateral attack on the MSA or MDL orders. Those materials are referenced because they provide factual context for Defendants' alleged conflicts, financial incentives, obligations, and conduct. Canup does not seek to vacate the MSA, modify an MDL order, reopen the settlement program, or disturb the resolution of the 3M litigation. His claims concern alleged misconduct directed toward him individually.

---

[2] *See* Case Management Order No. 66 ("CMO 66"), Termination of Plaintiff Leadership Structure, *In re 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885, United States District Court for the Northern District of Florida, Pensacola Division, September 11, 2023 (Dkt. 3863); Case Management Order No. 67 ("CMO 67"), Common Benefit Time & Expenses for Settlement Implementation & Administration, *In re 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885, United States District Court for the Northern District of Florida, Pensacola Division, September 11, 2023 (Dkt. 3864).

[3] Canup respectfully requests that the Court take judicial notice of CMO 66 and CMO 67 and their contents.

The Amended Complaint also identifies the specific representations supporting fraudulent inducement, the speaker, the relevant communications, the reason the representations were allegedly false or misleading, Canup's reliance through Gamble, and the resulting 9% assignment. It further alleges that AWKO Defendants' nondisclosures and related conduct caused identifiable injuries independent of Canup's later settlement with 3M, including unnecessary fees and expenses, entry into the Participation Agreement, loss of its promised benefits, and equitable injuries arising from alleged fiduciary disloyalty.

Finally, Canup alleges concrete, individualized injuries and seeks remedies recognized under Texas law. Texas fiduciary-duty law permits forfeiture, disgorgement, and an accounting where a fiduciary obtains or preserves benefits through disloyal conduct, even without proof that the funds previously belonged to the principal. Accepting the well-pleaded allegations as true and drawing all reasonable inferences in Canup's favor, the Amended Complaint plausibly states claims for fraud by nondisclosure, breach of fiduciary duty, fraudulent inducement, and civil conspiracy. AWKO Defendants' competing factual characterization provides no basis for dismissal, much less dismissal with prejudice.

## II.    BACKGROUND

This action is now governed by Canup's First Amended Complaint, which asserts causes of action for fraud by nondisclosure, breach of fiduciary duty, fraudulent inducement, and civil conspiracy. *See* Dkt. 60 ¶¶ 136–203. The lawsuit arises from the *In re: 3M Combat Arms Earplugs Litigation* (the "MDL"), a multi-district litigation proceeding involving claims by service members and veterans against 3M Company ("3M") based upon allegations that its Combat Arms Earplugs were defective. Canup, an MDL claimant, was initially represented by FNJ Defendants[4] and Cliff

---

[4] FNJ Defendants refers to Gregory Brown and Fleming, Nolen & Jez, LLP.

Roberts, collectively ("Texas Defendants"). Ultimately, in 2023, after several bellwether trials, 3M entered into a Master Settlement Agreement ("MSA") to resolve the claims in the MDL, which involved the creation of a "benefits program" out of which the attorneys would be paid.

Importantly, the MSA is a private agreement that was voluntarily entered into by participating counsel in the MDL, including Defendants in this action. Also of note, the amount to be paid by 3M under the MSA was dependent on participation levels of eligible claimants. The terms that participating counsel voluntarily agreed to obligated every attorney representing a claimant who had filed a case in the MDL to cease developing their clients' cases in the MDL as of the settlement date, August 29, 2023, recommend to 100% of their clients to agree to the MSA and register in the "benefits program" thereunder and withdraw from representing claimants that chose to opt out of the MSA. After realizing that Texas Defendants were not actively working on his case, in January of 2024, Canup retained David Gamble to pursue his claims against 3M. Canup rejected the MSA and Texas Defendants withdrew as his counsel, as they had voluntarily agreed with 3M and other participating counsel to do.[5] During this same period, AWKO Defendants, along with Michael Burns and Mostyn Law Firm, PC, injected themselves into Canup's litigation with 3M through ongoing communications and interactions with Canup spanning from February 22, 2024, through April 25, 2024. After several more months of litigation and after Canup had initiated an appeal of one of the MDL Court's Orders, 3M agreed to settle Canup's claims independently of the MSA.

---

[5] Texas Defendants delayed withdrawing from Canup's case, Canup opted out of the MSA on January 21, 2024 and Gregory Brown filed his motion to withdraw on February 15, 2024, one week before a major production deadline in Canup's case and more than five months after Texas Defendants agreed with 3M and other participating counsel to cease developing Canup's case in the MDL. *See* Dkt. 37, Ex. 2, Docket Report, *Canup v. 3M Co. et al.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla.); *see also* MDL Settlement Agreement, MSA 1 at 6 and ¶ 8.1.4 at 20, *https://www.uscourts.gov/courts/flnd/3M-MSA_1.pdf* (last accessed May 12, 2026).

Canup filed this action in Tarrant County, Texas, on October 27, 2025. Gregory Brown improperly removed it to the Northern District of Texas on November 6, 2025, and Canup moved to remand on November 21, 2025. *See* Dkt. 8. Bryan Aylstock ("Aylstock") thereafter sought transfer to the MDL Court, while FNJ Defendants opposed remand, sought a stay pending transfer, and moved to dismiss. *See* Dkts. 10, 12, 14, 15, 23. The JPML transferred the action on April 2, 2026. *See* Dkt. 30.

After transfer, Canup moved for leave to amend, for recusal and disqualification, and for a suggestion of remand. *See* Dkts. 34–35, 37–38. The Court granted leave to amend on May 6, 2026, and Canup filed the Amended Complaint on May 12, 2026. Dkt. 54. On May 17, 2026, the Court denied recusal. *See* Dkt. 61 at 5–10. AWKO Defendants filed the present renewed Motion to Dismiss on May 26, 2026, again asserting that their only interactions with Canup occurred on behalf of Plaintiffs' MDL Leadership at the Court's request. *See* Dkt. 66 at 2–3, 13–17. On May 27, 2026 Mostyn Law Firm, PC filed its procedurally defective Motion to Dismiss. *See* Dkt. 67, 75.

On May 29, 2026, the Court denied remand, finding federal-question jurisdiction over Canup's state-law claims and treating Mostyn's Motion to Dismiss as implied consent to removal, although the Court declined to determine whether Mostyn had been properly served. *See* Dkt. 70 at 15–17. Mostyn had filed that motion two days prior, approximately ninety minutes after the court-ordered deadline and more than six months after it was properly served. *See* Dkts. 67, 75, 91. The motion did not address removal, remand, consent, or sufficiency of service. *See* Dkt. 67.

On May 30, 2026, Canup petitioned the Eleventh Circuit for a writ of mandamus seeking Judge Rodgers's recusal and disqualification under 28 U.S.C. §§ 455(a) and 455(b)(1), vacatur of the order denying recusal, and related relief. *See* Dkt. 73. On June 3, 2026, Mostyn moved to have

its Motion to Dismiss accepted as timely and asserted improper service for the first time. *See* Dkt. 75. On June 5, 2026, Canup moved for reconsideration of the remand order or, alternatively, certification under 28 U.S.C. § 1292(b), and requested a stay. *See* Dkt. 77. Canup later opposed Mostyn's timeliness motion and again requested a stay. *See* Dkt. 91. On June 22, 2026, Canup filed a motion in the Eleventh Circuit seeking a stay of the district-court proceedings pending review of his mandamus petition. *See* Dkt. 97. Those matters remain pending.

### III.   ARGUMENT AND AUTHORITY

#### A. Legal Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor, and determine only whether the complaint states a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 563 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Scheuer v. Rhodes*, 416 U.S. 232, 236(1974); *Kirby v. Siegelman,* 195 F.3d 1285, 1289 (11th Cir. 1999). To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512.

Dismissal is improper based on disbelief of the allegations, perceived improbability of success, or a prediction that the plaintiff will fail to prove his claims. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Twombly*, 550 U.S. at 556, 563 n.8. The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *See Swierkiewicz,* 534 U.S. at 511 (quoting *Scheuer,* 416 U.S. at 236); *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 881 (11th Cir. 2003).

Courts in the Eleventh Circuit apply a less stringent standard to *pro se* pleadings than to those drafted by attorneys and construe them liberally. *See Taveras v. Bank of America, NA*, 89 F. 4th 1279 (11th Cir. 2024); *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998); *Fernandez v. United States,* 941 F.2d 1488, 1491 (11th Cir.1991); *Haines v. Kerner*, 404 U.S. 519, 520; *Erickson v. Pardus*, 551 U.S. 89, 94.

### B. Argument

#### 1. Texas Law Governs Canup's Claims

AWKO Defendants contend that Florida law governs Canup's claims because the challenged conduct allegedly occurred in Florida and certain proceedings took place in the Northern District of Florida. *See* Dkt. 66 at 30–32. That argument is incorrect.[6]

This action was originally filed in Texas and temporarily transferred to this Court pursuant to 28 U.S.C. § 1407. *See* Dkt. 30. A § 1407 transfer does not change the substantive law applicable to the transferred action. The Supreme Court has recognized that a transfer between federal courts effects a change of courtrooms, not a change in governing law. *See Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990). In the multidistrict-litigation context, the transferee court applies the same state law, including choice-of-law rules, that the transferor court would have applied. *See In re Air Disaster at Ramstein Air Base, Germany,* 81 F.3d 570, 576 (5th Cir. 1996); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,* 97 F.3d 1050, 1055 (8th Cir. 1996). Because this action was filed in Texas, the relevant inquiry is what law the Northern District of Texas would have applied.

The Northern District of Texas would apply Texas choice-of-law rules. Under those rules, the law of the state with the most significant relationship to the particular issue governs. Here, the

---

[6] This Court is not exercising diversity jurisdiction. *See* Dkt. 70 at 9 n.7 ("Complete diversity is not met.").

Amended Complaint alleges that Canup is a Texas resident, that material communications were directed to Canup and Gamble in Texas, that the alleged duties arose in substantial part from conduct directed into Texas, and that the resulting injuries were suffered in Texas. *See* Dkt. 60 ¶¶ 79–80, 95. Those contacts support application of Texas substantive law.

AWKO Defendants' analysis also ignores substantial Texas contacts alleged in Canup's First Amended Complaint ("Amended Complaint"). *See* Dkt. 60. Canup resides in Tarrant County, Texas, relied upon Defendants' representations there, and alleges that the effects of Defendants' conduct were knowingly directed toward and suffered in Texas. *See id*. ¶¶ 2, 20–23. Bradford initiated and directed emails and telephone calls concerning Canup's individual claim to Canup through Gamble while both Canup and Gamble were in Tarrant County. Those communications concerned Canup's medical claims, damages, potential recovery, confidential information, litigation posture, and legal guidance regarding the MSA. *See id.* ¶¶ 79–80. Bradford later directed additional communications into Texas conditioning access to Canup's case materials on execution of the Participation Agreement, transmitted the agreement and unredacted Master Complaint to Gamble in Texas, and offered further assistance concerning Canup's claim. *See id.* ¶ 95.

The Amended Complaint also alleges coordinated conduct involving Texas Defendants and Mostyn, a Texas professional corporation. It alleges that out-of-state Defendants acted in concert with Texas Defendants, that Texas Defendants communicated information received from Plaintiffs' Leadership to Canup in Texas, and that Burns acted within the course and scope of his employment, partnership, or agency with Mostyn. *See id.* ¶¶ 4, 8, 17, 26, 49–52, 57–61, 63, 72, 147–148, 163. Consistent with those allegations, the appearance page of the transcript attached to AWKO Defendants' Motion identifies Burns as appearing from Mostyn Law Firm. *See* Dkt. 66 at 38. These allegations describe communications and coordinated conduct directed into Texas,

reliance and injury in Texas, and involvement by Texas defendants and a Texas law firm. AWKO Defendants' assertion that the relationship was centered "entirely" in Florida is therefore inconsistent with the Amended Complaint.

AWKO Defendants also assert that Florida and Texas law are "substantially similar." *See id*. 66 at 30 n.7. The differences are material here. AWKO Defendants rely on Florida authority applying a subjective-belief test to the existence of an attorney-client relationship, while Texas law applies an objective test based on the parties' words and conduct. Compare *The Fla. Bar v. Beach,* 675 So. 2d 106, 109 (Fla. 1996), with *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 405–06 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). Texas law also permits equitable remedies for an attorney's breach of fiduciary duty without proof of actual damages. *Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex. 1999). Those differences directly affect AWKO Defendants' arguments regarding duties, fiduciary liability, damages, and equitable relief.

Accordingly, Texas law governs Canup's claims, and AWKO Defendants' reliance on Florida choice-of-law principles provides no basis for dismissal.

### 2. Canup Has Plausibly Alleged an Attorney-Client Relationship and Fiduciary Duties

AWKO Defendants contend that Canup cannot establish an attorney-client relationship, implied attorney-client relationship, quasi-attorney-client relationship, or fiduciary relationship as a matter of law. *See* Dkt. 66 at 13. The argument rests largely upon Defendants' characterization of the alleged conduct as nothing more than generalized MDL leadership communications undertaken pursuant to court-appointed responsibilities. *See generally* Dkt. 66. The Amended Complaint alleges substantially more. *See generally* Dkt. 60.

Under Texas law, an attorney-client relationship is a contractual relationship that may be established either expressly or impliedly from the conduct of the parties. *Vinson & Elkins v. Moran,*

946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *Parker v. Carnahan,* 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied). The determination is based upon objective manifestations of intent reflected by what the parties said and did, not their subjective states of mind. *Moran,* 946 S.W.2d at 405–06; *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 253–54 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Moreover, Texas courts recognize that an attorney-client relationship may arise through conduct even in the absence of a formal retention agreement or fee arrangement, and that the existence of such a relationship frequently presents a question of fact. *Parker,* 772 S.W.2d at 156; *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 265 (Tex. App.—Corpus Christi 1991, writ denied); *Tanox,* 105 S.W.3d at 254. Texas law further recognizes that an attorney may owe duties where his conduct would lead a reasonable person to believe representation exists and the attorney fails to clarify otherwise. *Parker,* 772 S.W.2d at 157. Once an attorney-client relationship exists, fiduciary duties arise as a matter of law. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 199–200 (Tex. 2002); *Burrow,* 997 S.W.2d at 237–38.

The Amended Complaint alleges far more than Canup's subjective belief that AWKO Defendants represented him. It alleges objective conduct directed toward Canup's individual claim, including communications initiated and directed into Texas by Bradford concerning Canup's case, discussions regarding settlement options and potential avenues of recovery, review of case-specific information and medical records, participation in proceedings concerning Canup's individual claim, and continued communications with Canup and Gamble following those proceedings. *See* Dkt. 60 ¶¶ 79–95. The Amended Complaint further alleges conduct that would permit a reasonable factfinder to conclude that AWKO Defendants accepted duties owed directly to Canup. *See id.* Under the objective standards recognized by Texas law, those allegations are sufficient to plausibly

10

allege an attorney-client relationship, fiduciary duties arising from that relationship, or, at a minimum, factual issues that cannot be resolved on a Rule 12(b)(6) motion.

AWKO Defendants repeatedly attempt to characterize these allegations as merely "generalized litigation-management communications" or routine MDL leadership activities. *See* Dkt. 66 at 17. That characterization is inconsistent with the allegations of the Amended Complaint. Canup does not allege that AWKO Defendants became his attorneys merely because they held leadership positions, attended the March 13, 2024 proceedings, or were identified as appearing "FOR THE PLAINTIFF" in the transcript. Rather, Canup alleges individualized communications and conduct directed toward him and his specific claim. *See* Dkt. 60 ¶¶ 79–95. Whether those actions were undertaken solely as generalized MDL leadership functions, as AWKO Defendants contend, or whether they gave rise to duties owed directly to Canup presents a disputed issue that cannot be resolved by accepting Defendants' characterization of the facts on a Rule 12(b)(6) motion. *See Tanox,* 105 S.W.3d at 254 ("A question of fact exists when the evidence does not conclusively establish the existence of an attorney-client relationship.").

The existence of separate counsel likewise does not resolve the issue. AWKO Defendants repeatedly emphasize that Gamble represented Canup during the relevant time period, that many communications occurred through Gamble and that Canup never formally retained AWKO Defendants. *See* Dkt. 66 at 14–18. None of these facts defeat Canup's allegations. Under Texas law, an attorney-client relationship is an agency relationship. *Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690, 693 (Tex. 1986). An agent acts on the principal's behalf, and "the agent and principal generally are considered one and the same with respect to acts within the relationship's scope." *Murray Lobb, PLLC v. Liss,* No. 14-24-00694-CV, slip op. at 6–7 (Tex. App.—Houston [14th Dist.] Mar. 31, 2026, no pet. h.); *see also Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen,* 525

11

S.W.3d 671, 697 (Tex. 2017); *Holloway v. Skinner,* 898 S.W.2d 793, 795–96, 798 (Tex. 1995). Communications directed to Gamble concerning Canup's individual claim therefore do not create a legal barrier between AWKO Defendants and Canup; they are consistent with communications directed to Canup through his agent. Nor does Gamble's representation categorically preclude the formation of duties owed by another attorney or law firm. In *Vinson & Elkins v. Moran,* the court upheld a finding of an attorney-client relationship notwithstanding evidence that the beneficiaries had separate counsel, did not personally hire the law firm, and that many communications occurred through their own attorneys. 946 S.W.2d 381, 404–05 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). The court expressly rejected the argument that the existence of separate counsel precluded an attorney-client relationship, observing that "a client hires more than one attorney does not mean, in and of itself, she only has an attorney-client relationship with only one of the attorneys." *Id.* at 405.

Accordingly, neither Gamble's representation of Canup nor the absence of a formal retention agreement establishes, as a matter of law, that AWKO Defendants could not have undertaken duties owed directly to Canup. To the contrary, the Amended Complaint alleges that AWKO Defendants initiated communications concerning Canup's individual claim, discussed case-specific settlement options and potential avenues of recovery, obtained and reviewed confidential information and medical records, participated in proceedings concerning Canup's individual case, and continued communications with Canup and Gamble following those proceedings. *See* Dkt. 60 ¶¶ 79–95. At most, AWKO Defendants identify facts they believe weigh against Canup's allegations. Those competing factual inferences cannot be resolved on a Rule 12(b)(6) motion.

Nor is Canup's claim dependent upon the transcript notation identifying Aylstock, Bradford, and Burns as appearing "FOR THE PLAINTIFF." AWKO Defendants devote substantial attention to that notation[7] while largely ignoring the broader allegations of individualized communications, case-specific discussions, review of confidential information, participation in proceedings concerning Canup's claim, and post-hearing communications directed toward Canup and Gamble. *See id.* The transcript notation is one factual allegation among many. Even if AWKO Defendants dispute its significance, the Amended Complaint contains numerous additional factual allegations supporting the existence of duties owed directly to Canup. *Id*. Indeed, Texas courts have recognized that the existence of an attorney-client relationship must be established through objective manifestations reflected by the parties' statements and conduct rather than subjective belief. *See Moran,* 946 S.W.2d at 406 (upholding finding of attorney-client relationship where the evidence was based primarily upon the law firm's statements and actions, which constituted the type of "objective manifestations" supporting a contractual relationship). As the court explained, "[i]t is not enough that one party thinks he has made a contract, there must be objective indications." *Id.* Accordingly, the existence of an attorney-client relationship cannot be determined based solely upon subjective beliefs, but instead must be evaluated based upon the objective manifestations reflected in the parties' words and conduct. The Amended Complaint alleges precisely such objective conduct here. *See* Dkt. 60 ¶¶ 79–95.

The Amended Complaint also plausibly alleges breach and nondisclosure. It alleges that AWKO Defendants failed to disclose MSA-related conflicts, financial incentives, and obligations affecting their conduct toward Canup; obtained and used confidential and case-specific information while operating under those undisclosed conflicts; and participated in Canup's

---

[7] AWKO Defendants mischaracterize the transcript. It shows only that they were present and participated; it does not establish that they acted at the Court's request or within the scope of any court-appointed duties. *See* Dkt. 66 at 15.

individual matter without fully disclosing the nature and scope of their role. *See* Dkt. 60 ¶¶ 49–52, 79–95, 136–164. Those allegations plausibly plead both the failure to disclose material information and conduct inconsistent with the duties of loyalty, candor, and full disclosure allegedly owed to Canup.

Ultimately, AWKO Defendants ask the Court to conclude that their conduct amounted only to generalized MDL leadership activities. AWKO Defendants' own description of routine MDL leadership functions underscores the problem with their argument. The Amended Complaint does not rest on generalized settlement communications or responses to claimant inquiries; it alleges individualized, case-specific conduct concerning Canup's medical records, litigation strategy, settlement options, confidential information, and access to his case materials, conduct that falls outside the limited leadership functions AWKO Defendants themselves identify. *See* Dkts. 66 at 17; 60 ¶¶ 79–95. AWKO Defendants therefore ask the Court to accept their characterization of that conduct and resolve disputed factual inferences in their favor. When the pleaded allegations are accepted as true, however, the Amended Complaint plausibly alleges duties owed directly to Canup.

### 3. Canup Has Plausibly Alleged Fraudulent Inducement

AWKO Defendants repeatedly conflate the Participation Agreement with the Protective Order. *See* Dkt. 66 at 2, 10, 20–22. The Amended Complaint does not challenge the Protective Order or allege that Canup was fraudulently induced into executing it. The Protective Order is mentioned only for context because it was transmitted with the Participation Agreement. The fraudulent inducement claim concerns the separate Participation Agreement[8] and the

---

[8] *See* Common Benefit Order No. 3, *In Re: 3M Combat Arms Product Liability Litigation*, Case No. 3:19md2885, United States District Court for the Northern District of Florida, Pensacola Division, February 17, 2021, (Dkt. 1659).

representations made in connection with that agreement.[9] *See* Dkt. 60 ¶¶ 95, 166–178. Common Benefit Order No. 3 did not require counsel to execute the Participation Agreement. The Order characterized the Agreement as voluntary and as a private and cooperative agreement between plaintiffs' attorneys who elected to sign it.

Under Texas law, fraudulent inducement requires a material misrepresentation that was false and either known to be false when made or asserted without knowledge of its truth, that was intended to be acted upon, relied upon, and caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998). A promise of future performance is actionable when made with no intention of performing at the time it is made. *Id.* at 48; *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009). Intent not to perform may be shown by circumstantial evidence, and while failure to perform alone is not enough, it may be considered with other facts. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex. 1986).

The Amended Complaint plausibly alleges each element. It alleges that Bradford conditioned access to common-benefit materials, including the unredacted Master Complaint, on execution of the Participation Agreement and represented that execution of the agreement would provide access to additional common-benefit work product. *See* Dkt. 60 ¶¶ 95, 166. Those representations were material because access to those materials was the stated purpose of the Participation Agreement itself. The Amended Complaint further alleges that Gamble, with Canup's consent, executed the Participation Agreement in reliance upon those representations, causing Canup to become bound by an agreement assigning Plaintiffs' Leadership a 9% interest in any future recovery while allegedly never receiving the promised common-benefit materials and work product. *See id*. ¶¶ 36, 95, 173–180.

---

[9] Canup respectfully requests that the Court take judicial notice of Common Benefit Order No. 3 and its contents.

The fraudulent-inducement allegations also satisfy Rule 9(b). The Amended Complaint identifies Bradford as the speaker, the April 24–25, 2024 communications as the time and means of the representations, and the promised access to common-benefit materials and work product as the substance of the representations. *See id.* ¶¶ 95, 166–178. It further alleges why those representations were misleading, how Gamble acted on them with Canup's consent, and what Defendants obtained as a result, the purported assignment of a 9% interest in Canup's future recovery. *See id.* ¶¶ 36, 169–180. These allegations identify the who, what, when, how, and resulting benefit with sufficient particularity to give AWKO Defendants notice of the misconduct alleged.

The Amended Complaint also alleges more than mere nonperformance. It alleges that the representations were false when made because Bradford did not have the present intent to perform as he had already agreed to the MSA, which required participating attorneys to cease developing MDL claims, making the promised access to common-benefit materials and work product inconsistent with those obligations. *See id*. ¶¶ 39–43, 169–170. It further alleges that Bradford failed to disclose material facts concerning the MSA and its effect on the promised access to those materials. *See id.* ¶¶ 169–170. A duty to disclose may arise where a party makes a partial disclosure that creates a false impression or fails to disclose facts necessary to make prior representations not misleading. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC,* 572 S.W.3d 213, 220 (Tex. 2019); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337–38 (Tex. 2011).

AWKO Defendants' remaining arguments depend on disputed factual inferences regarding intent, reliance, availability of materials, consistency with the MSA, and causation. Those issues cannot be resolved on a motion to dismiss. Accepting the allegations as true and drawing all

reasonable inferences in Canup's favor, the Amended Complaint plausibly alleges that Canup executed the Participation Agreement in reliance on representations AWKO Defendants never intended to perform and suffered injury as a result.

### 4. Canup Has Plausibly Alleged Proximate Cause

AWKO Defendants' causation argument rests largely on the fact that Canup was represented by independent counsel, rejected AWKO Defendants' settlement recommendation, and later settled with 3M. *See* Dkt. 66 at 23–25. That argument mischaracterizes both the claims asserted and the injuries alleged.

Under Texas law, proximate cause requires cause in fact and foreseeability. *Stanfield v. Neubaum,* 494 S.W.3d 90, 97–98 (Tex. 2016). Cause in fact exists when the defendant's act or omission was a substantial factor in bringing about the harm and the harm would not have occurred absent that act or omission. *Id.; Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.,* 299 S.W.3d 106, 122 (Tex. 2009). Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the act or omission. *Stanfield,* 494 S.W.3d at 98. Proximate cause is generally a question of fact and may be resolved as a matter of law only when reasonable minds could not differ. *Doe v. Boys Clubs of Greater Dall., Inc.,* 907 S.W.2d 472, 477–78 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549–50 (Tex. 1985).

The Amended Complaint does not allege that AWKO Defendants caused Canup to accept an unfavorable settlement or that Canup's claims depend on proving a different settlement outcome. Instead, it alleges injuries that occurred before and independently of the later 3M settlement.

First, the Amended Complaint alleges that AWKO Defendants failed to disclose the nature and scope of their intended participation in the March 13, 2024 proceedings, including their

17

intended involvement in Canup's individual matter and their use of and access to confidential information. *See* Dkt. 60 ¶¶ 79–92. Canup was ordered to appear with counsel and incurred fees and expenses for Gamble's preparation, attendance, travel, and lodging because he was unaware of the nature and scope of AWKO Defendants' intended participation in his individual matter. *See id.* ¶¶ 77, 81–84, 91–92. The Amended Complaint alleges that, as a direct and proximate consequence of that nondisclosure, Canup incurred $6,520.00 in attorney's fees and $884.59 in related travel and lodging expenses that would not otherwise have been incurred. *See id.* ¶ 92.

Second, the Amended Complaint alleges a separate causal chain concerning the Participation Agreement. It alleges that Bradford conditioned access to the unredacted Master Complaint on execution of a voluntary Common Benefit Work Participation Agreement assigning a 9% interest in any recovery to the PSC, even though the Master Complaint was already part of Canup's case materials. *See id.* ¶ 95. It further alleges that Bradford represented that execution of the agreement would provide access to common-benefit materials and work product, that those representations were false when made, and that Canup relied on them by agreeing to the 9% allocation. *See id.* ¶¶ 166–178. Texas law permits recovery for losses proximately caused by fraudulent inducement, including out-of-pocket and benefit-of-the-bargain damages where properly alleged. *See Formosa Plastics,* 960 S.W.2d at 49–50; *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816–17 (Tex. 1997).

Third, the Amended Complaint alleges that AWKO Defendants' breaches of fiduciary duty enabled them to obtain or preserve financial benefits through the MSA and caused Canup to act and incur expenses that otherwise would not have been incurred. *See* Dkt. 60 ¶¶ 136–145, 153–164. Those alleged injuries arise from undisclosed conflicts, nondisclosures, misuse of confidential information, participation in Canup's proceedings, fraudulent inducement into the Participation

18

Agreement, assignment of a 9% interest in future recovery, loss of promised common-benefit materials, and benefits allegedly obtained through breaches of duties owed to Canup. They do not depend on the amount of Canup's later settlement with 3M.

Nor does Gamble's involvement or Canup's later settlement categorically break the causal chain. AWKO Defendants allegedly communicated with Gamble concerning Canup's individual claim, obtained case-specific information through those communications, participated in proceedings concerning Canup's claim, and made representations concerning the Participation Agreement. *See* Dkt. 60 ¶¶ 79–99. Whether those actions were a substantial factor in causing the injuries alleged is a factual question that cannot be resolved on a motion to dismiss.

Accepting the allegations as true and drawing all reasonable inferences in Canup's favor, the Amended Complaint plausibly alleges that AWKO Defendants' conduct proximately caused the injuries alleged.

### 5. Canup Has Plausibly Alleged Conspiracy

AWKO Defendants argue that the conspiracy claim fails because the Amended Complaint does not plausibly allege an agreement, fails to identify overt acts, and fails to state an underlying tort. *See* Dkt. 66 at 25–26. That argument is incorrect.

Under Texas law, civil conspiracy requires a combination of two or more persons, an object to be accomplished, a meeting of the minds on the object or course of action, one or more unlawful overt acts, and damages as the proximate result. *Agar Corp. v. Electro Circuits Int'l, LLC,* 580 S.W.3d 136, 142 (Tex. 2019); *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.,* 975 S.W.2d 546, 553 (Tex. 1998). A conspiratorial agreement need not be formal or express; it may be tacit and may be established by circumstantial evidence and reasonable inferences. *See Bradt v. Sebek,* 14 S.W.3d 756, 766 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex. 1968).

19

The Amended Complaint alleges each element. It alleges that all Defendants entered into an express or tacit agreement on or about August 29, 2023, to act in concert to increase financial compensation tied to claimant participation in the MSA, including by attempting to induce Canup to participate in the settlement. *See* Dkt. 60 ¶ 188. It further alleges a meeting of the minds based on Defendants' coordinated conduct, shared participation in and operation under the MSA, knowledge of the MSA and its material terms, acceptance of those terms through conduct, and actions taken in conformity with the MSA's requirements and financial incentives. *See id*. ¶¶ 49–52, 189.

The Amended Complaint also identifies overt acts allegedly taken in furtherance of the conspiracy, including concealment of conflicts, nondisclosure of MSA obligations, false or misleading statements, withholding of material information, conditioning access to case materials on execution of a participation agreement assigning a 9% interest in Canup's recovery, appearing on Canup's behalf without disclosure, and obtaining and using confidential information while operating under undisclosed conflicts. *See id*. ¶¶ 190–193. It further alleges resulting damages, including unnecessary expenses, expert-related and litigation costs, and additional time and effort required to respond to and investigate Defendants' conduct. *See id*. ¶¶ 195–201. These allegations satisfy the overt-act and damages requirements. *See Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005); *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex. 1998).

AWKO Defendants' derivative argument also fails. Civil conspiracy depends on participation in an underlying tort. *See Agar,* 580 S.W.3d at 140–42; *Chu v. Hong,* 249 S.W.3d 441, 444 (Tex. 2008) ("it can support the judgment if there was some evidence of a conspiracy to commit any of the three other torts in the charge"). For the reasons discussed above, the Amended Complaint plausibly alleges fraud by nondisclosure, breach of fiduciary duty, and fraudulent

inducement. Accepting the allegations as true and drawing all reasonable inferences in Canup's favor, the conspiracy claim is sufficiently pled and should not be dismissed.

### 6. AWKO Defendants' Challenges to Equitable Relief Do Not Warrant Dismissal

AWKO Defendants characterize Canup's requests for disgorgement and an accounting as generalized grievances concerning MDL administration. *See* Dkt. 66 at 26–29. Canup does not waive, and expressly preserves, his objection to federal subject-matter jurisdiction and procedural defects in removal. But if the Court reaches AWKO Defendants' Article III argument, the Amended Complaint alleges injuries personal to Canup arising from alleged breaches of duties owed directly to him.

Those injuries include deprivation of loyal and conflict-free fiduciary conduct, concealment of material information concerning Defendants' financial interests and MSA-related obligations, use of Canup's confidential information while operating under undisclosed conflicts, and Defendants' alleged acquisition or preservation of financial benefits through that disloyal conduct. *See* Dkt. 60 ¶¶ 49–52, 136–145, 153–164. Those are individualized injuries tied to Canup and to duties allegedly owed to him; they are not generalized grievances concerning MDL administration.

AWKO Defendants also argue that Canup lacks an ownership interest in the funds at issue. That argument conflates Article III standing with the substantive requirements of Texas fiduciary-duty remedies. Texas law does not limit fiduciary disgorgement or forfeiture to funds first owned or possessed by the principal. Rather, Texas law permits equitable relief where a fiduciary obtains, preserves, or becomes eligible for a benefit through disloyal conduct, even without proof of actual damages. *See Burrow v. Arce,* 997 S.W.2d 229, 237–40 (Tex. 1999); *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 873–74 (Tex. 2010). The purpose is not merely to compensate the

21

principal, but to protect relationships of trust and deter fiduciary disloyalty. *Burrow,* 997 S.W.2d at 238–40.

Texas law has long recognized that a fiduciary may be required to account for benefits obtained through breach of duty. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509, 514 (Tex. 1942); *City of Fort Worth v. Pippen,* 439 S.W.2d 660, 667 (Tex. 1969); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 200–03 (Tex. 2002). Texas courts have also recognized disgorgement of benefits received from third parties where the benefit was obtained through disloyal conduct. *See Tatum v. Preston Carter Co.,* 702 S.W.2d 186, 187–88 (Tex. 1986); *Kinzbach,* 160 S.W.2d at 514.

The Amended Complaint plausibly alleges that AWKO Defendants operated under undisclosed conflicts created by the MSA, provided guidance while their professional judgment was allegedly limited by those conflicts, failed to disclose material information, obtained or used confidential information, and obtained, preserved, or became eligible for financial benefits through the MSA and related common-benefit structure. *See* Dkt. 60 ¶¶ 49–52, 153–164, 183, 212–215. Canup therefore need not plead that AWKO Defendants physically possessed funds previously owned by him in order to seek equitable relief.

The accounting request likewise survives. Under Texas law, an accounting may be appropriate where there is a close fiduciary relationship or where the facts and accounts are sufficiently complex that adequate relief cannot be obtained at law. *Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836, 838–39 (Tex. 1967); *Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied). The Amended Complaint alleges an implied attorney-client relationship and fiduciary relationship, and it alleges that Defendants have information about the fees, agreements, financial incentives, MSA obligations, and compensation

arrangements that Canup does not have. *See* Dkt. 60 ¶¶ 49–52, 153–164, 183, 212–215. An accounting is sought to determine the nature, source, and disposition of fees, compensation, or benefits allegedly obtained or preserved through conduct giving rise to fiduciary duties and related claims.

Whether legal remedies are adequate, what benefits were obtained, and whether the circumstances justify disgorgement, forfeiture, or an accounting are fact-intensive issues not appropriately resolved on a Rule 12(b)(6) motion. Accepting the allegations as true and drawing all reasonable inferences in Canup's favor, AWKO Defendants have not shown that the requested equitable remedies are unavailable as a matter of law.

### 7.  AWKO Defendants' Damages Arguments Do Not Warrant Dismissal

AWKO Defendants argue that Canup cannot recover attorney's fees and travel expenses associated with the March 13, 2024 proceedings because those proceedings were court ordered. *See* Dkt. 66 at 29. That argument mischaracterizes the allegations of the Amended Complaint and the nature of the damages pled.

At the pleading stage, Canup need only plausibly allege damages caused by Defendants' conduct. *See Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555. Texas law permits recovery of actual and consequential damages proximately caused by wrongful conduct, including losses that are the natural, probable, and foreseeable result of the misconduct. *See Arthur Andersen.,* 945 S.W.2d at 816; *Formosa,* 960 S.W.2d at 49. Attorneys' fees incurred in prior litigation with a third party may also be recoverable as actual damages when caused by the defendant's wrongful conduct. *Turner v. Turner,* 385 S.W.2d 230, 234 (Tex. 1964).

The Amended Complaint does not allege that Canup was damaged merely because the March 13, 2024 proceedings occurred. Rather, it alleges that Defendants failed to disclose the nature and scope of their involvement and intended participation in Canup's individual matter

23

before the March 13, 2024 proceedings, causing Canup to incur fees and expenses that would not otherwise have been incurred. *See* Dkt. 60 ¶¶ 79–92. The governing order required Canup to appear in person with counsel; it did not require Gamble specifically, it did not require lead counsel for Canup, or otherwise mandate the particular fees and expenses alleged. Whether those expenses were caused by Defendants' nondisclosures and related conduct is a factual issue not resolvable on a motion to dismiss.

Texas law expressly recognizes that attorney's fees incurred in an underlying proceeding may constitute recoverable actual damages when the defendant attorney's conduct proximately caused those fees. In *Akin, Gump*, the Texas Supreme Court held that a plaintiff may recover fees paid for representation in the underlying case "to the extent the fees were proximately caused by the defendant attorney's negligence," because such fees constitute identifiable economic harm. 299 S.W.3d at 122. The same principle applies here: Canup does not seek fees merely because he retained Gamble or attended a court-ordered proceeding; he seeks the particular fees and related expenses allegedly incurred because AWKO Defendants failed to disclose the nature and scope of their own intended participation. Whether that alleged nondisclosure proximately caused those expenditures is a factual question, not a basis for dismissal as a matter of law.

AWKO Defendants' challenges to exemplary damages and equitable remedies are likewise premature. The Amended Complaint alleges intentional misconduct, fraud, concealment, breaches of fiduciary duty, and coordinated conduct among Defendants. *See* Dkt. 60 ¶¶ 136–203. It also seeks equitable remedies for fiduciary misconduct, including forfeiture and disgorgement, which Texas law permits even without proof of actual damages where appropriate to remedy or deter fiduciary disloyalty. *See Burrow,* 997 S.W.2d at 237–40; *ERI Consulting,* 318 S.W.3d at 873–74.

Accordingly, AWKO Defendants have not shown that Canup's pleaded damages or requested remedies are categorically unavailable as a matter of law. Accepting the allegations as true and drawing all reasonable inferences in Canup's favor, the Amended Complaint plausibly alleges damages and remedies sufficient to survive dismissal.

### 8. Canup is Not Attacking the MDL Settlement or MDL Orders

AWKO Defendants argue that the Amended Complaint is a "thinly veiled" attack on the MSA and MDL orders. *See* Dkt. 66 at 32–33. That argument mischaracterizes Canup's claims.

Canup references MDL orders only because they provide relevant factual context. *See* Dkt. 60 ¶¶ 53–54, 62–68, 77, 85. Canup references the MSA because Defendants' participation in it allegedly created conflicts, financial incentives, and obligations relevant to the duties owed to Canup, which Defendants failed to fully disclose before engaging in the conduct challenged here. *See id*. ¶¶ 38–52, 136–164. Those references are not attacks on the MSA or the MDL orders. Likewise, Canup does not challenge the sealed Master Complaint; he alleges that it was part of his case file, was necessary to evaluate his claim, and was withheld unless Gamble, with Canup's consent, executed the voluntary Participation Agreement. *See id*. ¶¶ 33, 95, 166–178.

Nor does Canup seek to impose liability based merely on AWKO Defendants' status as former MDL leadership. To the contrary, the Amended Complaint alleges that the relevant conduct occurred after leadership authority had been terminated or limited and was directed toward Canup's individual claim. *See id*. ¶¶ 53–54, 79–100. A collateral attack seeks to avoid, defeat, modify, or set aside the binding force of a prior judgment or order. *See Browning v. Prostok,* 165 S.W.3d 336, 345–46 (Tex. 2005). Canup does not ask this Court to vacate the MSA, modify any MDL order, reopen the settlement program, or unwind the resolution of the 3M litigation. He seeks relief only for misconduct allegedly directed toward him individually.

The JPML transfer order does not change that conclusion. A transfer under 28 U.S.C. § 1407 is not a merits ruling. The JPML has repeatedly recognized that jurisdictional objections do not prevent transfer because "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case[.]" *See In re Ivy,* 901 F.2d 7, 9 (2d Cir. 1990); *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.,* MDL No. 3047, Transfer Order at 2–3 (J.P.M.L. Apr. 3, 2025); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.,* MDL No. 2846, Transfer Order at 2–3 (J.P.M.L. Oct. 1, 2025). Accordingly, the JPML's transfer order does not establish that Canup's claims are collateral attacks or that AWKO Defendants are entitled to dismissal. Because Canup does not seek to unwind the MDL settlement or invalidate any MDL order, AWKO Defendants' collateral-attack argument provides no basis for dismissal.

### 9. Dismissal With Prejudice Is Not Warranted

AWKO Defendants' request for dismissal with prejudice depends on their assertion that amendment would be futile. *See* Dkt. 66 at 33. But the fact that Canup previously amended does not, by itself, justify dismissal with prejudice. *See Bryant v. Dupree,* 252 F.3d 1161, 1163–64 (11th Cir. 2001). Leave to amend may be denied for futility only when the amended complaint would still be subject to dismissal. *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004). For the reasons discussed above, the Amended Complaint states viable claims for relief. AWKO Defendants have not established futility, and dismissal with prejudice is therefore unwarranted.

### IV.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that the Court deny AWKO Defendants' Motion to Dismiss in its entirety and grant such other and further relief to which Canup may be entitled at law or in equity.

Alternatively, if the Court determines that any claim or allegation is insufficiently pled, Canup respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

Signed this 23rd day of June, 2026.                    Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Memorandum contains 7,912 words, inclusive of headings, footnotes, and quotations.

Brandon Canup