**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S RESPONSE TO MOSTYN LAW FIRM, PC'S MOTION TO DISMISS |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S RESPONSE IN OPPOSITION TO MOSTYN LAW FIRM, PC'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding *pro se*, hereby files his Response in Opposition to Mostyn Law Firm, PC's ("Mostyn") Motion to Dismiss. Dkt. 67. In support, Canup states as follows:

Canup preserves all objections previously asserted concerning removal and remand. This Response is submitted without waiver of those objections and subject to Canup's pending requests that these proceedings be stayed pending resolution of the mandamus proceedings. *See* Dkts. 73, 77, 91, 97. Canup files this Response solely to comply with the existing deadline and does not concede that further district-court proceedings should continue while those stay requests remain pending.

Canup also preserves and incorporates by reference his Response to Mostyn Law's Motion to Accept Motion to Dismiss as Timely, Dkt. 91, as if fully set forth verbatim herein. As explained there, Mostyn was properly served through its registered agent before removal; its response deadline expired; its later omission of any Rule 12(b)(5) defense resulted in waiver under Rules 12(g)(2) and 12(h)(1); its untimely motion cannot retroactively cure the lack of unanimous consent

1

to removal; and Mostyn has not established excusable neglect under Rule 6(b)(1)(B). Dkt. 91. Canup therefore responds to the merits of Dkt. 67 only conditionally and without conceding that the motion was timely, properly accepted, or legally effective for purposes of removal, remand, unanimity, or any other pending issue.

Canup responds to Mostyn's Motion to Dismiss subject to and without waiving his position that the motion should not be treated as properly before the Court unless and until the Court decides Canup's pending motion for reconsideration of the order denying remand. Dkts. 70, 77.

## I.    INTRODUCTION

The central factual premise of Dkt. 67 is contradicted by the transcript attached to the motion Mostyn adopts.[1] Dkt. 66. Mostyn argues that Michael Burns was not acting for Mostyn during the relevant period, yet the March 13, 2024 transcript lists Burns as appearing "FOR THE PLAINTIFF" through "Mostyn Law," using a Mostyn email address and Mostyn's Houston office address. *Id.* at 38. Mostyn therefore asks the Court to resolve a disputed agency issue in its favor despite a record exhibit it adopts in the instant motion supporting the opposite inference.

Mostyn does not meaningfully address the factual allegations concerning the March 13, 2024 proceedings, the settlement conference, the role of Burns, the appearance of Burns through Mostyn Law on Canup's behalf, the financial structure created by the participation agreements, or the reasonable inferences that arise from those facts. Instead, Mostyn asks the Court to dismiss all claims against it by accepting Mostyn's own factual assertion that Burns was not acting for Mostyn and by treating the agency issue as resolved before discovery.

---

[1] AWKO Defendants rely on "the hearing transcript from the March 13, 2024, Status Conference referenced in Plaintiff's Amended Complaint" and "request[s] the Court to take judicial notice of all docket references in this Motion to Dismiss." Dkt. 66 at 5 & n.3. AWKO Defendants refers to Bryan Aylstock, Bobby Bradford and Aylstock, Witkin, Kreis & Overholtz, PLC.

That is not a proper Rule 12(b)(6) basis for dismissal. At this stage, the Court must accept the well-pleaded allegations as true and draw all reasonable inferences in Canup's favor. Mostyn's motion should be denied.

## II.    BACKGROUND

This action is now governed by Canup's First Amended Complaint, which asserts causes of action for fraud by nondisclosure, breach of fiduciary duty, fraudulent inducement, and civil conspiracy. *See* Dkt. 60 ¶¶ 136–203. The lawsuit arises from the *In re: 3M Combat Arms Earplugs Litigation* (the "MDL"), a multi-district litigation proceeding involving claims by service members and veterans against 3M Company ("3M") based upon allegations that its Combat Arms Earplugs were defective. *See* Dkt. 60 ¶¶ 25–27. Canup, an MDL claimant, was initially represented by FNJ Defendants[2] and Cliff Roberts, collectively ("Texas Defendants"). *See id.* ¶ 28. Ultimately, in 2023, after several bellwether trials, 3M entered into a Master Settlement Agreement ("MSA") to resolve the claims in the MDL, which involved the creation of a "benefits program" out of which the attorneys would be paid. *See id.* ¶¶ 38, 42, 46.

Importantly, the MSA is a private agreement that was voluntarily entered into by participating counsel in the MDL, including Defendants in this action. *See id.* ¶¶ 47–51. Also of note, the amount to be paid by 3M under the MSA was dependent on participation levels of eligible claimants. *See id.* ¶ 42.  The terms that participating counsel voluntarily agreed to obligated every attorney representing a claimant who had filed a case in the MDL to cease developing their clients' cases in the MDL as of the settlement date, August 29, 2023, *id.,* .recommend to 100% of their clients to agree to the MSA and register in the "benefits program" thereunder and withdraw from representing claimants that chose to opt out of the MSA. *Id.* After realizing that Texas Defendants

---

[2] FNJ Defendants refers to Gregory Brown and Fleming, Nolen & Jez, LLP.

were not actively working on his case, in January of 2024, Canup retained David Gamble to pursue his claims against 3M. *See id*. ¶ 64. Canup rejected the MSA and Texas Defendants withdrew as his counsel, as they had voluntarily agreed with 3M and other participating counsel to do.[3] *See id*. ¶¶ 66, 78. During this same period, AWKO Defendants, along with Michael Burns and Mostyn Law Firm, PC, injected themselves into Canup's litigation with 3M through ongoing communications and interactions with Canup spanning from February 22, 2024, through April 25, 2024. *See id*. ¶¶ 79–92, 95. After several more months of litigation and after Canup had initiated an appeal of one of the MDL Court's Orders, 3M agreed to settle Canup's claims independently of the MSA. *See id*. ¶ 100.

Canup filed this action in Tarrant County, Texas, on October 27, 2025. Gregory Brown improperly removed it to the Northern District of Texas on November 6, 2025,[4] and Canup moved to remand on November 21, 2025. *See* Dkt. 8. Bryan Aylstock ("Aylstock") thereafter sought transfer to the MDL Court, while FNJ Defendants opposed remand, sought a stay pending transfer, and moved to dismiss. *See* Dkts. 10, 12, 14, 15, 23. The JPML transferred the action on April 2, 2026. *See* Dkt. 30.

After transfer, Canup moved for leave to amend, for recusal and disqualification, and for a suggestion of remand. *See* Dkts. 34–35, 37–38. The Court granted leave to amend on May 6, 2026,

---

[3] Texas Defendants delayed withdrawing from Canup's case, Canup opted out of the MSA on January 21, 2024 and Gregory Brown filed his motion to withdraw on February 15, 2024, one week before a major production deadline in Canup's case and more than five months after Texas Defendants agreed with 3M and other participating counsel to cease developing Canup's case in the MDL. *See* Dkt. 37, Ex. 2, Docket Report, *Canup v. 3M Co. et al.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla.); *see also* MDL Settlement Agreement, MSA 1 at 6 and ¶ 8.1.4 at 20, *https://www.uscourts.gov/courts/flnd/3M-MSA_1.pdf* (last accessed May 12, 2026).

[4] Brown removed this case despite being a non-diverse Texas defendant, and without ensuring all of his co-defendants consented to removal, including Mostyn Law Firm, P.C., another Texas Defendant who had already been properly joined and served. *See* Dkts. 1, 8, 9 at 2, 6–7. Brown filed the Notice of Removal and was the sole signatory. The docket entry, however, reflects participation by the AWKO Defendants, stating: "NOTICE OF REMOVAL filed by Gregory Donald Brown, Aylstock, Witkin, Kreis & Overholtz, PLL." *See* Dkt. 1; *see also* Docket Report, *Canup v. Aylstock, et al.*, No. 3:26-cv-03359-MCR-ZCB (N.D. Fla.)

and Canup filed the Amended Complaint on May 12, 2026. *See* Dkts. 54, 60. On May 17, 2026, the Court denied recusal. *See* Dkt. 61 at 5–10. AWKO Defendants filed their Motion to Dismiss on May 26, 2026, again asserting that their only interactions with Canup occurred on behalf of Plaintiffs' MDL Leadership at the Court's request. *See* Dkt. 66 at 2–3, 13–17. Mostyn filed the present procedurally defective Motion to Dismiss on May 27, 2026. *See* Dkts. 67, 75, 91.

On May 29, 2026, the Court denied remand, finding federal-question jurisdiction over Canup's state-law claims and treating Mostyn's Motion to Dismiss as implied consent to removal, although the Court declined to determine whether Mostyn had been properly served. *See* Dkt. 70 at 15–17. Mostyn had filed that motion two days prior, approximately ninety minutes after the court-ordered deadline and more than six months after it was properly served.[5] *See* Dkts. 67, 75, 91. The motion did not address removal, remand, consent, or sufficiency of service. *See* Dkt. 67.

On May 30, 2026, Canup petitioned the Eleventh Circuit for a writ of mandamus seeking Judge Rodgers's recusal and disqualification under 28 U.S.C. §§ 455(a) and 455(b)(1), vacatur of the order denying recusal, and related relief. *See* Dkt. 73. On June 3, 2026, Mostyn moved to have its Motion to Dismiss accepted as timely and asserted improper service for the first time. *See* Dkt. 75. On June 5, 2026, Canup moved for reconsideration of the remand order or, alternatively, certification under 28 U.S.C. § 1292(b), and requested a stay. *See* Dkt. 77. Canup later opposed Mostyn's timeliness motion and again requested a stay. *See* Dkt. 91. On June 22, 2026, Canup filed a motion in the Eleventh Circuit seeking a stay of the district-court proceedings pending review of his mandamus petition. *See* Dkt. 97. Those matters remain pending.

---

[5] *See* Dkts. 9-1, 9-3 (showing Mostyn was properly served on November 4, 2025, 2 days before removal, when it's registered agent Andrew Browning accepted the state court petition and citation); *see also* Dkts. 91–91-12.

### III.   ARGUMENT AND AUTHORITY

#### A.  Legal Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor, and determine only whether the complaint states a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 563 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Scheuer v. Rhodes*, 416 U.S. 232, 236(1974); *Kirby v. Siegelman,* 195 F.3d 1285, 1289 (11th Cir. 1999). To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512.

Dismissal is improper based on disbelief of the allegations, perceived improbability of success, or a prediction that the plaintiff will fail to prove his claims. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Twombly*, 550 U.S. at 556, 563 n.8. The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged*. See Swierkiewicz,* 534 U.S. at 511 (quoting *Scheuer,* 416 U.S. at 236); *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 881 (11th Cir. 2003).

Courts in the Eleventh Circuit apply a less stringent standard to *pro se* pleadings than to those drafted by attorneys and construe them liberally. *See Taveras v. Bank of America, NA*, 89 F. 4th 1279 (11th Cir. 2024); *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998); *Fernandez v. United States,* 941 F.2d 1488, 1491 (11th Cir.1991); *Haines v. Kerner*, 404 U.S. 519, 520; *Erickson v. Pardus*, 551 U.S. 89, 94.

### B. Argument

#### 1. Mostyn's Derivative-Liability Argument Rises or Falls With the Claims Against Burns and Bradford

Mostyn first argues that the claims against it fail because its liability is derivative of the claims against Burns and Bradford. Dkt. 67 at 2–3. Mostyn then adopts the motion to dismiss filed by Aylstock, Bradford, and AWKO to avoid duplicative briefing.[6] *Id.* at 3.

That argument provides no independent basis for dismissal. Mostyn expressly adopts the AWKO Defendants' motion to dismiss, Dkt. 66, and Canup therefore incorporates by reference his Response in Opposition to the AWKO Defendants' Motion to Dismiss, Dkt. 100, as if fully set forth verbatim herein. For the reasons stated in Dkt. 100, Canup has plausibly pleaded the underlying claims against Burns and Bradford. Mostyn's derivative-liability argument therefore does not support dismissal at this stage.

Mostyn's own Texas authority shows why. Under Texas law, respondeat superior does not impose liability on a principal unless the agent's conduct is actionable. *Johnson v. Sawyer,* 47 F.3d 716, 730 (5th Cir. 1995) (citing *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807 n.2 (Tex. 1980)). That rule is conditional. It helps Mostyn only if the underlying claims against Burns and Bradford fail. If an underlying claim against Burns or Bradford survives, derivative liability provides no basis to dismiss the corresponding claim against Mostyn at the pleading stage.

---

[6] Mostyn's assertion that Florida law may be applied because it is "substantially the same" as Texas law is incorrect. This action was filed in Texas and transferred under 28 U.S.C. § 1407, so this Court applies the substantive law and choice-of-law rules the Northern District of Texas would have applied. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990); *In re Air Disaster at Ramstein Air Base, Germany,* 81 F.3d 570, 576 (5th Cir. 1996). Texas has the most significant relationship to the disputed issues because Canup resides in Texas, material communications were directed into Texas, reliance and injury occurred in Texas, and Mostyn is a Texas professional corporation. *See* Dkt. 60 ¶¶ 2, 4, 8, 20–23, 79–80, 95, 147–48, 163. The laws are also not materially identical: Texas applies an objective test to the existence of an attorney-client relationship and permits equitable relief for breach of fiduciary duty without proof of actual damages. *See Vinson & Elkins v. Moran,* 946 S.W.2d 381, 405–06 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex. 1999). Canup incorporates by reference his fuller choice-of-law argument in Dkt. 100 as if fully set forth verbatim herein.

The Court therefore should reject Mostyn's attempt to obtain dismissal through a one-page adoption of other defendants' arguments.

### 2. The Complaint Plausibly Supports Mostyn's Liability Through Burns

Mostyn's principal argument is that Burns was not acting on Mostyn's behalf during the relevant events. Dkt. 67 at 3–4. That argument depends on disputed facts and inferences that cannot be resolved on a Rule 12(b)(6) motion. At this stage, the Court must accept the well-pleaded factual allegations as true and construe them in Canup's favor. *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1335 (11th Cir. 2012).

The First Amended Complaint does not merely label Burns as Mostyn's agent. It pleads specific facts supporting that relationship. Canup alleges that, "[a]t all times relevant to this case," Burns "was affiliated with Mostyn Law Firm," *See* Dkt. 60 ¶ 8, and that the MDL Court appointed "Burns of Mostyn" to plaintiffs' leadership in PTO 7[7], *see id.* ¶ 26. The Complaint further alleges that Burns acted with authority; that Mostyn is directly or vicariously liable for Burns's conduct; and that Burns's acts and omissions were committed within the course and scope of his employment, partnership, or agency. *See id.* ¶¶ 147–48, 163. It also alleges that Burns, as a member of the PSC, participated in and benefited from the settlement-related structure at issue, *see id.* ¶¶ 170, 175, and that Mostyn authorized conduct undertaken through that leadership structure, *see id.* ¶¶ 181–82. Mostyn itself acknowledges that the MDL Court appointed "Burns of Mostyn" to plaintiffs' leadership. Dkt. 67 at 4. Taken together, those allegations plead more than a bare legal conclusion; they identify Burns's affiliation with Mostyn, his formal designation as "Burns of

---

[7] The Amended Complaint expressly refers to PTO 7 and alleges that it appointed "Aylstock of AWKO and Burns of Mostyn" to plaintiffs' leadership. Dkt. 60 ¶ 26. AWKO cites PTO 7 and "request[s] the Court to take judicial notice of all docket references in this Motion to Dismiss." Dkt. 66 at 2 n.1, 5 n.3. Mostyn adopts that motion. Dkt. 67 at 3. Canup likewise requests judicial notice of Pretrial Order No. 7, Plaintiff Leadership Appointments, *In re 3M Combat Arms Prods. Liab. Litig.,* No. 3:19-md-2885, Dkt. 376 (N.D. Fla. May 22, 2019).

Mostyn," the authority under which he allegedly acted, the scope of the alleged agency relationship, and Mostyn's alleged responsibility for his conduct.

Mostyn nevertheless argues that Burns was no longer acting for Mostyn during the relevant misconduct. But that is Mostyn's factual defense, not a basis for dismissal. Mostyn asks the Court to accept its assertion that Burns left Mostyn in 2020, started Burns Law LLC, and thereafter did not act for Mostyn. *Id.* Those facts are not properly accepted as true against Canup at the pleading stage.

More importantly, the record attached to the motion Mostyn adopts contradicts Mostyn's factual premise. Mostyn adopts the motion to dismiss filed by Aylstock, Bradford, and AWKO. Dkt. 67 at 3. AWKO attached the March 13, 2024 hearing transcript to its motion. That transcript does not list Burns as appearing through Burns Law LLC. It lists Burns as appearing for Canup through Mostyn Law. Dkt. 66 at 38.

The First Amended Complaint alleges that Florida Defendants appeared at the MDL status conference on Canup's behalf and that the transcript lists Aylstock, Bradford, and Burns as appearing "FOR THE PLAINTIFF." *See* Dkt. 60 ¶ 81. The transcript attached to AWKO's motion provides additional detail: Burns was listed as appearing through "Mostyn Law," using a Mostyn email address and Mostyn's Houston office address. *See* Dkt. 66 at 38. This was a case-specific conference concerning Canup's individual claims against 3M, and Canup was the only MDL plaintiff present. *See* Dkt. 60 ¶ 82.

The same transcript therefore supports the reasonable inference that Burns appeared on Canup's behalf as an agent of Mostyn Law. That record is directly inconsistent with Mostyn's assertion that Burns had no relevant Mostyn affiliation during the alleged misconduct period. At a

9

minimum, the transcript creates a factual issue concerning Burns's authority, affiliation, and agency relationship with Mostyn that cannot be resolved on a Rule 12(b)(6) motion.

The allegations do not stop there. After the hearing, Canup and his counsel were taken to a closed-door settlement conference with Magistrate Judge Hope Cannon. *See id.* ¶ 83–84. Judge Cannon brought in Aylstock, Bradford, and Burns, and they gave individual legal advice, reviewed Canup's medical records, discussed Canup's case directly with him, and repeatedly pressured him to accept the MSA. *See id.* ¶ 84. Florida Defendants discussed CMO 57 requirements, the Personal Attenuation Rating process, Hidden Hearing Loss, testing needed for Canup's claims, and the consequences of a "clean" test result. *See id.* ¶¶ 85–87.

These allegations plausibly support the inference that Burns acted through Mostyn Law when he participated in case-specific discussions, provided legal advice, and pressured Canup to accept the MSA. Under Texas law, "[t]he status of agency is one of ultimate fact derived from underlying facts and may be found from either direct or circumstantial evidence." *See Stanford v. Dairy Queen Prods. of Tex.,* 623 S.W.2d 797, 800–01 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Agency is therefore generally a question of fact when the circumstances support competing reasonable inferences. *See Painter v. Momentum Energy Corp.,* 271 S.W.3d 388, 404 (Tex. App.— El Paso 2008, pet. denied). At minimum, the allegations and transcript support a reasonable inference that Burns acted for or through Mostyn Law and create a factual dispute concerning the existence and scope of that relationship that cannot be resolved against Canup on a Rule 12(b)(6) motion.

At the pleading stage, Canup is not required to prove agency. He must plead enough facts to make the theory plausible. The March 13, 2024 appearance by Burns through Mostyn Law, combined with the allegations of case-specific legal advice and settlement conduct, satisfies that

standard. Mostyn cannot defeat those reasonable inferences by asserting, without discovery, that Burns was not actually acting for Mostyn.

Mostyn's contrary assertion therefore cannot overcome the allegations and reasonable inferences arising from the transcript on a motion directed solely to the sufficiency of the pleadings.

### 3. Mostyn's Attack on the Bradford Allegations Does Not Require Dismissal of All Claims Against Mostyn

Mostyn separately argues that Canup's allegation that Bradford acted as its agent is conclusory. Dkt. 67 at 4–5. The Bradford-to-Mostyn theory is not the primary basis for Mostyn's liability; the principal theory runs through Burns. But the allegation concerning Bradford does not appear in isolation.

The First Amended Complaint alleges that the MDL Court appointed Burns to the PSC as "Burns of Mostyn." *See* Dkt. 60 ¶ 26. It further alleges that Bradford conditioned access to the unredacted Master Complaint on execution of the voluntary Participation Agreement assigning the PSC a 9% interest in any recovery Canup obtained. *See id.* ¶ 95. Thus, Bradford's alleged inducement directly conferred a financial interest on the PSC, of which Burns was a member. When considered with the allegations that Burns participated with Bradford in the related case-specific settlement discussions and that the challenged conduct was undertaken with the knowledge and authorization of PSC members, *Id.* ¶¶ 81–91, 170, 181–82, those facts plausibly support an inference that Bradford's conduct formed part of a coordinated course of conduct that Burns authorized, participated in, or accepted for the benefit of the PSC.

Those allegations provide the factual basis for the pleaded connection among Bradford's alleged inducement, Burns, Mostyn, and the financial interest created by the Participation Agreement. At the pleading stage, Canup need not prove the precise internal relationships among

Bradford, Burns, Mostyn, the PSC, and plaintiffs' leadership. He need only plead factual content permitting a reasonable inference of liability. *See Iqbal,* 556 U.S. at 678; *Chaparro,* 693 F.3d at 1335–37. Texas law likewise permits agency to be inferred from circumstantial evidence and the surrounding facts showing the parties' relationship. *See Stanford,* 623 S.W.2d at 800–01. Considered together, the allegations plausibly support the inference that Bradford's inducement formed part of a coordinated transaction that conferred a financial interest on the PSC, including Burns, while Burns was allegedly acting through Mostyn.

Even if the Court concludes that Canup has not sufficiently alleged that Bradford was Mostyn's direct agent, that would not warrant dismissal of the separate claims against Mostyn arising through Burns. At most, it would limit the Bradford-based theory or require further amendment; it would not dispose of Mostyn's potential liability for Burns's alleged conduct.

Mostyn identifies no independent defect in the elements of the claims asserted against it beyond the arguments adopted from Dkt. 66 and its challenge to agency. For the reasons stated in Canup's response to Dkt. 66, the underlying claims against Burns and Bradford are plausibly pleaded. And for the reasons stated above, the First Amended Complaint plausibly connects Burns's alleged conduct to Mostyn. Mostyn therefore has not established dismissal of any claim merely by characterizing its potential liability as derivative.

### 4. Mostyn's "Shotgun Pleading" Argument Does Not Justify Dismissal

Mostyn briefly suggests that Canup impermissibly lumps defendants together. Dkt. 67 at 1–2. That argument should be rejected.

The First Amended Complaint identifies Mostyn, alleges Burns's affiliation with Mostyn, identifies Burns of Mostyn's leadership role, alleges the March 13, 2024 appearance on Canup's behalf, describes the case-specific settlement conference, and pleads the Florida Defendants' role in providing legal advice, reviewing records, discussing Canup's claims, and pressuring Canup to

12

accept the MSA. *See* Dkt. 60 ¶¶ 8, 26, 79–86. The transcript attached to AWKO's motion and adopted by Mostyn confirms that Burns was listed as appearing "FOR THE PLAINTIFF" through "Mostyn Law." Dkt. 66 at 38. Mostyn's own motion demonstrates that it understands the theory asserted against it: it identifies Canup's theory as seeking to hold Mostyn liable through Burns and Bradford and then responds separately to each alleged agency relationship. Dkt. 67 at 2–4.

"The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313, 1323 (11th Cir. 2015). A complaint is not a shotgun pleading where it adequately places the defendants on notice of the specific claims and the factual allegations supporting them, even if it is not a model of efficiency or specificity. *Id.* at 1324. Here, the allegations identify Mostyn's alleged connection to Burns, the conduct attributed to Burns, and the basis on which Canup seeks to hold Mostyn liable. Mostyn's ability to identify and directly contest that theory confirms that the Complaint gives adequate notice. Mostyn's disagreement with the agency allegations and the inferences arising from them presents a merits issue, not a shotgun-pleading defect.

### 5. In the Alternative, Dismissal With Prejudice Would Be Improper Because Canup Has Not Had a Meaningful Opportunity to Amend as to Mostyn or Burns

Even if the Court concludes that Canup's allegations concerning Mostyn, Burns, or agency require additional factual detail, dismissal with prejudice would be improper. Canup proceeds *pro se* and has not had a meaningful opportunity to amend his allegations as to Mostyn or Burns in response to Mostyn's agency-based arguments.

The unusual procedural posture independently supports preserving Canup's opportunity to amend. Mostyn filed Dkt. 67 after the Court-ordered deadline, *see* Dkt. 54, and subsequently moved for retroactive acceptance of that filing. *See* Dkt. 75. That request remains disputed, and

13

Canup maintains that Dkt. 67 is not properly before the Court unless and until the Court grants Mostyn's motion to accept it as timely. *See* Dkt. 91. Yet, if Rule 15(a)(1)(B)'s twenty-one-day period is measured from the date Dkt. 67 was served, Canup's opportunity to amend as a matter of course has already expired even though the Court has not determined whether the motion is an operative filing.

That result prejudices Canup. He cannot reasonably be required both to treat Dkt. 67 as a nullity for purposes of opposing its retroactive acceptance and simultaneously treat it as an operative Rule 12 motion requiring amendment within twenty-one days. The uncertainty is compounded because Mostyn divided its position among multiple filings: Dkt. 67 raises Rule 12(b)(6) arguments and adopts the separate arguments in Dkt. 66, while Dkt. 75 raises service, waiver, response-deadline, and timeliness issues that ordinarily bear on whether and how Mostyn may proceed under Rule 12. Until the Court resolves Dkt. 75, Canup cannot know whether Dkt. 67 is properly before the Court or the full set of arguments that any amendment should address.

Accordingly, if the Court grants Dkt. 75, it should deem the Rule 15(a)(1)(B) period tolled while that motion was pending or, alternatively, extend or reopen that period under Rule 6(b)(1)(B) and permit Canup twenty-one days from the order accepting Dkt. 67 to amend as a matter of course. Canup's failure to amend earlier resulted from the unresolved legal status of Mostyn's untimely filing, not delay or lack of diligence. *See Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395 (1993); *Locke v. SunTrust Bank,* 484 F.3d 1343, 1346 (11th Cir. 2007); *Advanced Estimating Sys. v. Riney,* 77 F.3d 1322, 1324 (11th Cir. 1996). Alternatively, the same circumstances strongly support granting leave under Rule 15(a)(2), which directs that leave be freely given when justice so requires.

The Eleventh Circuit has held that, where a more carefully drafted complaint might state a claim, a *pro se* plaintiff should be advised by the court of the deficiencies and must be given at least one chance to amend before the district court dismisses the action with prejudice. *Woldeab v. DeKalb Cnty. Bd. of Educ.,* 885 F.3d 1289, 1291–92 (11th Cir. 2018); *see also Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by *Wagner v. Daewoo Heavy Indus. Am. Corp.,* 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc). *Wagner* overruled *Bank* as to counseled plaintiffs but did not eliminate the rule for *pro se* litigants. *Id*. The Eleventh Circuit has continued to apply that rule to *pro se* plaintiffs. *See Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1132–33 (11th Cir. 2019).

This is exactly the type of situation where leave to amend would be required before any dismissal with prejudice. Mostyn's motion turns on agency and factual assertions concerning Burns's relationship to Mostyn. If the Court believes additional detail is needed, Canup can plead additional facts concerning the March 13, 2024 transcript, including that Burns appeared on Canup's behalf through Mostyn Law and was listed as appearing for the plaintiff using a Mostyn email address and Mostyn's Houston office address. Canup can also plead additional facts concerning Burns's role in plaintiffs' leadership/PSC, the participation agreement, the 9% interest assigned to plaintiffs' leadership, the MSA's financial structure, and the relationship between Mostyn, Burns, Bradford, and the coordinated settlement conduct alleged in the First Amended Complaint.

Because a more carefully drafted complaint could provide additional detail supporting Mostyn's liability, any dismissal should be without prejudice and with leave to amend.

15

## IV.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that the Court deny Mostyn Law Firm, P.C.'s Motion to Dismiss. Alternatively, if the Court determines that any claim or allegation is insufficiently pled, Canup respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

Signed this 24th day of June, 2026.                   Respectfully submitted,

Brandon Canup, Plaintiff
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Memorandum contains 4,933 words, inclusive of headings, footnotes, and quotations.

Brandon Canup

16