**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| BRANDON CANUP, | Case No. 3:26-cv-3359-MCR-ZCB |
| *Plaintiff,* | |
| v. | |
| BRYAN F. AYLSTOCK, et al., | PLAINTIFF BRANDON CANUP'S RESPONSE TO TEXAS DEFENDANT'S MOTION TO DISMISS |
| *Defendants.* | |

**PLAINTIFF BRANDON CANUP'S RESPONSE IN OPPOSITION TO TEXAS
DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

COMES NOW Plaintiff Brandon Canup ("Canup"), proceeding *pro se*, hereby files his Response in Opposition to Texas Defendants' Motion to Dismiss. Dkt. 79. In support, Canup states as follows:

Canup preserves all objections previously asserted concerning removal, remand, subject-matter jurisdiction, and the continuation of district-court proceedings while his stay and mandamus-related requests remain pending. This Response is submitted solely to comply with the existing response deadline and is filed subject to, and without waiver of, Canup's pending Motion for Reconsideration of the order denying remand, his pending requests for a stay, and the mandamus proceedings in the Eleventh Circuit. *See* Dkts. 70, 73, 77, 91, 97. By responding to Texas Defendants' Motion to Dismiss, Dkt. 79, Canup does not concede that removal was proper, that remand was properly denied, that this Court should proceed before resolving the pending threshold and stay issues, or that any argument concerning jurisdiction, remand, recusal, mandamus, or stay has been waived.

1

**Objection Regarding Defendants' Reliance on the Sealed Plaintiff Fact Sheet**

Canup objects to Defendants' reliance on the contents of a Plaintiff Fact Sheet filed under seal in the underlying MDL proceedings. In that case the 3M Defendants filed the Plaintiff Fact Sheet as Exhibit A to the Beall Affidavit, expressly identifying it as "Plaintiff Fact Sheet (filed under seal)." *See Canup v. 3M Company,* No. 8:20-cv-14021-MCR-HTC, Dkts. 46–49. The docket further reflects that the Court granted the motion to seal those exhibits. *Id.* Notably, those documents were filed six months after Texas Defendants withdrew from Canup's case in the MDL. *Id.* None of those documents were produced when FNJ sent David Gamble Canup's documents on February 29, 2024. *See* Dkt. 60 ¶¶ 74–76. Texas Defendants quote the contents of that sealed filing, not merely the existence of a docket entry.

Texas Defendants state:

> "On February 18, 2024, under penalty of perjury, Canup executed a Plaintiff Fact Sheet. Decl. of C. Beall Ex. A ('PFS') at 32. The PFS alleged that Canup first noticed difficulty with his hearing in 2011. *Id*. at 25–27. Thus, in his PFS, Canup claimed he experienced hearing loss nearly nine years before he filed his first SFC that failed to identify any hearing loss injuries."

*See* Dkt. 79 at 18–19 n.6.

Defendants' assertion that the document appears on the MDL docket does not explain how Defendants or their present counsel gained access to the sealed filing, whether access was authorized, or what authority permits Defendants to use the contents of the sealed filing in support of dismissal.

Because the Plaintiff Fact Sheet is not publicly available record material and discovery in this action has not commenced, it should not be judicially noticed.[1] At minimum, before the Court

---

[1] *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1311–13 (11th Cir. 2001) (recognizing that nonpublic litigation materials are not ordinary public records subject to unrestricted public access); *Fayemi v.*

considers any argument based on that sealed material, Defendants should be required to explain how they or their counsel obtained access to the sealed filing, whether that access was authorized, and what authority permits them to use the contents of the sealed filing.

Canup therefore respectfully requests that the Court disregard or strike Defendants' arguments based on the sealed Plaintiff Fact Sheet unless and until Defendants establish that their access to the sealed filing was authorized and that the sealed contents may properly be used in support of a Rule 12(b)(6) motion. Canup further reserves the right to seek appropriate protective and/or disqualification relief after Defendants disclose the circumstances of their access to and use of the sealed filing.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Texas Defendants' Motion should be denied. It does not identify a Rule 12(b)(6) pleading defect; it disputes Canup's allegations, relies on selected MDL materials, and asks the Court to resolve contested issues of knowledge, causation, mitigation, damages, reliance, consent, and intent before discovery. Dkt. 79.

The First Amended Petition principally alleges intentional and fiduciary misconduct, not merely negligent legal work. Canup alleges fraudulent inducement through promises made to obtain the retainer without present intent to perform, Dkt. 60 ¶¶ 28–32, 35, 101–15; fiduciary breach through divided loyalty, undisclosed conflicts, misleading communications, delayed withdrawal, withholding client materials, and pursuit of financial benefits at Canup's expense, *id*. ¶¶ 38–52, 56–64, 72–76, 78, 93–94, 96, 98, 116–27; and conspiracy through coordinated conduct designed to increase settlement participation and related compensation, *id*. ¶¶ 187–203. Those allegations plausibly plead injury and relief. *Id*. ¶¶ 107, 113–15, 127, 195–201, 206–07.

---

*Hambrecht & Quist, Inc.,* 174 F.R.D. 319, 324–26 (S.D.N.Y. 1997) (addressing litigation consequences where a party obtained confidential documents outside authorized discovery channels).

Texas Defendants' contrary arguments depend on defense-favorable inferences. Staged MDL discovery did not eliminate counsel's duty to investigate Canup's injuries, review available records, communicate with him, and accurately identify his claims. Nor does the possibility of later amendment defeat causation as a matter of law, particularly after the MDL Court prohibited new claims and dismissed the hearing-loss allegations. Canup was not required to risk violating court orders or sanctions to cure an omission allegedly created by Texas Defendants.

Texas Defendants also improperly narrow damages to lost settlement value. Texas law permits recovery of actual and consequential losses proximately caused by attorney negligence, including identifiable fees and litigation expenses incurred in the underlying proceeding. Whether Canup's expert expenses were proximately caused by Texas Defendants is factual.

The anti-fracturing argument fares no better. Canup pleads malpractice only in the alternative. Dkt. 60 ¶¶ 128–35, 207. His other claims rest on distinct misconduct: fraudulent inducement based on promises made without present intent to perform, *id*. ¶¶ 28–32, 35, 101–15; fiduciary breach based on disloyalty, nondisclosure, self-interest, and improper benefit, *id*. ¶¶ 38–52, 56–64, 72–76, 78, 93–94, 96, 98, 116–27; and conspiracy based on coordinated intentional conduct, *id*. ¶¶ 187–203. Factual overlap does not require dismissal, and Canup does not seek duplicative recovery. *Id*. ¶ 207.

Nor does the Retainer Agreement defeat those claims. General language acknowledging possible conflicts, aggregate settlement, or no guaranteed outcome did not disclose or obtain informed consent to the specific conflicts alleged here, nor did it contradict Canup's allegation that Texas Defendants promised representation while lacking present intent to perform.

Finally, Texas Defendants' repeated references to a "court-approved" settlement misstate the issue. The MSA was a private settlement agreement. There is no order approving the MSA

4

itself or Texas Defendants' alleged conflicts, non-disclosures, lack of informed consent, or fiduciary breaches. Court administration or enforcement of settlement procedures of a settlement that Canup is not a party to, is not judicial approval of Texas Defendants' conduct toward Canup.

At minimum, dismissal with prejudice would be improper. If more detail is required, Canup can amend to allege facts directly responsive to all of Texas Defendants' arguments, including that, while FNJ remained identified as counsel, settlement-registration materials assigned Canup to a classification tied to hearing-loss evidence and stated that the classification was based on attorney-supplied representations. Those facts answer Texas Defendants' lack-of-knowledge argument and show amendment would not be futile.

## II.    BACKGROUND

This action is now governed by Canup's First Amended Complaint, which asserts causes of action for fraud by nondisclosure, breach of fiduciary duty, fraudulent inducement, and civil conspiracy. *See* Dkt. 60 ¶¶ 101–203. The lawsuit arises from the *In re: 3M Combat Arms Earplugs Litigation* (the "MDL"), a multi-district litigation proceeding involving claims by service members and veterans against 3M Company ("3M") based upon allegations that its Combat Arms Earplugs were defective. *See* Dkt. 60 ¶¶ 25–28. Canup, an MDL claimant,[2] was initially represented by FNJ Defendants[3] and Cliff Roberts, collectively ("Texas Defendants"). *See id*. ¶ 28. Ultimately, in 2023, after several bellwether trials, 3M entered into a Master Settlement Agreement ("MSA") to resolve the claims in the MDL, which involved the creation of a "benefits program" out of which the attorneys would be paid. *See id*. ¶¶ 38–52.

---

[2] *See Canup v. 3M Company,* Case No. 8:20-cv-14021-MCR-HTC (N.D. Fla.).

[3] FNJ Defendants refers to Gregory Brown and Fleming, Nolen & Jez, LLP.

Importantly, the MSA is a private agreement that was voluntarily entered into by participating counsel in the MDL, including Defendants in this action. *See id*. ¶¶ 47–51. Also of note, the amount to be paid by 3M under the MSA was dependent on participation levels of eligible claimants. *See id*. ¶ 42.  The terms that participating counsel voluntarily agreed to obligated every attorney representing a claimant who had filed a case in the MDL to cease developing their clients' cases in the MDL as of the settlement date, August 29, 2023, *id*., recommend to 100% of their clients to agree to the MSA and register in the "benefits program" thereunder and withdraw from representing claimants that chose to opt out of the MSA. *Id*. After realizing that Texas Defendants were not actively working on his case, in January of 2024, Canup retained David Gamble to pursue his claims against 3M. *See id*. ¶ 64. Canup rejected the MSA and Texas Defendants withdrew as his counsel, as they had voluntarily agreed with 3M and other participating counsel to do.[4] *See id*. ¶¶ 66, 78. During this same period, AWKO Defendants, along with Michael Burns and Mostyn Law Firm, PC, injected themselves into Canup's litigation with 3M through ongoing communications and interactions with Canup spanning from February 22, 2024, through April 25, 2024. *See id*. ¶¶ 79–92, 95. After several more months of litigation and after Canup had initiated an appeal of one of the MDL Court's Orders, 3M agreed to settle Canup's claims independently of the MSA. *See id*. ¶ 100.

Canup filed this action in Tarrant County, Texas, on October 27, 2025. *See* Dkt. 1-1. Gregory Brown improperly removed it to the Northern District of Texas on November 6, 2025,[5]

---

[4] Texas Defendants delayed withdrawing from Canup's case, Canup opted out of the MSA on January 21, 2024 and Gregory Brown filed his motion to withdraw on February 15, 2024, one week before a major production deadline in Canup's case and more than five months after Texas Defendants agreed with 3M and other participating counsel to cease developing Canup's case in the MDL. *See* Dkt. 37, Ex. 2, Docket Report, *Canup v. 3M Co. et al.*, No. 8:20-cv-14021-MCR-HTC (N.D. Fla.); *see also* MDL Settlement Agreement, MSA 1 at 6 and ¶ 8.1.4 at 20, *https://www.uscourts.gov/courts/flnd/3M-MSA_1.pdf* (last accessed May 12, 2026).

[5] Brown removed this case despite being a non-diverse Texas defendant, and without ensuring all co-defendants consented to removal, including Mostyn Law Firm, P.C., another Texas Defendant who had already been properly

and Canup moved to remand on November 21, 2025. *See* Dkts. 1, 8. Bryan Aylstock ("Aylstock") thereafter sought transfer to the MDL Court, while FNJ Defendants opposed remand, sought a stay pending transfer, and moved to dismiss. *See* Dkts. 10–12, 14–15, 23. The JPML transferred the action on April 2, 2026. *See* Dkt. 30.

After transfer, Canup moved for leave to amend, for recusal and disqualification, and for a suggestion of remand. *See* Dkts. 34–35, 37–38. The Court granted leave to amend on May 6, 2026, and Canup filed the Amended Complaint on May 12, 2026. *See* Dkts. 54, 60. On May 17, 2026, the Court denied recusal. *See* Dkt. 61 at 5–10. AWKO Defendants filed their Motion to Dismiss on May 26, 2026, asserting that their only interactions with Canup occurred on behalf of Plaintiffs' MDL Leadership at the Court's request. *See* Dkt. 66 at 2–3, 13–17. Mostyn filed its procedurally defective Motion to Dismiss on May 27, 2026. *See* Dkts. 67, 75, 91.

On May 29, 2026, the Court denied remand, finding federal-question jurisdiction over Canup's state-law claims and treating Mostyn's Motion to Dismiss as implied consent to removal, although the Court declined to determine whether Mostyn had been properly served. *See* Dkt. 70 at 15–17. Mostyn filed that motion two days prior, approximately ninety minutes after the court-ordered deadline to respond to the amended complaint and more than six months after Mostyn was properly served.[6] *See* Dkts. 67, 75, 91. The motion did not address removal, remand, consent, or sufficiency of service. *See* Dkt. 67.

---

joined and served. *See* Dkts. 1, 8, 9 at 2, 6–7. Brown filed the Notice of Removal and was the sole signatory. The docket entry, however, reflects participation by the AWKO Defendants, stating: "NOTICE OF REMOVAL filed by Gregory Donald Brown, Aylstock, Witkin, Kreis & Overholtz, PLL." *See* Dkt. 1; *see also* Docket Report, *Canup v. Aylstock, et al.*, No. 3:26-cv-03359-MCR-ZCB (N.D. Fla.)

[6] *See* Dkts. 9-1, 9-3 (showing Mostyn was properly served on November 4, 2025, 2 days before removal, when it's registered agent Andrew Browning accepted the state court petition and citation); *see also* Dkts. 91–91-12.

On May 30, 2026, Canup petitioned the Eleventh Circuit for a writ of mandamus seeking Judge Rodgers's recusal and disqualification under 28 U.S.C. §§ 455(a) and 455(b)(1), vacatur of the order denying recusal, and related relief. *See* Dkt. 73. On June 3, 2026, Mostyn moved to have its Motion to Dismiss accepted as timely and asserted improper service for the first time. *See* Dkt. 75. On June 5, 2026, Canup moved for reconsideration of the remand order or, alternatively, certification under 28 U.S.C. § 1292(b), and requested a stay. *See* Dkt. 77. Canup later opposed Mostyn's timeliness motion and again requested a stay. *See* Dkt. 91. On June 22, 2026, Canup filed a motion in the Eleventh Circuit seeking a stay of the district-court proceedings pending review of his mandamus petition. *See* Dkt. 97.

On June 25, 2026, Michael Burns appeared in this action, filed a Notice of Adoption of applicable motions, arguments, and pleadings filed by the AWKO Defendants, and filed proof of service. *See* Dkts. 102–04. Those filings appear to have been submitted through another attorney's CM/ECF account, creating inconsistencies between the representation status reflected on the docket and the signatures in the filings themselves, as none of the filings were signed by the attorney of record to whom the docket entries attribute them. That same day, Canup moved to require correction of the filing-account issue. *See* Dkt. 106. Those matters remain pending.

### III.   ARGUMENT AND AUTHORITY

#### A.  Legal Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor, and determine only whether the complaint states a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 563 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Scheuer v. Rhodes*, 416 U.S. 232, 236(1974); *Kirby v. Siegelman,* 195 F.3d 1285, 1289

8

(11th Cir. 1999). To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512.

Dismissal is improper based on disbelief of the allegations, perceived improbability of success, or a prediction that the plaintiff will fail to prove his claims. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Twombly*, 550 U.S. at 556, 563 n.8. The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *See Swierkiewicz,* 534 U.S. at 511 (quoting *Scheuer,* 416 U.S. at 236); *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 881 (11th Cir. 2003).

Courts in the Eleventh Circuit apply a less stringent standard to *pro se* pleadings than to those drafted by attorneys and construe them liberally. *See Taveras v. Bank of America, NA*, 89 F. 4th 1279 (11th Cir. 2024); *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998); *Fernandez v. United States,* 941 F.2d 1488, 1491 (11th Cir.1991); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Argument

#### 1. Texas Defendants Improperly Ask the Court to Resolve Disputed Facts and Draw Inferences Against Canup

Texas Defendants acknowledge that Rule 12(b)(6) review is generally limited to the complaint and its exhibits, yet ask the Court to rely on MDL orders, motions, responses, claim forms, and other filings to resolve disputed facts. Dkt. 79 at 11–13. Judicial notice may establish that filings exist or that rulings were made; it does not permit the Court to accept disputed assertions within those filings as true or draw defense-favorable inferences against Canup.

That is what Texas Defendants seek. They ask the Court to infer that they had no reason to know of hearing loss, *id*. at 17–18; that staged MDL discovery excused investigation, *id*. at 16–

17; that later counsel could have cured the omission, *id*. at 18–20; that Canup or later counsel caused the procedural loss of the claim, *id*.; and that expert expenses would have been incurred regardless, *id*. at 20–21. Those are contested issues of knowledge, causation, mitigation, and damages—not Rule 12(b)(6) defects.

The First Amended Petition alleges a competing causal account extending beyond negligent legal work: Texas Defendants allegedly obtained and maintained control over Canup's claims through promises made without present intent to perform; later operated under settlement-related obligations and financial incentives without full disclosure or informed consent; continued advising him under divided loyalties; delayed withdrawal; withheld client materials; and participated in coordinated conduct designed to increase settlement participation and related compensation. Dkt. 60 ¶¶ 64–76, 89–98, 101–27, 187–203. The alleged harm followed from that course of conduct, including the procedural loss of hearing-loss allegations and expenses for unusable litigation materials. *Id*. ¶¶ 97, 107, 131–35, 195–201, 206–07. The Court cannot select Texas Defendants' competing explanation at the pleading stage.

### 2.  Texas Defendants' Malpractice Argument Does Not Support Dismissal

Texas Defendants' malpractice argument should not drive the analysis. Canup does not plead this case as a malpractice action repackaged under other labels; malpractice is pleaded in the alternative. The gravamen of the First Amended Petition is broader: fraudulent inducement, undisclosed conflicts, divided loyalty, misleading communications, withholding of client materials, and coordinated conduct designed to advance Defendants' financial interests at Canup's expense. Dkt. 60 ¶¶ 101–27, 187–203. Texas Defendants' effort to recast the entire case as negligence is part of their anti-fracturing argument, not a basis to dismiss all claims.

Even if the Court considers the alternative malpractice theory, dismissal is unwarranted. Under Texas law, a legal-malpractice plaintiff must plead that "there is a duty owed to him by the

defendant, a breach of that duty, that the breach proximately caused the plaintiff injury and that damages occurred." *SMWNPF Holdings, Inc. v. Devore,* 165 F.3d 360, 364 (5th Cir. 1999) (citing *Cosgrove v. Grimes,* 774 S.W.2d 662, 664–65 (Tex. 1989). Canup pleads those elements in the alternative. He alleges that Texas Defendants represented him for approximately four years, undertook to investigate and develop his individual claims, failed to reasonably investigate and plead hearing loss, and withdrew after the settlement structure placed litigating plaintiffs under compressed obligations. Dkt. 60 ¶¶ 28, 64–76, 97–98, 128–35. If the same course of conduct is treated as negligent rather than intentional or fiduciary misconduct, those allegations plausibly plead duty, breach, causation, and damages.

Texas Defendants' contrary arguments depend on disputed factual inferences. They contend that staged MDL discovery excused investigation, that Canup did not tell them to plead hearing loss, that later evidence made their knowledge impossible, that later counsel could have cured the omission, and that expert expenses would have been incurred regardless. Dkt. 79 at 16–21. Those are contested issues of knowledge, breach, causation, mitigation, and damages—not Rule 12(b)(6) defects.

Texas Defendants also misstate the timing and causal theory. Canup is not "quarreling with this Court's Orders." *Id*. at 16–17. He alleges that Texas Defendants failed to prepare his case while they still represented him and while the consequences of continued litigation were known. Dkt. 60 ¶¶ 66–69. CMO 57 was entered on August 29, 2023, more than five months before Texas Defendants withdrew, and imposed obligations on claimants who continued litigating outside the settlement program. Texas Defendants identify no allegation that Canup told them he would accept the settlement, and Canup alleges that he retained new counsel because Texas Defendants were not actively working on his case. *Id*. ¶¶ 64–76. Thus, the compressed posture was a foreseeable

consequence of continued litigation under CMO 57 while Texas Defendants allegedly failed to investigate, develop, communicate, and prepare Canup's claims before withdrawal. At minimum, whether Texas Defendants reasonably should have prepared for that posture, whether they knew or should have known Canup would continue litigating, and whether their conduct caused later expenses are factual issues.

Nor do the short-form complaints, reconsideration motion, or later-amendment argument defeat causation. The short-form complaints were filed by counsel, and the omission of hearing loss is part of the alleged breach. The reconsideration motion did not state that Canup never knew of hearing difficulty; it relied on later medical and expert evidence. After the MDL Court prohibited new allegations or claims and dismissed the hearing-loss allegations on that basis, Canup was not required to risk sanctions by attempting to replead claims dismissed with prejudice. If greater detail is required, Canup can amend to allege that settlement-registration materials identifying FNJ as counsel were prepopulated with attorney-supplied information, assigned Canup to a level tied to hearing-loss evidence, and stated that the level was based on representations from his attorneys.

Texas Defendants' damages argument also fails. Canup does not allege that he should have received more in settlement, and he does not accept Texas Defendants' invitation to convert this case into a malpractice-only lost-recovery theory. He alleges identifiable economic losses, including expert and litigation expenses that became valueless when the hearing-loss claim was procedurally barred. Dkt. 60 ¶¶ 98, 133, 206–07. Texas law does not limit malpractice damages to lost-recovery damages. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development & Research Corp.,* 299 S.W.3d 106, 122 (Tex. 2009); *see also Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816 (Tex. 1997); *Turner v. Turner,* 385 S.W.2d 230, 234 (Tex. 1964).

Even if some expert work would have been required regardless, Canup can plead and prove the portion attributable to hearing-loss opinions, analysis, reporting, and related attorney work that became unusable when the hearing-loss allegations were barred. Allocation and proximate cause are factual issues for discovery.

Finally, Texas Defendants' MSA argument confirms the flaw in their framing. They acknowledge that Canup's MSA allegations are "not directly asserted in connection with his malpractice action," yet argue the MSA cannot support malpractice or fiduciary duty because it was supposedly "approved and overseen by the Court." Dkt. 79 at 21. The MSA was a private settlement agreement; it was not approved by court order. Texas Defendants identify no order approving the MSA in the manner they suggest or adjudicating the conflict, disclosure, informed-consent, or fiduciary-duty issues raised here. Canup alleges that Texas Defendants joined, accepted, implemented, benefited from, and operated under the MSA while owing duties of loyalty, disclosure, and informed consent. Dkt. 60 ¶¶ 38–52, 118–25. Texas Defendants may dispute those allegations, but their denial cannot be accepted as true on a motion to dismiss.

The malpractice claim is plausibly pleaded in the alternative. More importantly, Texas Defendants' attack on that alternative claim does not eliminate Canup's distinct fraudulent-inducement, fiduciary-duty, and conspiracy claims.

### 3. Canup's Fraudulent Inducement, Breach of Fiduciary Duty and Civil Conspiracy Claims are Not Impermissibly Fractured Malpractice Claims

Texas Defendants' anti-fracturing argument rests on the premise that Canup's fraudulent inducement, fiduciary duty, and conspiracy claims are merely "fractured legal malpractice claims" and that the entire case "alleges legal malpractice and nothing more." Dkt. 79 at 4, 22–25. But Texas law does not require dismissal merely because claims share facts, arise from the same attorney-client relationship, or involve overlapping damages. The relevant inquiry is the gravamen

of the complained-of conduct and the nature of the duty allegedly violated, not whether the claims arise from the same general relationship or factual history.

Texas Defendants' anti-fracturing argument depends on an overbroad statement of Texas law. The doctrine prevents a plaintiff from recasting a claim that sounds only in professional negligence as fraud, breach of fiduciary duty, or another tort. *See Won Pak v. Harris*, 313 S.W.3d 454, 457–58 (Tex. App.—Dallas 2010, pet. denied); *Murphy v. Gruber*, 241 S.W.3d 689, 692–93 (Tex. App.—Dallas 2007, pet. denied). But it "does not mean that clients can sue their attorneys only for negligence," nor does it "necessarily bar a client from simultaneously asserting professional negligence and non-negligence claims against an attorney that are predicated on some common or overlapping facts." *Beck v. Law Offices of Edwin J. Terry, Jr., P.C.,* 284 S.W.3d 416, 427 (Tex. App.—Austin 2009, no pet.).

That limitation is critical. Factual overlap is unavoidable whenever a client pleads malpractice in the alternative to fraud or breach of fiduciary duty against an attorney. The same attorney-client relationship supplies the setting, the same course of conduct may implicate more than one duty, and some damages may overlap. If overlap alone were enough, no fraud or fiduciary-duty claim against an attorney could survive alongside an alternative malpractice theory. Texas law does not impose that rule. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.,* 97 S.W.3d 179, 190–91 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (same facts pleaded for negligence and fiduciary duty did not determine the issue because alternative pleading is permitted and both claims could proceed when the facts supported both theories).

The controlling inquiry is the gravamen of the complained-of conduct and the nature of the duty allegedly breached. If the gist of the claim is that the attorney failed to exercise ordinary professional care, skill, or diligence, the claim sounds in negligence. But if the factual basis is

14

more appropriately classified as fraud, breach of fiduciary duty, or another independent claim, the client may assert that claim separately. *Forshee v. Moulton,* 694 S.W.3d 803, 809–10 (Tex. App.—Houston [14th Dist.] 2024, no pet.); *Deutsch,* 97 S.W.3d at 189–91.

Texas courts draw that line by distinguishing inadequate legal work from deception, disloyalty, and improper benefit. In *Latham v. Castillo,* the Supreme Court of Texas held that allegations that an attorney affirmatively misrepresented that he had filed and was actively prosecuting a claim sounded in fraud, not malpractice, because there is a "difference between negligent conduct and deceptive conduct." 972 S.W.2d 66, 69 (Tex. 1998). "[T]o recast this claim as one for legal malpractice," the Court explained, "is to ignore this distinction." *Id.*

The same distinction applies to fiduciary duty claims. Breach of fiduciary duty focuses on "whether an attorney obtained an improper benefit from representing the client," while malpractice focuses on whether the attorney represented the client with the required level of skill. *Murphy,* 241 S.W.3d at 693; *Duerr v. Brown,* 262 S.W.3d 63, 71 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Forshee,* 694 S.W.3d at 809–10. Texas courts recognize separate fiduciary duty claims where the allegations involve failure to disclose conflicts, placing the attorney's interests above the client's, self-dealing, misuse of confidences, improper benefit, or misrepresentations made to achieve those ends. *Goffney v. Rabson,* 56 S.W.3d 186, 193–94 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Burrow v. Arce,* 997 S.W.2d 229, 237–46 (Tex. 1999); *Deutsch,* 97 S.W.3d at 190–93.

*Pitts v. Rivas* confirms the same rule. The anti-fracturing doctrine applies when the gravamen of the complaint is merely the quality or adequacy of legal representation, but claims may proceed when the alleged misconduct "goes beyond what traditionally has been characterized as professional malpractice." 709 S.W.3d 517, 527 (Tex. 2025) (quoting *Duerr,* 262 S.W.3d at

15

70). *Pitts* also reaffirmed *Latham's* distinction between negligent conduct and deceptive conduct. *Id.* at 528.

Accordingly, the existence of an alternatively pleaded malpractice claim does not require dismissal of Canup's fraud, fiduciary duty, or conspiracy claims. The question is not whether the claims share facts, arise from the same representation, or involve overlapping damages. The question is whether the non-malpractice claims are merely complaints about negligent legal work or instead rest on independent allegations of deception, concealed conflicts, divided loyalty, self-dealing, improper benefit, or coordinated intentional misconduct.

Texas Defendants' anti-fracturing argument misstates the nature of Canup's claims. Canup does not allege that a conflict arose merely because his attorneys were inattentive to his case. *See* Dkt. 79 at 25. Canup alleges divided loyalty, nondisclosure, settlement-related financial incentives, pursuit of financial benefits, misleading communications, delayed withdrawal, withholding client materials, and conduct advancing Defendants' own interests at Canup's expense. Dkt. 60 ¶¶ 116–27. Texas courts have repeatedly recognized that an attorney breaches fiduciary duties by improperly benefiting from the relationship, including by "subordinating his client's interest to his own," engaging in self-dealing, failing to disclose conflicts, or making misrepresentations to achieve those ends.[7] *Cepeda v. Ogle,* No. 13-23-00562-CV, slip op. at 5 (Tex. App.—Corpus Christi [13th Dist.] Nov. 21, 2025) (mem. op.).

Canup expressly pleads malpractice in the alternative. Dkt. 60 ¶¶ 128–35. That claim concerns professional care, skill, and diligence in investigating, developing, communicating, pleading, and protecting Canup's claims. *Id.* The fraudulent-inducement claim concerns alleged

---

[7] *See Kemp v. Jensen,* 329 S.W.3d 866, 872 (Tex. App.-Eastland 2010, pet. denied); *Border Demo. & Env., Inc., v. Pineda,* 535 S.W.3d 140, 160 (Tex. App.-El Paso 2017, no pet.); *Fleming v. Curry,* 412 S.W.3d 723, 732 (Tex. App.-Houston [14th Dist.] 2013, pet. denied); *Murphy v. Gruber,* 241 S.W.3d 689, 698 (Tex. App.-Dallas 2007, pet. denied).

misrepresentations made to obtain the retainer, including promises allegedly made without present intent to perform. *Id*. ¶¶ 101–15. The fiduciary-duty claim concerns disloyalty, nondisclosure, self-interest, and improper benefit. *Id*. ¶¶ 116–27. Shared background facts do not make those claims identical, and possible overlap in damages does not require dismissal. Federal pleading rules permit alternative and inconsistent theories, and Texas law prohibits duplicative recovery—not alternative pleading. Canup pleads the $11,925 under the malpractice theory in the alternative, not cumulatively with the same loss under fraudulent inducement. *Id*. ¶ 207.

Texas Defendants rely heavily on authorities involving fraud or fiduciary labels attached to complaints that an attorney gave poor advice, failed to prepare, missed a deadline, or otherwise rendered substandard legal services. Here, Canup alleges more. He alleges intentional deception at contract formation and subsequent conduct motivated by divided loyalty and the attorneys' own financial interests. Those allegations cannot be reduced to negligence merely because they occurred in connection with legal representation.

### 4.  The Fraudulent Inducement Claim is Not Defeated by the Retainer Agreement

Texas Defendants argue that Canup's fraudulent-inducement claim is barred by the Retainer Agreement because Paragraph 6 disclosed the possibility of an aggregate or group settlement and Paragraph 8 disclaimed any representation regarding the outcome of Canup's claims. Dkt. 79 at 26–30. They further argue that, because the Retainer Agreement supposedly contradicts Canup's allegations of misrepresentations, Canup could not have justifiably relied on them as a matter of law. *Id*. at 27–30. Texas Defendants also contend that the fraud claim fails under Rule 9(b) because Canup allegedly does not identify the specific statements, speaker, timing, or manner of the alleged fraud, and that the claim is improperly commingled against multiple defendants. *Id*. at 30–32.

Those arguments fail because Paragraphs 6 and 8 do not contradict Canup's claim. A false promise of future performance made with a present intent not to perform is actionable fraudulent inducement. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998). The claim therefore depends on what Texas Defendants represented and intended when procuring the agreement. *See id.; Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434–35 (Tex. 1986). Because intent to defraud is rarely susceptible to direct proof, it may be proved by circumstantial evidence, and "slight circumstantial evidence" of fraud, when considered with failure to perform, may support fraudulent intent. *Spoljaric,* 708 S.W.2d at 435. Later nonperformance, denial or narrowing of the promise, and the alleged course of conduct may therefore support an inference of present intent not to perform. Intent is especially unsuitable for resolution on a motion to dismiss because it is a fact question "uniquely within the realm of the trier of fact" and depends on credibility and the weight of the evidence. *Id*. at 434.

Canup alleges that Texas Defendants induced him to enter the Retainer Agreement by undertaking to provide legal services in connection with his 3M earplug claims, including representing him, asserting, litigating and investigating his potential claims. Dkt. 79-1 at 43; Dkt. 60 ¶¶ 101–15. To the extent the duty to pursue Canup's individual interests is not stated in those precise words, it arises from the attorney-client relationship the Retainer Agreement created. Texas Defendants allegedly lacked the present intent to perform those express and implied obligations. The Retainer Agreement is therefore part of the alleged inducement, not a contradiction of it.

Paragraph 6 is narrower than Texas Defendants suggest. It advises that representation of multiple clients may create the potential for an aggregate or group settlement and states that, if an aggregate settlement occurs, the Firms may apportion proceeds and expenses among clients. Dkt. 79-1 at 44. Paragraph 8 states that the Firms made no representations regarding the outcome of

18

Canup's potential claim. *Id*. at 45. Neither provision contradicts the alleged promise to represent Canup, investigate his potential claims, and pursue his individual interests, nor do they disclose or authorize the specific misconduct alleged here: lack of present intent to perform those obligations, an undisclosed aggregate-settlement business model, undisclosed settlement-related financial incentives, conflicted settlement advice, delayed withdrawal, prioritization of Defendants' financial interests over Canup's, or Texas Defendants entering into the settlement agreement directly with the adverse party in the litigation. Dkt. 60 ¶¶ 28–32, 38–52, 66, 78, 101–27.

Nor can Texas Defendants use general retainer language to contract around duties owed to a client. Texas law treats the attorney-client relationship as highly sensitive and requires attorneys to conduct themselves with utmost good faith, fairness, full disclosure, and loyalty. *Hoover Slovacek LLP v. Walton,* 206 S.W.3d at 560–61; *Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex. 1988); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 199–200 (Tex. 2002). A retainer provision disclosing the possibility of an aggregate settlement or disclaiming any guaranteed outcome does not waive undisclosed conflicts, authorize self-interested conduct, or excuse misrepresentations made to obtain or maintain control over Canup's claims. *See Burrow,* 997 S.W.2d at 238–46.

Texas Defendants' justifiable-reliance cases do not require a different result. Dkt. 79 at 27–28. Those cases involve arm's-length commercial transactions or written contracts that directly contradicted the alleged representations.[8] This was a retainer agreement for legal representation, entered for the purpose of creating an attorney-client relationship, not an ordinary commercial

---

[8] This was not an arm's-length commercial contract. Texas law recognizes that attorneys generally possess superior understanding of fee and representation arrangements, making it appropriate to place the burden of fair dealing and risk allocation on the lawyer. *Hoover,* 206 S.W.3d at 563 (quoting *Levine v. Bayne, Snell & Krause, Ltd.,* 40 S.W.3d 92, 95 (Tex. 2001)). Texas Defendants therefore cannot rely on generalized retainer language to conclusively establish informed consent, waive undisclosed conflicts, or defeat allegations of self-interested fiduciary conduct at the pleading stage.

transaction between equal business actors. In any event, the rule Texas Defendants invoke applies only where the written contract directly contradicts the alleged misrepresentation. No such contradiction exists here. A generic disclosure that an aggregate settlement might occur and a disclaimer of any guaranteed outcome do not negate justifiable reliance on the promise to provide the representation being retained.

Nor does Rule 9(b) require dismissal. The First Amended Petition identifies the essential circumstances of the alleged fraud: the responsible parties—Brown, Roberts, and FNJ, Dkt. 60 ¶¶ 28, 102–03; the date and transaction—execution of the contingency-fee agreement on June 21, 2019, *id.*; the substance of the representation—that Texas Defendants would represent Canup, investigate his potential claims, and pursue his individual 3M claims, *id.* ¶¶ 28, 102–08; why it was allegedly false—Texas Defendants lacked the present intent to perform those obligations as represented, *id.* ¶¶ 28, 103–08; the intended and actual reliance—Canup entered the agreement and permitted Texas Defendants to control his claims for approximately four years, *id.* ¶¶ 28, 78, 102–07; subsequent dated statements—Brown's December 22, 2020 and January 22, 2024 representations that the claims were being actively pursued, *id.* ¶¶ 35, 72, 106; and the resulting injury—the losses and expenses alleged from that course of conduct, *id.* ¶¶ 98, 112–15.

Those allegations provide the who, what, when, where, and how. Texas Defendants may dispute whether the statements were false, whether Canup's reliance was justified, or whether later conduct confirms lack of present intent, but those are factual disputes. Paragraphs 6 and 8 do not defeat the fraudulent-inducement claim as a matter of law.

Finally, the claim is not improperly commingled. The First Amended Petition identifies the Texas Defendants and pleads their role in the retainer, representation, settlement-related conduct, withdrawal, and alleged misrepresentations. Dkt. 60 ¶¶ 28, 38–52, 101–15. Rule 10(b) does not

20

require dismissal merely because related defendants allegedly acted together through the same retainer and course of representation.

### 5.   Canup Plausibly States a Distinct Claim for Breach of Fiduciary Duty

Texas Defendants argue that the fiduciary-duty claim is defeated by the Retainer Agreement because Paragraph 6 disclosed potential conflicts arising from multiple representation and possible aggregate or group settlement. Dkt. 79 at 32–34. They further suggest that the MSA was "approved and overseen by the Court." *Id.* at 21, 35. Those arguments misstate both the claim and the settlement.

Canup does not allege merely that Texas Defendants represented multiple clients or that an aggregate settlement occurred. He alleges that Texas Defendants owed duties of loyalty, candor, full disclosure, and independent professional judgment, Dkt. 60 ¶ 117; breached those duties by entering into the MSA, operating under settlement-related obligations and financial incentives while still representing him, *id.* ¶¶ 38–52, 118–21; failed to disclose those interests and continued advising him under an undisclosed conflict, *id.* ¶¶ 119–24; prioritized settlement participation and their own compensation, *id.* ¶¶ 42, 46–52, 120–25; made misleading statements, delayed withdrawal, and withheld client materials, *id.* ¶¶ 56–60, 63, 66, 72–76, 78, 93–94, 96, 122–26; and pursued and retained financial benefits through that conduct, *id.* ¶¶ 38–52, 118–25. Those allegations concern divided loyalty, nondisclosure, self-interest, and improper benefit, not merely negligent legal work.

Texas law recognizes that "[i]f the client alleges that the attorney has engaged in self-dealing, then a presumption of unfairness arises." *Fleming,* 412 S.W.3d at 732 (citing *Cluck v. Mecom,* 401 S.W.3d 110, 114 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Houston v. Ludwick,* No. 14-09-00600-CV, 2010 WL 4132215 (Tex. App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.)). Canup alleges self-dealing, nondisclosure, divided loyalty, and

21

improper benefit. Dkt. 60 ¶¶ 38–52, 116–27. A general retainer provision referencing possible conflicts or aggregate settlement does not defeat those allegations at Rule 12(b)(6).

Paragraph 6 does not establish informed consent as a matter of law. At most, it gave a general advance warning that multiple representation could create potential conflicts and that an aggregate or group settlement might occur. Dkt. 79-1 at 44. But Canup's fiduciary-duty claim rests on a later, more specific conflict: Texas Defendants allegedly operated under MSA-related obligations and claimant-participation incentives while still advising Canup; recommended settlement participation without full disclosure; withheld materials needed to continue litigating; directly entered into the MSA with the adverse party in the litigation; delayed withdrawal after entering into the MSA and after Canup opted out. Dkt. 60 ¶¶ 38–52, 66–69, 78, 117–27. A generic warning that conflicts might arise does not conclusively prove disclosure of the actual conflict alleged, informed consent to that conflict, or compliance with fiduciary duties.

That distinction matters because an attorney-client relationship is highly sensitive. *Hoover,* 206 S.W.3d at 560–61. Texas law requires loyalty, fairness, candor, and full disclosure. *Willis,* 760 S.W.2d at 645; *Johnson,* 73 S.W.3d at 199–200. General retainer language cannot be used at the pleading stage to conclusively waive undisclosed conflicts, authorize self-interested conduct, or defeat a claim based on alleged disloyalty and improper benefit. *See Burrow,* 997 S.W.2d at 238–46.

Texas law distinguishes negligent legal work from fiduciary misconduct. An attorney may breach fiduciary duties by improperly benefiting from the relationship, including by "subordinating his client's interest to his own," engaging in self-dealing, failing to disclose conflicts, or making misrepresentations to achieve those ends. *See Cepeda,* slip op. at 5. The focus

22

of breach of fiduciary duty is improper benefit and loyalty; the focus of malpractice is professional care. *Goffney,* 56 S.W.3d at 193–94; *Murphy,* 241 S.W.3d at 693, 698.

Nor do Texas Defendants' broader settlement-related arguments resolve the fiduciary-duty claim. The MSA was a private settlement agreement; there is no order approving the MSA itself, and no order adjudicating or approving Texas Defendants' alleged conflicts, disclosures, informed consent, or fiduciary compliance. Court administration or enforcement of settlement procedures is not the same thing as judicial approval of Texas Defendants' conduct toward Canup. Nothing about the settlement structure categorically authorized Canup's own attorneys to conceal a material conflict, provide misleading advice, place personal financial interests above Canup's interests, or continue representation without disclosure and informed consent.

Likewise, Texas Defendants' assertion that they did not "enter into" the MSA does not defeat the pleading. Dkt. 79 at 21. The First Amended Petition alleges that Texas Defendants participated "at least tacitly and in fact" through their conduct, including implementing the settlement structure, recommending settlement participation, ceasing development of opt-out claims, withdrawing from continued litigation, and acting under financial incentives created by the settlement. Dkt. 60 ¶¶ 38–52, 118–25. Whether Texas Defendants accepted, implemented, operated under, or financially benefited from the settlement structure is a factual issue.

The remedies requested also reinforce why dismissal is inappropriate. Canup seeks fee forfeiture, disgorgement, and an accounting of compensation or financial benefits connected to the alleged fiduciary breaches. Dkt. 60 ¶¶ 127, 213. Texas law permits equitable remedies for breach of fiduciary duty without proof of traditional actual damages. *See Burrow,* 997 S.W.2d at 240–41; *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 873–74 (Tex. 2010); *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509, 513–14 (Tex. 1942). Texas law also recognizes that a

23

fiduciary-duty claim may survive even when a negligence claim fails. *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 25 S.W.3d 863, 872–73 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

At minimum, whether the Retainer Agreement disclosed the specific conflict alleged, whether Canup gave informed consent, whether Texas Defendants pursued or received an improper benefit, and whether forfeiture, disgorgement, or an accounting is warranted are fact-intensive issues that cannot be resolved under Rule 12(b)(6).

### 6. Canup Plausibly States a Claim for Civil Conspiracy

Texas Defendants argue that the conspiracy claim fails because fraudulent inducement and breach of fiduciary duty fail, and because malpractice cannot support conspiracy. Dkt. 79 at 34. That derivative argument fails because Canup has plausibly pleaded intentional torts for fraudulent inducement and breach of fiduciary duty; the conspiracy claim does not depend on negligence.

Texas law requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC,* 580 S.W.3d 136, 141 (Tex. 2019). Although conspiracy is derivative, *id*. at 142, the underlying torts here are intentional. And a meeting of the minds may be inferred from circumstantial evidence and tacit understanding. *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex. 1996).

Canup pleads each element: multiple persons and entities; an object to increase settlement participation and related compensation; an express or tacit meeting of the minds inferred from coordinated conduct, shared participation, communications, and aligned messaging; unlawful overt acts including fraud, concealment, misleading statements, withholding information, divided loyalty, and participation-related conditions on access to materials; and resulting economic injury. Dkt. 60 ¶¶ 38–52, 58–62, 94–96, 188–203.

That is not a conspiracy to enter a "court-approved settlement." Dkt. 79 at 35. The MSA was a private settlement agreement, and Canup does not allege that its mere existence was unlawful. He alleges coordinated fraud, concealment, disloyalty, misleading communications, withheld information, and participation-related conditions designed to influence his decisions in a manner aligned with Defendants' financial interests. Dkt. 60 ¶¶ 188–94. Nor is injury defeated because Canup did not sign the MSA; he alleges economic losses caused during the alleged course of concerted conduct. *Id*. ¶¶ 195–201, 205–210.

### 7. Alternatively, Canup Must be Permitted to Amend Before Any Dismissal with Prejudice

The First Amended Petition plausibly states each challenged claim. But if the Court finds additional specificity necessary, dismissal with prejudice would be improper because any deficiency is curable.

Texas Defendants argue that Canup has not alleged that they knew or should have known of hearing loss. Dkt. 79 at 18. Canup can amend to allege that, while FNJ remained identified as his counsel, Texas Defendants communicated settlement-registration materials assigning him to a payment level tied to hearing-loss evidence and stating that the classification was based on attorney-supplied representations. He can also add clarifying detail concerning hearing-related records, settlement communications, procedural bar and sanctions risk, attorney-specific representations, causation of litigation expenses, and the distinct facts supporting each claim. These are clarifying allegations, not a new theory.

Because Canup proceeds *pro se* and has not received a prior merits ruling identifying these asserted deficiencies, dismissal with prejudice would be improper. Where "[m]ore specific allegations . . . would have remedied the pleading problems found by the district court," the Eleventh Circuit requires that a *pro se* plaintiff be given an opportunity to amend. *Woldeab v.*

*DeKalb Cnty. Bd. of Educ.,* 885 F.3d 1289, 1292 (11th Cir. 2018) (quoting *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988)). Accordingly, if any claim is found insufficiently pleaded, Canup respectfully requests leave to file a Second Amended Complaint within fourteen days, and Texas Defendants' request for dismissal with prejudice should be denied.

## IV.    REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Canup respectfully requests that the Court deny Texas Defendants' Motion to Dismiss, Dkt. 79, in its entirety; deny Texas Defendants' request for dismissal with prejudice; grant leave to amend if the Court finds any claim insufficiently pleaded; and grant such other and further relief to which Canup may be justly entitled.

Signed this 2nd day of July, 2026.

Respectfully submitted,

*/s/ Brandon Canup*

Brandon Canup
4812 Hidden Oaks Ln
Arlington, Texas 76017
Tel.: (972) 762-4314
canup.brandon@gmail.com

*Plaintiff,  pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on or about July 2, 2026, a true and correct copy of this entire document was sent to counsel for all parties via email, US Mail and/or the CM/ECF service pursuant to the Federal Rules of Civil Procedure.

*/s/ Brandon Canup*

*Plaintiff, pro se*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), the undersigned certifies that, based on the Word Count function in Microsoft Word, this Memorandum contains 7,872 words, inclusive of headings, footnotes, and quotations.

*/s/ Brandon Canup*

*Plaintiff, pro se*